## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BERNADETTE WILLIAMS, RICK MCCONNELL, ROSILYN WILSON, LINDA LEWIS, LATASHA HUFF, HAUNANIMAE CERVANTES-WHITE, MARIA MUNOZ, KIMBERLY BENSON, ROY TUINSTRA, EVELYN BROWN, MICHELLE SNYDER, WILLIAM ROSS DEAN, RICHARD DACHEFF, DIANE NEWKIRK, SANDRA SMILING, SHAUN ROBERT, ROQUE ESPINOZA, JENNIFER PAYNE, LATISHA BOWDEN, and DJ NEILL themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs, by and through undersigned counsel, bring this class action, individually and on behalf of all others similarly situated, against State Farm Mutual Automobile Insurance Company ("Defendant"), and allege as follows:

### INTRODUCTION

1.      This class action lawsuit arises from Defendant's deceptive, fraudulent, and unfair scheme through which Defendant systematically undervalues total-loss vehicles in order to arbitrarily reduce its ultimate payment to insureds who make total loss claims under insurance policies issued by Defendant.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiffs and all putative Class members (defined below) promise to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as **Exhibit 1** are copies of each Plaintiffs' Policy ("Policy"), which are materially identical to the policies that provides coverage to all members of the putative Classes (defined below).

3.      Defendant ignores and avoids its straightforward contractual obligation by directing or relying on its third-party vendor to systematically reduce total loss evaluations. Specifically, to determine the amount of Defendant's total-loss payments to insureds, Defendant's third-party vendor identifies the price of comparable vehicles listed for sale in the relevant market. *After* the vendor determines the value of the comparable vehicles, Defendant's vendor applies an arbitrary and baseless flat-rate adjustment to the value of each "comparable vehicle," which Defendant and its vendor call a "typical negotiation" adjustment.

4.      The "typical negotiation" adjustment is not based on any negotiations, typical or otherwise, and is not based on any market realities. Rather the "typical negotiation" adjustment ranges from 4-11% of the value of the "comparable vehicle." The vehicles with lesser value are subject to a greater percentage reduction, with the percentage adjustment becoming lower as the value of the "comparable vehicles" increases. This percentage reduction artificially reduces the total-loss payment for the totaled vehicle and, with the sliding percentage scale, ensures that every total loss payment Defendant makes to insureds is significantly, but unconscionably, reduced.

5.      Notably, Defendant does ***not*** apply such arbitrary adjustments to reduce the of value insured vehicles in the state of California because Defendant in 2008 was sued in California for doing so, and as part of the settlement of that lawsuit, Defendant agreed to stop applying a

"projected sold adjustment" (effectively the same as a "typical negotiation" adjustment) until "(1) a change in the law (including, without limitation, any changes to applicable regulations, case law or CDI statements…requires or permits use of a different method of computation, or (2) State Farm is instructed to use a different method of computation by the [California Department of Insurance] or any court of law." *Garner v. State Farm Mutual Automobile Insurance Company*, No. 4:08-cv-01365-CW, ECF No. 244, Ex. A, Agreement of Compromise and Settlement, at 21-22 (N.D. Cal) (attached as **Exhibit 2**). Defendant, however, continues to use this arbitrary and unfair "typical negotiation" adjustment to artificially reduce its total loss payments in other states.

6.      An integral part of Defendant's fraudulent scheme is a provision of the Policy that requires the parties to submit to an appraisal if there is a disagreement over the ACV. The appraisal provision requires the insured and the insurer to each hire, ***at their own expense***, an appraiser, and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the artificially determined loss-payment for their total-loss claims. As designed by Defendant, the appraisal provision prevents Plaintiffs and the Class from effectively vindicating their rights under the Policy.

7.      To be clear, this case does not present a dispute about ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policy, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

3

8.     Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiffs nor the members of the Class had any roll in drafting its terms.

9.     Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant violated consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, breached its contracts and the covenant of good faith and fair dealing with its insureds, and was unjustly enriched.

10.     As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiffs did not receive the benefit of the bargain, and thus sustained actual damages.

11.     By this action, Plaintiffs, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

**PARTIES**

**A.     Plaintiffs**

12.     Plaintiff Bernadette Williams, at all relevant times, was an Alabama citizen. Williams owned a 2010 Toyota Camry LE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around June 7, 2018. Williams made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Williams for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Williams' total loss vehicle at $8,831.00 and paid Williams $8,792.72. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 7-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the

value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 3.**

13.    Plaintiff Rick McConnell, at all relevant times, was an Arkansas citizen. McConnell owned a 2018 Kia Soul Plus 4 door hatchback that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 3, 2021. McConnell made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to McConnell for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued McConnell's total loss vehicle at $12,235.00 and paid McConnell $12,785.98. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 4.**

14.    Plaintiff Rosilyn Wilson, at all relevant times, was a Delaware citizen. Wilson owned a 2005 GMC Envoy SLT 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 5, 2018. Wilson made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Wilson for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Wilson's total loss vehicle at $5,177.00 and paid Wilson $5,212.00. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 8-9% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6, attached as **Exhibit 5.**

15.     Plaintiff Linda Lewis, at all relevant times, was a Florida citizen. Lewis owned a 2003 Kia Sorento EX 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 23, 2017. Lewis made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Lewis for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Lewis' total loss vehicle at $4,364.00 and paid Lewis $4,227.41. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10-11% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4, attached as **Exhibit 6.**

16.     Plaintiff Latasha Huff, at all relevant times, was a Georgia citizen. Huff owned a 2015 Mercedes-Benz CLA250 STD Turbo 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 21, 2021. Huff made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Huff for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Huff's total loss vehicle at $20,656.00 and paid Huff $21,042.30. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4-5% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 7-8, attached as **Exhibit 7.**

17.     Plaintiff Haunanimae Cervantes-White, at all relevant times, was a Hawaii citizen. Cervantes-White owned a 2017 Volkswagen Jetta 4-door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 22, 2019. Cervantes-

White made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Cervantes-White for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Cervantes-White's total loss vehicle at 11,950.00 and paid Cervantes-White $12,007.75. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6%-11% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 8**.

18.     Plaintiff Maria Munoz, at all relevant times, was an Illinois citizen. Munoz owned a 2020 Ford Escape SEL Turbo 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around February 13, 2021. Munoz made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Munoz for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Munoz's total loss vehicle at $26,067.00 and paid Munoz $28,518.37. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6-7, attached as **Exhibit 9**.

19.     Plaintiff Kimberly Benson, at all relevant times, was a Kansas citizen. Benson owned a 1997 Chrysler Sebring JX 2 door convertible that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 3, 2019. Benson made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Benson for

the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Benson's total loss vehicle at $2,916.00 and paid Benson $3,124.87. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10-11% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 10.**

20.     Plaintiff Roy Tuinstra, at all relevant times, was a Kentucky citizen. Tuinstra owned a 2011 Chevy Camaro LS2 that was insured under a Policy issued by Defendant, which was deemed a total loss on or around June 23, 2018. Tuinstra made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Tuinstra for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Tuinstra's total loss vehicle at $7,601 and paid Tuinstra $5,333.06. The market valuation report listed the value of one comparable vehicle and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to the comparable vehicle without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5, attached as **Exhibit 11**.

21.     Plaintiff Evelyn Brown, at all relevant times, was a Louisiana citizen. Brown owned a 2018 Toyota Corolla SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 22, 2021. Brown made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Brown for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Brown's total loss vehicle at $13,625.00 and paid Brown $13,955.00. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor

applied a "typical negotiation" adjustment of approximately 4-6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 12.**

22.     Plaintiff Michelle Snyder, at all relevant times, was a Maryland citizen. Snyder owned a 2013 Volkswagen Jetta SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 23, 2018. Snyder made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Snyder for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Snyder's total loss vehicle at $4,975 and paid Snyder $5,283.50. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 13.**

23.     Plaintiff William Ross Dean, at all relevant times, was a Mississippi citizen. Dean owned a 2016 Dodge Ram that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 31, 2020. Dean made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Dean for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Dean's total loss vehicle at $39,930.00 and paid Snyder $40,938.83. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6-8, attached as **Exhibit 14.**

24.     Plaintiff Richard Dacheff, at all relevant times, was a Missouri citizen. Dacheff owned a 2016 Toyota Avalon XLE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around February 26, 2017. Dacheff made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Dacheff for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Dacheff's total loss vehicle at $23,728.00 and paid Dacheff $22,744.50. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4, attached as **Exhibit 15.**

25.     Plaintiff Diane Newkirk, at all relevant times, was a New York citizen. Newkirk owned a 2015 Subaru Impreza 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 23, 2021. Newkirk made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Newkirk for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Newkirks's total loss vehicle at $10,544.00 and paid Newkirk $10,887.52. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4-6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 16.**

26.     Plaintiff Sandra Smiling, at all relevant times, was a North Carolina citizen. Smiling owned a 2014 Nissan Altima 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around August 1, 2019. Smiling made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Smiling for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Smiling's total loss vehicle at $5,181.00 and paid Smiling $5,181.00. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 17.**

27.     Plaintiff Shaun Robert, at all relevant times, was an Ohio citizen. Robert owned a 1999 Dodge Durango 4WD that was insured under a Policy issued by Defendant, which was deemed a total loss on or around April 8, 2021. Robert made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Robert for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Robert's total loss vehicle at $3,361 and paid Robert $3,138.16. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 18.**

28.     Plaintiff Roque Espinoza, at all relevant times, was a Pennsylvania citizen. Espinoza owned a 2016 Hyundai Sonata SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around October 10, 2020. Espinoza made a

claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Espinoza for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Espinoza's total loss vehicle at $8,310.00 and paid Espinoza $8,372.60. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 19.**

29.    Plaintiff Jennifer Payne, at all relevant times, was an South Carolina citizen. Payne owned a 2008 Ford Focus SE that was insured under a Policy issued by Defendant, which was deemed a total loss on or around August 23, 2020. Payne made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Payne for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Payne's total loss vehicle at $4,850 and paid Payne $4,617.50. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10-13% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 20**.

30.    Plaintiff Latishia Bowden, at all relevant times, was a Tennessee citizen. Bowden owned a 2015 Chevrolet Malibu 1LT 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 27, 2020. Bowden made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Bowden for the total loss claim. Defendant based its offer upon a valuation report obtained from

Audatex. Defendant valued Bowden's total loss vehicle at $13,447.00 and paid Bowden $13,990.79. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 21.**

31.     Plaintiff DJ Neill, at all relevant times, was a Texas citizen. Neill owned a 2009 Mazda Mazda3 i Touring 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around September 8, 2020. Neill made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Neill for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Neill's total loss vehicle at $3,608.00 and paid Neill $3,861.50. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 22.**

**B.     Defendant**

32.     Defendant State Farm Mutual Automobile Insurance Company is an Illinois company with its principal place of business in Illinois. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

## JURISDICTION AND VENUE

33.    This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of Illinois, and makes its insurance services available to residents of Illinois. Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiffs occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.

34.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including certain Plaintiffs, are citizen of states outside Illinois, and Defendant is a citizen of Illinois, thus CAFA's minimal diversity requirement is met. Additionally, Plaintiffs seek an award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiffs and the Class in an amount to be determined at trial, for each violation, which, when aggregated among a proposed class of potential thousands, exclusive of interests and costs, exceeds the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act ("CAFA").

35.    Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because certain Plaintiffs were injured in this District.

## FACTUAL ALLEGATIONS

**"Typical Negotiation"**

36.     When valuing total-loss automobile claims, insurance companies like Defendant use third party companies to determine and pay the ACV of an insured's totaled vehicle subject only to reduction for any policy deductible.

37.     To avoid full payment under its policies, Defendant has devised a blatant and unlawful scheme to reduce its total-loss payments to insureds, by use of a deceptive, arbitrary and baseless "typical negotiation adjustment."

38.     Specifically, Defendant purports to determine the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). The Autosource system identifies the price of comparable vehicles sold or listed for sale online in the relevant market. Autosource then, at Defendant's directive, applies a deceptive and arbitrary "typical negotiation" adjustment to the value of the comparable vehicles before determining the total-loss payment Defendant will make.

39.     Defendant's "typical negotiation" adjustment is arbitrary and unsupportable. When offering the total-loss payment to an insured whose car was totaled, Defendant represents that the "typical negotiation" adjustment reflects some sort of average difference between a dealer list price and "what the dealer would be willing" to sell it for. *See, e.g.*, Ex. 3 at 5 ("The selling price *may* be substantially less than the asking price. When indicated, the asking price has been adjusted to account for typical negotiation according to each comparables [*sic*] price."). However, this disclosure is never made prior to determining the total-loss payment Defendant will make or when Plaintiffs and Class members are presented with the terms of Defendant's Policy.

40.     Moreover, the across-the-board 4-11% reduction on used vehicles' internet prices is based on no negotiations, typical or otherwise, and does not reflect market realities, and neither

relevant state insurance laws and regulations nor the Policy permit Defendant to make this arbitrary deduction. Indeed, Defendant applies the "typical negotiation" adjustment without contacting the identified dealerships or sellers, or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based "typical negotiation" adjustment reduction, Defendant failed to consider that it is increasingly the practice in the used car market to avoid price negotiation by implementing "no haggle" pricing, particularly as to internet-posted prices.[1] Indeed, in addition, particularly during the COVID-19 pandemic, and the related supply chain problems with parts such as electronics for vehicles, used cars have been selling for a premium, with sale price typically ***increasing*** from posted price if it changes at all.[2]

41.     Rather, the arbitrary "typical negotiation adjustment," ranging from 4-11% of the value of the comparable vehicle is keyed only to the value of that vehicle, as the value of the "comparable vehicles" increases. This sliding percentage scale does not reflect "actual value" of the vehicle vehicles or any "typical negotiation," but rather is meant to ensure that Defendant's total loss payments are significantly reduced, even when a vehicle is not valuable.

42.     Plaintiffs do not contest the vehicles Defendant selected to use as comparable vehicles. Plaintiffs do not contest Defendant's representations of the listed price of comparable vehicles. Plaintiffs do not contest the value assigned to differences in trim, condition, mileage, packages, and equipment between comparable vehicles and the total-loss vehicle. What Plaintiffs

---

[1]  *See, e.g.*, https://www.autonationlincolnclearwater.com/autonation-one-price.htm (last visited Sept. 24, 2021) ("Not only is our no-haggle price low, it's guaranteed."); https://www.carmax.com/about-carmax (last visited May September 26, 2021) ("our 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

[2]  *See* https://www.cnbc.com/2021/08/07/used-car-prices-to-stay-high-until-automakers-fix-production-issues.html (last visited Sept. 16, 2021); https://abc7chicago.com/car-chip-shortage-2021-prices-auto-gm-closes-factories/11005980/ (last visited Sept. 16, 2021).

contest is that Defendant instructed Audatex to apply arbitrary, capricious, and invalid "typical negotiation" adjustment across-the-board in determining its total-loss payments.

43.     Notably, Defendant does ***not*** apply such arbitrary adjustments to reduce the of value insured vehicles in the state of California because Defendant in 2008 was sued in California for doing so, and as part of the settlement of that lawsuit, Defendant agreed to stop applying a "projected sold adjustment" (effectively the same as a "typical negotiation" adjustment) until "(1) a change in the law (including, without limitation, any changes to applicable regulations, case law or CDI statements…requires or permits use of a different method of computation, or (2) State Farm is instructed to use a different method of computation by the [California Department of Insurance] or any court of law." **Ex. 2**. Defendant, however, continues to use this arbitrary and unfair "typical negotiation" adjustment to artificially reduce its total loss payments in other states.

**Defendant's Deceptive and Unfair Appraisal Process**

44.     An integral part of Defendant's fraudulent scheme is a provision of Policy which requires the parties to submit to an appraisal if there is a disagreement over the ACV (which Defendant never determines). The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less than the cost of the appraisal, Defendant knows that the insureds will forego the appraisal process and accept the artificially reduced ACV of the vehicle for their total-loss claims. As designed, the appraisal clause prevents Plaintiffs and the Class from effectively vindicating their statutory and common law causes of action.

45.     To be clear, this case does not present a dispute about ACV, which Defendant never determines. Rather, this case challenges Defendant's fraudulent scheme to illegally undervalue

insureds' vehicles that are declared a total loss, in order to increase its own profits. This is an issue that cannot be resolved through an appraisal process that is part of that very scheme.

46.     Moreover, the Policy is an unconscionable contract of that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiffs nor the members of the Class had any roll in drafting its terms.

## APPLICATION OF ILLINOIS LAW NATIONWIDE

47.     The application of Illinois law as the substantive basis for relief for Defendant's violations of the rights of Plaintiffs and each of the members of the proposed national class (as opposed to interpretation of the insurance policies) is appropriate because Illinois retains the most significant relationship to the occurrence and the parties.

48.     Defendant's principal place of business is in Illinois, and Defendant's deceptive scheme was developed in, and emanated from, Illinois.

49.     The form insurance Policies Defendant used to carry out its scheme were developed and drafted in Illinois.

50.     Illinois has a strong interest in regulating the conduct of companies headquartered in Illinois, particularly when they engage in fraud on a systematic and national level.

51.     The application of Illinois law to a national class will not present any difficulty.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Multistate Class ("Multistate Class"):

> All persons insured by Defendant in any state who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

53.     If necessary, and in the alternative, Plaintiffs bring this action on behalf of the following proposed State Subclasses:

> **The Alabama Subclass**. All Alabama citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

> **The Alaska Subclass**. All Alaska citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

> **The Arizona Subclass**. All Arizona citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

> **The Arkansas Subclass**. All Arkansas citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

> **The Colorado Subclass**. All Colorado citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

> **The Connecticut Subclass**. All Connecticut citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

> **The District of Colombia Subclass**. All District of Colombia citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Delaware Subclass**. All Delaware citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Florida Subclass**. All Florida citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Georgia Subclass**. All Georgia citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Hawaii Subclass**. All Hawaii citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Idaho Subclass**. All Idaho citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Illinois Subclass.** All Illinois citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Indiana Subclass.** All Indiana citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Iowa Subclass.** All Iowa citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Kansas Subclass**. All Kansas citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Kentucky Subclass**. All Kentucky citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Louisiana Subclass**. All Louisiana citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Maine Subclass**. All Maine citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Maryland Subclass**. All Maryland citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Michigan Subclass**. All Michigan citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Minnesota Subclass**. All Minnesota citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Mississippi Subclass**. All Mississippi citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Missouri Subclass**. All Missouri citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Montana Subclass**. All Montana citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Nebraska Subclass**. All Nebraska citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Nevada Subclass**. All Nevada citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The New Hampshire Subclass**. All New Hampshire citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The New Jersey Subclass**. All New Jersey citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The New Mexico Subclass**. All New Mexico citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The New York Subclass**. All New York citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The North Carolina Subclass.** All North Carolina citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The North Dakota Subclass.** All North Dakota citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Ohio Subclass**. All Ohio citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Oklahoma Subclass**. All Oklahoma citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Oregon Subclass**. All Oregon citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Pennsylvania Subclass**. All Pennsylvania citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The South Carolina Subclass**. All South Carolina citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The South Dakota Subclass**. All South Dakota citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Tennessee Subclass**. All Tennessee citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Texas Subclass**. All Texas citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Utah Subclass**. All Utah citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Virginia Subclass**. All Virginia citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The West Virginia Subclass**. All West Virginia citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Wisconsin Subclass**. All Wisconsin citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this

action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

**The Wyoming Subclass**. All Wyoming citizens insured by Defendant who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

54.     Unless otherwise stated, the Multistate Class and the alternative State Subclasses are collectively referred to as the "Class."

55.     Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

56.     Plaintiffs reserve their right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way

57.     **Numerosity**.  The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of Class members, the precise number is unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

58.     **Commonality and Predominance**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.  whether Defendant's practice of applying a "typical negotiation" adjustment in determining total-loss payments results is a breach of its obligation to pay ACV;

b.  whether Defendant's failure to disclose its use and use of a "typical negotiation" adjustment when determining total-loss payments for a totaled vehicle until such an assessment is made is deceptive to a reasonable consumer, unconscionable or otherwise a violation of the relevant consumer protection statute(s);

c.  whether Defendant's practice of applying a "typical negotiation" adjustment in determining total-loss payments results is a breach of its obligation to pay ACV breached the covenant of good faith and fair dealing it has with Plaintiffs and the other Class members;

d.  Whether Defendant was unjustly enriched at the expense of Plaintiffs and the other Class members as a result of its conduct

e.  whether Plaintiffs and the Class are entitled to injunctive relief based on Defendant's conduct; and

f.  whether Plaintiffs and the Class are entitled to damages and the measure of damages owed to them.

59.  **Typicality.** Plaintiffs' claims are typical of the other Class members' claims because Defendant undertook the same practice of applying a "typical negotiation" adjustment in determining total-loss payments under materially similar policy provisions requiring payment of ACV. Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

60. **Adequacy of Representation**. Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members whom they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

61. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**I.** **CAUSES OF ACTION ASSERTED ON BEHALF OF THE NATIONWIDE CLASS**

**COUNT 1**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS, 505/1, *et seq.***

62. Plaintiffs repeat and re-allege all previously alleged paragraphs as if fully alleged herein.

63.     Plaintiffs bring this claim individually and on behalf of the Multistate Class (for purposes of this Count, the "Class").

64.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of 815 ILCS 505/l(c).

65.     Plaintiffs and the Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

66.     Defendant was and is engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

67.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

68.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's ACV payment to insureds, as detailed above.

69.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFA.

70.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

71.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

72.     The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

73.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

74.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Illinois CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

75.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

76.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

77.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for such coverage and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

78.     Defendant's violations of the Illinois CFA present a continuing risk of future harm to Plaintiffs and the Class members.

79.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Illinois CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

## COUNT 2

## BREACH OF CONTRACT

80.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Count, as if fully alleged herein.

81.     Plaintiffs bring this claim individually and on behalf of the Multistate Class (for purposes of this Count, the "Class").

82.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

83.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

84.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

85.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

86.      Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

87.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 3

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

88.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

89.    Plaintiffs bring this claim individually and on behalf of the Multistate Class (for purposes of this Count, the "Class").

90.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

91.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

92.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle.

93.    Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

94.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.  Failing to pay insureds the ACV of their total-loss vehicles;

c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

95.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from their payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 4

## UNJUST ENRICHMENT

96.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

97.     Plaintiffs bring this claim individually and on behalf of the Multistate Class.

98.     Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

99.     Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

100.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to

artificially reduce its total-loss payments to insureds, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

101.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

102.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 5

## DECLARATORY JUDGMENT

103.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

104.   Plaintiffs bring this claim individually and on behalf of the Multistate Class (for purposes of this Count, the "Class").

105.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

106.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

107. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

108. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

## II. CAUSES OF ACTION ASSERTED ON BEHALF OF THE STATE SUBCLASSES

### A. Alabama

### COUNT 6

### BREACH OF CONTRACT

109. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

110. This Count is brought on behalf of the Alabama Subclass (for purposes of this Count, the "Class").

111. Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

112. Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

113. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

114. Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment"

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

115.    Defendant also failed to comply with Alabama law, which requires that fair retail value of a total loss vehicle be obtained from "a current edition, including automated data base, of a nationally recognized compilation of retail values, such as, but not limited to the National Automobile Dealers Association's Used Car Guide, Southeastern Edition (NADA Retail Price Manual) and Red Book, provided the publication or automated data base presents a fair and representative retail value of the vehicle within the state of Alabama[,]" and which provides that "[d]ownward condition adjustments shall be permitted only if the vehicle has specific conditions other than ordinary wear and tear which materially affect its fai[r] market value or useful life[,] such condition adjustment shall be discernable, measurable, itemized, and specified as to dollar amount and shall be fully documented in the claim file and based upon verifiable supporting data." Ala. Dept. Rev. Adm. Code Ch. 810-5-41-.05(2); see also Ala. Admin. Code. R. 482-1-125-.08(1)(b).

116.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

117.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 7

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

118.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

119.     This Count is brought on behalf of the Alabama Subclass (for purposes of this Count, the "Class").

120.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

121.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

122.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

123.     Defendant also failed to comply with Alabama law, which requires that fair retail value of a total loss vehicle be obtained from "a current edition, including automated data base, of

a nationally recognized compilation of retail values, such as, but not limited to the National Automobile Dealers Association's Used Car Guide, Southeastern Edition (NADA Retail Price Manual) and Red Book, provided the publication or automated data base presents a fair and representative retail value of the vehicle within the state of Alabama[,]" and which provides that "[d]ownward condition adjustments shall be permitted only if the vehicle has specific conditions other than ordinary wear and tear which materially affect its fai[r] market value or useful life[,] such condition adjustment shall be discernable, measurable, itemized, and specified as to dollar amount and shall be fully documented in the claim file and based upon verifiable supporting data." Ala. Dept. Rev. Adm. Code Ch. 810-5-41-.05(2); see also Ala. Admin. Code. R. 482-1-125-.08(1)(b).

124.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

      a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

      b. Failing to pay insureds the ACV of their total-loss vehicles;

      c. Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

      d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

125.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 8

### UNJUST ENRICHMENT

126.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

127.     This Count is brought on behalf of the Alabama Subclass (for purposes of this Count, the "Class").

128.     Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

129.     Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

130.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

131.     Defendant also failed to comply with Alabama law, which requires that fair retail value of a total loss vehicle be obtained from "a current edition, including automated data base, of a nationally recognized compilation of retail values, such as, but not limited to the National Automobile Dealers Association's Used Car Guide, Southeastern Edition (NADA Retail Price Manual) and Red Book, provided the publication or automated data base presents a fair and representative retail value of the vehicle within the state of Alabama[,]" and which provides that "[d]ownward condition adjustments shall be permitted only if the vehicle has specific conditions

other than ordinary wear and tear which materially affect its fai[r] market value or useful life[,] such condition adjustment shall be discernable, measurable, itemized, and specified as to dollar amount and shall be fully documented in the claim file and based upon verifiable supporting data." Ala. Dept. Rev. Adm. Code Ch. 810-5-41-.05(2); see also Ala. Admin. Code. R. 482-1-125-.08(1)(b).

132.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Alabama law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

133.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

134.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 9

## DECLARATORY JUDGMENT

135.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

136.     This Count is brought on behalf of the Alabama Subclass (for purposes of this Count, the "Class").

137. A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

138. Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

139. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

140. As a result of these breaches of contract and violations of law, Plaintiffs and the Class members have been injured.

**B.     Alaska**

**COUNT 10**

**VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**ALASKA STAT. ANN. § 45.50.471,** *et seq.*

141. Plaintiffs repeat and re-allege all previously alleged paragraphs as if fully alleged herein.

142. This Count is brought on behalf of the Alaska Subclass (for purposes of this Count, the "Class").

143. Defendant was and is engaged in "trade" or "commerce" within the meaning of ALASKA STAT. ANN. § 45.50.471.

144. The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services"; and "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." ALASKA STAT. ANN. § 45.50.471.

145. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's ACV payment to insureds, as detailed above.

146. Defendant also failed to comply with Alaska law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost to purchase a comparable automobile," determined by "(i) the cost of a comparable motor

vehicle in the local market area to the claimant, if that motor vehicle is available in that area or was available during the last 90 days; (ii) the average of two or more cost quotations obtained for a comparable motor vehicle from two or more licensed dealers located within the local market area…; (iii) a computerized database valuation service that produces statistically valid fair market values under (i) of this section; (iv) the average retail value of a comparable motor vehicle, if that value is obtained from two industry sources published on a regular basis, at least once every two months, that contain the average retail, wholesale, and finance values for all makes and models for at least each of the last five model years, as well as a listing for all major options…; or (v) the cost of a comparable motor vehicle using a basis that is allowable under the coverage, if supported by documentation in the claim file and fully explained to the claimant…" 3 ALASKA ADMIN. CODE § 26.080(B).

147.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA.

148.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

149.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about

Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

150.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

151.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

152.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Alaska CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

153.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and

44

applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

154.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

155.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for such coverage and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

156.     Defendant's violations of the Alaska CPA present a continuing risk of future harm to Plaintiffs and the Class members.

157.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Alaska CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

## COUNT 11

## BREACH OF CONTRACT

158.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

159.     This Count is brought on behalf of the Alaska Subclass (for purposes of this Count, the "Class").

160.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

161.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

162.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

163.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

164.     Defendant also failed to comply with Alaska law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost to purchase a comparable automobile," determined by "(i) the cost of a comparable motor vehicle in the local market area to the claimant, if that motor vehicle is available in that area or was available during the last 90 days; (ii) the average of two or more cost quotations obtained for a comparable motor vehicle from two or more licensed dealers located within the local market area…; (iii) a computerized database valuation service that produces statistically valid fair market values under (i) of this section; (iv) the average retail value of a comparable motor vehicle, if that value is obtained from two industry sources published on a regular basis, at least once every two months, that contain the average retail, wholesale, and finance values for all makes and models for at least each of the last five model years, as well as a listing for all major options…; or (v) the cost

of a comparable motor vehicle using a basis that is allowable under the coverage, if supported by documentation in the claim file and fully explained to the claimant…" 3 ALASKA ADMIN. CODE § 26.080(B).

165. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

166. As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

**COUNT 12**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

167. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

168. This Count is brought on behalf of the Alaska Subclass (for purposes of this Count, the "Class").

169. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

170. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith

and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

171.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

172.    Defendant also failed to comply with Alaska law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost to purchase a comparable automobile," determined by "(i) the cost of a comparable motor vehicle in the local market area to the claimant, if that motor vehicle is available in that area or was available during the last 90 days; (ii) the average of two or more cost quotations obtained for a comparable motor vehicle from two or more licensed dealers located within the local market area…; (iii) a computerized database valuation service that produces statistically valid fair market values under (i) of this section; (iv) the average retail value of a comparable motor vehicle, if that value is obtained from two industry sources published on a regular basis, at least once every two months, that contain the average retail, wholesale, and finance values for all makes and models for at least each of the last five model years, as well as a listing for all major options…; or (v) the cost of a comparable motor vehicle using a basis that is allowable under the coverage, if supported by documentation in the claim file and fully explained to the claimant…" 3 ALASKA ADMIN. CODE § 26.080(B).

173. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b. Failing to pay insureds the ACV of their total-loss vehicles;

   c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

   d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

174. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 13

## UNJUST ENRICHMENT

175. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

176. This Count is brought on behalf of the Alaska Subclass (for purposes of this Count, the "Class").

177. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

178.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

179.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

180.    Defendant also failed to comply with Alaska law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost to purchase a comparable automobile," determined by "(i) the cost of a comparable motor vehicle in the local market area to the claimant, if that motor vehicle is available in that area or was available during the last 90 days; (ii) the average of two or more cost quotations obtained for a comparable motor vehicle from two or more licensed dealers located within the local market area…; (iii) a computerized database valuation service that produces statistically valid fair market values under (i) of this section; (iv) the average retail value of a comparable motor vehicle, if that value is obtained from two industry sources published on a regular basis, at least once every two months, that contain the average retail, wholesale, and finance values for all makes and models for at least each of the last five model years, as well as a listing for all major options…; or (v) the cost of a comparable motor vehicle using a basis that is allowable under the coverage, if supported by documentation in the claim file and fully explained to the claimant…" 3 ALASKA ADMIN. CODE § 26.080(B).

181.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to

artificially reduce its total-loss payments to insureds and its failure to comply with Alaska law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

182.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

183.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 14

## DECLARATORY JUDGMENT

184.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

185.    This Count is brought on behalf of the Alaska Subclass (for purposes of this Count, the "Class").

186.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

187.    Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

188.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

189.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

### C.    Arizona

### COUNT 15

### BREACH OF CONTRACT

190.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

191.    This Count is brought on behalf of the Arizona Subclass (for purposes of this Count, the "Class").

192.    Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

193.    Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

194.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

195.    Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

196.    Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods, "the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

197.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

198.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 16

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

199.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

200.    This Count is brought on behalf of the Arizona Subclass (for purposes of this Count, the "Class").

201.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

202.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

203.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

204.    Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the

54

"actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods, "the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

205.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b.   Failing to pay insureds the ACV of their total-loss vehicles;

   c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

   d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

206.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 17

## UNJUST ENRICHMENT

207.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

208.    This Count is brought on behalf of the Arizona Subclass (for purposes of this Count, the "Class").

209.    Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

210.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

211.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

212.    Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-

801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods, "the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

213.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Arizona law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

214.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

215.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 18

## DECLARATORY JUDGMENT

216.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

217.    This Count is brought on behalf of the Arizona Subclass (for purposes of this Count, the "Class").

218. A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

219. Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

220. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

221. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

### D. Arkansas

### COUNT 19

### VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT
Ark. Code § 4-88-101, *et seq.*

222. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

223. This Count is brought on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

224.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of A.C.A. § 4-88-102(5).

225.    Defendant provides "services" within the meaning of A.C.A. § 4-88-102(7).

226.    Defendant advertised, offered, or sold services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

227.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), A.C.A. §§ 4-88-101, *et seq.*, prohibits unfair, deceptive, false, and unconscionable trade practices.

228.    As alleged herein, Defendant engaged in the concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression or omission in violation of A.C.A. § 4-88-108(2), and engaged in unconscionable, false, or deceptive act or practice in business, commerce, or trade, in violation of A.C.A. § 4-88-107.

229.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the ADTPA by knowingly and intentionally concealing and failing to disclose material facts regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

230.    Defendant also fail to comply with Arkansas law, which requires an insurer to determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not available in the local market area[,]" and provides that "[w]hen a first party automobile total loss is settled on a basis which deviates from the methods described in

subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

231.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Arkansas law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the ADTPA.

232.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

233.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to their insureds.

234.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

60

235.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

236.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the ADTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

237.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the ADTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

238.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payment to insureds.

239.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

240.    Defendant's violations of the ADTPA present a continuing risk of future harm to Plaintiffs and the Class members.

241.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the ADTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the ADTPA.

## COUNT 20

## BREACH OF CONTRACT

242.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

243.    This Count is brought on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

244.    Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

245.    Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

246.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

247.    Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

248.    Defendant also failed to comply with Arkansas law, which requires an insurer to determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not available in the local market area[,]" and provides that "[w]hen a first party automobile total loss is settled on a basis which deviates from the methods described in subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

249.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

250.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 21

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

251.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

252.    This Count is brought on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

253.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

254.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

255.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

256.    Defendant also failed to comply with Arkansas law, which requires an insurer to determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable

automobile in the local market area when a comparable automobile is available in the local market area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not available in the local market area[,]" and provides that "[w]hen a first party automobile total loss is settled on a basis which deviates from the methods described in subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

257.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.   Failing to pay insureds the ACV of their total-loss vehicles;

    c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

258.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical

negotiation adjustment.

## COUNT 22

## UNJUST ENRICHMENT

259.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those

allegations made under the preceding Counts, as if fully alleged herein.

260.    This Count is brought on behalf of the Arkansas Subclass (for purposes of this

Count, the "Class").

261.    Plaintiffs plead this claim separately as well as in the alternative to his other claims,

as without such claims she would have no adequate legal remedy.

262.    Defendant requested and received a monetary benefit at the expense of Plaintiffs

and Class members in the form of premium payments for automobile insurance coverage.

263.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material

facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's

application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially

reduce its total-loss payments to insureds.

264.    Defendant also failed to comply with Arkansas law, which requires an insurer to

determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable

automobile in the local market area when a comparable automobile is available in the local market

area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or

more qualified dealers or appraisal services located within the local market area when a

comparable automobile is not available in the local market area[,]" and provides that "[w]hen a

first party automobile total loss is settled on a basis which deviates from the methods described in

subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

265.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Arkansas law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

266.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

267.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 23

## DECLARATORY JUDGMENT

268.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

269.    This Count is brought on behalf of the Arkansas Subclass (for purposes of this Count, the "Class").

270.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

271.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

272.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

273.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**E.     Colorado**

## COUNT 24

## VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
## COLO. REV. STAT. § 6-1-101, *et seq.*

274.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

275.     This Count is brought on behalf of the Colorado Subclass (for purposes of this Count, the "Class").

276.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of COLO. REV. STAT. § 6-1-102(6) & 6-1-113(1)(a).

277.     Plaintiffs and the Class members are "consumers" within the meaning of COLO. REV. STAT. § 6-1-113(1)(a).

278.     The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, deceptive, false and unconscionable trade practices, including, without limitation: "Advertis[ing] goods, services, or property with intent not to sell them as advertised"; "Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction"; or "knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." COLO. REV. STAT. § 6-1-105

279.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

280.     Defendant also failed to comply with Colorado law, which requires insurance companies to "establish a fair and consistent method for determining total loss of a motor vehicle." COLO. REV. STAT. § 10-4-639.

281.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment

to comparable vehicles, and its failure to comply with Colorado law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Colorado CPA.

282.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

283.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

284.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

285.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

286.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Colorado CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts

concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

287.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

288.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

289.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

290.     Defendant's violations of the Colorado CPA present a continuing risk of future harm to Plaintiffs and the Class members.

291.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Colorado CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT 25

## BREACH OF CONTRACT

292.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

293.     This Count is brought on behalf of the Colorado Subclass (for purposes of this Count, the "Class").

294.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

295.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

296.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

297.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

298.     Defendant also failed to comply with Colorado law, which requires insurance companies to "establish a fair and consistent method for determining total loss of a motor vehicle." COLO. REV. STAT. § 10-4-639.

299.     Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

300.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 26

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

301.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

302.     This Count is brought on behalf of the Colorado Subclass (for purposes of this Count, the "Class").

303.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

304.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

305.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a

manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

306.    Defendant also failed to comply with Colorado law, which requires insurance companies to "establish a fair and consistent method for determining total loss of a motor vehicle." COLO. REV. STAT. § 10-4-639

307.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

> a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
>
> b.  Failing to pay insureds the ACV of their total-loss vehicles;
>
> c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;
>
> d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

308.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 27

## UNJUST ENRICHMENT

309.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

310.     This Count is brought on behalf of the Colorado Subclass (for purposes of this Count, the "Class").

311.     Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

312.     Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

313.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

314.     Defendant also failed to comply with Colorado law, which requires insurance companies to "establish a fair and consistent method for determining total loss of a motor vehicle." COLO. REV. STAT. § 10-4-639

315.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Colorado law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

316.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

317.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 28

## DECLARATORY JUDGMENT

318.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

319.    This Count is brought on behalf of the Colorado Subclass (for purposes of this Count, the "Class").

320.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

321.    Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

322.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

323.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

F.  **Connecticut**

**COUNT 29**

**VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**CONN. GEN. STAT. TITLE 42, Ch. 735a, *et seq.***

324.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

325.  This Count is brought on behalf of the Connecticut Subclass (for purposes of this Count, the "Class").

326.  Defendant, Plaintiffs, and the Class members are each a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

327.  Defendant was and is engaged in "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).

328.  The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

329.  As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

330.  Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by

the Insurance Commissioner, and (2) one other automobile industry source that has been approved for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

331.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Connecticut law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Connecticut UTPA.

332.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

333.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

334.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

335.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had

concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

336.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Connecticut UTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

337.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

338.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

339.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or

would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

340.     Defendant's violations of the Connecticut UTPA present a continuing risk of future harm to Plaintiffs and the Class members.

341.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Connecticut UTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

## COUNT 12

## BREACH OF CONTRACT

342.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

343.     This Count is brought on behalf of the Connecticut Subclass (for purposes of this Count, the "Class").

344.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

345.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

346.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

347.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

348.     Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by the Insurance Commissioner, and (2) one other automobile industry source that has been approved for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

349.      Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

350.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 31

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

351.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

352.     This Count is brought on behalf of the Connecticut Subclass (for purposes of this Count, the "Class").

353.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

354. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

355. Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

356. Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by the Insurance Commissioner, and (2) one other automobile industry source that has been approved for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

357. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

      a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

      b. Failing to pay insureds the ACV of their total-loss vehicles;

      c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-

loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

358.  Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 32

## UNJUST ENRICHMENT

359.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

360.  This Count is brought on behalf of the Connecticut Subclass (for purposes of this Count, the "Class").

361.  Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

362.  Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

363.  Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

364. Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by the Insurance Commissioner, and (2) one other automobile industry source that has been approved for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

365. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Connecticut law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

366. Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

367. Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 33

## DECLARATORY JUDGMENT

368. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

369. This Count is brought on behalf of the Connecticut Subclass (for purposes of this Count, the "Class").

370.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

371.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

372.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

373.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**G.     District of Colombia**

**COUNT 34**

**VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT**
**D.C. CODE § 28-3901, *et seq.***

374.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

375. This Count is brought on behalf of the District of Columbia Subclass (for purposes of this Count, the "Class").

376. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of D.C. CODE § 28-3901(a)(1).

377. Plaintiffs and the Class members are "consumers" within the meaning of D.C. CODE § 28-3901(1)(2).

378. Defendant was and is engaged in "trade practices" within the meaning of D.C. CODE § 28-3901.

379. The District of Columbia Consumer Protection Procedures Act ("D.C. CPPA") makes unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. D.C. CODE § 28-3901, *et seq*.

380. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the D.C. CPPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

381. Defendant also failed to comply with District of Columbia law by "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to the claim at issue"; "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to coverage at issue"; not attempting "in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear"; "[a]ttempt[ing] to settle a claim for less than the amount to which a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of

an application or policy"; and "[m]ak[ing] false or fraudulent statements or representations on, or relative to an application for, a policy, for the purpose of obtaining a fee, commission, money, or other benefit from a provider or individual person." D.C. CODE § 31–2231.17.

382.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with District of Columbia law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the D.C. CPPA.

383.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

384.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

385.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

386.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

387.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the D.C. CPPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

388.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the D.C. CPPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

389.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

390.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

391.     Defendant's violations of the D.C. CPPA present a continuing risk of future harm to Plaintiffs and the Class members.

392.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the D.C. CPPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the D.C. CPPA.

## COUNT 35

## BREACH OF CONTRACT

393.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

394.     This Count is brought on behalf of the District of Columbia Subclass (for purposes of this Count, the "Class").

395.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

396.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

397.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

398.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

399.     Defendant also failed to comply with District of Columbia law by "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to the claim at issue"; "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to coverage at issue"; not attempting "in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear"; "[a]ttempt[ing] to settle a claim for less than the amount to which a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of an application or policy"; and "[m]ak[ing] false or fraudulent statements or representations on, or relative to an application for, a policy, for the purpose of obtaining a fee, commission, money, or other benefit from a provider or individual person." D.C. CODE § 31–2231.17.

400.     Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

401.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 18

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

402.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

403.     This Count is brought on behalf of the District of Columbia Subclass (for purposes of this Count, the "Class").

404.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

405.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

406.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

407.     Defendant also failed to comply with District of Columbia law by "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to the claim at issue"; "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to coverage at issue"; not attempting "in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear"; "[a]ttempt[ing] to settle a claim for less than the amount to which a reasonable person would believe the insured or beneficiary

91

was entitled by reference to written or printed advertising material accompanying or made part of an application or policy"; and "[m]ak[ing] false or fraudulent statements or representations on, or relative to an application for, a policy, for the purpose of obtaining a fee, commission, money, or other benefit from a provider or individual person." D.C. CODE § 31–2231.17.

408.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

> a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
>
> b.   Failing to pay insureds the ACV of their total-loss vehicles;
>
> c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;
>
> d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

409.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 37

## UNJUST ENRICHMENT

410.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

411.    This Count is brought on behalf of the District of Columbia Subclass (for purposes of this Count, the "Class").

412. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

413. Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

414. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

415. Defendant also failed to comply with District of Columbia law by "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to the claim at issue"; "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to coverage at issue"; not attempting "in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear"; "[a]ttempt[ing] to settle a claim for less than the amount to which a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of an application or policy"; and "[m]ak[ing] false or fraudulent statements or representations on, or relative to an application for, a policy, for the purpose of obtaining a fee, commission, money, or other benefit from a provider or individual person." D.C. CODE § 31–2231.17.

416. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with District of

Columbia law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

417.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

418.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 38

## DECLARATORY JUDGMENT

419.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

420.    This Count is brought on behalf of the District of Columbia Subclass (for purposes of this Count, the "Class").

421.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

422.    Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

423.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

424.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

### H.    Delaware

### COUNT 39

### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
6 Del. Code §§ 2513, *et seq.*

425.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

426.    This Count is brought on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

427.    Defendant is a "person" as engaged in the sale of "merchandise" as defined by 6 Del. Code § 2511(6), (7).

428.    The Delaware Consumer Fraud Act ("Delaware CFA"), 6 Del. Code §§ 2513, *et seq.*, prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is an unlawful practice.

429.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Delaware CFA by knowingly and intentionally concealing and failing to disclose

material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

430.    Defendant also failed to comply with  Delaware law, which, when insurance companies are determining "fair market value" of insured's vehicles, requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

431.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and Defendant's failure to comply with Delaware law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Delaware CFA.

432.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

433.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

434. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

435. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

436. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Delaware CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

437. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Delaware CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary

"typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

438.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

439.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

440.    Defendant's violations of the Delaware CFA present a continuing risk of future harm to Plaintiffs and the Class members.

441.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Delaware CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

## COUNT 20

## BREACH OF CONTRACT

442.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

443.    This Count is brought on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

444.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

445.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

446.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

447.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

448.     Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

449.     Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

450.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 21

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

451.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

452.     This Count is brought on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

453.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

454.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

455.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the

parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

456.     Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

457.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.  Failing to pay insureds the ACV of their total-loss vehicles;

c.  Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

458.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 42

### UNJUST ENRICHMENT

459.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

460.    This Count is brought on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

461.    Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

462.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

463.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

464.    Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for

comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

465.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Delaware law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

466.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

467.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 23

## DECLARATORY JUDGMENT

468.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

469.    This Count is brought on behalf of the Delaware Subclass (for purposes of this Count, the "Class").

470.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

471.    Plaintiffs, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss

claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

472.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

473.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

## I.    Florida

### COUNT 44

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. §§ 501.201, *et seq.*

474.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

475.    This Count is brought on behalf of the Florida Subclass (for purposes of this Count, the "Class").

476.    Plaintiffs and the Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

477.    Defendant was and is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

478.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq., prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

479.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

480.    Defendant also failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

481.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Florida law, as detailed above, Defendant

engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices prohibited by the FDUTPA.

482. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

483. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

484. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

485. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

486. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the FDUTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts

concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

487.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

488.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payment to insureds.

489.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

490.    Defendant's violations of the FDUTPA present a continuing risk of future harm to Plaintiffs and the Class members.

491.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the FDUTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

## COUNT 45

## BREACH OF CONTRACT

492.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

493.     This Count is brought on behalf of the Florida Subclass (for purposes of this Count, the "Class").

494.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

495.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

496.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

497.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

498.     Defendant failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable

motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

499.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

500.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 26

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

501.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

502.    This Count is brought on behalf of the Florida Subclass (for purposes of this Count, the "Class").

503.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each

other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

504.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

505.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

506.    Defendant also failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The

retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

507.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

     a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

     b.   Failing to pay insureds the ACV of their total-loss vehicles;

     c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

     d.   Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

508.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 47

## UNJUST ENRICHMENT

509.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

510.     This Count is brought on behalf of the Florida Subclass (for purposes of this Count, the "Class").

111

511. Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

512. Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

513. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

514. Defendant also failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

515. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Florida law,

112

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

516.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

517.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 48**

**DECLARATORY JUDGMENT**

518.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

519.     This Count is brought on behalf of the Florida Subclass (for purposes of this Count, the "Class").

520.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

521.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

522. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

523. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**J. Georgia**

**COUNT 49**

**BREACH OF CONTRACT**

524. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

525. This Count is brought on behalf of the Georgia Subclass (for purposes of this Count, the "Class").

526. Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

527. Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

528. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

529. Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

530.     Defendant also failed to comply with Georgia law, which requires insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area…"; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area…"; "3. One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area… when the cost of comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]"; "4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

531.     Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

532.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 50

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

533.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

534.     This Count is brought on behalf of the Georgia Subclass (for purposes of this Count, the "Class").

535.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

536.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

537.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the

parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

538. Defendant also failed to comply with Georgia law, which requires insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area..."; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area..."; "3. One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area... when the cost of comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]"; "4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

539. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

      a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.   Failing to pay insureds the ACV of their total-loss vehicles;

c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.   Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

540.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 31

## UNJUST ENRICHMENT

541.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

542.   This Count is brought on behalf of the Georgia Subclass (for purposes of this Count, the "Class").

543.   Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

544.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

545.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's

application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

546.    Defendant also failed to comply with Georgia law, which requires insurers to use one of the following four methods to determine "the actual cost less any deductible provided in the policy, to purchase a comparable automobile[:]" "1. The cost of two or more comparable automobiles in the local market area…"; "2. "The cost of two (2) or more comparable automobiles in areas proximate to the local market area…"; "3. One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area… when the cost of comparable automobiles are not available in subparagraphs (a)1. and 2. Above[]"; "4. Any source for determining statistically valid fair market values that meet all of the following criteria which may be in electronic or printed format: (i) The source shall give primary consideration to the values of vehicles in the local market area, or may consider data on vehicles outside the area when comparable vehicles have not been available for data collection in the local market area. (ii) The source's database shall produce values for at least 85% of all makes and models for at least the last fifteen (15) model years, taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity." Georgia Rules and Regulations Rule 120-2-52-.06.

547.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Georgia law,

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

548.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

549.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 52**

**DECLARATORY JUDGMENT**

550.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

551.     This Count is brought on behalf of the Georgia Subclass (for purposes of this Count, the "Class").

552.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

553.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

554.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

555.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**K.     Hawaii**

**COUNT 53**

**VIOLATION OF THE HAWAII UNIFORM DECEPTIVE TRADE PRACTICE ACT
HAW. REV. STAT. § 480-1, *et seq.***

556.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

557.     This Count is brought on behalf of the Hawaii Subclass (for purposes of this Count, the "Class").

558.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of HAW. REV. STAT. § 480-1.

559.     Plaintiffs and the Class members are "consumers" within the meaning of HAW. REV. STAT. § 480-1.

560.     The Hawaii Uniform Deceptive Trade Practice Act ("Hawaii UDAP") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." HAW. REV. STAT. § 480-2.

561.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Hawaii UDAP by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to

comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

562.    Defendant also failed to comply with Hawaii law, which provides as follows: (1) "The cash settlement shall be based upon the retail value of the motor vehicle as determined from a source or sources which are reflective of the market value of the total loss vehicle"; (2) "The use of dealer quotations (when the vehicle is available at the quoting dealer's lot) and newspaper advertisements may be used in lieu of the source generally used by the insurer, if the claim file reflects that the vehicle was not quoted in the source generally used by the insurer or the source was not reflective of the market value. Dealer quotations and newspaper advertisements shall not be considered sole sources reflective of market values. When dealer quotations are used, the vehicle identification number shall be contained in the insured's claim file"; and (3) "Estimates from at least three licensed dealers may be used when vehicles are not quoted in the source usually used by the insurer and are not available for replacement. Dealer estimates shall take into consideration the condition of the insured vehicle prior to the loss." HAW. REV. STAT. § 431:10C-311.

563.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Hawaii law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Hawaii UDAP.

564.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

565.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

566.     The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

567.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

568.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Hawaii UDAP in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

569.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the Hawaii UDAP because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

570.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

571.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

572.     Defendant's violations of the Hawaii UDAP present a continuing risk of future harm to Plaintiffs and the Class members.

573.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Hawaii UDAP and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Hawaii UDAP.

## COUNT 54

## BREACH OF CONTRACT

574.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

575.    This Count is brought on behalf of the Hawaii Subclass (for purposes of this Count, the "Class").

576.    Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

577.    Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

578.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

579.    Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

580.    Defendant also failed to comply with Hawaii law, which provides as follows: (1) "The cash settlement shall be based upon the retail value of the motor vehicle as determined from a source or sources which are reflective of the market value of the total loss vehicle"; (2) "The use of dealer quotations (when the vehicle is available at the quoting dealer's lot) and newspaper advertisements may be used in lieu of the source generally used by the insurer, if the claim file reflects that the vehicle was not quoted in the source generally used by the insurer or the source

was not reflective of the market value. Dealer quotations and newspaper advertisements shall not be considered sole sources reflective of market values. When dealer quotations are used, the vehicle identification number shall be contained in the insured's claim file"; and (3) "Estimates from at least three licensed dealers may be used when vehicles are not quoted in the source usually used by the insurer and are not available for replacement. Dealer estimates shall take into consideration the condition of the insured vehicle prior to the loss." HAW. REV. STAT. § 431:10C-311.

581.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

582.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 23

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

583.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

584.    This Count is brought on behalf of the Hawaii Subclass (for purposes of this Count, the "Class").

585.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

586. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

587. Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

588. Defendant also failed to comply with Hawaii law, which provides as follows: (1) "The cash settlement shall be based upon the retail value of the motor vehicle as determined from a source or sources which are reflective of the market value of the total loss vehicle"; (2) "The use of dealer quotations (when the vehicle is available at the quoting dealer's lot) and newspaper advertisements may be used in lieu of the source generally used by the insurer, if the claim file reflects that the vehicle was not quoted in the source generally used by the insurer or the source was not reflective of the market value. Dealer quotations and newspaper advertisements shall not be considered sole sources reflective of market values. When dealer quotations are used, the vehicle identification number shall be contained in the insured's claim file"; and (3) "Estimates from at least three licensed dealers may be used when vehicles are not quoted in the source usually used by the insurer and are not available for replacement. Dealer estimates shall take into

consideration the condition of the insured vehicle prior to the loss." HAW. REV. STAT. §
431:10C-311.

589.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter
alia*:

      a.  Intentionally applying "typical negotiation" adjustments to undervalue
comparable vehicles, and, in turn, insureds' total-loss vehicles;

      b.  Failing to pay insureds the ACV of their total-loss vehicles;

      c.  Interpreting the terms and conditions of its insurance policies in an
unreasonable manner solely in an effort to understate the value of total-
loss vehicles and avoid paying insureds the ACV on their total-loss
claims;

      d.  Inventing spurious grounds for undervaluing total-loss claims that are
hidden, not specific in dollar amount, not adequately explained, and
unreasonable.

590.    Defendant's breaches of the covenant of good faith and fair dealing have caused
damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the
amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical
negotiation adjustment.

## COUNT 24

### UNJUST ENRICHMENT

591.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those
allegations made under the preceding Counts, as if fully alleged herein.

592.    This Count is brought on behalf of the Hawaii Subclass (for purposes of this Count,
the "Class").

593.    Plaintiffs plead this claim separately as well as in the alternative to their other
claims, as without such claims they would have no adequate legal remedy.

594.     Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

595.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

596.     Defendant also failed to comply with Hawaii law, which provides as follows: (1) "The cash settlement shall be based upon the retail value of the motor vehicle as determined from a source or sources which are reflective of the market value of the total loss vehicle"; (2) "The use of dealer quotations (when the vehicle is available at the quoting dealer's lot) and newspaper advertisements may be used in lieu of the source generally used by the insurer, if the claim file reflects that the vehicle was not quoted in the source generally used by the insurer or the source was not reflective of the market value. Dealer quotations and newspaper advertisements shall not be considered sole sources reflective of market values. When dealer quotations are used, the vehicle identification number shall be contained in the insured's claim file"; and (3) "Estimates from at least three licensed dealers may be used when vehicles are not quoted in the source usually used by the insurer and are not available for replacement. Dealer estimates shall take into consideration the condition of the insured vehicle prior to the loss." HAW. REV. STAT. § 431:10C-311.

597.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Hawaii law,

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

598.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

599.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 57

## DECLARATORY JUDGMENT

600.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

601.     This Count is brought on behalf of the Hawaii Subclass (for purposes of this Count, the "Class").

602.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

603.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

604.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

605.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**L.     Idaho**

**COUNT 58**

**BREACH OF CONTRACT**

606.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

607.     This Count is brought on behalf of the Idaho Subclass (for purposes of this Count, the "Class").

608.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

609.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

610.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

611.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

612.     Defendant also failed to comply with Idaho law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application." IDAHO CODE § 41-1329.

613.     Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

614.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 59

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

615.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

616.     This Count is brought on behalf of the Idaho Subclass (for purposes of this Count, the "Class").

617.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each

other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

618.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

619.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

620.    Defendant also failed to comply with Idaho law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application." IDAHO CODE § 41-1329.

621.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b. Failing to pay insureds the ACV of their total-loss vehicles;

c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

622.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 60

## UNJUST ENRICHMENT

623.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

624.    This Count is brought on behalf of the Idaho Subclass (for purposes of this Count, the "Class").

625.    Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

626.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

627.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's

application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

628.    Defendant also failed to comply with Idaho law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application." IDAHO CODE § 41-1329.

629.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Idaho law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

630.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

631.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 30

## DECLARATORY JUDGMENT

632.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

135

633. This Count is brought on behalf of the Idaho Subclass (for purposes of this Count, the "Class").

634. A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

635. Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

636. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

637. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**M.     Illinois**

**COUNT 33**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD
AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS, 505/1,** *et seq.*

638. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

136

639.    This Count is brought on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

640.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of 815 ILCS 505/l(c).

641.    Plaintiffs and the Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

642.    Defendant was and is engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

643.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

644.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

645.    Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at least 2 currently available vehicles from licensed dealers

in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

646. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Illinois law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFA.

647. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

648. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

649. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

650. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had

concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

651. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Illinois CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

652. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

653. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

654. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or

would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

655.     Defendant's violations of the Illinois CFA present a continuing risk of future harm to Plaintiffs and the Class members.

656.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Illinois CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

## COUNT 63

## BREACH OF CONTRACT

657.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

658.     This Count is brought on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

659.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

660.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

661.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

662.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment"

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

663.    Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at least 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…"  Illinois Administrative Code Section 919.80(c)(2).

664.     Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

665.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 35

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

666.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

667.    This Count is brought on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

668.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

669. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

670. Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

671. Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at least 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

672. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b. Failing to pay insureds the ACV of their total-loss vehicles;

    c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

673.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 65

## UNJUST ENRICHMENT

674.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

675.    This Count is brought on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

676.    Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

677.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

678.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

679.    Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at last 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…"  Illinois Administrative Code Section 919.80(c)(2).

680.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Illinois law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

681.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

682.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 66

## DECLARATORY JUDGMENT

683.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

684.    This Count is brought on behalf of the Illinois Subclass (for purposes of this Count, the "Class").

685. A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

686. Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

687. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

688. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**N.     Indiana**

**COUNT 67**

**BREACH OF CONTRACT**

689. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

690. This Count is brought on behalf of the Indiana Subclass (for purposes of this Count, the "Class").

691. Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

692. Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

693. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

694. Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

695. Defendant also failed to comply with Indiana law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable individual would have believed the individual was entitled by reference to written or printed advertising material accompanying or made part of an application." IND. CODE § 27-4-1-4.5.

696.     Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

697.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

**COUNT 32**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

698.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

699.     This Count is brought on behalf of the Indiana Subclass (for purposes of this Count, the "Class").

700.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

701.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

702.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a

manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

703.     Defendant also failed to comply with Indiana law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable individual would have believed the individual was entitled by reference to written or printed advertising material accompanying or made part of an application." IND. CODE § 27-4-1-4.5.

704.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

  a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

  b.  Failing to pay insureds the ACV of their total-loss vehicles;

  c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

  d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

705.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 69

## UNJUST ENRICHMENT

706.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

707.    This Count is brought on behalf of the Indiana Subclass (for purposes of this Count, the "Class").

708.    Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

709.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

710.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

711.    Defendant also failed to comply with Indiana law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable individual would have believed the individual was entitled by reference to written or

printed advertising material accompanying or made part of an application." IND. CODE § 27-4-1-4.5.

712.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Indiana law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

713.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

714.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 70

## DECLARATORY JUDGMENT

715.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

716.     This Count is brought on behalf of the Indiana Subclass (for purposes of this Count, the "Class").

717.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

718.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation

of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

719.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

720.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**O.    Iowa**

**COUNT 71**

**BREACH OF CONTRACT**

721.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

722.    This Count is brought on behalf of the Iowa Subclass (for purposes of this Count, the "Class").

723.    Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

724.    Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

725.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

726.    Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

727.    Defendant also failed to comply with Iowa law, which requires insurance companies to determine the cash settlement amount based upon "(1) The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last 90 days to consumers in the local market area; or (2) The cost of two or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last 90 days to consumers when comparable automobiles are not available in the local market area; or (3) One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area when the cost of comparable automobiles is not available; or (4) Any source for determining statistically valid fair market values that meet all of the following criteria: (i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area. (ii) The source's database shall produce values for at least 85 percent of all makes and models for the last 15 model years taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured

vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to ensure statistical validity." IOWA ADMIN. CODE r.191—15.43 (507B).

728. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

729. As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

**COUNT 72**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

730. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

731. This Count is brought on behalf of the Iowa Subclass (for purposes of this Count, the "Class").

732. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

733. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

734. Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

735. Defendant also failed to comply with Iowa law, which requires insurance companies to determine the cash settlement amount based upon "(1) The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last 90 days to consumers in the local market area; or (2) The cost of two or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last 90 days to consumers when comparable automobiles are not available in the local market area; or (3) One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area when the cost of comparable automobiles is not available; or (4) Any source for determining statistically valid fair market values that meet all of the following criteria: (i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area. (ii) The source's database shall produce values for at least 85 percent of all makes and models for the last 15 model years taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to ensure statistical validity." IOWA ADMIN. CODE r.191—15.43 (507B).

736.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b.   Failing to pay insureds the ACV of their total-loss vehicles;

   c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

   d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

737.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 73

## UNJUST ENRICHMENT

738.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

739.     This Count is brought on behalf of the Iowa Subclass (for purposes of this Count, the "Class").

740.     Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

741.     Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

742. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

743. Defendant also failed to comply with Iowa law, which requires insurance companies to determine the cash settlement amount based upon "(1) The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last 90 days to consumers in the local market area; or (2) The cost of two or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last 90 days to consumers when comparable automobiles are not available in the local market area; or (3) One of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area when the cost of comparable automobiles is not available; or (4) Any source for determining statistically valid fair market values that meet all of the following criteria: (i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area. (ii) The source's database shall produce values for at least 85 percent of all makes and models for the last 15 model years taking into account the values of all major options for such vehicles. (iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to ensure statistical validity." IOWA ADMIN. CODE r. 191—15.43 (507B).

744. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically

Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Iowa law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

745.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

746.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 74

## DECLARATORY JUDGMENT

747.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

748.    This Count is brought on behalf of the Iowa Subclass (for purposes of this Count, the "Class").

749.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

750.    Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective

of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

751.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

752.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**P.     Kansas**

**COUNT 75**

**BREACH OF CONTRACT**

753.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

754.     This Count is brought on behalf of the Kansas Subclass (for purposes of this Count, the "Class").

755.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

756.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

757.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

758.    Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

759.    Defendant also failed to comply with Kansas law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine "the actual cost, less any deductible provided in the policy, to purchase a comparable automobile" using "any source or method for determining statistically valid fair market value that meets both of the following criteria:" "(A) The source or method's database, including nationally recognized automobile evaluation publications, shall provide values for at least eighty-five percent (85%) of all makes and models of private passenger vehicles for the last fifteen (15) model years taking into account the values for all major options for such vehicles; and" "(B) the source, method, or publication shall provide fair market values for a comparable automobile based on current data available for the local market area as defined in subsection (j)(2)[,]" and provides that "When an automobile total loss is settled on a basis which deviates from the methods and criteria described in subsections (a)(1) and (a)(2)(A) and (B) of this section, the deviation must be supported by documentation giving the particulars of the automobile condition and the basis for the deviation. Any deviations from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the claimant." Kan. Admin. Regs. § 40-1-34.

760.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

761.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 76

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

762.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

763.    This Count is brought on behalf of the Kansas Subclass (for purposes of this Count, the "Class").

764.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

765.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

766.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the

parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

767.    Defendant also failed to comply with Kansas law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine "the actual cost, less any deductible provided in the policy, to purchase a comparable automobile" using "any source or method for determining statistically valid fair market value that meets both of the following criteria:" "(A) The source or method's database, including nationally recognized automobile evaluation publications, shall provide values for at least eighty-five percent (85%) of all makes and models of private passenger vehicles for the last fifteen (15) model years taking into account the values for all major options for such vehicles; and" "(B) the source, method, or publication shall provide fair market values for a comparable automobile based on current data available for the local market area as defined in subsection (j)(2)[,]" and provides that "When an automobile total loss is settled on a basis which deviates from the methods and criteria described in subsections (a)(1) and (a)(2)(A) and (B) of this section, the deviation must be supported by documentation giving the particulars of the automobile condition and the basis for the deviation. Any deviations from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the claimant." Kan. Admin. Regs. § 40-1-34.

768.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b.   Failing to pay insureds the ACV of their total-loss vehicles;

c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

769.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 77

## UNJUST ENRICHMENT

770.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

771.    This Count is brought on behalf of the Kansas Subclass (for purposes of this Count, the "Class").

772.    Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

773.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

774.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

775. Defendant also failed to comply with Kansas law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine "the actual cost, less any deductible provided in the policy, to purchase a comparable automobile" using "any source or method for determining statistically valid fair market value that meets both of the following criteria:" "(A) The source or method's database, including nationally recognized automobile evaluation publications, shall provide values for at least eighty-five percent (85%) of all makes and models of private passenger vehicles for the last fifteen (15) model years taking into account the values for all major options for such vehicles; and" "(B) the source, method, or publication shall provide fair market values for a comparable automobile based on current data available for the local market area as defined in subsection (j)(2)[,]" and provides that "When an automobile total loss is settled on a basis which deviates from the methods and criteria described in subsections (a)(1) and (a)(2)(A) and (B) of this section, the deviation must be supported by documentation giving the particulars of the automobile condition and the basis for the deviation. Any deviations from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the claimant." Kan. Admin. Regs. § 40-1-34.

776. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Kansas law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

777.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

778.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 78

## DECLARATORY JUDGMENT

779.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

780.    This Count is brought on behalf of the Kansas Subclass (for purposes of this Count, the "Class").

781.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

782.    Plaintiffs, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

783.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

784.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**Q.    Kentucky**

**COUNT 79**

**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
**KY. REV. STAT. § 367.110, *et seq.***

785.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

786.    This Count is brought on behalf of the Kentucky Subclass (for purposes of this Count, the "Class").

787.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of KY. REV. STAT. § 367.110(1).

788.    Defendant was and is engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.220(1).

789.    The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce…" KY. REV. STAT. § 367.170(1).

790.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to

comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

791.    Defendant also failed to comply with Kentucky law, which requires insurance companies to determine the cash settlement amount based upon "(1) The cost of a comparable motor vehicle in the local market area if a comparable motor vehicle is available in the local market area; (2) If a comparable motor vehicle is not available in the local market area, one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified and licensed dealers which engage in the buying and selling of comparable motor vehicles in the ordinary course of their business located within the local market area; or (3) Any source for determining statistically valid fair market values including nationally-recognized automobile evaluation publications that meet all of the following criteria: a. The source shall give consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area; b. The source's data base shall produce values for at least eighty-five (85) percent of all makes and models for the last eight (8) model years taking into account the values of all major options for these vehicles; c. The source shall produce fair market values based on current data available from the local market area where the insured vehicle was principally garaged or a necessary expansion of parameters such as travel time and area to assure statistical validity." 806 KY. ADMIN. REGS. 12:095 SEC. 7.

792.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Kentucky law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

793. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

794. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

795. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

796. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

797. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Kentucky CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

167

facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

798. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

799. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

800. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

801. Defendant's violations of the Kentucky CPA present a continuing risk of future harm to Plaintiffs and the Class members.

802. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Kentucky CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

## COUNT 80

## BREACH OF CONTRACT

803.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

804.     This Count is brought on behalf of the Kentucky Subclass (for purposes of this Count, the "Class").

805.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

806.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

807.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

808.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

809.     Defendant also failed to comply with Kentucky law, which requires insurance companies to determine the cash settlement amount based upon "(1) The cost of a comparable motor vehicle in the local market area if a comparable motor vehicle is available in the local market area; (2) If a comparable motor vehicle is not available in the local market area, one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified and licensed dealers which engage in the buying and selling of comparable motor vehicles in the ordinary course of

their business located within the local market area; or (3) Any source for determining statistically valid fair market values including nationally-recognized automobile evaluation publications that meet all of the following criteria: a. The source shall give consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area; b. The source's data base shall produce values for at least eighty-five (85) percent of all makes and models for the last eight (8) model years taking into account the values of all major options for these vehicles; c. The source shall produce fair market values based on current data available from the local market area where the insured vehicle was principally garaged or a necessary expansion of parameters such as travel time and area to assure statistical validity." 806 KY. ADMIN. REGS. 12:095 SEC. 7.

810.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

811.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 81

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

812.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

813.    This Count is brought on behalf of the Kentucky Subclass (for purposes of this Count, the "Class").

814.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each

other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

815. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

816. Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

817. Defendant also failed to comply with Kentucky law, which requires insurance companies to determine the cash settlement amount based upon "(1) The cost of a comparable motor vehicle in the local market area if a comparable motor vehicle is available in the local market area; (2) If a comparable motor vehicle is not available in the local market area, one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified and licensed dealers which engage in the buying and selling of comparable motor vehicles in the ordinary course of their business located within the local market area; or (3) Any source for determining statistically valid fair market values including nationally-recognized automobile evaluation publications that meet all of the following criteria: a. The source shall give consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area; b. The source's data

base shall produce values for at least eighty-five (85) percent of all makes and models for the last eight (8) model years taking into account the values of all major options for these vehicles; c. The source shall produce fair market values based on current data available from the local market area where the insured vehicle was principally garaged or a necessary expansion of parameters such as travel time and area to assure statistical validity." 806 KY. ADMIN. REGS. 12:095 SEC. 7.

818.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Failing to pay insureds the ACV of their total-loss vehicles;

    c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

819.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 82

## UNJUST ENRICHMENT

820.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

821. This Count is brought on behalf of the Kentucky Subclass (for purposes of this Count, the "Class").

822. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

823. Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

824. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

825. Defendant also failed to comply with Kentucky law, which requires insurance companies to determine the cash settlement amount based upon "(1) The cost of a comparable motor vehicle in the local market area if a comparable motor vehicle is available in the local market area; (2) If a comparable motor vehicle is not available in the local market area, one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified and licensed dealers which engage in the buying and selling of comparable motor vehicles in the ordinary course of their business located within the local market area; or (3) Any source for determining statistically valid fair market values including nationally-recognized automobile evaluation publications that meet all of the following criteria: a. The source shall give consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area; b. The source's data base shall produce values for at least eighty-five (85) percent of all makes and models for the last eight (8) model years taking into account the values of all major options for these vehicles; c. The source shall produce fair market values based on current data available from the local market area

where the insured vehicle was principally garaged or a necessary expansion of parameters such as travel time and area to assure statistical validity." 806 KY. ADMIN. REGS. 12:095 SEC. 7.

826.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Kentucky law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

827.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

828.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 83

## DECLARATORY JUDGMENT

829.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

830.    This Count is brought on behalf of the Kentucky Subclass (for purposes of this Count, the "Class").

831.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

832.    Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation

of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

833.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

834.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

### R.    Louisiana

### COUNT 84

### BREACH OF CONTRACT

835.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

836.    This Count is brought on behalf of the Louisiana Subclass (for purposes of this Count, the "Class").

837.    Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

838.    Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

839.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

840.    Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

841.    Defendant also failed to comply with Louisiana law, which requires insurers making a cash settlement for a total loss on the basis of actual cash value to determine the "actual cost to purchase comparable motor vehicle… by using one of the following: (a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources… b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public… [or] (c) A qualified expert appraiser selected and agreed upon by the insured and insurer." Louisiana Laws RS 22:1892.

842.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

843.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

**COUNT 85**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

844.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

845.     This Count is brought on behalf of the Louisiana Subclass (for purposes of this Count, the "Class").

846.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

847.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

848.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

849.     Defendant also failed to comply with Louisiana law, which requires insurers making a cash settlement for a total loss on the basis of actual cash value to determine the "actual cost to purchase comparable motor vehicle... by using one of the following: (a) A fair market value

177

survey conducted using qualified retail automobile dealers in the local market area as resources...
b) The retail cost as determined from a generally recognized used motor vehicle industry source;
such as, an electronic database, if the valuation documents generated by the database are provided
to the first-party claimant, or a guidebook that is available to the general public... [or] (c) A
qualified expert appraiser selected and agreed upon by the insured and insurer." Louisiana Laws
RS 22:1892.

850.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter
alia*:

a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable
    vehicles, and, in turn, insureds' total-loss vehicles;

b.  Failing to pay insureds the ACV of their total-loss vehicles;

c.  Interpreting the terms and conditions of their insurance policies in an unreasonable
    manner solely in an effort to understate the value of total- loss vehicles and avoid
    paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not
    specific in dollar amount, not adequately explained, and unreasonable.

851.    Defendant's breaches of the covenant of good faith and fair dealing have caused
damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the
amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical
negotiation adjustment.

## COUNT 86

### UNJUST ENRICHMENT

852.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those
allegations made under the preceding Counts, as if fully alleged herein.

853.    This Count is brought on behalf of the Louisiana Subclass (for purposes of this Count, the "Class").

854.    Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

855.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

856.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

857.    Defendant also failed to comply with Louisiana law, which requires insurers making a cash settlement for a total loss on the basis of actual cash value to determine the "actual cost to purchase comparable motor vehicle…by using one of the following: (a) A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources…. b) The retail cost as determined from a generally recognized used motor vehicle industry source; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public…. [or] (c) A qualified expert appraiser selected and agreed upon by the insured and insurer."  Louisiana Laws RS 22:1892.

858.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Louisiana law,

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

859.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

860.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 87**

**DECLARATORY JUDGMENT**

861.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

862.    This Count is brought on behalf of the Louisiana Subclass (for purposes of this Count, the "Class").

863.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

864.    Plaintiffs, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

865.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

866.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**S.     Maine**

**COUNT 88**

**VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT**
**ME. REV. STAT. ANN.  5, § 205-A, *et seq.***

867.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

868.     This Count is brought on behalf of the Maine Subclass (for purposes of this Count, the "Class").

869.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of ME. REV. STAT. ANN.  5, § 206(2).

870.     Defendant was and is engaged in "trade" or "commerce" within the meaning of ME. REV. STAT. ANN.  5, § 206(2).

871.     The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . .." ME. REV. STAT. ANN.  5, § 207.

872.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Maine UTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to

comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

873.    Defendant also failed to comply with Maine law, which requires insurance companies to determine cash settlements based upon the "average of at least 2 industry standard valuation manuals current at the date of loss and adjusted to reflect: (1) The cost of a comparable motor vehicle in the local market area when one is available in that area if a market survey locates such a motor vehicle: or (2) If a market survey fails to locate such a motor vehicle: (a) The price for which a comparable motor vehicle was recently sold by a qualified dealer in the local market area; or (b) The average of quotations obtained by the insurer from at least 3 qualified dealers located within the local market area." ME. REV. STAT. ANN.  24-A § 2925.

874.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Maine law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maine UTPA.

875.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

876.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

877.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

878.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

879.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Maine UTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

880.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maine UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

881.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

882.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

883.     Defendant's violations of the Maine UTPA present a continuing risk of future harm to Plaintiffs and the Class members.

884.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Maine UTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maine UTPA.

## COUNT 89

## BREACH OF CONTRACT

885.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

886.     This Count is brought on behalf of the Maine Subclass (for purposes of this Count, the "Class").

887.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

184

888.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

889.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

890.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

891.     Defendant also failed to comply with Maine law, which requires insurance companies to determine cash settlements based upon the "average of at least 2 industry standard valuation manuals current at the date of loss and adjusted to reflect: (1) The cost of a comparable motor vehicle in the local market area when one is available in that area if a market survey locates such a motor vehicle: or (2) If a market survey fails to locate such a motor vehicle: (a) The price for which a comparable motor vehicle was recently sold by a qualified dealer in the local market area; or (b) The average of quotations obtained by the insurer from at least 3 qualified dealers located within the local market area." ME. REV. STAT. ANN.  24-A § 2925.

892.      Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

893.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 90

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

894.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

895.    This Count is brought on behalf of the Maine Subclass (for purposes of this Count, the "Class").

896.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

897.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

898.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

899.     Defendant also failed to comply with Maine law, which requires insurance companies to determine cash settlements based upon the "average of at least 2 industry standard valuation manuals current at the date of loss and adjusted to reflect: (1) The cost of a comparable motor vehicle in the local market area when one is available in that area if a market survey locates such a motor vehicle: or (2) If a market survey fails to locate such a motor vehicle: (a) The price for which a comparable motor vehicle was recently sold by a qualified dealer in the local market area; or (b) The average of quotations obtained by the insurer from at least 3 qualified dealers located within the local market area." ME. REV. STAT. ANN.  24-A § 2925.

900.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

a.     Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.     Failing to pay insureds the ACV of their total-loss vehicles;

c.     Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.     Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

901.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 91

## UNJUST ENRICHMENT

902.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

903.     This Count is brought on behalf of the Maine Subclass (for purposes of this Count, the "Class").

904.     Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

905.     Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

906.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

907.     Defendant also failed to comply with Maine law, which requires insurance companies to determine cash settlements based upon the "average of at least 2 industry standard valuation manuals current at the date of loss and adjusted to reflect: (1) The cost of a comparable motor vehicle in the local market area when one is available in that area if a market survey locates such a motor vehicle: or (2) If a market survey fails to locate such a motor vehicle: (a) The price for which a comparable motor vehicle was recently sold by a qualified dealer in the local market area; or (b) The average of quotations obtained by the insurer from at least 3 qualified dealers located within the local market area." ME. REV. STAT. ANN.  24-A § 2925.

908.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically

Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Maine law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

909.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

910.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 48

## DECLARATORY JUDGMENT

911.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

912.     This Count is brought on behalf of the Maine Subclass (for purposes of this Count, the "Class").

913.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

914.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective

of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

915.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

916.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**T.    Maryland**

**COUNT 93**

**BREACH OF CONTRACT**

917.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

918.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

919.    This Count is brought on behalf of the Maryland Subclass (for purposes of this Count, the "Class").

920.    Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

921.    Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

922.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

923.    Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

924.    Defendant also failed to comply with Maryland law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to provide a minimum offer based on "[t[he retail value for a substantially similar motor vehicle from a nationally recognized valuation manual or from a computerized data base that produces statistically valid fair market values for a substantially similar vehicle." Md. Code Regs. 31.15.12.04(A)(1). The settlement offer must include "a detailed explanation of the insurer's calculation of the motor vehicle's total loss value, including the calculation of any value added to the motor vehicle by options." Md. Code Regs. 31.15.12.05(A)(2)(c).

925.    Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

926.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 94

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

927.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

928.    This Count is brought on behalf of the Maryland Subclass (for purposes of this Count, the "Class").

929.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

930.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

931.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

932.    Defendant also failed to comply with Maryland law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to provide a minimum offer based on "[t[he retail value for a substantially similar motor vehicle from a

nationally recognized valuation manual or from a computerized data base that produces statistically valid fair market values for a substantially similar vehicle." Md. Code Regs. 31.15.12.04(A)(1). The settlement offer must include "a detailed explanation of the insurer's calculation of the motor vehicle's total loss value, including the calculation of any value added to the motor vehicle by options." Md. Code Regs. 31.15.12.05(A)(2)(c).

933.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.    Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.    Failing to pay insureds the ACV of their total-loss vehicles;

    c.    Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.    Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable

934.    Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 95

## UNJUST ENRICHMENT

935.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

936. This Count is brought on behalf of the Maryland Subclass (for purposes of this Count, the "Class").

937. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

938. Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

939. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

940. Defendant also failed to comply with Maryland law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to provide a minimum offer based on "[t[he retail value for a substantially similar motor vehicle from a nationally recognized valuation manual or from a computerized data base that produces statistically valid fair market values for a substantially similar vehicle." Md. Code Regs. 31.15.12.04(A)(1). The settlement offer must include "a detailed explanation of the insurer's calculation of the motor vehicle's total loss value, including the calculation of any value added to the motor vehicle by options." Md. Code Regs. 31.15.12.05(A)(2)(c).

941. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Maryland law,

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

942.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

943.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

COUNT 96

DECLARATORY JUDGMENT

944.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

945.     This Count is brought on behalf of the Maryland Subclass (for purposes of this Count, the "Class").

946.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

947.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

948.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

949.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**U.     Michigan**

**COUNT 97**

**BREACH OF CONTRACT**

950.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

951.     This Count is brought on behalf of the Michigan Subclass (for purposes of this Count, the "Class").

952.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

953.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

954.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

955.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

956.     Defendant also failed to comply with Michigan law, which requires insurance companies, when making cash settlements, to determine "actual cash value" by "an objective vehicle evaluation using local market resources such as dealers or want ads or by an independent vehicle evaluation or vehicle appraisal service or by a current issue of a nationally recognized used vehicle guide for financial institution appraisal purposes in this state." MICH. COMP. LAWS§ 257.217c.

957.     Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

958.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 98

## UNJUST ENRICHMENT

959.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

960.     This Count is brought on behalf of the Michigan Subclass (for purposes of this Count, the "Class").

961.     Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

962.     Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

963. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

964. Defendant also failed to comply with Michigan law, which requires insurance companies, when making cash settlements, to determine "actual cash value" by "an objective vehicle evaluation using local market resources such as dealers or want ads or by an independent vehicle evaluation or vehicle appraisal service or by a current issue of a nationally recognized used vehicle guide for financial institution appraisal purposes in this state." MICH. COMP. LAWS§ 257.217c.

965. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Michigan law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

966. Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

967. Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 99

## DECLARATORY JUDGMENT

968. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

969.     This Count is brought on behalf of the Michigan Subclass (for purposes of this Count, the "Class").

970.     A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

971.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

972.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

973.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

## V.     Minnesota

### COUNT 100

### VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### MINN. STAT. § 325F.68, *et seq.*

974.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

975.     This Count is brought on behalf of the Minnesota Subclass (for purposes of this Count, the "Class").

976.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of MINN. STAT. § 325F.68.

977.     The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1)

978.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

979.     Defendant also failed to comply with Minnesota law, which requires insurance companies to determine the actual cost for cash settlements by "(i) the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area; or (ii) one of two or more quotations obtained from two or more qualified sources located within the local market area when a comparable automobile is not available in the local market area. The insured shall be provided the information contained in all quotations prior to settlement; or (iii) any settlement or offer of settlement which deviates from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured." MINN. STAT. § 72A.201 Subd.6(b).

980. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Minnesota law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

981. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

982. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

983. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

984. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

985. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Minnesota CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

986. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

987. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

988. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

989.     Defendant's violations of the Minnesota CFA present a continuing risk of future harm to Plaintiffs and the Class members.

990.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Minnesota CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

## COUNT 101

## BREACH OF CONTRACT

991.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

992.     This Count is brought on behalf of the Minnesota Subclass (for purposes of this Count, the "Class").

993.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

994.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

995.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

996.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

997. Defendant also failed to comply with Minnesota law, which requires insurance companies to determine the actual cost for cash settlements by "(i) the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area; or (ii) one of two or more quotations obtained from two or more qualified sources located within the local market area when a comparable automobile is not available in the local market area. The insured shall be provided the information contained in all quotations prior to settlement; or (iii) any settlement or offer of settlement which deviates from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured." MINN. STAT. § 72A.201 Subd.6(b).

998. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

999. As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 102

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1000. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1001. This Count is brought on behalf of the Minnesota Subclass (for purposes of this Count, the "Class").

1002. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each

other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1003. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1004. Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1005. Defendant also failed to comply with Minnesota law, which requires insurance companies to determine the actual cost for cash settlements by "(i) the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area; or (ii) one of two or more quotations obtained from two or more qualified sources located within the local market area when a comparable automobile is not available in the local market area. The insured shall be provided the information contained in all quotations prior to settlement; or (iii) any settlement or offer of settlement which deviates from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured." MINN. STAT. § 72A.201 Subd.6(b).

1006.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

      a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

      b.   Failing to pay insureds the ACV of their total-loss vehicles;

      c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

      d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1007.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 103

## UNJUST ENRICHMENT

1008.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1009.   This Count is brought on behalf of the Minnesota Subclass (for purposes of this Count, the "Class").

1010.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1011.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1012.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1013.   Defendant also failed to comply with Minnesota law, which requires insurance companies to determine the actual cost for cash settlements by "(i) the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area; or (ii) one of two or more quotations obtained from two or more qualified sources located within the local market area when a comparable automobile is not available in the local market area. The insured shall be provided the information contained in all quotations prior to settlement; or (iii) any settlement or offer of settlement which deviates from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured." MINN. STAT. § 72A.201 Subd.6(b).

1014.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Minnesota law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1015.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1016.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 104

## DECLARATORY JUDGMENT

1017.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1018.   This Count is brought on behalf of the Minnesota Subclass (for purposes of this Count, the "Class").

1019.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1020.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1021.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1022.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

W.     **Mississippi**

## COUNT 105

### VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT
### MISS. CODE § 75-24-3, *et seq.*

1023.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1024.   This Count is brought on behalf of the Mississippi Subclass (for purposes of this Count, the "Class").

1025.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Miss. Code § 75-24-3(a).

1026.   Defendant was and is engaged in "trade" or "commerce" within the meaning of Miss. Code § 75-24-3(b).

1027.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." Miss. Code § 75-24-5(1).

1028.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Mississippi CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1029.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Mississippi CPA.

1030.  Defendant's misrepresentations and omissions regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1031.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1032.  The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1033.  Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1034.  Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Mississippi CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1035.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Mississippi CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1036.   Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1037.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1038.   Defendant's violations of the Mississippi CPA present a continuing risk of future harm to Plaintiffs and the Class members.

1039.   Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Mississippi CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Mississippi CPA.

## COUNT 106

## BREACH OF CONTRACT

1040.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1041.  This Count is brought by Plaintiffs on behalf of the Mississippi Subclass (for purposes of this Count, the "Class").

1042.  Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1043.  Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1044.  Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1045.  Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1046.  Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1047.  As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 107

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1048.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1049.   This Count is brought on behalf of the Mississippi Subclass (for purposes of this Count, the "Class").

1050.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1051.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1052.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1053.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b. Failing to pay insureds the ACV of their total-loss vehicles;

c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1054.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 108

## UNJUST ENRICHMENT

1055.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1056.   This Count is brought on behalf of the Mississippi Subclass (for purposes of this Count, the "Class").

1057.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1058.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1059.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's

application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1060.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1061.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1062.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 109

## DECLARATORY JUDGMENT

1063.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1064.   This Count is brought on behalf of the Mississippi Subclass (for purposes of this Count, the "Class").

1065.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1066.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation

215

of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1067.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of their contracts of insurance with Plaintiffs and members of the Class.

1068.    As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

## X.    Missouri

### COUNT 110

### BREACH OF CONTRACT

1069.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1070.    This Count is brought on behalf of the Missouri Subclass (for purposes of this Count, the "Class").

1071.    Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1072.    Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1073. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1074. Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1075. Defendant also failed to comply with Missouri Law, which requires insurers to determine "fair market value" as "a. Set forth in a current edition of any nationally recognized compilation of retail values, including automated databases, or from publications commonly used by the automotive and insurance industries to establish the values of motor vehicles; b. Determined pursuant to a market survey of comparable vehicles with regard to condition and equipment; and c. Determined by an insurance company using any other procedure recognized by the insurance industry, including market surveys, that is applied by the company in a uniform manner[.]" Missouri Revised Statutes 301.010(54).

1076. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1077. As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 111

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1078. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1079. This Count is brought on behalf of the Missouri Subclass (for purposes of this Count, the "Class").

1080. Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1081. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1082. Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1083. Defendant also failed to comply with Missouri Law, which requires insurers to determine "fair market value" as "a. Set forth in a current edition of any nationally recognized compilation of retail values, including automated databases, or from publications commonly used by the automotive and insurance industries to establish the values of motor vehicles; b. Determined

pursuant to a market survey of comparable vehicles with regard to condition and equipment; and

c. Determined by an insurance company using any other procedure recognized by the insurance industry, including market surveys, that is applied by the company in a uniform manner[.]" Missouri Revised Statutes 301.010(54).

1084.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.   Failing to pay insureds the ACV of their total-loss vehicles;

    c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1085.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 112

## UNJUST ENRICHMENT

1086.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1087. This Count is brought on behalf of the Missouri Subclass (for purposes of this Count, the "Class").

1088. Plaintiffs plead this claim separately as well as in the alternative to his other claims, as without such claims she would have no adequate legal remedy.

1089. Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1090. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1091. Defendant also failed to comply with Missouri Law, which requires insurers to determine "fair market value" as "a. Set forth in a current edition of any nationally recognized compilation of retail values, including automated databases, or from publications commonly used by the automotive and insurance industries to establish the values of motor vehicles; b. Determined pursuant to a market survey of comparable vehicles with regard to condition and equipment; and c. Determined by an insurance company using any other procedure recognized by the insurance industry, including market surveys, that is applied by the company in a uniform manner[.]" Missouri Revised Statutes 301.010(54).

1092. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Missouri law,

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1093. Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1094. Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 113

## DECLARATORY JUDGMENT

1095. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1096. This Count is brought on behalf of the Missouri Subclass (for purposes of this Count, the "Class").

1097. A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1098. Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1099.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1100.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**Y.    Montana**

**COUNT 114**

**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**MONT. CODE ANN.§ 30-14-101, *et seq.***

1101.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1102.   This Count is brought on behalf of the Montana Subclass (for purposes of this Count, the "Class").

1103.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

1104.   Plaintiffs and the Class members are "consumers" within the meaning of MONT. CODE ANN. § 30-14-102(1).

1105.   Defendant was and is engaged in "trade" or "commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8).

1106.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.

1107.  As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1108.  Defendant also failed to comply with Montana law by "misrepresent[ing] pertinent facts or insurance policy provisions relating to coverages at issue"; "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "compel[ing] insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds"; and "attempt[ing] to settle a claim for less than the amount to which a reasonable person would have believed the person was entitled by reference to written or printed advertising material accompanying or made part of an application." MONT. CODE ANN. § 33-18-201.

1109.  By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Montana law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Montana CPA.

1110.  Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1111.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1112.  The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1113.  Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1114.  Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Montana CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1115.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the Montana CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions,

concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1116.   Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1117.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1118.   Defendant's violations of the Montana CPA present a continuing risk of future harm to Plaintiffs and the Class members.

1119.   Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Montana CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Montana CPA.

## COUNT 115

### BREACH OF CONTRACT

1120.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1121.   This Count is brought on behalf of the Montana Subclass (for purposes of this Count, the "Class").

1122.    Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1123.    Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1124.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1125.    Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1126.    Defendant also failed to comply with Montana law by "misrepresent[ing] pertinent facts or insurance policy provisions relating to coverages at issue"; "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "compel[ing] insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds"; and "attempt[ing] to settle a claim for less than the amount to which a reasonable person would have believed the person was entitled by reference to written or printed advertising material accompanying or made part of an application." MONT. CODE ANN. § 33-18-201.

1127.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1128.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 116

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1129.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1130.   This Count is brought on behalf of the Montana Subclass (for purposes of this Count, the "Class").

1131.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1132.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1133.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a

manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1134.  Defendant also failed to comply with Montana law by "misrepresent[ing] pertinent facts or insurance policy provisions relating to coverages at issue"; "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "compel[ing] insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds"; and "attempt[ing] to settle a claim for less than the amount to which a reasonable person would have believed the person was entitled by reference to written or printed advertising material accompanying or made part of an application." MONT. CODE ANN. § 33-18-201.

1135.  As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

> a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
>
> b.  Failing to pay insureds the ACV of their total-loss vehicles;
>
> c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;
>
> d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1136.  Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

**COUNT 117**

**UNJUST ENRICHMENT**

1137.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1138.   This Count is brought on behalf of the Montana Subclass (for purposes of this Count, the "Class").

1139.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1140.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1141.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1142.   Defendant also failed to comply with Montana law by "misrepresent[ing] pertinent facts or insurance policy provisions relating to coverages at issue"; "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "compel[ing] insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds"; and "attempt[ing] to settle a claim for less than the amount to which a reasonable person would have believed the person was entitled by reference to written or

printed advertising material accompanying or made part of an application." MONT. CODE ANN. § 33-18-201.

1143.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Montana law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1144.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1145.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 118

## DECLARATORY JUDGMENT

1146.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1147.   This Count is brought on behalf of the Montana Subclass (for purposes of this Count, the "Class").

1148.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1149.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation

of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1150. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1151. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**Z.     Nebraska**

**COUNT 119**

**VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
NEB. REV. STAT. § 59-1601,** *et seq.*

1152. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1153. This Count is brought on behalf of the Nebraska Subclass (for purposes of this Count, the "Class").

1154. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of NEB. REV. STAT. § 59-1601(1).

1155. Defendant was and is engaged in "trade" or "commerce" within the meaning of NEB. REV. STAT. § 59-1601(2).

1156.  The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602.

1157.  As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1158.  Defendant also failed to comply with Nebraska law by: "[k]nowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue"; "[f]ailing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies"; and "[c]ompelling insureds or beneficiaries to institute litigation to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in litigation brought by them." Neb. Rev. Stat. Ann § 44-1540.

1159.  By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Nebraska law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Nebraska CPA.

1160.  Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1161.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1162. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1163. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1164. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Nebraska CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1165. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Nebraska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions,

concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1166. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1167. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1168. Defendant's violations of the Nebraska CPA present a continuing risk of future harm to Plaintiffs and the Class members.

1169. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Nebraska CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nebraska CPA.

## COUNT 120

## BREACH OF CONTRACT

1170. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1171. This Count is brought on behalf of the Nebraska Subclass (for purposes of this Count, the "Class").

1172. Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1173. Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1174. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1175. Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1176. Defendant also failed to comply with Nebraska law by: "[k]nowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue"; "[f]ailing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies"; and "[c]ompelling insureds or beneficiaries to institute litigation to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in litigation brought by them." Neb. Rev. Stat. Ann § 44-1540.

1177. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1178.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 121

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1179.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1180.   This Count is brought on behalf of the Nebraska Subclass (for purposes of this Count, the "Class").

1181.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1182.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1183.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1184. Defendant also failed to comply with Nebraska law by: "[k]nowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue"; "[f]ailing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies"; and "[c]ompelling insureds or beneficiaries to institute litigation to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in litigation brought by them." Neb. Rev. Stat. Ann § 44-1540.

1185. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b. Failing to pay insureds the ACV of their total-loss vehicles;

    c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1186. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 122

## UNJUST ENRICHMENT

1187.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1188.   This Count is brought on behalf of the Nebraska Subclass (for purposes of this Count, the "Class").

1189.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1190.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1191.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1192.   Defendant also failed to comply with Nebraska law by: "[k]nowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue"; "[f]ailing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies"; and "[c]ompelling insureds or beneficiaries to institute litigation to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in litigation brought by them." Neb. Rev. Stat. Ann § 44-1540.

1193.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Nebraska law,

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1194.  Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1195.  Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 123

## DECLARATORY JUDGMENT

1196.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1197.  This Count is brought on behalf of the Nebraska Subclass (for purposes of this Count, the "Class").

1198.  A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1199.  Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1200.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1201.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

### AA.   Nevada

### COUNT 124

### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### NEV. REV. STAT. § 598.0903, *et seq.*

1202.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1203.   This Count is brought on behalf of the Nevada Subclass (for purposes of this Count, the "Class").

1204.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA") prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0903, *et seq*.

1205.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1206.   Defendant also failed to comply with Nevada law by "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue"; "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover

amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." Nev. Rev. Stat. § 686A.310(1).

1207.  By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Nevada law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Nevada DTPA.

1208.  Defendant's misrepresentations and omissions regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1209.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1210.  The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable

241

consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1211.   Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1212.   Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Nevada DTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1213.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1214.   Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's

application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1215.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1216.  Defendant's violations of the Nevada DTPA present a continuing risk of future harm to Plaintiffs and the Class members.

1217.  Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Nevada DTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

## COUNT 125

## BREACH OF CONTRACT

1218.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1219.  This Count is brought on behalf of the Nevada Subclass (for purposes of this Count, the "Class").

1220.  Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1221.  Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1222.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1223.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1224.   Defendant also failed to comply with Nevada law by "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue"; "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." Nev. Rev. Stat. § 686A.310(1).

1225.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1226.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 126

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1227.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1228.   This Count is brought on behalf of the Nevada Subclass (for purposes of this Count, the "Class").

1229.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1230.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1231.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1232.   Defendant also failed to comply with Nevada law by "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue"; "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the

245

insurer has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." Nev. Rev. Stat. § 686A.310(1).

1233.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.   Intentionally applying "typical negotiation adjustments" to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.   Failing to pay insureds the ACV of their total-loss vehicles;

    c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1234.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 127

### UNJUST ENRICHMENT

1235.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1236.   This Count is brought on behalf of the Nevada Subclass (for purposes of this Count, the "Class").

1237.   Plaintiffs pleads this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1238.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1239.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1240.   Defendant also failed to comply with Nevada law by "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue"; "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." Nev. Rev. Stat. § 686A.310(1).

1241.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Nevada law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1242.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1243.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 128

## DECLARATORY JUDGMENT

1244.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1245.   This Count is brought on behalf of the Nevada Subclass (for purposes of this Count, the "Class").

1246.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1247.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation adjustments" that are (a)

arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1248.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of their contracts of insurance with Plaintiffs and members of the Class.

1249.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**BB.    New Hampshire**

**COUNT 129**

**BREACH OF CONTRACT**

1250.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1251.   This Count is brought on behalf of the New Hampshire Subclass (for purposes of this Count, the "Class").

1252.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1253.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1254.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1255. Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1256. Defendant also failed to comply with New Hampshire law, which requires insurance companies to determine cash settlements based upon the motor vehicle's fair market value using one of the following methods: "(1) The fair market value derived from the application of a methodology that the department accepts as a statistically valid method of establishing fair market value in the local market area; or (2) The fair market value derived from documented sales costs of no fewer than 2 motor vehicles of the same make, model, and year as the total loss motor vehicle that have occurred within the previous 90 days within the local market area. If documented sales costs information of a motor vehicle of the same make, model, and year as the total loss motor vehicle is unavailable, then the insurer shall use: a. Documented sales costs of no fewer than 2 motor vehicles of like, kind, and quality that have occurred within the previous 90 days within the local market area; or b. An average sales price derived from written quotations for a motor vehicle that is the same make, model, and year as the total loss motor vehicle, obtained by the insurer from at least 2 different licensed dealerships located within the local market area, that engage in the buying and selling of motor vehicles of like kind and quality in the ordinary course of their business." N.H. CODE ADMIN. R. INS. 1002.15(a).

1257. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1258.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 130

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1259.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1260.   This Count is brought on behalf of the New Hampshire Subclass (for purposes of this Count, the "Class").

1261.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1262.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1263.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1264.   Defendant also failed to comply with New Hampshire law, which requires insurance companies to determine cash settlements based upon the motor vehicle's fair market value using one of the following methods: "(1) The fair market value derived from the application of a methodology that the department accepts as a statistically valid method of establishing fair market value in the local market area; or (2) The fair market value derived from documented sales costs of no fewer than 2 motor vehicles of the same make, model, and year as the total loss motor vehicle that have occurred within the previous 90 days within the local market area. If documented sales costs information of a motor vehicle of the same make, model, and year as the total loss motor vehicle is unavailable, then the insurer shall use: a. Documented sales costs of no fewer than 2 motor vehicles of like, kind, and quality that have occurred within the previous 90 days within the local market area; or b. An average sales price derived from written quotations for a motor vehicle that is the same make, model, and year as the total loss motor vehicle, obtained by the insurer from at least 2 different licensed dealerships located within the local market area, that engage in the buying and selling of motor vehicles of like kind and quality in the ordinary course of their business." N.H. CODE ADMIN. R. INS. 1002.15(a).

1265.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

> a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
>
> b.  Failing to pay insureds the ACV of their total-loss vehicles;
>
> c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1266.  Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 131

## UNJUST ENRICHMENT

1267.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1268.  This Count is brought on behalf of the New Hampshire Subclass (for purposes of this Count, the "Class").

1269.  Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1270.  Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1271.  Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1272.  Defendant also failed to comply with New Hampshire law, which requires insurance companies to determine cash settlements based upon the motor vehicle's fair market value using one of the following methods: "(1) The fair market value derived from the application

of a methodology that the department accepts as a statistically valid method of establishing fair market value in the local market area; or (2) The fair market value derived from documented sales costs of no fewer than 2 motor vehicles of the same make, model, and year as the total loss motor vehicle that have occurred within the previous 90 days within the local market area. If documented sales costs information of a motor vehicle of the same make, model, and year as the total loss motor vehicle is unavailable, then the insurer shall use: a. Documented sales costs of no fewer than 2 motor vehicles of like, kind, and quality that have occurred within the previous 90 days within the local market area; or b. An average sales price derived from written quotations for a motor vehicle that is the same make, model, and year as the total loss motor vehicle, obtained by the insurer from at least 2 different licensed dealerships located within the local market area, that engage in the buying and selling of motor vehicles of like kind and quality in the ordinary course of their business." N.H. CODE ADMIN. R. INS. 1002.15(a).

1273.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with New Hampshire law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1274.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1275.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 132

## DECLARATORY JUDGMENT

1276.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1277.  This Count is brought on behalf of the New Hampshire Subclass (for purposes of this Count, the "Class").

1278.  A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1279.  Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1280.  Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1281.  As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

CC.    **New Jersey**

## COUNT 133

### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### N.J. STAT. ANN. § 56:8-1, *et seq.*

1282.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1283.    This Count is on behalf of the New Jersey Subclass (for purposes of this Count, the "Class").

1284.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

1285.    Defendant was and is engaged in "sales" or "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

1286.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . ." N.J. STAT. ANN. § 56:8-2.

1287.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1288.   Defendant also failed to comply with New Jersey law, which provides that "at all times…the insured's position is that of a retail consumer and the settlement value arrived at must be reasonable and fair for a person in that position" and that "[i]f the insurer elects to make a cash settlement, its offer, subject to applicable additions or deductions, must be one of the following plus applicable sales tax:

**1.** The average of the retail values for substantially similar motor vehicles as listed in the editions current for the date of loss of two valuation manuals approved by the Commissioner.

> **i.** The average figure arrived at may be reduced or increased by considering all factors, including, but not limited to, mileage tables and the presence or absence of extras.

> **ii.** If the destroyed vehicle included an option which is listed in one manual but not in the other, the value of the option shall not be averaged. The insured shall receive full value for the option by carrying over the amount listed to the other manual. The option carryover shall apply only in those instances where the option has not been considered by the used vehicle guide either as a separate item or included in the vehicle's base value.

> **iii.** If a manual is submitted for approval by the Commissioner its accuracy must meet objective criteria for the values of substantially similar vehicles of at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles shall be used for each year, make and model to represent a cross-section sufficient to determine fair market values. At the time of request for approval, the source of the manual's data must be revealed to the Commissioner in a manner that can be verified by the Department. Manuals approved for use on or after January 1, 1976 are "Automobile Red Book" and "Older Car/Truck Red Book" published by Maclean Hunter Market Reports, Inc. and the "N.A.D.A. Official Used Car Guide" and "N.A.D.A. Official Older Car Guide" published by the National Automobile Dealers Used Car Guide Company.

**2.** A quotation obtained by the insurer for a substantially similar motor vehicle from a dealer located within a reasonable distance from the principal place of garagement of the insured vehicle. Unless otherwise agreed by the insured, a reasonable distance shall not exceed 25 miles from the principal place of garagement. The vehicle must be available for purchase by the insured and the insured must be able to purchase it for the insurer's cash offer plus applicable deductions. The insurer shall maintain in its claim file proof of the vehicle's availability and the name and

location of the dealer, stock number, vehicle identification number and description of the substantially similar vehicle.

**3.** The fair market value of the insured vehicle, determined by using a source including a computerized database approved by the Commissioner that meets all of the following minimum criteria:

> **i.** The source must give primary consideration to the values of vehicles in the local market area, but if necessary to obtain a reasonable cross-section of the market, may consider vehicles in the next closest area.

> **ii.** The source shall produce fair market values of substantially similar vehicles for at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles must be used for each year, make, and model to represent a cross-section of the market sufficient to determine fair market value.

> **iii.** If the database uses several price ranges for the same model vehicle depending on the condition of the vehicle, it must clearly indicate what condition the vehicle is being valued at and define in detail the difference between such rating categories. Documentation of the condition of the insured vehicle must be made a part of the written valuation.

> **iv.** At the time of request for approval the source of the database shall be revealed to the Commissioner in a manner that can be verified by the Department.

**4.** If it is not possible to value the insured vehicle by using the method set forth in (a)1, 2 and 3, the insurer shall determine the retail value of the vehicle by using the best available method and shall fully explain in writing to the insured how its offer was calculated.

N.J. Admin. Code § 11:3-10.4.

1289. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with New Jersey law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the New Jersey CFA.

1290. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1291. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1292. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1293. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1294. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the New Jersey CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1295.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1296.   Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1297.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1298.   Defendant's violations of the New Jersey CFA present a continuing risk of future harm to Plaintiffs and the Class members.

1299.   Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the New Jersey CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

## COUNT 134

## BREACH OF CONTRACT

1300.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1301.   This Count is brought on behalf of the New Jersey Subclass (for purposes of this Count, the "Class").

1302.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1303.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1304.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1305.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1306.   Defendant also failed to comply with New Jersey law, which provides that "at all times…the insured's position is that of a retail consumer and the settlement value arrived at must be reasonable and fair for a person in that position" and that "[i]f the insurer elects to make a cash settlement, its offer, subject to applicable additions or deductions, must be one of the following plus applicable sales tax:

**1.** The average of the retail values for substantially similar motor vehicles as listed in the editions current for the date of loss of two valuation manuals approved by the Commissioner.

> **i.** The average figure arrived at may be reduced or increased by considering all factors, including, but not limited to, mileage tables and the presence or absence of extras.

> **ii.** If the destroyed vehicle included an option which is listed in one manual but not in the other, the value of the option shall not be averaged. The insured shall receive full value for the option by carrying over the amount listed to the other manual. The option carryover shall apply only in those instances where the option has not been considered by the used vehicle guide either as a separate item or included in the vehicle's base value.

> **iii.** If a manual is submitted for approval by the Commissioner its accuracy must meet objective criteria for the values of substantially similar vehicles of at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles shall be used for each year, make and model to represent a cross-section sufficient to determine fair market values. At the time of request for approval, the source of the manual's data must be revealed to the Commissioner in a manner that can be verified by the Department. Manuals approved for use on or after January 1, 1976 are "Automobile Red Book" and "Older Car/Truck Red Book" published by Maclean Hunter Market Reports, Inc. and the "N.A.D.A. Official Used Car Guide" and "N.A.D.A. Official Older Car Guide" published by the National Automobile Dealers Used Car Guide Company.

**2.** A quotation obtained by the insurer for a substantially similar motor vehicle from a dealer located within a reasonable distance from the principal place of garagement of the insured vehicle. Unless otherwise agreed by the insured, a reasonable distance shall not exceed 25 miles from the principal place of garagement. The vehicle must be available for purchase by the insured and the insured must be able to purchase it for the insurer's cash offer plus applicable deductions. The insurer shall maintain in its claim file proof of the vehicle's availability and the name and location of the dealer, stock number, vehicle identification number and description of the substantially similar vehicle.

**3.** The fair market value of the insured vehicle, determined by using a source including a computerized database approved by the Commissioner that meets all of the following minimum criteria:

> **i.** The source must give primary consideration to the values of vehicles in the local market area, but if necessary to obtain a reasonable cross-section of the market, may consider vehicles in the next closest area.

**ii.** The source shall produce fair market values of substantially similar vehicles for at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles must be used for each year, make, and model to represent a cross-section of the market sufficient to determine fair market value.

**iii.** If the database uses several price ranges for the same model vehicle depending on the condition of the vehicle, it must clearly indicate what condition the vehicle is being valued at and define in detail the difference between such rating categories. Documentation of the condition of the insured vehicle must be made a part of the written valuation.

**iv.** At the time of request for approval the source of the database shall be revealed to the Commissioner in a manner that can be verified by the Department.

**4.** If it is not possible to value the insured vehicle by using the method set forth in (a)1, 2 and 3, the insurer shall determine the retail value of the vehicle by using the best available method and shall fully explain in writing to the insured how its offer was calculated.

N.J. Admin. Code § 11:3-10.4.

1307.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1308.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 135

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1309.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1310.   This Count is brought on behalf of the New Jersey Subclass (for purposes of this Count, the "Class").

1311.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1312.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1313.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1314.   Defendant also failed to comply with New Jersey law, which provides that "at all times…the insured's position is that of a retail consumer and the settlement value arrived at must be reasonable and fair for a person in that position" and that "[i]f the insurer elects to make a cash settlement, its offer, subject to applicable additions or deductions, must be one of the following plus applicable sales tax:

**1.** The average of the retail values for substantially similar motor vehicles as listed in the editions current for the date of loss of two valuation manuals approved by the Commissioner.

> **i.** The average figure arrived at may be reduced or increased by considering all factors, including, but not limited to, mileage tables and the presence or absence of extras.

> **ii.** If the destroyed vehicle included an option which is listed in one manual but not in the other, the value of the option shall not be averaged. The insured shall receive full value for the option by carrying over the amount listed to the other manual. The option carryover shall apply only in those instances where the option has not been considered by the used vehicle guide either as a separate item or included in the vehicle's base value.

> **iii.** If a manual is submitted for approval by the Commissioner its accuracy must meet objective criteria for the values of substantially similar vehicles of at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles shall be used for each year, make and model to represent a cross-section sufficient to determine fair market values. At the time of request for approval, the source of the manual's data must be revealed to the Commissioner in a manner that can be verified by the Department. Manuals approved for use on or after January 1, 1976 are "Automobile Red Book" and "Older Car/Truck Red Book" published by Maclean Hunter Market Reports, Inc. and the "N.A.D.A. Official Used Car Guide" and "N.A.D.A. Official Older Car Guide" published by the National Automobile Dealers Used Car Guide Company.

**2.** A quotation obtained by the insurer for a substantially similar motor vehicle from a dealer located within a reasonable distance from the principal place of garagement of the insured vehicle. Unless otherwise agreed by the insured, a reasonable distance shall not exceed 25 miles from the principal place of garagement. The vehicle must be available for purchase by the insured and the insured must be able to purchase it for the insurer's cash offer plus applicable deductions. The insurer shall maintain in its claim file proof of the vehicle's availability and the name and location of the dealer, stock number, vehicle identification number and description of the substantially similar vehicle.

**3.** The fair market value of the insured vehicle, determined by using a source including a computerized database approved by the Commissioner that meets all of the following minimum criteria:

> **i.** The source must give primary consideration to the values of vehicles in the local market area, but if necessary to obtain a reasonable cross-section of the market, may consider vehicles in the next closest area.

**ii.** The source shall produce fair market values of substantially similar vehicles for at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles must be used for each year, make, and model to represent a cross-section of the market sufficient to determine fair market value.

**iii.** If the database uses several price ranges for the same model vehicle depending on the condition of the vehicle, it must clearly indicate what condition the vehicle is being valued at and define in detail the difference between such rating categories. Documentation of the condition of the insured vehicle must be made a part of the written valuation.

**iv.** At the time of request for approval the source of the database shall be revealed to the Commissioner in a manner that can be verified by the Department.

**4.** If it is not possible to value the insured vehicle by using the method set forth in (a)1, 2 and 3, the insurer shall determine the retail value of the vehicle by using the best available method and shall fully explain in writing to the insured how its offer was calculated.

N.J. Admin. Code § 11:3-10.4.

1315. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b. Failing to pay insureds the ACV of their total-loss vehicles;

    c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1316. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the

amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 136

## UNJUST ENRICHMENT

1317.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1318.   This Count is brought on behalf of the New Jersey Subclass (for purposes of this Count, the "Class").

1319.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1320.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1321.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1322.   Defendant also failed to comply with New Jersey law, which provides that "at all times…the insured's position is that of a retail consumer and the settlement value arrived at must be reasonable and fair for a person in that position" and that "[i]f the insurer elects to make a cash settlement, its offer, subject to applicable additions or deductions, must be one of the following plus applicable sales tax:

**1.** The average of the retail values for substantially similar motor vehicles as listed in the editions current for the date of loss of two valuation manuals approved by the Commissioner.

**i.** The average figure arrived at may be reduced or increased by considering all factors, including, but not limited to, mileage tables and the presence or absence of extras.

**ii.** If the destroyed vehicle included an option which is listed in one manual but not in the other, the value of the option shall not be averaged. The insured shall receive full value for the option by carrying over the amount listed to the other manual. The option carryover shall apply only in those instances where the option has not been considered by the used vehicle guide either as a separate item or included in the vehicle's base value.

**iii.** If a manual is submitted for approval by the Commissioner its accuracy must meet objective criteria for the values of substantially similar vehicles of at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles shall be used for each year, make and model to represent a cross-section sufficient to determine fair market values. At the time of request for approval, the source of the manual's data must be revealed to the Commissioner in a manner that can be verified by the Department. Manuals approved for use on or after January 1, 1976 are "Automobile Red Book" and "Older Car/Truck Red Book" published by Maclean Hunter Market Reports, Inc. and the "N.A.D.A. Official Used Car Guide" and "N.A.D.A. Official Older Car Guide" published by the National Automobile Dealers Used Car Guide Company.

**2.** A quotation obtained by the insurer for a substantially similar motor vehicle from a dealer located within a reasonable distance from the principal place of garagement of the insured vehicle. Unless otherwise agreed by the insured, a reasonable distance shall not exceed 25 miles from the principal place of garagement. The vehicle must be available for purchase by the insured and the insured must be able to purchase it for the insurer's cash offer plus applicable deductions. The insurer shall maintain in its claim file proof of the vehicle's availability and the name and location of the dealer, stock number, vehicle identification number and description of the substantially similar vehicle.

**3.** The fair market value of the insured vehicle, determined by using a source including a computerized database approved by the Commissioner that meets all of the following minimum criteria:

**i.** The source must give primary consideration to the values of vehicles in the local market area, but if necessary to obtain a reasonable cross-section of the market, may consider vehicles in the next closest area.

**ii.** The source shall produce fair market values of substantially similar vehicles for at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles must be

used for each year, make, and model to represent a cross-section of the market sufficient to determine fair market value.

**iii.** If the database uses several price ranges for the same model vehicle depending on the condition of the vehicle, it must clearly indicate what condition the vehicle is being valued at and define in detail the difference between such rating categories. Documentation of the condition of the insured vehicle must be made a part of the written valuation.

**iv.** At the time of request for approval the source of the database shall be revealed to the Commissioner in a manner that can be verified by the Department.

**4.** If it is not possible to value the insured vehicle by using the method set forth in (a)1, 2 and 3, the insurer shall determine the retail value of the vehicle by using the best available method and shall fully explain in writing to the insured how its offer was calculated.

N.J. Admin. Code § 11:3-10.4.

1323.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with New Jersey law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1324.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1325.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 137

### DECLARATORY JUDGMENT

1326.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1327.   This Count is brought on behalf of the New Jersey Subclass (for purposes of this Count, the "Class").

1328.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1329.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1330.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1331.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**DD.    New Mexico**

## COUNT 138

### VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### N.M. STAT. ANN. § 57-12-1, *et seq.*

1332.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1333.   This Count is brought on behalf of the New Mexico Subclass (for purposes of this Count, the "Class").

1334.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of N.M. STAT. ANN. § 57-12-2(A).

1335.   Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. STAT. ANN. § 57-12-2(C).

1336.   The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") prohibits "unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. STAT. ANN. § 57-12-3.

1337.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1338.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the New Mexico UTPA.

1339.   Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1340.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1341.   The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1342.   Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1343.   Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the New Mexico UTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1344.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1345. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1346. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1347. Defendant's violations of the New Mexico UTPA present a continuing risk of future harm to Plaintiffs and the Class members.

1348. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the New Mexico UTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

## COUNT 139

## BREACH OF CONTRACT

1349. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1350.   This Count is brought on behalf of the New Mexico Subclass (for purposes of this Count, the "Class").

1351.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1352.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1353.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1354.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1355.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1356.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 140

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1357.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1358.   This Count is brought on behalf of the New Mexico Subclass (for purposes of this Count, the "Class").

1359.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1360.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1361.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1362.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

> a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
>
> b.   Failing to pay insureds the ACV of their total-loss vehicles;
>
> c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-

loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1363. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

**COUNT 141**

**UNJUST ENRICHMENT**

1364. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1365. This Count is brought on behalf of the New Mexico Subclass (for purposes of this Count, the "Class").

1366. Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1367. Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1368. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1369.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1370.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1371.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 142

## DECLARATORY JUDGMENT

1372.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1373.   This Count is brought on behalf of the New Mexico Subclass (for purposes of this Count, the "Class").

1374.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1375.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a)

arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1376. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1377. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**EE. New York**

**COUNT 143**

**VIOLATION OF NEW YORK CONSUMER PROTECTION ACT,**
**N.Y. Gen. Bus. Law §§ 349,** *et seq***.**

1378. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1379. This Count is brought on behalf of the New York Subclass (for purposes of this Count, the "Class").

1380. The New York General Business Law ("New York GBL") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state..." N.Y. Gen. Bus. Law § 349(a).

1381. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the New York GBL by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1382.  Defendant also failed to comply with New York law, which requires insurance companies who use a "computerized database" to determine the "retail value" of a totaled vehicle to "rely upon values derived from licensed dealers, which have minimum sales of 100 motor vehicles per year in the local market area… and be based upon the physical inventory of vehicles sold within the 90 days prior to the loss and vehicles with are available." N.Y. Comp. Codes R. & Regs. Tit. 11 § 216.7(c)(1)(iii)(b).

1383.  By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with New York law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the New York GBL.

1384.  Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1385.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1386.  The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable

consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1387.   Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1388.   Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the New York GBL in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1389.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York GBL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1390.  Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's

application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1391.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not ahve paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1392.  Defendant's violations of the New York GBL present a continuing risk of future harm to Plaintiffs and the Class members.

1393.  Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the New York GBL and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York GBL.

## COUNT 144

### BREACH OF CONTRACT

1394.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1395.  This Count is brought on behalf of the New York Subclass (for purposes of this Count, the "Class").

1396.  Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1397.  Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1398. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1399. Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1400. Defendant also failed to comply with New York law, which requires insurance companies who use a "computerized database" to determine the "retail value" of a totaled vehicle to "rely upon values derived from licensed dealers, which have minimum sales of 100 motor vehicles per year in the local market area… and be based upon the physical inventory of vehicles sold within the 90 days prior to the loss and vehicles with are available." N.Y. Comp. Codes R. & Regs. Tit. 11 § 216.7(c)(1)(iii)(b).

1401. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1402. As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 145

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1403. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1404.   This Count is brought on behalf of the New York Subclass (for purposes of this Count, the "Class").

1405.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1406.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1407.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1408.   Defendant also failed to comply with New York law, which requires insurance companies who use a "computerized database" to determine the "retail value" of a totaled vehicle to "rely upon values derived from licensed dealers, which have minimum sales of 100 motor vehicles per year in the local market area… and be based upon the physical inventory of vehicles sold within the 90 days prior to the loss and vehicles with are available." N.Y. Comp. Codes R. & Regs. Tit. 11 § 216.7(c)(1)(iii)(b).

1409.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.   Failing to pay insureds the ACV of their total-loss vehicles;

    c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1410.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 146

## UNJUST ENRICHMENT

1411.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1412.   This Count is brought on behalf of the New York Subclass (for purposes of this Count, the "Class").

1413.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1414.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1415.  Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1416.  Defendant also failed to comply with New York law, which requires insurance companies who use a "computerized database" to determine the "retail value" of a totaled vehicle to "rely upon values derived from licensed dealers, which have minimum sales of 100 motor vehicles per year in the local market area… and be based upon the physical inventory of vehicles sold within the 90 days prior to the loss and vehicles with are available." N.Y. Comp. Codes R. & Regs. Tit. 11 § 216.7(c)(1)(iii)(b).

1417.  If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with New York law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1418.  Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1419.  Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 147

## DECLARATORY JUDGMENT

1420.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1421.  This Count is brought on behalf of the New York Subclass (for purposes of this Count, the "Class").

1422.  A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1423.  Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1424.  Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1425.  As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**FF.** **North Carolina**

## COUNT 148

### NORTH CAROLINA UNFAIR TRADE PRACTICES ACT,
N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.*

1426.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1427.   This Count is brought on behalf of the North Carolina Subclass (for purposes of this Count, the "Class").

1428.   Defendant advertised, offered, or sold goods services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

1429.   The North Carolina Unfair Trade Practices Act ("NCUTPA"), N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.*, prohibits unfair or deceptive acts or practices in or affecting commerce.

1430.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the NCUTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1431.   Defendant also violated North Carolina law, which requires total loss settlement offers to be based upon the following values: "(1) The published regional average values of substantially similar motor vehicles; and (2) The retail cost of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area [or] If no substantially similar motor vehicle is able to be located in the local market area, the settlement

offer may be based upon quotations obtained from two or more licensed motor vehicle dealers located within the local market area." North Carolina 11 NCAC 04 .0418.

1432.  By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles and failure to comply with North Carolina law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the NCUTPA.

1433.  Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1434.  Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1435.  The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1436.  Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had

concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1437. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the NCUTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning their application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1438. Plaintiffs and the Class members were aggrieved by Defendant's violations of the NCUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1439. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1440. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or

they would have paid less and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1441.   Defendant's violations of the NCUTPA present a continuing risk of future harm to Plaintiffs and the Class members.

1442.   Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the NCUTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the NCUTPA.

## COUNT 149

## BREACH OF CONTRACT

1443.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1444.   This Count is brought on behalf of the North Carolina Subclass (for purposes of this Count, the "Class").

1445.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1446.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1447.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1448.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1449. Defendant also violated North Carolina law, which requires total loss settlement offers to be based upon the following values: "(1) The published regional average values of substantially similar motor vehicles; and (2) The retail cost of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area [or] If no substantially similar motor vehicle is able to be located in the local market area, the settlement offer may be based upon quotations obtained from two or more licensed motor vehicle dealers located within the local market area." North Carolina 11 NCAC 04 .0418.

1450. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1451. As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 150

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1452. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1453. This Count is brought on behalf of the North Carolina Subclass (for purposes of this Count, the "Class").

1454.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1455.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1456.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1457.   Defendant also violated North Carolina law, which requires total loss settlement offers to be based upon the following values: "(1) The published regional average values of substantially similar motor vehicles; and (2) The retail cost of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area [or] If no substantially similar motor vehicle is able to be located in the local market area, the settlement offer may be based upon quotations obtained from two or more licensed motor vehicle dealers located within the local market area." North Carolina 11 NCAC 04 .0418.

1458.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.   Failing to pay insureds the ACV of their total-loss vehicles;

    c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1459.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 151

## UNJUST ENRICHMENT

1460.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1461.   This Count is brought on behalf of the North Carolina Subclass (for purposes of this Count, the "Class").

1462.   Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

1463.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1464.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1465.    Defendant also violated North Carolina law, which requires total loss settlement offers to be based upon the following values: "(1) The published regional average values of substantially similar motor vehicles; and (2) The retail cost of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area [or] If no substantially similar motor vehicle is able to be located in the local market area, the settlement offer may be based upon quotations obtained from two or more licensed motor vehicle dealers located within the local market area." North Carolina 11 NCAC 04 .0418.

1466.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1467.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1468.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 152

## DECLARATORY JUDGMENT

1469.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1470.   This Count is brought on behalf of the North Carolina Subclass (for purposes of this Count, the "Class").

1471.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1472.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1473.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1474.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**GG.   North Dakota**

**COUNT 153**

**VIOLATION OF THE NORTH DAKOTA UNLAWFUL
SALES OR ADVERTISING PRACTICES ACT
N.D. CENT. CODE § 51-15-01, *et seq.***

1475.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1476.   This Count is brought on behalf of the North Dakota Subclass (for purposes of this Count, the "Class").

1477.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of N.D. CENT. CODE § 51-15-01(4).

1478.   The North Dakota Unlawful Sales or Advertising Practices Act ("North Dakota USAP") prohibits "any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." N.D. CENT. CODE § 51-15-02.

1479.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the North Dakota USAP by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1480.   Defendant also failed to comply with North Dakota law by "[k]nowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear"; "[c]ompelling insureds to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable person would have believed one was entitled by reference to written or printed advertising material accompanying or made a part of an application." N.D. CENT. CODE § 26.1-04-03.

1481.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with North Dakota law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the North Dakota USAP.

1482.   Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1483.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about

Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1484. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1485. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1486. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the North Dakota USAP in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1487. Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Dakota USAP because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary

"typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1488.   Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1489.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1490.   Defendant's violations of the North Dakota USAP present a continuing risk of future harm to Plaintiffs and the Class members.

1491.   Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the North Dakota USAP and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Dakota USAP.

## COUNT 154

## BREACH OF CONTRACT

1492.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1493.   This Count is brought on behalf of the North Dakota Subclass (for purposes of this Count, the "Class").

1494.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1495.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1496.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1497.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1498.   Defendant also failed to comply with North Dakota law by "[k]nowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear"; "[c]ompelling insureds to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable person would have believed one was entitled by reference to written or printed advertising material accompanying or made a part of an application." N.D. CENT. CODE § 26.1-04-03.

1499.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1500.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

**COUNT 155**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

1501.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1502.   This Count is brought on behalf of the North Dakota Subclass (for purposes of this Count, the "Class").

1503.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1504.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1505.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a

manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1506. Defendant also failed to comply with North Dakota law by "[k]nowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear"; "[c]ompelling insureds to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable person would have believed one was entitled by reference to written or printed advertising material accompanying or made a part of an application." N.D. CENT. CODE § 26.1-04-03.

1507. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

> a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
>
> b. Failing to pay insureds the ACV of their total-loss vehicles;
>
> c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;
>
> d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1508.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 156

## UNJUST ENRICHMENT

1509.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1510.   This Count is brought on behalf of the North Dakota Subclass (for purposes of this Count, the "Class").

1511.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1512.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1513.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1514.  Defendant also failed to comply with North Dakota law by "[k]nowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear"; "[c]ompelling insureds to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them when the insureds have made claims for amounts reasonably

similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable person would have believed one was entitled by reference to written or printed advertising material accompanying or made a part of an application." N.D. CENT. CODE § 26.1-04-03.

1515.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with North Dakota law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1516.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1517.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 157

## DECLARATORY JUDGMENT

1518.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1519.    This Count is brought on behalf of the North Dakota Subclass (for purposes of this Count, the "Class").

1520.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1521.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1522.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1523.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**HH.    Ohio**

**COUNT 158**

**BREACH OF CONTRACT**

1524.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1525.   This Count is brought on behalf of the Ohio Subclass (for purposes of this Count, the "Class").

1526.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1527. Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1528. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1529. Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1530. Defendant also failed to comply with Ohio law, which requires insurers to derive a cash settlement from "(a) The average cost of two or more comparable automobiles in the local market area if comparable automobiles are or were available to consumers within the last ninety days; or (b) The average cost of two or more comparable automobiles in areas proximate to the local market area, including the closest in-state or out-of-state major metropolitan areas, that are or were available to consumers within the last ninety days if comparable automobiles are not available pursuant to paragraph (H)(7)(a) of this rule; or (c) The average of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area if comparable automobiles are not available pursuant to paragraphs (H)(7)(a) and (H)(7)(b) of this rule; or (d) The cost as determined from a generally recognized used motor vehicle industry source such as: (i) An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the claimant upon request; or (ii) A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis

for the cost to the claimant upon request, and to which appropriate adjustments for condition, mileage and major options are made and documented in the claim file." Ohio Administrative Code Section 3901-1-54(H)(7).

1531.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1532.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

**COUNT 159**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

1533.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1534.   This Count is brought on behalf of the Ohio Subclass (for purposes of this Count, the "Class").

1535.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1536.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith

and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1537.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however, exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1538.   Defendant also failed to comply with Ohio law, which requires insurers to derive a cash settlement from "(a) The average cost of two or more comparable automobiles in the local market area if comparable automobiles are or were available to consumers within the last ninety days; or (b) The average cost of two or more comparable automobiles in areas proximate to the local market area, including the closest in-state or out-of-state major metropolitan areas, that are or were available to consumers within the last ninety days if comparable automobiles are not available pursuant to paragraph (H)(7)(a) of this rule; or (c) The average of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area if comparable automobiles are not available pursuant to paragraphs (H)(7)(a) and (H)(7)(b) of this rule; or (d) The cost as determined from a generally recognized used motor vehicle industry source such as: (i) An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the claimant upon request; or (ii) A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the cost to the claimant upon request, and to which appropriate adjustments for condition,

mileage and major options are made and documented in the claim file." Ohio Administrative Code Section 3901-1-54(H)(7).

1539. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Failing to pay insureds the ACV of their total-loss vehicles;

    c.  Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1540. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 160

## UNJUST ENRICHMENT

1541. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1542. This Count is brought on behalf of the Ohio Subclass (for purposes of this Count, the "Class").

1543.   Plaintiffs plead this claim separately as well as in the alternative to his other claims, as without such claims she would have no adequate legal remedy.

1544.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1545.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1546.   Defendant also failed to comply with Ohio law, which requires insurers to derive a cash settlement from "(a) The average cost of two or more comparable automobiles in the local market area if comparable automobiles are or were available to consumers within the last ninety days; or (b) The average cost of two or more comparable automobiles in areas proximate to the local market area, including the closest in-state or out-of-state major metropolitan areas, that are or were available to consumers within the last ninety days if comparable automobiles are not available pursuant to paragraph (H)(7)(a) of this rule; or (c) The average of two or more quotations obtained by the insurer from two or more licensed dealers located within the local market area if comparable automobiles are not available pursuant to paragraphs (H)(7)(a) and (H)(7)(b) of this rule; or (d) The cost as determined from a generally recognized used motor vehicle industry source such as: (i) An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the claimant upon request; or (ii) A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the cost to the claimant upon request, and to which appropriate adjustments for condition,

mileage and major options are made and documented in the claim file." Ohio Administrative Code Section 3901-1-54(H)(7).

1547.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Missouri law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1548.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1549.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 161

## DECLARATORY JUDGMENT

1550.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1551.   This Count is brought on behalf of the Ohio Subclass (for purposes of this Count, the "Class").

1552.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1553.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss

claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1554.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1555.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

II.     **Oklahoma**

## COUNT 162

## BREACH OF CONTRACT

1556.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1557.   This Count is brought on behalf of the Oklahoma Subclass (for purposes of this Count, the "Class").

1558.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1559.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1560.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1561.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1562.   Defendant also failed to comply with Oklahoma law, which requires insurance companies to determine cash settlements based upon the motor vehicle's actual cost determined by: "a. the cost of a comparable motor vehicle in the local market area when a comparable motor vehicle is currently or recently available in the prior ninety (90) days in the local market area, b. one of two or more quotations obtained by an insurer from two or more qualified dealers located within the local market area when a comparable motor vehicle is not available in the local market area, or c. the cost of a comparable motor vehicle as quoted in the latest edition of the National Automobile Dealers Association Official Used Car Guide or monthly edition of any other nationally recognized published guidebook." OKLA. STAT.  36 § 36-1250.8(2).

1563.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1564.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 163

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1565.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1566.   This Count is brought on behalf of the Oklahoma Subclass (for purposes of this Count, the "Class").

1567.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1568.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1569.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1570.   Defendant also failed to comply with Oklahoma law, which requires insurance companies to determine cash settlements based upon the motor vehicle's actual cost determined by: "a. the cost of a comparable motor vehicle in the local market area when a comparable motor

vehicle is currently or recently available in the prior ninety (90) days in the local market area, b. one of two or more quotations obtained by an insurer from two or more qualified dealers located within the local market area when a comparable motor vehicle is not available in the local market area, or c. the cost of a comparable motor vehicle as quoted in the latest edition of the National Automobile Dealers Association Official Used Car Guide or monthly edition of any other nationally recognized published guidebook." OKLA. STAT. 36 § 36-1250.8(2).

1571.　As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Failing to pay insureds the ACV of their total-loss vehicles;

    c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1572.　Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 164

## UNJUST ENRICHMENT

1573.　Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1574.   This Count is brought on behalf of the Oklahoma Subclass (for purposes of this Count, the "Class").

1575.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1576.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1577.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1578.   Defendant also failed to comply with Oklahoma law, which requires insurance companies to determine cash settlements based upon the motor vehicle's actual cost determined by: "a. the cost of a comparable motor vehicle in the local market area when a comparable motor vehicle is currently or recently available in the prior ninety (90) days in the local market area, b. one of two or more quotations obtained by an insurer from two or more qualified dealers located within the local market area when a comparable motor vehicle is not available in the local market area, or c. the cost of a comparable motor vehicle as quoted in the latest edition of the National Automobile Dealers Association Official Used Car Guide or monthly edition of any other nationally recognized published guidebook." OKLA. STAT.  36 § 36-1250.8(2).

1579.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Oklahoma law,

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1580.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1581.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 165

## DECLARATORY JUDGMENT

1582.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1583.   This Count is brought on behalf of the Oklahoma Subclass (for purposes of this Count, the "Class").

1584.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1585.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1586.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1587.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**JJ.   Oregon**

## COUNT 166

## BREACH OF CONTRACT

1588.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1589.   This Count is brought on behalf of the Oregon Subclass (for purposes of this Count, the "Class").

1590.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1591.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1592.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1593.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1594.   Defendant also failed to comply with Oregon law, which requires insurance companies who use an "computerized database source" to determine the "fair market value" of a totaled vehicle to include the following criteria: "(A) The source shall produce values for at least 85 percent of all makes and models of private passenger automobiles for the last 15 model years; (B) The source shall rely upon values of vehicles that are currently available or were available within the last 90 days from the date of loss for all vehicles and shall apply appropriate standards of comparability; (C) For all vehicles of five model years or less of age, the values must be derived primarily from verifiable data or inventory from licensed dealers; (D) The source shall monitor the average retail price of private passenger automobiles when there is insufficient data or inventory from licensed dealers to ensure statistically valid market area values; (E) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area; and (F) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters, such as time and area, to assure statistical validity." OAR § 836-080-0240(3)(a). Oregon law further provides that any deviation from the methods described above only if "documentation in the claim file supports the deviation and gives particulars of the pre-loss condition of the automobile" and "[a]ny deductions from the cost…must be measurable, discernible, itemized and specified as to dollar amount and must be appropriate in amount." *Id.*

1595.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1596.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 167

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1597.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1598.   This Count is brought on behalf of the Oregon Subclass (for purposes of this Count, the "Class").

1599.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1600.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1601.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a

manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1602.    Defendant also failed to comply with Oregon law, which requires insurance companies who use an "computerized database source" to determine the "fair market value" of a totaled vehicle to include the following criteria: "(A) The source shall produce values for at least 85 percent of all makes and models of private passenger automobiles for the last 15 model years; (B) The source shall rely upon values of vehicles that are currently available or were available within the last 90 days from the date of loss for all vehicles and shall apply appropriate standards of comparability; (C) For all vehicles of five model years or less of age, the values must be derived primarily from verifiable data or inventory from licensed dealers; (D) The source shall monitor the average retail price of private passenger automobiles when there is insufficient data or inventory from licensed dealers to ensure statistically valid market area values; (E) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area; and (F) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters, such as time and area, to assure statistical validity." OR. ADMIN. R. § 836-080-0240(3)(a). Oregon law further provides that any deviation from the methods described above only if "documentation in the claim file supports the deviation and gives particulars of the pre-loss condition of the automobile" and "[a]ny deductions from the cost…must be measurable, discernible, itemized and specified as to dollar amount and must be appropriate in amount." *Id.*

1603.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

      a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

      b.   Failing to pay insureds the ACV of their total-loss vehicles;

      c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

      d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1604.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 168

## UNJUST ENRICHMENT

1605.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1606.   This Count is brought on behalf of the Oregon Subclass (for purposes of this Count, the "Class").

1607.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1608.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1609. Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1610. Defendant also failed to comply with Oregon law, which requires insurance companies who use an "computerized database source" to determine the "fair market value" of a totaled vehicle to include the following criteria: "(A) The source shall produce values for at least 85 percent of all makes and models of private passenger automobiles for the last 15 model years; (B) The source shall rely upon values of vehicles that are currently available or were available within the last 90 days from the date of loss for all vehicles and shall apply appropriate standards of comparability; (C) For all vehicles of five model years or less of age, the values must be derived primarily from verifiable data or inventory from licensed dealers; (D) The source shall monitor the average retail price of private passenger automobiles when there is insufficient data or inventory from licensed dealers to ensure statistically valid market area values; (E) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area; and (F) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters, such as time and area, to assure statistical validity." OR. ADMIN. R. § 836-080-0240(3)(a). Oregon law further provides that any deviation from the methods described above only if "documentation in the claim file supports the deviation and gives particulars of the pre-loss condition of the automobile" and "[a]ny deductions from the cost…must be measurable, discernible, itemized and specified as to dollar amount and must be appropriate in amount." *Id.*

1611. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Oregon law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1612. Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1613. Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 169

## DECLARATORY JUDGMENT

1614. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1615. This Count is brought on behalf of the Oregon Subclass (for purposes of this Count, the "Class").

1616. A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1617. Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a)

arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1618.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1619.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**KK.    Pennsylvania**

**COUNT 170**

**PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW,
73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq.***

1620.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1621.   This Count is brought on behalf of the Pennsylvania Subclass (for purposes of this Count, the "Class").

1622.   Defendant is a "person" as defined by 73 Pa. Cons. Stat. § 201-2(2).

1623.   Plaintiffs and the Class members purchased services in "trade" and "commerce," as defined by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

1624.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq.*, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

1625.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Pennsylvania UTPCPL by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1626.   Defendant also failed to comply with Pennsylvania law, which requires replacement value to be determined by one of the following methods: "(i) Guide source method. The appraiser shall calculate the average of two figures reflecting the retail book value of a vehicle of like kind and condition, as provided by guide sources approved by the Commissioner. A listing of approved guide sources will be published once a year in the Pennsylvania Bulletin. The appraised value shall be adjusted for equipment and mileage, less the cost of repair of damage which preexisted the accident in question. No other deductions may be taken except for salvage and then only if the owner elects to retain the vehicle. (ii) Actual cost method. The appraiser shall determine the actual cost of purchase of an available motor vehicle of like kind and quality in condition similar to or better than the motor vehicle being appraised in its predamaged condition. The appraiser shall specify, in writing, the location of the vehicle of like kind and quality. (iii)Dealer quotation method. The appraiser shall consult with dealers or other persons knowledgeable in the field to secure quotations as to the value of the motor vehicle being appraised. At least two quotations shall be secured. The figures thus secured shall be averaged." Pennsylvania 31 Pa. Code §62.3(e).

1627.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles and its failure to comply with Pennsylvania law, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Pennsylvania UTPCPL, including without limitation, advertising goods or services with intent not to sell them as advertised and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

1628.   Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1629.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1630.   The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1631.   Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1632. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Pennsylvania UTPCPL in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1633. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania UTPCPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1634. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1635. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or

would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1636.  Defendant's violations of the Pennsylvania UTPCPL present a continuing risk of future harm to Plaintiffs and the Class members.

1637.  Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Pennsylvania UTPCPL and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania UTPCPL.

## COUNT 171

## BREACH OF CONTRACT

1638.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1639.  This Count is brought on behalf of the Pennsylvania Subclass (for purposes of this Count, the "Class").

1640.  Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1641.  Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1642.  Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1643.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1644.   Defendant also failed to comply with Pennsylvania law, which requires replacement value to be determined by one of the following methods: "(i) Guide source method. The appraiser shall calculate the average of two figures reflecting the retail book value of a vehicle of like kind and condition, as provided by guide sources approved by the Commissioner. A listing of approved guide sources will be published once a year in the Pennsylvania Bulletin. The appraised value shall be adjusted for equipment and mileage, less the cost of repair of damage which preexisted the accident in question. No other deductions may be taken except for salvage and then only if the owner elects to retain the vehicle. (ii) Actual cost method. The appraiser shall determine the actual cost of purchase of an available motor vehicle of like kind and quality in condition similar to or better than the motor vehicle being appraised in its predamaged condition. The appraiser shall specify, in writing, the location of the vehicle of like kind and quality. (iii)Dealer quotation method. The appraiser shall consult with dealers or other persons knowledgeable in the field to secure quotations as to the value of the motor vehicle being appraised. At least two quotations shall be secured. The figures thus secured shall be averaged." Pennsylvania 31 Pa. Code §62.3(e).

1645.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1646.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 172

## BREACH OF COVENANT OF GOOD FAITH OR FAIR DEALING

1647.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1648.   This Count is brought on behalf of the Pennsylvania Subclass (for purposes of this Count, the "Class").

1649.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1650.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1651.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the

parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1652.   Defendant also failed to comply with Pennsylvania law, which requires replacement value to be determined by one of the following methods: "(i) Guide source method. The appraiser shall calculate the average of two figures reflecting the retail book value of a vehicle of like kind and condition, as provided by guide sources approved by the Commissioner. A listing of approved guide sources will be published once a year in the Pennsylvania Bulletin. The appraised value shall be adjusted for equipment and mileage, less the cost of repair of damage which preexisted the accident in question. No other deductions may be taken except for salvage and then only if the owner elects to retain the vehicle. (ii) Actual cost method. The appraiser shall determine the actual cost of purchase of an available motor vehicle of like kind and quality in condition similar to or better than the motor vehicle being appraised in its predamaged condition. The appraiser shall specify, in writing, the location of the vehicle of like kind and quality. (iii)Dealer quotation method. The appraiser shall consult with dealers or other persons knowledgeable in the field to secure quotations as to the value of the motor vehicle being appraised. At least two quotations shall be secured. The figures thus secured shall be averaged." Pennsylvania 31 Pa. Code §62.3(e).

1653.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b.   Failing to pay insureds the ACV of their total-loss vehicles;

     c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

     d.   Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1654.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 173

## UNJUST ENRICHMENT

1655.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1656.   This Count is brought on behalf of the Pennsylvania Subclass (for purposes of this Count, the "Class").

1657.   Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

1658.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1659.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1660.   Defendant also failed to comply with Pennsylvania law, which requires replacement value to be determined by one of the following methods: "(i) Guide source method. The appraiser shall calculate the average of two figures reflecting the retail book value of a vehicle of like kind and condition, as provided by guide sources approved by the Commissioner. A listing of approved guide sources will be published once a year in the Pennsylvania Bulletin. The appraised value shall be adjusted for equipment and mileage, less the cost of repair of damage which preexisted the accident in question. No other deductions may be taken except for salvage and then only if the owner elects to retain the vehicle. (ii) Actual cost method. The appraiser shall determine the actual cost of purchase of an available motor vehicle of like kind and quality in condition similar to or better than the motor vehicle being appraised in its predamaged condition. The appraiser shall specify, in writing, the location of the vehicle of like kind and quality. (iii)Dealer quotation method. The appraiser shall consult with dealers or other persons knowledgeable in the field to secure quotations as to the value of the motor vehicle being appraised. At least two quotations shall be secured. The figures thus secured shall be averaged." Pennsylvania 31 Pa. Code §62.3(e).

1661.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Pennsylvania law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1662.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1663.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 174

## DECLARATORY JUDGMENT

1664.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1665.   This Count is brought on behalf of the Pennsylvania Subclass (for purposes of this Count, the "Class").

1666.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1667.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1668.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1669.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**LL.    South Carolina**

## COUNT 175

### BREACH OF CONTRACT

1670.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1671.   This Count is brought on behalf of the South Carolina Subclass (for purposes of this Count, the "Class").

1672.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1673.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1674.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1675.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1676.   Defendant also failed to comply with South Carolina law by "[k]nowingly misrepresenting to insureds or third-party claimants pertinent facts or policy provisions relating to

coverages at issue or providing deceptive or misleading information with respect to coverages"; "[n]ot attempting in good faith to effect prompt, fair, and equitable settlement of claims, including third-party liability claims, submitted to it in which liability has become reasonably clear"; "[c]ompelling policyholders or claimants, including third-party claimants under liability policies, to institute suits to recover amounts reasonably due or payable with respect to claims arising under its policies by offering substantially less than the amounts ultimately recovered through suits brought by the claimants or through settlements with their attorneys employed as the result of the inability of the claimants to effect reasonable settlements with the insurers"; and "[o]ffering to settle claims, including third-party liability claims, for an amount less than the amount otherwise reasonably due or payable based upon the possibility or probability that the policyholder or claimant would be required to incur attorneys' fees to recover the amount reasonably due or payable." S.C. CODE. ANN. § 38-59-20.

1677.  Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1678.  As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 176

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1679.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1680.  This Count is brought on behalf of the South Carolina Subclass (for purposes of this Count, the "Class").

1681.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1682.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1683.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1684.   Defendant also failed to comply with South Carolina law by "[k]nowingly misrepresenting to insureds or third-party claimants pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages"; "[n]ot attempting in good faith to effect prompt, fair, and equitable settlement of claims, including third-party liability claims, submitted to it in which liability has become reasonably clear"; "[c]ompelling policyholders or claimants, including third-party claimants under liability policies, to institute suits to recover amounts reasonably due or payable with respect to claims arising under its policies by offering substantially less than the amounts ultimately recovered through suits

brought by the claimants or through settlements with their attorneys employed as the result of the inability of the claimants to effect reasonable settlements with the insurers"; and "[o]ffering to settle claims, including third-party liability claims, for an amount less than the amount otherwise reasonably due or payable based upon the possibility or probability that the policyholder or claimant would be required to incur attorneys' fees to recover the amount reasonably due or payable." S.C. CODE. ANN. § 38-59-20.

1685. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b. Failing to pay insureds the ACV of their total-loss vehicles;

    c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1686. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 177

## UNJUST ENRICHMENT

1687. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1688.   This Count is brought on behalf of the South Carolina Subclass (for purposes of this Count, the "Class").

1689.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1690.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1691.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1692.   Defendant also failed to comply with South Carolina law by "[k]nowingly misrepresenting to insureds or third-party claimants pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages"; "[n]ot attempting in good faith to effect prompt, fair, and equitable settlement of claims, including third-party liability claims, submitted to it in which liability has become reasonably clear"; "[c]ompelling policyholders or claimants, including third-party claimants under liability policies, to institute suits to recover amounts reasonably due or payable with respect to claims arising under its policies by offering substantially less than the amounts ultimately recovered through suits brought by the claimants or through settlements with their attorneys employed as the result of the inability of the claimants to effect reasonable settlements with the insurers"; and "[o]ffering to settle claims, including third-party liability claims, for an amount less than the amount otherwise reasonably due or payable based upon the possibility or probability that the policyholder or

claimant would be required to incur attorneys' fees to recover the amount reasonably due or payable." S.C. CODE. ANN. § 38-59-20.

1693.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with South Carolina law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1694.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1695.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 178

## DECLARATORY JUDGMENT

1696.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1697.   This Count is brought on behalf of the South Carolina Subclass (for purposes of this Count, the "Class").

1698.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1699.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation

of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1700. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1701. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**MM.  South Dakota**

### COUNT 179

**VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW
S.D. CODIFIED LAWS § 37-24-6, *et seq*.**

1702. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1703. This Count is brought on behalf of the South Dakota Subclass (for purposes of this Count, the "Class").

1704. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of S.D. CODIFIED LAWS § 37-24-1(8).

1705. Defendant was and is engaged in "trade" or "commerce" within the meaning of S.D. CODIFIED LAWS § 37-24-1(13).

1706. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby [.]" S.D. CODIFIED LAWS § 37-24-6(1).

1707. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the South Dakota CPL by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1708. Defendant also failed to comply with South Dakota law, by "[k]nowingly misrepresent[ing] to a claimant or an insured a relevant fact or policy provision relating to coverages at issue"; failing "to make a good faith attempt to effectuate prompt, fair, and equitable settlement of claims submitted in which liability coverage, and causation of claims have become reasonably clear"; "[c]ompel[ing] an insured or beneficiary to institute a suit to recover an amount due under its policies by offering substantially less than the amount ultimately recovered in a suit brought by the insured or beneficiary"; and "[a]ttempt[ing] to settle a claim for less than the amount that a reasonable person would believe the insured or beneficiary is entitled by reference to written or printed advertising material accompanying or made part of an application." S.D. CODIFIED LAWS § 58-12-34.

1709.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with South Dakota law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the South Dakota CPL.

1710.   Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1711.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1712.   The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1713.  Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had

concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1714.  Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the South Dakota CPL in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1715.  Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Dakota CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1716.  Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1717.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or

would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1718.   Defendant's violations of the South Dakota CPL present a continuing risk of future harm to Plaintiffs and the Class members.

1719.   Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the South Dakota CPL and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Dakota CPL.

## COUNT 180

## BREACH OF CONTRACT

1720.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1721.   This Count is brought on behalf of the South Dakota Subclass (for purposes of this Count, the "Class").

1722.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1723.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1724.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1725.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1726. Defendant also failed to comply with South Dakota law, by "[k]nowingly misrepresent[ing] to a claimant or an insured a relevant fact or policy provision relating to coverages at issue"; failing "to make a good faith attempt to effectuate prompt, fair, and equitable settlement of claims submitted in which liability coverage, and causation of claims have become reasonably clear"; "[c]ompel[ing] an insured or beneficiary to institute a suit to recover an amount due under its policies by offering substantially less than the amount ultimately recovered in a suit brought by the insured or beneficiary"; and "[a]ttempt[ing] to settle a claim for less than the amount that a reasonable person would believe the insured or beneficiary is entitled by reference to written or printed advertising material accompanying or made part of an application." S.D. CODIFIED LAWS § 58-12-34.

1727. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1728. As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 181

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1729. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1730. This Count is brought on behalf of the South Dakota Subclass (for purposes of this Count, the "Class").

1731.  Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1732.  Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1733.  Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1734.  Defendant also failed to comply with South Dakota law, by "[k]nowingly misrepresent[ing] to a claimant or an insured a relevant fact or policy provision relating to coverages at issue"; failing "to make a good faith attempt to effectuate prompt, fair, and equitable settlement of claims submitted in which liability coverage, and causation of claims have become reasonably clear"; "[c]ompel[ing] an insured or beneficiary to institute a suit to recover an amount due under its policies by offering substantially less than the amount ultimately recovered in a suit brought by the insured or beneficiary"; and "[a]ttempt[ing] to settle a claim for less than the amount that a reasonable person would believe the insured or beneficiary is entitled by reference to written

or printed advertising material accompanying or made part of an application." S.D. CODIFIED LAWS § 58-12-34.

1735.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b.   Failing to pay insureds the ACV of their total-loss vehicles;

   c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

   d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1736.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 182

## UNJUST ENRICHMENT

1737.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1738.   This Count is brought on behalf of the South Dakota Subclass (for purposes of this Count, the "Class").

1739.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1740.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1741.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1742.   Defendant also failed to comply with South Dakota law, by "[k]nowingly misrepresent[ing] to a claimant or an insured a relevant fact or policy provision relating to coverages at issue"; failing "to make a good faith attempt to effectuate prompt, fair, and equitable settlement of claims submitted in which liability coverage, and causation of claims have become reasonably clear"; "[c]ompel[ing] an insured or beneficiary to institute a suit to recover an amount due under its policies by offering substantially less than the amount ultimately recovered in a suit brought by the insured or beneficiary"; and "[a]ttempt[ing] to settle a claim for less than the amount that a reasonable person would believe the insured or beneficiary is entitled by reference to written or printed advertising material accompanying or made part of an application." S.D. CODIFIED LAWS § 58-12-34.

1743.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with South Dakota law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1744.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1745.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 183

## DECLARATORY JUDGMENT

1746.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1747.   This Count is brought on behalf of the South Dakota Subclass (for purposes of this Count, the "Class").

1748.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1749.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1750.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1751.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

NN.   **Tennessee**

## COUNT 184

## BREACH OF CONTRACT

1752.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1753.   This Count is brought on behalf of the Tennessee Subclass (for purposes of this Count, the "Class").

1754.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1755.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1756.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1757.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1758.   Defendant also failed to comply with Tennessee law, which requires insurers to derive the actual cost to purchase a comparable automobile from one of the following:

1. The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last ninety (90) days to consumers in the local market area; or

2. The cost of two (2) or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last ninety (90) days to consumers when comparable automobiles are not available in the local market area pursuant to part 0780-01-05-.09(1)(b)1. above; or

3. One (1) of two (2) or more quotations obtained by the insurer from two (2) or more licensed dealers located within the local market area when the cost of comparable automobiles are not available pursuant to parts 0780-01-05- .09(1)(b)1. and (1)(b)2. above; or

4. Any source for determining statistically valid fair market values that meet all of the following criteria:

(i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area;

(ii) The source's database shall produce values for at least eighty-five percent (85%) of all makes and models for the last fifteen (15) model years, taking into account the values of all major options for such vehicles; and

(iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity.

Tenn. Comp. R. & Regs. 0780-01-05-.09(1)(b).

1759.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1760.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 185

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1761.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1762.  This Count is brought on behalf of the Tennessee Subclass (for purposes of this Count, the "Class").

1763.  Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1764.  Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1765.  Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1766.  Defendant also failed to comply with Tennessee law, which requires insurers to derive the actual cost to purchase a comparable automobile from one of the following:

1. The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last ninety (90) days to consumers in the local market area; or
2. The cost of two (2) or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last ninety (90) days to consumers when comparable automobiles are not available in the local market area pursuant to part 0780-01-05-.09(1)(b)1. above; or

354

3. One (1) of two (2) or more quotations obtained by the insurer from two (2) or more licensed dealers located within the local market area when the cost of comparable automobiles are not available pursuant to parts 0780-01-05- .09(1)(b)1. and (1)(b)2. above; or

4. Any source for determining statistically valid fair market values that meet all of the following criteria:

(i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area;

(ii) The source's database shall produce values for at least eighty-five percent (85%) of all makes and models for the last fifteen (15) model years, taking into account the values of all major options for such vehicles; and

(iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity.

Tenn. Comp. R. & Regs. 0780-01-05-.09(1)(b).

1767.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Failing to pay insureds the ACV of their total-loss vehicles;

    c.  Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1768.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 186

## UNJUST ENRICHMENT

1769.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1770.    This Count is brought on behalf of the Tennessee Subclass (for purposes of this Count, the "Class").

1771.    Plaintiffs plead this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

1772.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1773.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1774.    Defendant also failed to comply with Tennessee law, which requires insurers to derive the actual cost to purchase a comparable automobile from one of the following:

1. The cost of two or more comparable automobiles in the local market area when comparable automobiles are available or were available within the last ninety (90) days to consumers in the local market area; or
2. The cost of two (2) or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last ninety (90) days to consumers when comparable automobiles are not available in the local market area pursuant to part 0780-01-05-.09(1)(b)1. above; or
3. One (1) of two (2) or more quotations obtained by the insurer from two (2) or more licensed dealers located within the local market area when the cost of comparable automobiles are not available pursuant to parts 0780-01-05- .09(1)(b)1. and (1)(b)2. above; or
4. Any source for determining statistically valid fair market values that meet all of the following criteria:

(i) The source shall give primary consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area;

(ii) The source's database shall produce values for at least eighty-five percent (85%) of all makes and models for the last fifteen (15) model years, taking into account the values of all major options for such vehicles; and

(iii) The source shall produce fair market values based on current data available from the area surrounding the location where the insured vehicle was principally garaged or a necessary expansion of parameters (such as time and area) to assure statistical validity.

Tenn. Comp. R. & Regs. 0780-01-05-.09(1)(b).

1775.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Tennessee law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1776.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1777.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 187

## DECLARATORY JUDGMENT

1778.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1779.   This Count is brought on behalf of the Tennessee Subclass (for purposes of this Count, the "Class").

1780.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1781.  Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1782.  Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1783.  As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**OO.  Texas**

**COUNT 188**

**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT**
**Texas Bus. & Com. Code §§ 17.41, *et seq.***

1784.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1785.  This Count is brought on behalf of the Texas Subclass (for purposes of this Count, the "Class").

1786.  Defendant is a "person" engaged in "trade" or "commerce" as defined by Tex. Bus. & Com. Code § 17.45(3) & (6).

1787.   Plaintiffs and the Class members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

1788.   The Texas Deceptive Trade Practices—Consumer Protection Act ("Texas DTP-CPA"), Texas Bus. & Com. Code §§ 17.41, *et seq*., prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

1789.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Texas DTP-CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1790.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Texas DTP-CPA, including without limitation, advertising goods or services with intent not to sell them as advertised and failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

1791.   Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1792.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to their insureds.

1793. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1794. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1795. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Texas DTP-CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1796. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTP-CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions,

concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1797. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1798. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1799. Defendant's violations of the Texas DTP-CPA present a continuing risk of future harm to Plaintiffs and the Class members.

1800. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Texas DTP-CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTP-CPA.

## COUNT 189

## BREACH OF CONTRACT

1801. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1802. This Count is brought on behalf of the Texas Subclass (for purposes of this Count, the "Class").

1803.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1804.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1805.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1806.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1807.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1808.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 190

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1809.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1810.   This Count is brought on behalf of the Texas Subclass (for purposes of this Count, the "Class").

1811.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1812.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1813.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of their ACV payment to insureds, as alleged herein.

1814.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

     a.   Intentionally applying typical negotiation adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

     b.   Failing to pay insureds the ACV of their total0loss vehicles;

     c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1815.  Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 191

## UNJUST ENRICHMENT

1816.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1817.  This Count is brought on behalf of the Texas Subclass (for purposes of this Count, the "Class").

1818.  Plaintiffs plead this claim separately as well as in the alternative to his other claims, as without such claims she would have no adequate legal remedy.

1819.  Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1820.  Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1821.  If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds, Plaintiffs and the Class members either

would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1822.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1823.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 192

## DECLARATORY JUDGMENT

1824.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1825.   This Count is brought on behalf of the Texas Subclass (for purposes of this Count, the "Class").

1826.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1827.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1828.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1829.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**PP.     Utah**

## COUNT 193

## BREACH OF CONTRACT

1830.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1831.   This Count is brought on behalf of the Utah Subclass (for purposes of this Count, the "Class").

1832.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1833.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1834.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1835.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment

to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1836. Defendant also failed to comply with Utah law, which requires insurance companies who make cash settlements based upon the actual cost of the totaled vehicle to determine the cost by using: "(i) the cost of two or more comparable automobiles in the local market area when a comparable automobile is available or was available within the last 90-days to consumers in the local market area; (ii) the cost of two or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last 90-days to consumers when comparable automobiles are not available in the local market area pursuant to Subsection R590-190-11.(1)(b)(i); (iii) one of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area; or (iv) any source of determining statistically valid fair market values…" UTAH ADMIN. CODE r. § 590-190-11(1)(b).

1837. Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1838. As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 194

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1839. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1840.   This Count is brought on behalf of the Utah Subclass (for purposes of this Count, the "Class").

1841.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1842.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1843.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1844.   Defendant also failed to comply with Utah law, which requires insurance companies who make cash settlements based upon the actual cost of the totaled vehicle to determine the cost by using: "(i) the cost of two or more comparable automobiles in the local market area when a comparable automobile is available or was available within the last 90-days to consumers in the local market area; (ii) the cost of two or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without

the state, that are available or were available within the last 90-days to consumers when comparable automobiles are not available in the local market area pursuant to Subsection R590-190-11.(1)(b)(i); (iii) one of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area; or (iv) any source of determining statistically valid fair market values…" UTAH ADMIN. CODE r. § 590-190-11(1)(b).

1845. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b. Failing to pay insureds the ACV of their total-loss vehicles;

    c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1846. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 195

## UNJUST ENRICHMENT

1847. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1848.   This Count is brought on behalf of the Utah Subclass (for purposes of this Count, the "Class").

1849.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1850.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1851.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1852.   Defendant also failed to comply with Utah law, which requires insurance companies who make cash settlements based upon the actual cost of the totaled vehicle to determine the cost by using: "(i) the cost of two or more comparable automobiles in the local market area when a comparable automobile is available or was available within the last 90-days to consumers in the local market area; (ii) the cost of two or more comparable automobiles in areas proximate to the local market area, including the closest major metropolitan areas within or without the state, that are available or were available within the last 90-days to consumers when comparable automobiles are not available in the local market area pursuant to Subsection R590-190-11.(1)(b)(i); (iii) one of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area; or (iv) any source of determining statistically valid fair market values…" UTAH ADMIN. CODE r.  § 590-190-11(1)(b).

1853.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Utah law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1854.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1855.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 196

## DECLARATORY JUDGMENT

1856.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1857.   This Count is brought on behalf of the Utah Subclass (for purposes of this Count, the "Class").

1858.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1859.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable

vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1860. Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1861. As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**QQ. Virginia**

## COUNT 197

## BREACH OF CONTRACT

1862. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1863. This Count is brought on behalf of the Virginia Subclass (for purposes of this Count, the "Class").

1864. Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1865. Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1866.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1867.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1868.   Defendant also failed to comply with Virginia law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to make prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle claims for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application." V.A. ADMIN. CODE § 38.2-510.

1869.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1870.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 198

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1871.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1872.   This Count is brought on behalf of the Virginia Subclass (for purposes of this Count, the "Class").

1873.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1874.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1875.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1876.   Defendant also failed to comply with Virginia law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith

to make prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle claims for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application." V.A. ADMIN. CODE § 38.2-510.

1877.  As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Failing to pay insureds the ACV of their total-loss vehicles;

    c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1878.  Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 199

## UNJUST ENRICHMENT

1879.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

375

1880.   This Count is brought on behalf of the Virginia Subclass (for purposes of this Count, the "Class").

1881.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1882.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1883.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1884.   Defendant also failed to comply with Virginia law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to make prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle claims for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application." V.A. ADMIN. CODE § 38.2-510.

1885.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Virginia law,

Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1886.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1887.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

<strong>COUNT 200</strong>

<strong>DECLARATORY JUDGMENT</strong>

1888.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1889.   This Count is brought on behalf of the Virginia Subclass (for purposes of this Count, the "Class").

1890.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1891.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1892.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1893.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**RR.    West Virginia**

### COUNT 201

### VIOLATION OF THE CONSUMER CREDIT AND PROTECTION ACT W. VA. CODE § 46A-1-101, *et seq.*

1894.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1895.   This Count is brought on behalf of the West Virginia Subclass (for purposes of this Count, the "Class").

1896.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of W. VA. CODE § 46a-1-102(31).

1897.   Plaintiffs and the Class members are "consumers" within the meaning of W. VA. CODE § 46a-1-102(12).

1898.   Defendant was and is engaged in "trade" or "commerce" within the meaning of W. VA. CODE § 46a-1-102(6).

1899.   The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce...." W. VA. CODE § 46a-1-104.

1900.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the West Virginia CCPA by knowingly and intentionally concealing and failing to

disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

1901.   Defendant also failed to comply with West Virginia law, which requires insurance companies who make cash settlements to meet the following criteria: "1. It must use the most recent version of an "Official Used Car Guide" approved by the Commissioner and uniformly and regularly used by the company, as a guide for setting the minimum value of the motor vehicle which is the subject of the claim… 2. … the company must secure dealer quotations on the retail value of similar vehicles and base the settlement upon them.  The offer must enable the insured to purchase the substantially similar vehicle for the cash settlement and any deviation from this practice must be supported by documentation giving particular information about the motor vehicle's condition… 3.  The company shall provide a reasonable written explanation to the concerned parties when cash settlement offers…" W. VA. CODE § 114-14-7.4(a).

1902.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with West Virginia law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the West Virginia CCPA.

1903.   Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1904.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1905. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1906. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1907. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the West Virginia CCPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1908. Plaintiffs and the Class members were aggrieved by Defendant's violations of the West Virginia CCPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1909.   Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1910.   Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1911.   Defendant's violations of the West Virginia CCPA present a continuing risk of future harm to Plaintiffs and the Class members.

1912.   Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the West Virginia CCPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the West Virginia CCPA.

## COUNT 202

## BREACH OF CONTRACT

1913.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1914.   This Count is brought on behalf of the West Virginia Subclass (for purposes of this Count, the "Class").

1915.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1916.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1917.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1918.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1919.   Defendant also failed to comply with West Virginia law, which requires insurance companies who make cash settlements to meet the following criteria: "1. It must use the most recent version of an "Official Used Car Guide" approved by the Commissioner and uniformly and regularly used by the company, as a guide for setting the minimum value of the motor vehicle which is the subject of the claim… 2. … the company must secure dealer quotations on the retail value of similar vehicles and base the settlement upon them.  The offer must enable the insured to purchase the substantially similar vehicle for the cash settlement and any deviation from this practice must be supported by documentation giving particular information about the motor

vehicle's condition… 3. The company shall provide a reasonable written explanation to the concerned parties when cash settlement offers…" W. VA. CODE § 114-14-7.4(a).

1920.  Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1921.  As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 203

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1922.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1923.  This Count is brought on behalf of the West Virginia Subclass (for purposes of this Count, the "Class").

1924.  Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1925.  Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1926.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1927.   Defendant also failed to comply with West Virginia law, which requires insurance companies who make cash settlements to meet the following criteria: "1. It must use the most recent version of an "Official Used Car Guide" approved by the Commissioner and uniformly and regularly used by the company, as a guide for setting the minimum value of the motor vehicle which is the subject of the claim… 2. … the company must secure dealer quotations on the retail value of similar vehicles and base the settlement upon them.  The offer must enable the insured to purchase the substantially similar vehicle for the cash settlement and any deviation from this practice must be supported by documentation giving particular information about the motor vehicle's condition… 3.  The company shall provide a reasonable written explanation to the concerned parties when cash settlement offers…" W. VA. CODE § 114-14-7.4(a).

1928.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

> a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;
>
> b.  Failing to pay insureds the ACV of their total-loss vehicles;
>
> c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1929.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 204

## UNJUST ENRICHMENT

1930.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1931.   This Count is brought on behalf of the West Virginia Subclass (for purposes of this Count, the "Class").

1932.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1933.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1934.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1935.   Defendant also failed to comply with West Virginia law, which requires insurance companies who make cash settlements to meet the following criteria: "1. It must use the most recent version of an "Official Used Car Guide" approved by the Commissioner and uniformly and

385

regularly used by the company, as a guide for setting the minimum value of the motor vehicle which is the subject of the claim… 2. … the company must secure dealer quotations on the retail value of similar vehicles and base the settlement upon them. The offer must enable the insured to purchase the substantially similar vehicle for the cash settlement and any deviation from this practice must be supported by documentation giving particular information about the motor vehicle's condition… 3. The company shall provide a reasonable written explanation to the concerned parties when cash settlement offers…" W. VA. CODE § 114-14-7.4(a).

1936. If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with West Virginia law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1937. Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1938. Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 205

## DECLARATORY JUDGMENT

1939. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1940. This Count is brought on behalf of the West Virginia Subclass (for purposes of this Count, the "Class").

1941.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1942.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1943.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1944.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**SS.     Wisconsin**

## COUNT 206

## BREACH OF CONTRACT

1945.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1946.   This Count is brought on behalf of the Wisconsin Subclass (for purposes of this Count, the "Class").

1947.   Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1948.   Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1949.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1950.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1951.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

1952.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 207

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

1953.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1954.   This Count is brought on behalf of the Wisconsin Subclass (for purposes of this Count, the "Class").

1955.  Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

1956.  Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

1957.  Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

1958.  As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a.  Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b.  Failing to pay insureds the ACV of their total-loss vehicles;

   c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

      d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

1959.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 208

## UNJUST ENRICHMENT

1960.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1961.   This Count is brought on behalf of the Wisconsin Subclass (for purposes of this Count, the "Class").

1962.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

1963.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

1964.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1965.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to

artificially reduce its total-loss payments to insureds, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

1966.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

1967.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 209**

**DECLARATORY JUDGMENT**

1968.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1969.   This Count is brought on behalf of the Wisconsin Subclass (for purposes of this Count, the "Class").

1970.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

1971.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

1972.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

1973.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

**TT.    Wyoming**

**COUNT 110**

**VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT
WYO. STAT. ANN. § 40-12-102,** *et seq.*

1974.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1975.   This Count is brought on behalf of the Wyoming Subclass (for purposes of this Count, the "Class").

1976.   Defendant, Plaintiffs, and the Class members are "persons" within the meaning of WYO. STAT. ANN. § 40-12-102(a)(i).

1977.   Defendant was and is engaged in "consumer transactions" within the meaning of WYO. STAT. ANN. § 40-12-102(a)(ii).

1978.   The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits "unfair and deceptive acts or practices." WYO. STAT. ANN. § 40-12-105, *et. seq.*

1979.   As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Wyoming CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

392

1980.   Defendant also failed to comply with Wyoming law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; and "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." WYO. STAT. ANN. § 26-13-124.

1981.   By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Wyoming law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Wyoming CPA.

1982.   Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

1983.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

1984.   The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable

consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

1985. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

1986. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Wyoming CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1987. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Wyoming CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

1988. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's

application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

1989.  Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

1990.  Defendant's violations of the Wyoming CPA present a continuing risk of future harm to Plaintiffs and the Class members.

1991.  Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Wyoming CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wyoming CPA.

## COUNT 211

## BREACH OF CONTRACT

1992.  Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

1993.  This Count is brought on behalf of the Wyoming Subclass (for purposes of this Count, the "Class").

1994.  Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

1995.  Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

1996.   Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

1997.   Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

1998.   Defendant also failed to comply with Wyoming law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; and "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." WYO. STAT. ANN. § 26-13-124.

1999.   Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

2000.   As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 212

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

2001.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

2002.   This Count is brought on behalf of the Wyoming Subclass (for purposes of this Count, the "Class").

2003.   Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

2004.   Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

2005.   Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

2006.   Defendant also failed to comply with Wyoming law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; and "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." WYO. STAT. ANN. § 26-13-124.

2007.   As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.   Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.   Failing to pay insureds the ACV of their total-loss vehicles;

    c.   Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.   Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

2008.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a typical negotiation adjustment.

## COUNT 213

## UNJUST ENRICHMENT

2009.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

2010.   This Count is brought on behalf of the Wyoming Subclass (for purposes of this Count, the "Class").

2011.   Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

2012.   Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

2013.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

2014.   Defendant also failed to comply with Wyoming law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; and "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." WYO. STAT. ANN. § 26-13-124.

2015.   If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Wyoming law, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

2016.   Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

2017.   Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 214

## DECLARATORY JUDGMENT

2018.   Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

399

2019.   This Count is brought on behalf of the Wyoming Subclass (for purposes of this Count, the "Class").

2020.   A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

2021.   Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

2022.   Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

2023.   As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully seek judgement in Plaintiffs' favor and in favor of the Class as follows:

A. An Order certifying this action as a Class Action and appointing Plaintiffs as Class Representative and Plaintiffs' counsel as Class Counsel;

B. An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiffs and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C. Disgorgement of Defendant's profits;

D. Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant's described herein;

E. An award Plaintiffs' and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F. An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

Dated: March 18, 2022

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg*
scott@edelsberglaw.com
Christopher Gold*
chris@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320

**SEEGER WEISS LLP**
Christopher A. Seeger*
Christopher L Ayers*
55 Challenger Road, 6th Fl.
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

**SEEGER WEISS LLP**
Scott A. George
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
sgeorge@seegerweiss.com

*pro hac vice forthcoming*

**Counsel for Plaintiffs and the Proposed Class**