**EXHIBIT 2**

SEDGWICK, DETERT, MORAN & ARNOLD LLP
KEVIN J. DUNNE, Bar No. 40030
LAURA L. GOODMAN, Bar No. 142689
MICHELLE Y. MCISAAC, Bar No. 215294
ANDREW J. KING, Bar No. 253962
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
KATHERINE ARMSTRONG (pro hac vice)
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA M. GARNER,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | CASE NO. CV 08 1365 CW (EMC)<br><br>**DECLARATION OF LAURA L. GOODMAN IN SUPPORT OF STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>DATE: January 7, 2010<br>TIME: 2:00 P.M.<br>The Honorable Claudia Wilken |

I, Laura L. Goodman, hereby declare:

1. I am an attorney at law licensed to practice in the State of California and admitted to the bar of this Court. I am a partner at the law firm of Sedgwick, Detert, Moran & Arnold, LLP, attorneys of record for defendant State Farm Mutual Automobile Insurance Company in the above-captioned action. I have personal knowledge of the matters set forth herein and if call

upon to testify, could and would competently testify thereto.

2.    Attached hereto as Exhibit A is a true and correct copy of the proposed Agreement of Compromise and Settlement between plaintiff and defendant along with all Exhibits thereto, which include the proposed Notice of Settlement, the proposed Order of Preliminary Approval of Settlement, the proposed Supplemental Notice, and the Proposed Final Judgment.

I declare under penalty of perjury and in accordance with the laws of the United State of America that the foregoing is true and correct.  Executed this 30th day of December 2009 at San Francisco, California.

*/s/ Laura L. Goodman*
LAURA L. GOODMAN

-2-    CASE NO. CV 08 1365 CW (EMC)

DECLARATION OF LAURA L. GOODMAN ISO STATE FARM'S MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

SF/1651463v1

**EXHIBIT A**

SEDGWICK, DETERT, MORAN & ARNOLD LLP
KEVIN J. DUNNE  Bar No. 40030
LAURA L. GOODMAN  Bar No. 142689
MICHELLE Y. MCISAAC Bar No. 215294
ANDREW J. KING Bar No. 253962
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
KATHERINE ARMSTRONG (pro hac vice)
Four Times Square
New York, New York  10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
ROBERT J. NELSON  Bar No. 132797
MICHAEL W. SOBOL Bar No. 194857
ROGER HELLER Bar No. 215348
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

BIRKA-WHITE LAW OFFICES
DAVID M. BIRKA-WHITE Bar No. 85721
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

Attorneys for Plaintiff
ARNESHA M. GARNER

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ARNESHA M. GARNER, on behalf of herself and all others similarly situated,

      Plaintiff,

    v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.

CASE NO. CV 08 1365 CW (EMC)

**AGREEMENT OF COMPROMISE AND SETTLEMENT**

Arnesha Garner and State Farm Mutual Automobile Insurance Company, by and through their undersigned Counsel, hereby enter into this Agreement of Compromise and Settlement, subject to the approval of the United States District Court for the Northern District of California, pursuant to Federal Rule of Civil Procedure 23.

The undersigned Parties hereby stipulate and agree that, in consideration of the promises and covenants as set forth in this Agreement and upon the occurrence of the Effective Date, this Action shall be fully and finally settled and compromised upon the following terms and conditions, subject to Court approval.

**1.** **Background**

1.1.    From approximately March 12, 2007 until approximately February 18, 2008, State Farm California claims representatives used Total Loss Comparable Vehicle Valuation Reports, provided by Mitchell, in connection with their handling of vehicle physical damage claims by State Farm California insureds that used a Projected Sold Adjustment and/or Age of Ad Adjustment.[1]

1.2.    On March 10, 2008, Plaintiff filed the above-captioned Action seeking to recover for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of California Business and Professions Code § 17200 and (4) unjust enrichment. Plaintiff alleged that State Farm violated Title 10 of California Code of Regulations § 2695.8 (the "Total Loss Regulation" or "TLR") by using Total Loss Comparable Vehicle Valuation Reports that used a Projected Sold Adjustment and/or Age of Ad Adjustment in connection with its handling of Total Loss Vehicle claims in California.   Plaintiff filed her First Amended Complaint on July 7, 2008.

1.3.    State Farm denies the allegations of the Complaint and further alleges that (1) the TLR was not in effect during the relevant time frame, (2) the Total Loss Comparable Vehicle Valuation Reports used by State Farm during the relevant time frame complied with the TLR, (3) State Farm has complied with its contractual obligations to Plaintiff and other members of the Settlement Class in connection with its valuation of Total Loss Vehicles; and (4) State Farm made payments to Plaintiff and Settlement Class Members that reflected the actual cash values

---

[1] State Farm has also identified 57 Total Loss Comparable Vehicle Valuation Reports that Mitchell provided to State Farm California claim representatives in San Diego prior to March 12, 2007, the date when Mitchell became State Farm's primary total loss vendor, that also included a Projected Sold Adjustment and Age of Ad Adjustment.  Those State Farm insureds who received payments in connection with total loss vehicles pursuant to these 57 Total Loss Comparable Vehicle Valuation Reports are included in the Settlement Class for all purposes.

of their Total Loss Vehicles. Although State Farm believes that this Action is without merit, it has concluded that resolving these claims under the terms of this Agreement is desirable to reduce the time, risk and expense of defending the Action and to resolve finally and completely the Action and all of the Released Claims.

1.4. On April 14, 2008, State Farm made a Motion to Compel Contractual Appraisal and for a Stay Pending Appraisal. On June 30, 2008, the Court entered an order granting the motion. The Court held that State Farm "had the contractual right to demand an appraisal, and Plaintiff had the contractual obligation to proceed with the appraisal process. Pursuant to the terms of the contract, this was a precondition to Plaintiff's filing a lawsuit." (June 30, 2008 Order at 14-15.) The Court further found that the appraisal process provided for in State Farm's insurance policy was not one-sided, was sanctioned by state statute and was not unconscionable. (*Id.* at 18-19.)

1.5. On November 20, 2008, State Farm made a Motion for Summary Judgment seeking a judicial determination that the TLR was not in effect during the relevant time frame. On December 4, 2008, Plaintiff made a Cross-Motion for Summary Adjudication, seeking a judicial determination that the TLR was in effect during the relevant time frame. On March 23, 2009, the Court entered an order denying State Farm's motion, granting Plaintiff's motion, and holding that the TLR was in effect during the relevant time frame. (March 23, 2009 Order at 17-19.)

1.6. On September 20, 2009, Plaintiff moved for certification of the following class: "All individuals insured by State Farm California under a State Farm private passenger vehicle policy between March 12, 2007 and February 18, 2008: (1) who received a first party total loss settlement or settlement offer based in whole or in part on the 'projected sold price' of comparable vehicles; and/or (2) whose settlement or settlement offer was reduced to account for the difference between the date on which a comparable vehicle was advertised for sale and the date of loss of the claimant's vehicle (known as the 'age of ad' adjustment)." State Farm filed its opposition to class certification on October 1, 2009. The issue has been fully briefed, but not yet decided by the Court.

1.7. After analyzing the relevant facts and applicable law, recognizing the burdens, risks, uncertainties, time and expense of litigation, as well as the advantages of terms and procedures for a fair and efficient resolution of Settlement Class Members' claims under this Agreement, Plaintiff, Class Counsel and State Farm have concluded that this Agreement is a fair, equitable and just resolution of the Released Claims.

**2. <u>Definitions</u>**

As used in this Agreement, including the foregoing background section and the appendices and exhibits to this Agreement, the following terms have the meanings set forth below:

2.1. "Action" means the above captioned lawsuit pending in the United States District Court for the Northern District of California, styled *Garner v. State Farm Mutual Automobile Ins. Co.*, United States District Court, Northern District of California, Case No. CV 08 1365 CW (EMC).

2.2. "Administrative Costs" means all costs associated with the implementation and administration of this Settlement, including, without limitation, costs of providing notice, fees and expenses of the Administrator, Taxes and Tax Expenses. "Administrative Costs" do not include payments to Class Counsel or the Class Representative pursuant to section 13 or payments to Settlement Class Members.

2.3. "Administrative Cost Reserve" has the meaning given to that term in paragraph 8.1 of this Agreement.

2.4. "Administrator" means the person appointed by the Court to administer the Notice Plan, as provided in section 5 of this Agreement, and to administer the Settlement pursuant to sections 8 and 9 of this Agreement.

2.5. "Age of Ad Adjustment" means the adjustment to comparable vehicles used in Total Loss Comparable Vehicle Valuation Reports provided by Mitchell to State Farm in California, to account for depreciation of a vehicle between the time that it is listed for sale and the date of loss.

2.6. "Agreement" or "Settlement Agreement" means this Agreement of Compromise and Settlement, together with all appendices and exhibits substantially in the forms attached to this Agreement and including any modifications made with the written consent of all Parties, as provided for in paragraph 18.9.

2.7. "Business day" (whether capitalized or lower case) means any day except a Saturday, Sunday or other day on which federal courts are authorized by law to be closed.

2.8. "CDI" means the California Department of Insurance.

2.9. "Class Counsel" means David M. Birka-White of Birka-White Law Offices, and Robert J. Nelson, of Lieff, Cabraser, Heimann & Bernstein, LLP.

2.10. "Class Representative" means Arnesha Garner and/or any other individuals approved by the Court as class representatives.

2.11. "Complaint" means either the Complaint or First Amended Complaint filed in the Action, together with any and all amendments and supplements thereto.

2.12. "Court" means the United States District Court for the Northern District of California.

2.13. "Distribution Plan" has the meaning given to that term in paragraph 9.4 of this Agreement.

2.14. "DMV" means the California Department of Motor Vehicles.

2.15. "Effective Date" means the earliest of the following:

2.15.1. The date on which the time for appeal from the Final Judgment approving the Agreement has elapsed without any appeals being filed; or

2.15.2. All appeals from the Final Judgment approving this Agreement or from any appellate court decisions affirming the Final Judgment have been exhausted, and no further appeal may be taken.

2.16. "Deducted Amounts" has the meaning given to that term in paragraph 9.1 of this Agreement.

2.17. "Fairness Hearing" means the hearing to be conducted by the Court after notice to the Settlement Class, for the purpose of considering final approval of this Agreement pursuant to

Federal Rule of Civil Procedure 23(e) and Class Counsel's application for an award of attorneys' fees and expenses.

2.18. "Final Judgment" means a final judgment entered by the Court substantially in the form attached hereto as Exhibit 3.

2.19. "Gross Settlement Fund" has the meaning given to that term in paragraph 8.1 of this Agreement.

2.20. "Mitchell" means Mitchell International, Inc.

2.21. "Net Settlement Fund" has the meaning given to that term in paragraph 9.1 of this Agreement.

2.22. "Notice Plan" means the plan for providing notice of class certification, the Settlement and this Agreement to the Settlement Class, as described in section 5, including the Settlement Notice substantially in the form attached hereto as Exhibit 1.

2.23. "Objection Deadline" has the meaning given to that term in paragraph 7.1 of this Agreement.

2.24. "Opt Out Deadline" has the meaning given to that term in paragraph 6.1 of this Agreement.

2.25. "Parties" means the Class Representative and State Farm.

2.26. "Person" (whether capitalized or lower case) means a natural person, marital community, corporation, partnership, limited partnership, limited liability company, mutual company, association, joint stock company, estate, legal representative, trust, unincorporated organization, governmental entity or department, public service corporation and any other type of legal entity.

2.27. "Preliminary Approval Order" means the Court's order, in substantially the form attached hereto as Exhibit 2, preliminarily approving this Agreement pursuant to Federal Rule of Civil Procedure 23(e).

2.28. "Projected Sold Adjustment" means an adjustment to the asking price of comparable vehicles used in Total Loss Comparable Vehicle Valuation Reports provided by

1  Mitchell to State Farm in California to reflect the price for which that comparable vehicle was

2  projected to sell.

3      2.29.  "Released Claims" means any and all claims that Settlement Class Members may

4  have or may acquire against the Released Parties, or any of them, arising out of or related to

5  State Farm's use of the Subject Valuation Reports, including without limitation, all claims for

6  damages or remedies of whatever kind or character, known or unknown, that are now recognized

7  by law or that may be created or recognized in the future by statute, regulation, judicial decision,

8  administrative adjudication, or in any other manner, including without limitation for actual

9  damages, exemplary and punitive damages, statutory damages, penalties of any kind, property

10  damage, personal injuries, emotional distress, loss of wages, income, earning, and earning

11  capacity, economic or business losses, restitution, disgorgement of profits, prejudgment and

12  postjudgment interest, injunctive or declaratory relief, and any other losses or detriment of any

13  kind.

14      Without limiting the foregoing, Released Claims include any and all claims for breach of

15  contract, negligence, breach of fiduciary duty, bad faith, fraud, unfair business practices, unfair

16  competition, deceptive trade practices, conspiracy, concert of action, violations of any statute or

17  regulation and all claims that were or could have been asserted in the Action.

18      2.30.  The "Released Parties" are State Farm, Mitchell, J.D. Power & Associates, and

19  each of their current and former agents, employees, officers, directors, attorneys, owners,

20  shareholders, policyholders, associated and affiliated companies, parents, divisions, subsidiaries,

21  successors, assigns, reinsurers, and liability insurance carriers.  To the extent of their liability for

22  the alleged acts or omissions giving rise to the Released Claims, "Released Parties" also means

23  State Farm Insurance Agents, and independent or contract vehicle repair shops consulted by

24  State Farm, together with each of the foregoing's current and former agents, employees, officers,

25  directors, attorneys, owners, shareholders, associated and affiliated companies, parents,

26  divisions, subsidiaries, successors, assigns, and insurers.

27      2.31.  "Request for Exclusion" means a valid, timely, written request to be excluded

28  from the Settlement Class.

2.32. "Settlement" means the terms and conditions of settlement as set forth in this Agreement.

2.33. "Settlement Class" means any and all persons insured under a State Farm vehicle insurance policy who received a first party total loss comprehensive or collision payment on a claim administered in California, based in whole or in part on a Total Loss Comparable Vehicle Valuation Report that used a Projected Sold Adjustment and/or Age of Ad Adjustment.

2.34. "Settlement Class Member" means any person falling within the definition of the Settlement Class, except for persons who file timely and valid Requests for Exclusion from the Settlement Class and do not timely withdraw such Request for Exclusion.

2.35. "Settlement Factor" has the meaning given to that term in paragraph 9.3 of this Agreement.

2.36. "Settlement Notice" means the form of notice substantially in the form attached hereto as Exhibit 1.

2.37. "State Farm" means State Farm Mutual Automobile Insurance Company and/or State Farm Fire and Casualty Insurance Company.

2.38. "State Farm Claim Number" means the unique number that State Farm assigned to the Total Loss Vehicle claim of each member of the Settlement Class.

2.39. "State Farm Insurance Agent" means any person authorized by written agreement with State Farm or State Farm's associated and affiliated companies to solicit applications for insurance and financial services; collect premiums, fees and charges; countersign and deliver policies; reinstate and transfer insurance; and/or to assist customers and cooperate with representatives of State Farm or State Farm's associated and affiliated companies in reporting and handling claims.

2.40. "Subject Insurance Policy" means any State Farm vehicle policy pursuant to which State Farm made a payment for a Total Loss Vehicle to a Settlement Class Member based in whole or in part on a Subject Valuation Report.

2.41. "Subject Valuation Report" means a Total Loss Comparable Vehicle Valuation Report provided by Mitchell to State Farm that included a Projected Sold Adjustment and/or Age

AGREEMENT OF COMPROMISE AND SETTLEMENT

of Ad Adjustment and which was used by State Farm to make a payment to a Settlement Class Member under the comprehensive or collision provisions of a Subject Insurance Policy (and not pursuant to uninsured or underinsured motorist coverage).

2.42. "Supplemental Notice" has the meaning given to that term in paragraph 9.5 of this Agreement.

2.43. "Taxes" has the meaning given to that term in paragraph 8.4 of this Agreement.

2.44. "Tax Expenses" has the meaning given to that term in paragraph 8.5 of this Agreement.

2.45. "Total Loss Comparable Vehicle Valuation Report" means a report generated by a computerized system that values a Total Loss Vehicle by identifying comparable vehicles and making adjustments to either the asking or selling price of such vehicles in an attempt to determine the actual cash value of the Total Loss Vehicle at the time of loss. Total Loss Comparable Vehicle Valuation Reports do not include either appraisals or reports that use dealer quotes.

2.46. "Total Loss Regulation" or "TLR" or means 10 California Code of Regulations § 2695.8 as it appeared in the California Code of Regulations between August 1, 2006 and February 18, 2008.

2.47. "Total Loss Vehicle" means a vehicle owned by a person within the Settlement Class that was determined by State Farm to be a total loss.

2.48. "VLF Data" means the range of sales prices derived from vehicle license fee information maintained by the DMV.

**3.** **Settlement Class**

3.1. Plaintiff will seek, and State Farm will not oppose, certification of the Settlement Class by the Court pursuant to Federal Rule of Civil Procedure 23, for the purpose of settlement only. At the same time, Plaintiff will seek, and State Farm will not oppose, approval of Plaintiff as Class Representative and the following attorneys as Class Counsel: David M. Birka-White of Birka-White Law Offices, and Robert J. Nelson, of Lieff, Cabraser, Heimann & Bernstein, LLP.

3.2.     State Farm conditionally agrees and consents to certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only, and for the sole purpose of creating the Settlement Class.  State Farm's agreement is contingent upon (1) the Parties' execution of this Agreement, (2) the Court's approval of this Agreement and (3) the occurrence of the Effective Date.  If this Agreement is, for any reason, not approved or the Effective Date does not occur, State Farm reserves its right to reassert all of its objections and defenses to certification of any class, and neither Plaintiff nor proposed Class Counsel will offer State Farm's conditional agreement to certification of the Settlement Class as evidence in support of a motion to certify any class.

3.3.     Plaintiff will request that notice and an opportunity to request exclusion from the Settlement Class be provided to all persons within the Settlement Class.  State Farm will not oppose such request.

**4.     <u>Preliminary Approval</u>**

Plaintiff, proposed Class Counsel and State Farm shall promptly submit this Agreement and Settlement to the Court and jointly request that the Court enter a Preliminary Approval Order substantially in the form attached hereto as Exhibit 2:

4.1.     certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23 for purposes of Settlement only;

4.2.     preliminarily approving the Settlement;

4.3.     setting a date for the Fairness Hearing, no earlier than 90 days after notice of this proposed Settlement is provided to the CDI and the Attorney General of the United States, pursuant 28 U.S.C. § 1715, to determine (a) whether the proposed Settlement should be approved as fair, reasonable and adequate to Settlement Class Members, (b) whether Final Judgment should be entered dismissing with prejudice the Action and any other actions filed by Settlement Class Members, and (c) whether Class Counsel's application for fees and expenses should be approved;

4.4.     approving the Notice Plan;

4.5.    prescribing a period of time during which persons within the Settlement Class may file Requests for Exclusion;

4.6.    providing that any objections to the Agreement, the Settlement or Class Counsel's application for an award of attorneys' fees and expenses shall be considered by the Court at the Fairness Hearing only if, on or before a date to be specified in the Preliminary Approval Order, the Settlement Class Member making any objection shall mail a copy of their written objection(s) and/or notice of intent to appear at the Fairness Hearing (any of which shall set forth briefly each objection and all reasons and substantiation therefore) to the Administrator;

4.7.    providing that, pending final determination of whether the Settlement should be approved, neither the Plaintiff, nor any Settlement Class Member, either directly, representatively, or in any other capacity, shall commence or prosecute any action or proceeding in any court or tribunal asserting any of the Released Claims against the Released Parties.

## 5. Notice Plan

5.1.    Within 5 business days following entry of the Preliminary Approval Order, State Farm shall deliver to the Administrator a list that includes the names, addresses, and State Farm Claim Numbers of all potential Settlement Class Members. For each potential Settlement Class Member, State Farm shall include the most current mailing address that is in State Farm's system as the address in its list.

5.2.    The Administrator shall run the addresses provided by State Farm through the National Change of Address database, and shall use the most current address reasonably available to the Administrator. If a notice is returned to the Administrator with a forwarding address, the Administrator will re-send the notice and update its database to reflect the updated address information for that Settlement Class Member. It is agreed by the Parties that this procedure constitutes an appropriate effort to locate current addresses for Settlement Class Members. No additional efforts shall be required.

5.3.    Within 25 days following entry of the Preliminary Approval Order, the Administrator shall mail, or cause to be mailed, copies of the Settlement Notice, substantially in the form attached hereto as Exhibit 1, by first class United States mail, postage prepaid, to all

potential Settlement Class Members at the most recent address obtained by the methods described above.

5.4.    The names, addresses, telephone numbers, and any other personal identifying information of all potential Settlement Class Members and Settlement Class Members shall be kept confidential by the Administrator and not disclosed to any person except as ordered by the Court upon good cause shown and shall be used only for the purposes of this Agreement. Whenever in a report, the Administrator or any other Party needs to identify a specific claim, it can refer to the claim by State Farm Claim Number, which is not required to be redacted from publicly available documents.

5.5.    The Administrator shall file with the Court a report on efforts undertaken to implement the Notice Plan at or before the Fairness Hearing.  Copies shall be provided to Class Counsel and State Farm.

5.6.    All expenses incurred in connection with the Notice Plan shall be paid from the Gross Settlement Fund.

**6.      Requests for Exclusion**

6.1.    Any person within the Settlement Class definition who wishes to be excluded from the Settlement Class must mail a written Request for Exclusion from the Settlement Class to the Administrator by the deadline established in the Preliminary Approval Order ("Opt-Out Deadline").  The Parties will ask the Court to establish an Opt-Out Deadline no later than 45 calendar days following the date on which the Settlement Notice is first mailed by the Administrator.  Any Request for Exclusion must be signed by the person seeking exclusion, or the authorized representative of an entity seeking exclusion, and must clearly state his, her or its desire to be excluded from the Settlement Class, and include his, her or its name, address and telephone number.  Any person within the Settlement Class definition who mails a Request for Exclusion to the Administrator may withdraw such Request for Exclusion, and thus elect to be included as a Settlement Class Member, at any time prior to the Opt-Out Deadline.

6.2.    The Administrator will promptly provide unredacted copies of any Requests for Exclusion, and any withdrawals thereof, to State Farm and Class Counsel.  On the date of the

Fairness Hearing, the Administrator will submit to the Court, under seal, a report identifying all persons making Requests for Exclusion that were not thereafter timely withdrawn and the date on which each request was postmarked (or if there is no legible postmark date, the date received by the Administrator). A copy of the report will be provided to State Farm and Class Counsel, who will keep the report confidential.

6.3. Any person within the Settlement Class definition who does not file a timely Request for Exclusion from the Settlement Class, or who timely withdraws a Request for Exclusion, shall be deemed a Settlement Class Member for all purposes under this Agreement; provided that a valid and timely Request for Exclusion made by any co-insured on a Subject Insurance Policy binds all other co-insureds on the same insurance policy.

## 7. Objections to Settlement

7.1. Any Settlement Class Member may object to the proposed Settlement. The Settlement Class Member, or personal counsel retained at the Settlement Class Member's expense, must mail the objection to the Administrator by the deadline established in the Preliminary Approval Order ("Objection Deadline"). The Parties will ask the Court to establish an Objection Deadline no later than 45 calendar days following the date on which the Settlement Notice is first mailed by the Administrator. Objections must be in writing and must provide a detailed description of the nature and basis for each objection, the Settlement Class Member's name, address and telephone number and, if represented by personal counsel, counsel's name, address, and telephone number. Prior to the Fairness Hearing, the Administrator will file with the Court any timely objections received, and will promptly provide unredacted copies of any timely objections received to Class Counsel and State Farm.

7.2. Any Settlement Class Member may appear at the Fairness Hearing, either in person or through personal counsel, retained at the Settlement Class Member's expense, to voice an objection to the Settlement, if the Settlement Class Member has filed a timely objection pursuant to paragraph 7.1, or to comment on the Settlement. Settlement Class Members or their attorneys who wish to appear at the Fairness Hearing must make such a request in writing and mail it to the Administrator prior to the Objection Deadline. The written request to appear must

AGREEMENT OF COMPROMISE AND SETTLEMENT

include the name, address and telephone number of the person who will appear at the Fairness Hearing and a copy of the written objection to the Settlement. Prior to the Fairness Hearing, the Administrator will file with the Court any timely written requests to appear received, and will promptly provide unredacted copies of any timely written requests to appear received to Class Counsel and State Farm.

7.3. Any Settlement Class Member who fails to comply with the provisions of paragraphs 7.1 and 7.2 shall waive and forfeit any and all rights he, she or it may have to appear separately and/or object to or comment on the Settlement.

**8. <u>Gross Settlement Fund</u>**

8.1. State Farm shall pay or cause to be paid to the Administrator the total sum of $15 million (the "Gross Settlement Fund") in full and final settlement of the Released Claims against the Released Parties. $500,000 shall be paid by State Farm within 5 business days after entry of the Preliminary Approval Order. This $500,000 shall constitute the Administrative Cost Reserve and may be used by the Administrator to pay the cost of Notice and other Administrative Costs. State Farm shall pay the balance of $14.5 million within 10 business days following the Final Judgment. This shall be the exclusive monetary obligation of State Farm in connection with the Agreement and the Settlement and Plaintiff and Class Counsel agree that they shall not seek any further money, funds or other remuneration from State Farm in connection with this Settlement, whether for attorneys' fees, litigation expenses, Administrative Costs, or anything else. Under no circumstances shall State Farm be liable for any sums in excess of the Gross Settlement Fund; except as provided in paragraph 8.8.

8.2. It shall be the duty of the Administrator, or any successor administrator, to distribute the Gross Settlement Fund in accordance with the orders of the Court and to file or cause to be filed all necessary tax returns or other necessary reports regarding the administration of the Gross Settlement Fund, and to carry out the other duties of the Administrator as set forth in this Agreement. The Administrator shall hold the Gross Settlement Fund subject to the Court's supervision, in a segregated, interest-bearing account at a financial institution with more than $20 billion in assets in an account or accounts insured by an agency or agencies of the

United States government, with insurance that exceeds the amounts deposited.  The account shall be designated the "Garner Settlement Fund."   Such account shall satisfy the requirements of Treas. Reg. § 1.468B-1(h).

8.3.    The Gross Settlement Fund shall be deemed at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 and Section 468B of the Internal Revenue Code ("Code").  The Administrator, and any successor administrator, shall comply with all requirements applicable to such qualified settlement fund, including all requirements under section 468B of the Code, the treasury regulations promulgated thereunder and any comparable provisions of state or local tax laws, shall take all actions necessary to create and maintain the status of the Gross Settlement Fund as a qualified settlement fund for federal, state and local income tax purposes, and shall take no action that will adversely affect the qualification of the Gross Settlement Fund as a qualified settlement fund for federal, state and local income tax purposes.  In addition, if requested by State Farm, the Administrator, and any successor administrator shall join with State Farm in the timely filing of a "relation-back election" (within the meaning of Treas. Reg. § 1.468B 1(j)(2)) with respect to the Gross Settlement Fund. Pursuant to such election, the Administrator, or any successor administrator, shall comply with all of the requirements contained in Treas. Reg. § 1.468B-1(j)(2) that apply to such election.  It shall be the responsibility of the Administrator, or any successor administrator, to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.

8.4.    For the purpose of Section 468B of the Internal Revenue Code, and the treasury regulations promulgated thereunder, the Administrator, or any successor administrator, shall be the "administrator" (as defined under Treas. Reg. § 1.468B-2(k)(3)) of the qualified settlement fund.  The Administrator, or any successor administrator, shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B 2(k) and 1.468B 2(1)).  Such returns (as well as the election described in paragraph 8.3 of this Agreement) above shall be consistent with this section 8 and in all events shall reflect that all

AGREEMENT OF COMPROMISE AND SETTLEMENT

taxes (including any interest, penalties, or additions to tax ("Taxes")) on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided herein.

8.5.     All Taxes arising with respect to the income earned on the Gross Settlement Fund, including any Taxes that may be imposed upon State Farm with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal and state income tax purposes, any withholding Taxes on distributions from the Gross Settlement Fund, and all expenses and costs incurred in connection with the operation and implementation of this section 8 (including, without limitation, expenses of a tax attorney or consultant and mailing and distribution costs and expenses relating to filing, or failing to file) any return described in this section 8 of this Agreement ("Tax Expenses"), shall be paid out of the Gross Settlement Fund as Administrative Costs.

8.6.     Upon the Effective Date, State Farm shall not have any liability or responsibility for the Taxes or the Tax Expenses imposed on or related to the Gross Settlement Fund.  The Administrator, or his successor, shall indemnify and hold State Farm harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of such indemnification). Furthermore, any such Taxes and Tax Expenses shall be treated as, and considered to be, Administrative Costs of the Settlement and shall be timely paid by the Administrator or any successor administrator out of the Gross Settlement Fund without prior order from the Court, and the Administrator or any successor administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such amounts and shall be required to establish adequate reserves for any Taxes and Tax Expenses (including, without limitation, any amounts that may be required to be withheld under Treas. Reg. § 1.468B 2(1)(2)); State Farm is not responsible and shall have no liability therefore and shall be indemnified and held harmless therefore.  The Administrator or any successor administrator is permitted to retain the services of a tax attorney or consultant to the extent reasonably necessary to carry out the provisions of this section 8.  The Parties agree to cooperate with the Administrator or any successor administrator, each other, and their tax

attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

8.7.     The Administrator shall make distributions and payments from the Gross Settlement Fund as provided in this Agreement and pursuant to orders of the Court.  No payments may be made from the Gross Settlement Fund prior to the Effective Date except for costs associated with implementation of the Notice Plan and other Administrative Costs.

8.8.     Administrative Costs shall be paid by the Administrator from the Gross Settlement Fund.  If the amount of the Administrative Cost Reserve is insufficient to pay the Administrative Costs of the Settlement, State Farm will make a further contribution to the Gross Settlement Fund sufficient to cover reasonable and necessary Administrative Costs approved by the Court.

## 9.     Net Settlement Fund

9.1.     The Net Settlement Fund is the Gross Settlement Fund, minus (a) the Administrative Cost Reserve; (b) the amount that the Court awards Class Counsel as attorneys' fees and litigation expenses; and (c) any amount awarded to the Plaintiff by the Court pursuant to paragraph 13.3 (collectively, the "Deducted Amounts").

9.2.     The Net Settlement Fund shall be distributed to Settlement Class Members in amounts proportional to the total combined dollar amount of the Projected Sold Adjustments and Age of Ad Adjustments on their Subject Valuation Reports for their Total Loss Vehicles.  The Administrator is not required to make payments to Settlement Class Members for whom current address information is unavailable after completion of the steps described in section 5 and such Settlement Class Members shall not be included in the calculation of the Settlement Factor.

9.3.     The formula that will determine the amount of each Settlement Class Member's payment is as follows:  The Settlement Factor shall be the amount of the Net Settlement Fund divided by the aggregate Age of Ad Adjustments and Projected Sold Adjustments for all Subject Valuation Reports of all Settlement Class Members (except as provided in paragraph 9.2).  The combined Projected Sold Adjustment and Age of Ad Adjustment for each individual Subject

AGREEMENT OF COMPROMISE AND SETTLEMENT

Valuation Report shall be multiplied by the Settlement Factor to determine the amount to be paid to a Settlement Class Member based upon that Subject Valuation Report.

9.4.    After being notified by the Administrator that all Deducted Amounts, except for the Administrative Cost Reserve, have been expended, and provided with the amount of the Net Settlement Fund, State Farm shall prepare a Distribution Plan that includes for each Settlement Class Member: (a) the State Farm Claim Number and (b) the amount to be paid to the Settlement Class Member in accordance with this section, and provide such Distribution Plan to Class Counsel.

9.5.    Once State Farm and Class Counsel agree upon the Distribution Plan, they shall submit it to the Administrator with a joint letter stating that State Farm and Class Counsel agree that the Distribution Plan is accurate and complies with the formula set forth in this Agreement. If State Farm and Class Counsel disagree over the Distribution Plan, then any disputes shall be resolved by the Court and the Distribution Plan shall be furnished to the Administrator with a joint letter indicating that the Distribution Plan has been approved by the Court.  Within 30 days after receipt of the Distribution Plan and joint letter from State Farm and Class Counsel, the Administrator shall distribute the Net Settlement Fund to Settlement Class Members in accordance with the final Distribution Plan.  Payments to Settlement Class Members shall be accompanied by a Supplemental Notice substantially in the form attached hereto as Exhibit 4. Nothing in the Supplemental Notice is intended or written to be used, and cannot be used by the Settlement Class Member, as federal tax advice or for the purpose of avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions.  Five days after the settlement checks are sent, the Administrator shall send a postcard reminder to Settlement Class Members notifying them that they should have recently received a check.

9.6.    Any check to a Settlement Class Member that is returned to the Administrator with a forwarding address will be re-sent to the address provided and the Administrator's database will be updated with the current address information.  If any check to a Settlement Class member is uncashed 45 days after the date of the instrument, the Administrator shall send a reminder letter to that Settlement Class Member.  If any checks to Settlement Class members

AGREEMENT OF COMPROMISE AND SETTLEMENT

whose settlement checks are at least $50 in amount remain uncashed after 60 days, the Administrator will attempt to contact such persons by telephone. Any check that is returned as undeliverable, with no forwarding address, or still uncashed 90 days after the date of the instrument, shall revert pursuant to paragraph 9.7 of this Agreement.

9.7. After distribution of the Net Settlement Fund, any amount remaining in the Administrative Cost Reserve, and any settlement checks sent to Settlement Class Members that are undeliverable after 90 days of the date of the instrument or not cashed by Settlement Class Members within 90 days of the date of the instrument, pursuant to paragraph 9.6 of this Agreement, will revert as follows:

9.7.1. To the extent the total gross amount of the unused Administrative Cost Reserve, undeliverable settlement checks, and uncashed settlement checks are greater than $250,000, such funds shall be divided and distributed in the same proportions as their prior payments among the Settlement Class Members who cashed their settlement checks.

9.7.2. To the extent the total gross amount of the unused Administrative Cost Reserve, undeliverable settlement checks, and uncashed settlement checks are less than $250,000, such funds shall become part of a cy pres fund to be distributed evenly among the Volunteer Legal Services Program (via the BASF Foundation) and Bay Area Legal Aid.

9.7.3. To the extent there is a secondary distribution to Settlement Class Members pursuant to section 9.7.1 and any secondary distribution checks are not cashed by Settlement Class Members within 90 days of the date of such instruments, the gross amount of such uncashed secondary distribution checks shall revert pursuant to the same parameters set forth in sections 9.7.1 and 9.7.2, as shall any amounts remaining from any subsequent distributions to Settlement Class Members pursuant to this subsection (i.e., settlement funds remaining 90 days after each subsequent distribution shall be redistributed proportionately to Settlement Class Members who cashed their initial settlement checks until the amount of the remaining settlement funds is less than

-19-
AGREEMENT OF COMPROMISE AND SETTLEMENT

$250,000, at which time the remaining settlement funds shall become part of a cy pres fund to be distributed evenly among the Volunteer Legal Services Program (via the BASF Foundation) and Bay Area Legal Aid).

9.8.　　It is understood and agreed that no Party shall have responsibility or liability with respect to any acts, omissions, or any conduct of the Administrator in connection with the administration and distribution of this Settlement, including, but not limited to providing Notice to and responding to inquiries from Class Members, managing the Gross Settlement Fund, paying Taxes and Tax Expenses, and distribution of the Net Settlement Fund.

**10.　Liens**

10.1.　The Supplemental Notice will advise Settlement Class Members that, by negotiating (i.e., cashing, depositing or endorsing) the check sent to them pursuant to the Settlement, they shall be deemed to represent and warrant that they do not owe any money to any person or entity who provided financing for the Total Loss Vehicle that was the subject of the claim for which they are receiving a payment pursuant to this Settlement or to any other person or entity with a security interest in the Total Loss Vehicle, a lessor of the Total Loss Vehicle, or a lien on any insurance payments that the Settlement Class Member may receive for such Total Loss Vehicle.　The Supplemental Notice will advise Settlement Class Members that, if they cannot make this representation and warranty, they should contact that Administrator, who will re-issue payment jointly to the Settlement Class Member and any relevant lender, lien holder or lessor.　The Supplemental Notice will advise Settlement Class Members that knowingly making a false representation may constitute insurance fraud.

10.2.　Each Settlement Class Member who cashes, deposits, endorses, or otherwise negotiates any check from the Administrator for his, her or its share of the Net Settlement Fund will be deemed to have agreed to hold harmless and indemnify the Released Parties from any and all liens, assignments, subrogation, encumbrances, garnishments, security interests or any other legally perfected right of another person with respect to any amounts to be paid to that Settlement Class Member by State Farm as a result of this Agreement.

**11.    Other Provisions**

11.1.    In its March 23, 2009, Order, the Court found that the "CDI [had] informed Mitchell that the agency would be satisfied if Mitchell used the midpoint of the [DMV VLF Data] range in conducting [total loss] valuations."  (March 23, 2009 Order at 10.)  The Court further found that "the $200 dollar range of sales prices that can be derived from the DMV's VLF codes constitute[d] sales price data" that could be used by insurers as actual sales price data for comparable vehicles in performing total loss valuations pursuant to the TLR.  The Court noted that "the CDI takes the position that VLF data relates to 'actual sales prices,' and thus can be used to conduct valuations in accordance with the TLR," that CDI had indicated that the mid-range of the VLF Data could be used, and that "the $200 [VLF] range . . . is suitable and is accepted by the agency in charge of enforcing the TLR."  (*Id.* at 13.)

11.2.    As part of the consideration for this Agreement, State Farm is giving up its right to appeal the Court's ruling that the TLR was in effect when it paid Plaintiff's claim.  As additional consideration, State Farm agrees that, with respect to claims administered in California, within thirty (30) days following the Effective Date, Mitchell (or any other total loss vendor that State Farm may in the future use) will use any one or some combination of the following for comparable vehicles used by Mitchell (or any other total loss vendor) when preparing a Total Loss Comparable Vehicle Valuation Report for State Farm:  (i) the high point of VLF Data obtained from the DMV, or (ii) actual sales prices from other sources compliant with the TLR, or (iii) the asking price of advertised vehicles (without a projected sold or age of ad adjustment).  State Farm will continue to require the company that provides it with Total Loss Comparable Vehicle Valuation Reports in California to use either the high point of DMV VLF Data, actual sales prices from other sources compliant with the TLR, or the asking price of advertised vehicles (without a projected sold or age of ad adjustment), or a combination thereof, when preparing a Total Loss Comparable Vehicle Valuation Report for use by State Farm in California in connection with vehicle total loss claims made under the Physical Damages Coverages of automobile policies administered in California until (1) a change in the law (including, without limitation, any changes to applicable regulations, case law or CDI statements

interpreting those regulations, or constitutional challenges to the validity of the regulations) requires or permits use of a different method of computation, or (2) State Farm is instructed to use a different method of computation by the CDI or any court of law.

**12.    Release, Waiver and Covenant Not to Sue**

12.1.    Upon the Effective Date of this Agreement, in consideration of this Settlement and the benefits extended to the Settlement Class pursuant to this Agreement, all Settlement Class Members release and forever discharge the Released Parties from any and all Released Claims.

12.1.1. Upon the Effective Date of this Agreement, the Released Parties are not, and in the future shall not be, subject to liability or expense of any kind to Settlement Class Members with respect to any of the Released Claims.  The provisions of this Agreement shall be the exclusive remedy of all Settlement Class Members against the Released Parties.  Upon the Effective Date, each Settlement Class Member shall be forever barred from asserting any of the Released Claims against any of the Released Parties.  Settlement Class Members expressly agree that this release shall be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed within the terms of this release.

12.1.2. Upon the Effective Date of this Agreement, each Settlement Class Member shall be deemed to have covenanted and agreed (a) that he, she or it will forever refrain from instituting, maintaining or proceeding against any Released Party on any Released Claim, including Released Claims known and not now known, suspected, or claimed, that he, she or it has or hereafter may have against the Released Parties; and (b) that he, she or it releases the Released Parties from each and every such Released Claim.

12.2.    Settlement Class Members acknowledge and agree that the Released Claims include claims that Settlement Class Members do not know or suspect to exist in their favor at the time of the release of the Released Parties and which, if known by them, might have affected their decision to settle and release the Released Claims or take any other action, including, but

AGREEMENT OF COMPROMISE AND SETTLEMENT

not limited to, the decision not to object to this Agreement. Settlement Class Members expressly waive any and all rights that they may have under any statute, regulation, administrative adjudication, or common law principle that would limit the effect of the Release provided in this Agreement to the claims actually known or suspected to exist at the time of this Agreement, including the provisions of Section 1542 of the California Civil Code, which provides as follows: "GENERAL RELEASE-CLAIMS EXTINGUISHED. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

### 13.    Attorneys' Fees and Expenses; Award to Class Representative

13.1.    The amount of attorneys' fees and litigation expenses to be paid to Class Counsel shall be determined by the Court. Class Counsel agrees to seek attorneys' fees, exclusive of their litigation expenses, in an amount not to exceed the 30 percent of the Gross Settlement Fund. In addition, Class Counsel agrees to seek litigation expenses in an amount not to exceed approximately $400,000. State Farm agrees that it will not oppose Class Counsel's request for attorneys' fees and litigation expenses; provided that they do not exceed the amounts stated in this paragraph 13.1. Attorneys' fees and litigation expenses awarded by the Court to Class Counsel pursuant to this paragraph will be paid from the Gross Settlement Fund. Settlement Class Members who are personally represented by their own attorneys in connection with the Settlement shall be responsible for the fees and expenses of their individual attorneys.

13.2.    Payment to Class Counsel of all Court awarded attorneys' fees and litigation expenses shall occur within 5 business days of the Effective Date.

13.3.    Class Counsel may petition the Court for payment of an award to Plaintiff to compensate her for the effort, time and expense spent by her in connection with the prosecution of this action. Plaintiff and Class Counsel agree that they will not seek an award in excess of $20,000, payable to Plaintiff. State Farm agrees that it will not oppose Plaintiff's and Class Counsel's petition for an award to Plaintiff; provided that it does not exceed the amount stated in

this paragraph. Any amount awarded by the Court to Plaintiff pursuant to this paragraph will be paid from the Gross Settlement Fund.

**14.** **Final Judgment**

14.1. If the Settlement is approved by the Court following the Fairness Hearing, the Parties shall request that the Court enter a Final Judgment, substantially in the form attached hereto as Exhibit 3:

14.1.1. confirming certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23;

14.1.2. finding that notice was provided to the Settlement Class in accordance with the Preliminary Approval Order and that the Notice Plan fully satisfies the requirements of Federal Rule of Civil Procedure 23 and due process;

14.1.3. finding that notification to appropriate federal and state officials was given in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715;

14.1.4. approving the Settlement as fair, reasonable and adequate to Settlement Class Members in accordance with Federal Rule of Civil Procedure 23;

14.1.5. directing implementation of the Settlement in accordance with its terms;

14.1.6. dismissing with prejudice the Action;

14.1.7. providing that all Settlement Class Members conclusively compromise, settle, discharge, dismiss and release the Released Claims;

14.1.8. permanently enjoining Settlement Class Members from initiating, asserting, prosecuting, or litigating against the Released Parties any actions involving the Released Claims;

14.1.9. providing that neither this Agreement, approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, shall be admissible in evidence for any purpose in this or any other proceeding, except that this Agreement and any order granting preliminary or final approval of this Agreement, will be admissible for the purpose of obtaining approval of,

implementing and/or enforcing this Agreement and as otherwise provided in paragraph 16.4;

14.1.10. reserving jurisdiction, without affecting the finality of the Final Judgment, over implementation, administration and enforcement of the Settlement, and other matters ancillary to the Settlement;

14.1.11. finding that the Final Judgment is a final judgment pursuant to Federal Rule of Civil Procedure 54(a) or, alternatively, that there is no just reason for delay and the Final Judgment is a final judgment pursuant to Federal Rule of Civil Procedure 54(b).

14.2.    Entry of a Final Judgment approving this Agreement is a condition precedent to the Parties' respective rights and obligations under this Agreement, except as provided in paragraph 15.4.

**15.    Termination**

15.1.    State Farm shall have the right, in its sole discretion after reviewing the number of opt-outs, objectors, and pending litigation, to nullify this Settlement if more than five percent (5%) of the persons within the Settlement Class definition opt out of the Settlement.  State Farm may exercise this right within 10 business days after the Opt-Out Deadline.  In order to invoke this right, State Farm must file and serve by facsimile and U.S. Mail a document entitled Notice of Nullification of Settlement.  Neither the Plaintiff nor any Settlement Class Member nor Class Counsel shall be permitted to seek enforcement of the Settlement or any of its terms against State Farm should State Farm elect to nullify the Settlement pursuant to this paragraph.

15.2.    Except as provided in paragraph 15.4, this Agreement shall terminate and become null and void upon the occurrence of any of the following events:

15.2.1. State Farm exercises its right to nullify the Settlement as provided in paragraph 15.1;

15.2.2. The Court refuses to certify the Settlement Class;

15.2.3.  The Court denies preliminary approval of the Settlement;

15.2.4. The Court denies approval of the Settlement following the Fairness Hearing;

AGREEMENT OF COMPROMISE AND SETTLEMENT

15.2.5. Certification of the Settlement Class and/or approval of the Settlement is reversed on appeal;

15.2.6. The CDI objects to this Settlement; or

15.2.7.  The Effective Date does not otherwise occur for any reason.

15.3.    If this Agreement should terminate or become null and void for any reason, then:

15.3.1. This Agreement and all negotiations and proceedings and releases relating thereto shall be without prejudice as to the rights of any and all Parties to this Agreement, and Parties to this Agreement shall be restored to their respective positions existing as of October 29, 2009;

15.3.2. Plaintiff and State Farm shall jointly move that any order entered pursuant to this Agreement be vacated and void and all findings withdrawn; and

15.3.3. All amounts remaining in the Gross Settlement Fund, together with accrued interest, shall be returned to State Farm.

15.4.    The following provisions survive termination of this Agreement:  the last sentence of paragraph 3.2, paragraph 5.4, paragraph 9.8, section 15, section 16, and paragraph **16**.5.   **No Admissions**

16.1.    Neither this Agreement, nor any exhibit, document or instrument delivered hereunder is intended to be or shall be construed as or deemed to be evidence of an admission or concession by State Farm or the Released Parties of an interpretation of, or course of conduct in connection with, the policy language and forms of the Subject Insurance Policies, or of any liability or wrongdoing by State Farm, or of the truth of any allegations asserted by Plaintiff, Settlement Class Members or any other person.

16.2.    The Parties expressly acknowledge and agree that this Agreement, along with all related drafts, motions, court papers, conversations, negotiations, mediations and correspondence, including statements made in mediations or written submissions to the mediator, constitute an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408, California Rule of Evidence 1152 and any equivalent rule of evidence of any state; and are privileged pursuant to Section 1119 of the California Evidence Code.

16.3.    Except as provided in paragraph 16.4, neither this Agreement, approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, shall be admissible in evidence in this or any other proceeding for any purpose, including as evidence of an interpretation of, or course of conduct in connection with, the policy language and forms of the Subject Insurance Policies.    Without limitation of the foregoing, nothing contained in this Agreement, approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, shall be given any form of *res judicata*, collateral estoppel or judicial estoppel effect against State Farm or the Released Parties in any administrative or judicial forum or proceeding.

16.4.    Notwithstanding the foregoing, this Agreement, any order granting preliminary or final approval to this Agreement and any appellate decision affirming Final Judgment is admissible as provided in this paragraph.

16.4.1. This Agreement is admissible by any Party for the purpose of obtaining approval of, implementing and/or enforcing this Agreement.

16.4.2. This Agreement, and any order granting preliminary or final approval of this Agreement, any appellate decision affirming Final Judgment, and any proceedings and submissions in connection with this Agreement are admissible for purposes of determining Class Counsel's application for attorneys' fees and costs or in connection with any appeal of an award of Class Counsel's attorneys' fees and costs in this Action.

16.4.3. This Agreement, any order granting preliminary or final approval to this Agreement and any appellate decision affirming Final Judgment, may be pleaded by State Farm or the Released Parties as a full and complete defense (including any defense based upon release, *res judicata*, or injunction) to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims; and this Agreement, any order granting preliminary or final approval to this Agreement and any appellate decision affirming Final Judgment, or any other

AGREEMENT OF COMPROMISE AND SETTLEMENT

1    proceedings in connection therewith, may be filed, offered or submitted by State Farm or

2    the Released Parties or otherwise used in support of such defense.

3         16.4.4. This Agreement, any order granting preliminary or final approval to this

4    Agreement, any appellate decision affirming Final Judgment, any proceedings in

5    connection with this Agreement, or any action by the CDI regarding this Agreement, may

6    be filed, offered or submitted only by State Farm or the Released Parties as evidence that

7    the action that State Farm agrees to undertake in section 11 is fair and reasonable and

8    complies with the TLR.

9    **17.    Deadlines and Notices**

10        17.1.   Whenever this Agreement requires notice or a document to be given to State

11   Farm, it shall be sent to:

12        Laura L. Goodman
     Sedgwick, Detert, Moran & Arnold LLP
13        One Market Plaza
     Steuart Tower, 8th Floor
14        San Francisco, CA 94105

15        Katherine Armstrong
16        Skadden, Arps, Slate, Meagher & Flom LLP
     Four Times Square
17        New York, NY  10036

18        Robert M. Kluchin
19        State Farm Insurance Companies
     One State Farm Plaza
20        Bloomington, IL 61710-0001

21        17.2.   Whenever this Agreement requires notice or a document to be given to Class
22   Counsel, it shall be sent to:

23        David M. Birka-White
24        Birka-White Law Offices
     411 Hartz Avenue, Suite 200
25        Danville, CA 94526

26

27

28

Robert J. Nelson
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111

17.3.   Whenever this Agreement requires notice or a document to be given to the Administrator, it shall be sent to the address stated in the Settlement Notice.

17.4.   Whenever this Agreement provides for a document or form to be sent to the Administrator, State Farm, or Class Counsel, prior to a certain date or deadline, the document or form will be deemed timely (a) if sent by First Class U.S. Mail and the document is postmarked by the U.S. Postal Service on or before the applicable deadline or (b) if sent by any other method and the document is received by the Administrator, State Farm, or Class Counsel, whichever is applicable, on or before the applicable deadline.  If a postmark is not legible, the document shall be deemed to have been postmarked three business days before it is received by the person to whom it was sent.

**18.   General Provisions**

18.1.   Class Representative, proposed Class Counsel and State Farm shall cooperate, assist and undertake their best efforts to complete any actions implementing the terms of this Agreement or any order of the Court related to the implementation of this Agreement.

18.2.   Plaintiff, proposed Class Counsel and State Farm agree that the terms of this Agreement were not based solely on the consideration provided, but were also based on (a) vigorous arm's-length negotiations among counsel for the Parties; (b) the assessment of counsel for the Parties of the strength and weaknesses of the claims asserted in the Action and the Released Claims; and (c) the expense and burden of ongoing litigation.

18.3.   The undersigned attorneys for Plaintiff represent and warrant that they have the authority to enter into this Agreement on behalf of the proposed Class Representative.

18.4.   State Farm represents and warrants that it has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby.  The execution, delivery and performance by State Farm of this Agreement and the

consummation by it of the actions contemplated hereby have been duly authorized by all necessary corporate action on the part of State Farm. This Agreement has been duly and validly executed and delivered by State Farm's authorized agent.

18.5.    State Farm, Plaintiff and proposed Class Counsel agree that they will not issue any press releases or otherwise advise the press or media of this Agreement prior to Final Judgment, but that they can respond to media inquiries. If this Agreement is approved by the Court following the Fairness Hearing, State Farm and proposed Class Counsel agree that they will attempt to issue mutually agreed upon, joint press releases announcing such approval. State Farm and proposed Class Counsel agree that they will not make any statements on their respective external websites regarding this Agreement.

18.6.    Plaintiff and proposed Class Counsel agree that, within 30 calendar days after the Effective Date, Plaintiff and her counsel will return to State Farm, Mitchell, and/or J.D. Power and Associates any and all materials received, respectively, in discovery from State Farm, Mitchell, and/or J.D. Power and Associates. As used herein, the term "materials" refers inclusively to documents, both paper and electronic, depositions, deposition exhibits, CDs, DVDs, data compilations, photographs and videotapes, of every sort, as well as all copies of any such materials. If material required to be returned pursuant to this paragraph has been scanned, transferred or otherwise input into any electronic database or network by Plaintiff or her counsel, the material must be deleted from such database or network and proposed Class Counsel must provide an affidavit to State Farm attesting to the material's deletion from the database or network.

18.7.    The headings of the sections and paragraphs of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

18.8.    This Agreement constitutes the sole and entire agreement among the Parties with regard to the subject of this Agreement and the Released Claims and supersedes any prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party or its agents, attorneys, employees or representatives concerning the subject of this Agreement. No

AGREEMENT OF COMPROMISE AND SETTLEMENT

Party shall be liable or bound to any other Party for any prior negotiation, representation, promise or warranty (oral or otherwise) except for those expressly set forth in this Agreement.

18.9.   This Agreement cannot be amended or modified except by a writing signed by Class Counsel and State Farm and approved by the Court.

18.10.  The Parties assume joint responsibility for the form and composition of each and all provisions of this Agreement.  The Parties further agree that this Agreement shall be interpreted as though each of the Parties participated equally in the drafting of the provisions. No Party shall assert that a provision should be construed against its drafter.

18.11.  Each and every term of this Agreement shall be binding upon and inure to the benefit of Plaintiff, proposed Class Counsel, Settlement Class Members, State Farm, the Released Parties (who are intended beneficiaries of this Agreement), and any of their respective heirs, administrators, successors and personal representatives.

18.12.  The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

18.13.  Except as otherwise specifically addressed in this Agreement, no Party shall be liable for any costs or expenses incurred by or on behalf of another Party in connection with this Agreement and the actions contemplated thereby.

18.14.  This Agreement shall not expand the rights of any persons who are not Parties hereto, Settlement Class Members or Released Parties, and no person who is not a Party to this Agreement, a Settlement Class Member or a Released Party shall acquire any rights hereunder, whether as a purported third-party beneficiary or otherwise.

18.15.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.  Any motion, petition, application, action or proceeding to construe or enforce this Agreement shall be brought in the United States District Court for the Northern District of California.

AGREEMENT OF COMPROMISE AND SETTLEMENT

1      18.16. This Agreement may be executed in separate counterparts, each of which when so

2 executed shall constitute an original, but all of which together shall constitute the same

3 instrument.

4 DATED: December 30, 2009      SEDGWICK, DETERT, MORAN & ARNOLD LLP

5

6                                By:  _____

                                    Kevin J. Dunne

7                                    Laura L. Goodman

                                    Attorneys for Defendant

8                                    STATE FARM MUTUAL AUTOMOBILE

                                    INSURANCE COMPANY

9

10 DATED: December 30, 2009      BIRKA-WHITE LAW OFFICES

11

12                                  By:  _____

                                    David M. Birka-White

13                                    Attorneys for Plaintiff

                                    ARNESHA M. GARNER

14

15 DATED: December 30, 2009      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

16

17                                  By:  _____

                                    Robert J. Nelson

18                                    Attorneys for Plaintiff

                                    ARNESHA M. GARNER

19

20

21

22

23

24

25

26

27

28

AGREEMENT OF COMPROMISE AND SETTLEMENT

**UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF CALIFORNIA**

**IMPORTANT LEGAL NOTICE**

**State Farm California Policyholders Who Received a
Vehicle Total Loss Payment from State Farm in 2007 or 2008**

**A Proposed Class Action Settlement May Affect Your Rights**

*The Court has authorized this notice.  It is not a solicitation from a lawyer.
You are not being sued.  Please read this entire notice carefully.*

**This notice concerns a lawsuit filed by a State Farm policyholder against State Farm concerning State Farm's handling of claims by its California policyholders on total loss vehicles between approximately March 2007 and February 2008.  The plaintiff in this lawsuit (called *Garner v. State Farm*) alleged, on behalf of herself and other State Farm policy holders who made vehicle total loss claims, that State Farm violated a California insurance regulation by using computerized valuation reports that included certain adjustments to the values of comparable vehicles used in the reports, and thereby breached its contracts with policy holders and violated California's Unfair Competition Law.  State Farm denies the allegations and claims that it paid its policyholders what they were owed.**

**On _____, 2009, the court certified a class action in this lawsuit and preliminarily approved a proposed settlement of the class action with State Farm.**

**The court has not ruled on the merits of the Plaintiff's claims or on the defenses made by State Farm.**

**This notice and the lawsuit described in this notice may affect your rights.  You may be a member of the class described in this notice and you may be entitled to share in the benefits of the proposed class action settlement described in this notice.**

EXHIBIT 1 – page 1

**UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF CALIFORNIA**

**Summary of Your Rights and Choices:**

**If you are a member of the Settlement Class, Your Legal Rights Are Affected Even if You Do Not Act.  Read This Notice Carefully.**

| You May | | Deadline |
|---|---|---|
| **Stay in the Class and Participate in the Settlement** | **Stay in the class and participate in the settlement** <br> You do not have to do anything to remain in the settlement class.  The amount of your recovery will be determined and sent to you by the settlement administrator.  **See Questions 5 - 8.** | |
| **Exclude Yourself from the Class** | **Opt out of the class.** <br> You do not have to remain a member of the settlement class or participate in the settlement.  You can write and ask to be excluded from the settlement class by the deadline noted.  If you don't exclude yourself, you will be bound by the court's decisions and you will not be able to sue State Farm for claims related to State Farm's handling of certain vehicle total loss claims in 2007 and 2008 that are covered by the settlement.  If you exclude yourself, you will not be able to participate in the settlement.  **See Question 10.** | **Postmarked\* by** |
| **Object to the Proposed Settlement** | **You may object or comment on the settlement.** <br> If you don't exclude yourself, you can participate and speak in the lawsuit on your own or through your own lawyer.  If you would like to object to the settlement, you must do so in writing by the deadline noted.  You can also ask to appear at the hearing where the court will consider the fairness of the settlement.  To appear at the hearing, you must write the settlement administrator by the deadline noted.  **See Questions 11 - 15.** | **Postmarked\* by** |

**WHAT THIS NOTICE CONTAINS**

| | |
|---|---|
| Basic Information | Questions 1 - 4 |
| Benefits of the Settlement | Questions 5 - 6 |
| Effect of Remaining in the Settlement Class | Questions 7 - 8 |
| Other Provisions of the Settlement | Question 9 |
| Excluding Yourself from the Settlement Class | Question 10 |
| Commenting on the Settlement/Fairness Hearing | Questions 11 - 15 |
| The Lawyers Representing You | Questions 16 - 17 |
| Additional Information | Questions 18 - 19 |

EXHIBIT 1 – page 2

**UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF CALIFORNIA**

**BASIC INFORMATION**

**1.   Why did I receive this notice?**

You received this notice because you may have made a vehicle total loss claim with State Farm in 2007 or 2008 that may be subject to the settlement reached in this lawsuit.

This notice explains:

- What the lawsuit and proposed settlement are about.
- What the lawsuit claims.
- Who is affected by the proposed settlement.
- What your legal rights and choices are.
- How to participate in the settlement.

**The following is only a summary of the settlement.   A full description of the settlement is contained in the settlement agreement.   Nothing in this notice alters the terms of the settlement agreement.   A copy of the settlement agreement may be obtained from:   [Administrator contact information.]**

**2.   Why is this a class action?**

In a class action lawsuit, one or more people called "class representatives" sue on behalf of people who have similar claims.   The people together are a "class" or "class members."   The court has determined that a settlement class provides for the fair and efficient resolution of this litigation.

**All persons within the settlement class who do not exclude themselves will be bound by any judgments in the lawsuit, as well as the proposed settlement (if approved).**

**3.   Why is there a settlement?**

The proposed settlement provides a method to resolve the claims made in the lawsuit that takes into consideration the best interest of all involved parties.   The proposed settlement was the result of extensive, arms-length negotiations between Class Counsel and State Farm, and is based upon a thorough examination of the facts and the law gained over years of litigation.

**State Farm does not admit any wrongdoing or liability.   The proposed settlement is a compromise of disputed claims and does not mean that State Farm is liable for the claims made in the lawsuit. If the settlement is approved by the court, class members will be entitled to participate in the settlement (and most are expected to receive a payment), but they will not be able to sue State Farm based upon the way their vehicle total loss claims covered by the settlement were previously handled by State Farm.   You can only sue State Farm based upon the  valuation of your total loss vehicle if you exclude yourself from the class.  (See Question 10.)**

**4.   Am I a member of the settlement class?**

You are a member of the settlement class if you made a total loss vehicle claim under your State Farm policy and State Farm paid you based upon a computerized valuation report with one or both of the adjustments at issue in the lawsuit.   The two adjustments at issue concerned (1) the price at which comparable vehicles were projected to sell, and (2) depreciation of the comparable vehicles.   Reports with these adjustments were primarily used between March 12, 2007 and February 18, 2008.   If you made a total loss vehicle claim between these dates, you are probably a member of the settlement class. Certain people who reside in or near San Diego and who received a vehicle total loss payment from State Farm between August 2006 and March 12, 2007 may also be members of the settlement class.

This is only a California class.   The only total loss vehicle claims at issue were ones adjusted by State Farm in California.

EXHIBIT 1 – page 3

**UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF CALIFORNIA**

**BENEFITS OF THE SETTLEMENT**
**HOW TO PARTICIPATE IN THE SETTLEMENT**

**5.    What are the benefits of the settlement?**

If the settlement is approved by the court and becomes final, State Farm will pay $15 million into a settlement fund.  After payment of Class Counsel's fees and litigation expenses and the costs of administering the settlement, the settlement administrator will distribute the remaining amounts to settlement class members.

Payments to class members will be based upon a percentage of the adjustments at issue in this lawsuit. The amount received by class members will vary based upon the amount of the adjustments at issue that were used in valuing their total loss vehicles.

It is estimated that the amounts to be paid to most class members will be between $100 and $1000.

**6.    How do I participate in the settlement?  How do I make a claim?**

Class members do not have to do anything to participate in the settlement.  State Farm and Class Counsel will calculate the amount that is owed to class members, and the settlement administrator will send out the checks.

**If you owe money on the total loss vehicle for which you are receiving a settlement check (for example, because you financed the total loss vehicle and still owe money to your lender on the loan for the total loss vehicle), or someone else has a financial interest in your claim (such as a lessor), you will need to let the settlement administrator know so that the check can be made jointly to you and any other entity with an interest in your claim.  *If this is the case, you MUST contact the settlement administrator at [number] to give us the proper information.***

**EFFECT OF REMAINING IN THE SETTLEMENT CLASS**

**7.    What happens if I do nothing and stay in the settlement class? What claims am I giving up?**

If you do not exclude yourself from the class (see Question 10), you will be included in the settlement class and you will be bound by the settlement and the judgment in the lawsuit.

By remaining in the settlement class, you give up all rights to sue State Farm or the Released Parties for any and all claims that you may have or may acquire arising out of or related to State Farm's use of the computerized valuation reports at issue in the lawsuit.

This is a broad general release.  It includes all claims that were asserted in the lawsuit, as well as claims that could have been asserted, including, without limitation, breach of contract, negligence, breach of fiduciary duty, bad faith, fraud, unfair business practices, unfair competition, deceptive trade practices, conspiracy, concert of action, and violation of any statute or regulation.  It includes all types of relief that could be sought, including, without limitation, actual damages, exemplary and punitive damages, statutory damages, penalties, property damage, personal injuries, emotional distress, loss of wages, income, earning, and earning capacity, economic or business losses, restitution, disgorgement of profits, prejudgment and postjudgment interest, and injunctive or declaratory relief

The release includes both known and unknown claims.  Class members expressly waive any and all rights that they may have under any law that would limit the release to claims actually known or suspected to exist at the time of the settlement, including the provisions of Section 1542 of the California Civil Code, which provides as follows:  "GENERAL RELEASE-CLAIMS EXTINGUISHED.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

**8.    Who are the Released Parties?**

The Released Parties are State Farm, Mitchell International, Inc., J.D. Power & Associates, State Farm Insurance Agents, independent or contract vehicle repair shops consulted by State Farm, and each of

EXHIBIT 1 – page 4

**UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF CALIFORNIA**

their current and former agents, employees, officers, directors, attorneys, owners, shareholders, policyholders, associated and affiliated companies, parents, divisions, subsidiaries, successors, assigns, reinsurers, and liability insurance carriers.

## OTHER PROVISIONS OF THE SETTLEMENT

**9.  Are there any other provisions of the settlement?**

State Farm also agrees that, with respect to claims administered in California, within 30 days after the settlement agreement becomes final, the company that provides it with computerized, total loss, comparable vehicle valuation reports used in California will use any one or some combination of the following for comparable vehicles:  (i) the high point of sales price ranges obtained from vehicle license fee data maintained by the California Department of Motor Vehicles, or (ii) actual sales prices from other sources, or (iii) the asking price of advertised vehicles.  State Farm will continue to do so until a change in California law requires or permits use of a different method of computation or State Farm is instructed to use a different method of computation by the California Department of Insurance or any court of law.

## EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS

**10.  What __MUST__ I do if I do NOT want to be in the settlement class?**

**You may request to be excluded from the settlement class by mailing a written request to be excluded, postmarked on or before _____, 2010, to the following:**

**[Administrator]**

A request for exclusion must include your full name, address, and phone number, the statement "I wish to be excluded from the proposed class," and your signature.  A valid and timely request for exclusion made by any co-insured on an insurance policy binds all other co-insureds on the same insurance policy.

If you do NOT timely request exclusion, you will be automatically included in the settlement class and bound by any judgment in the lawsuit.  If you timely request exclusion, you will retain any legal rights you may have, but you will not receive any money from the settlement.

**If you want to remain a member of the settlement class, and possibly receive compensation under the settlement**, you should **NOT** request exclusion.

## COMMENTING ON THE SETTLEMENT/FAIRNESS HEARING

**11.  Can I object to or comment on the settlement?**

The settlement must be approved by the court.  If you do not request exclusion from the settlement class, you may object to the settlement and/or comment on the settlement.  Written objections must include a detailed description of the nature and basis for each objection, your name, address and telephone number and, if represented by personal counsel, your counsel's name, address, and telephone number.  Written objections must be mailed to [Administrator], postmarked on or before [date], and will be filed by the settlement administrator with the court.

**12.  What is the difference between objecting to the settlement and excluding myself from the settlement class?**

An objection to the settlement is made when you wish to remain a settlement class member and be subject to the settlement, but disagree with some aspect of it.  In contrast, an exclusion means that you are no longer a settlement class member (see Question 10) and you lose any right to object to the settlement because the case no longer affects you.

**13.  What is the "Fairness Hearing?"**

The settlement will not become final unless and until the court finds that it is fair, reasonable and adequate and approves it.  The court will hold a hearing (known as a "Fairness Hearing") to assist it in making this determination.

EXHIBIT 1 – page 5

**UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF CALIFORNIA**

**14. When and where will the Fairness Hearing take place?**

The Fairness Hearing will take place at __:00 a/p.m. on _____, 2010, at the United States District Court House, United States Courthouse [address].

**15. Must I attend the fairness hearing?**

No. Class members who support the settlement do not need to appear or take any action to indicate their approval. Class Counsel will answer the court's questions on your behalf. If you or your personal attorney still want to attend the hearing, you are more than welcome to do so at your own expense. However, it is not necessary that either of you attend.

You may also attend in person or through your attorney to object to the settlement and/or comment on the settlement, but it is not necessary that you do so. Timely, written objections will be considered by the court. (See Questions 11 - 12.) If you want to attend the hearing, you must notify the settlement administrator by letter, postmarked on or before [date], to [Administrator]. The letter should give your full name and address and, if you will be represented by an attorney, your attorney's name and address. The notice must describe in full the basis for your opposition to the settlement and attach any documents you want to present to the court. If you intend to call witnesses, you must provide their names and addresses in your notice of intent to appear. All written notices of intent to appear will be filed by the settlement administrator with the court.

**THE LAWYERS REPRESENTING YOU**

**16. Do I have a lawyer representing my interests in this case?**

The court has appointed the following attorneys as Class Counsel to represent the settlement class: David M. Birka White of Birka White Law Offices, and Robert J. Nelson, of Lieff, Cabraser, Heimann & Bernstein, LLP. These lawyers are familiar with the issues raised in this lawsuit and can answer any questions you may have regarding the lawsuit or the settlement. Their contact information is provided below. You do not need a separate attorney to opt out of the class, object to the settlement, or participate in the settlement. However, you are free to consult with and appear by your own attorney, at your expense.

**17. How will the lawyers and class representatives be compensated?**

The court will determine how much Class Counsel will be paid for fees and expenses. Class Counsel will not seek an award of fees greater than 30 percent of the total settlement fund (or $4.5 million), and will seek an award of their expenses incurred in connection with litigating this lawsuit in an amount no greater than $400,000 as documented to the Court. The fees and expenses will be paid out of the settlement fund and you will not be responsible for direct payment of Class Counsel's fees and expenses.

In addition, Class Counsel may petition the court for payment of an award from the settlement fund, in an amount not to exceed $20,000, to compensate the plaintiff in the lawsuit for her time and effort.

**ADDITIONAL INFORMATION**

**18. What if I have a question?**

If you have a question, you may call the settlement administrator at [number] or write the settlement administrator at the following address: [address]

You may also contact Class Counsel at [contact information for both counsel].

**Do NOT contact the court or the Department of Insurance with questions about the settlement.**

**Do NOT contact your State Farm Insurance Agent with questions about the settlement.**

The pleadings and other public records of this litigation, including the settlement agreement, may be examined and copied at any time during regular office hours at:

      [address]

EXHIBIT 1 – page 6

**UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF CALIFORNIA**

**19. How do I get a copy of the settlement agreement?**

This is a summary of the terms of the settlement.  A copy of the settlement agreement can be obtained by either written request mailed to: [ADDRESS], or by calling toll free to 1-___-___-____.  If you make a written request for a copy of the settlement agreement, be sure to include your full name and correct mailing address.

Dated: _____ ___, 2009.




The Honorable Claudia Wilken
United States District Court Judge


[SPANISH LANGUAGE VERSION TO FOLLOW]

EXHIBIT 1 – page 7

| | |
|---|---|
| 1 | SEDGWICK, DETERT, MORAN & ARNOLD LLP |
| 2 | KEVIN J. DUNNE  Bar No. 40030<br>LAURA L. GOODMAN  Bar No. 142689 |
| 3 | MICHELLE Y. MCISAAC Bar No. 215294<br>ANDREW J. KING Bar No. 253962 |
| 4 | One Market Plaza<br>Steuart Tower, 8th Floor |
| 5 | San Francisco, California 94105<br>Telephone: (415) 781-7900 |
| 6 | Facsimile: (415) 781-2635 |
| 7 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| 8 | KATHERINE ARMSTRONG (pro hac vice)<br>Four Times Square |
| 9 | New York, New York  10036<br>Telephone: (212) 735-3000 |
| 10 | Facsimile: (212) 735-2000 |
| 11 | Attorneys for Defendant<br>STATE FARM MUTUAL AUTOMOBILE |
| 12 | INSURANCE COMPANY |

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
ROBERT J. NELSON  Bar No. 132797
MICHAEL W. SOBOL  Bar No. 194857
ROGER HELLER  Bar No. 215348
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

BIRKA-WHITE LAW OFFICES
DAVID M. BIRKA-WHITE Bar No. 85721
411 Hartz Avenue, Suite 200
Danville, California 94526
Telephone: (925) 362-9999
Facsimile: (925) 362-9970

Attorneys for Plaintiff
ARNESHA M. GARNER

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA M. GARNER, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>          Defendant. | CASE NO. CV 08 1365 CW (EMC)<br><br>**PRELIMINARY APPROVAL ORDER** |

          Upon considering the Motions for Preliminary Approval of Class Settlement, Settlement Notice and Related Matters, filed by Plaintiff and defendant State Farm Mutual Automobile Insurance Company, seeking preliminary approval of the proposed Settlement Agreement, together with all of its Exhibits attached thereto, dated [date] (the "Agreement"), and on considering the record of these proceedings, the representations, argument, and recommendation

EXHIBIT 2 – page 1-<br>PRELIMINARY APPROVAL ORDER

of counsel for the moving parties, and the requirements of law, the Court finds that (1) this Court has jurisdiction over the subject matter and parties to this proceeding; (2) the proposed Class meets the requirements of Federal Rule of Civil Procedure 23 and should be certified for purposes of settlement only and the persons and entities set forth below should be appointed Class Representative and Class Counsel; (3) the Agreement is the result of arms-length negotiations between the parties; (4) the Agreement is not the result of collusion; (5) the Agreement bears a probable, reasonable relationship to the claims alleged by the Plaintiff and the litigation risks of State Farm; (6) the Agreement is within the range of possible judicial approval; (7) the proposed Settlement Notice substantially in the form attached as Exhibit 1 to the Agreement and the proposed Notice Plan set forth in the Agreement will provide the best practicable notice to the putative Class under the circumstances, satisfying the requirements of due process; (8) reasonable cause exists to conduct a hearing, pursuant to Federal Rule of Civil Procedure 23(e) to consider whether the Agreement is fair, reasonable and adequate and whether it should be approved pursuant to Rule 23 of the Federal Rules of Civil Procedure; and (9) the other related matters pertinent to the preliminary approval of the Agreement should also be approved.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. As used in this Preliminary Approval Order, capitalized terms shall have the definitions and meanings accorded to them in the Agreement.

2. The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

3. Venue is proper in this district.

4. The Court finds, for settlement purposes only, that the Federal Rule of Civil Procedure 23 factors are present and that certification of the proposed Settlement Class, as defined and set forth below, is appropriate under Rule 23. The Court, therefore, certifies the following "Settlement Class": Any and all persons insured under a State Farm vehicle insurance policy who received a first party total loss comprehensive or collision payment on a claim

EXHIBIT 2 – page 2-
PRELIMINARY APPROVAL ORDER

administered in California, based in whole or in part on a Total Loss Comparable Vehicle Valuation Report that used a Projected Sold Adjustment and/or Age of Ad Adjustment.

        (a)     "State Farm" means State Farm Mutual Automobile Insurance Company and/or State Farm Fire and Casualty Insurance Company.

        (b)     "Total Loss Comparable Vehicle Valuation Report" means a report generated by a computerized system that values a Total Loss Vehicle by identifying comparable vehicles and making adjustments to either the asking or selling price of such vehicles in an attempt to determine the actual cash value of the Total Loss Vehicle at the time of loss. Total Loss Comparable Vehicle Valuation Reports do not include either appraisals or reports that use dealer quotes.

        (c)     "Projected Sold Adjustment" means an adjustment to the asking price of comparable vehicles used in Total Loss Comparable Vehicle Valuation Reports provided by Mitchell to State Farm in California to reflect the price for which that comparable vehicle was projected to sell.

        (d)     "Age of Ad Adjustment" means the adjustment to comparable vehicles used in Total Loss Comparable Vehicle Valuation Reports provided by Mitchell to State Farm in California, to account for depreciation of a vehicle between the time that it is listed for sale and the date of loss.

        (e)     "Total Loss Vehicle" means a vehicle owned by a person within the Settlement Class that was determined by State Farm to be a total loss.

5.     Specifically, the Court finds for settlement purposes only that the proposed Settlement Class described above satisfies the following factors of Federal Rule of Civil Procedure 23:

        (a)     Numerosity: In this case, thousands of individuals and/or entities have potential claims. Thus, the Rule 23(a)(1) numerosity requirement has been met.

        (b)     Commonality: The threshold for commonality under Rule 23(a)(2) is not high and a single common issue will suffice. In this case, Plaintiff alleges that State Farm's use of a Projected Sold Adjustment and/or Age of Ad Adjustment violated Title

EXHIBIT 2 – page 3-
PRELIMINARY APPROVAL ORDER

10 of California Code of Regulations § 2695.8 (the "Total Loss Regulation" or "TLR"), an allegation that is denied by State Farm. This issue is common to the Settlement Class.

(c)     Typicality:  The Plaintiff's claims are typical of those of the Settlement Class and satisfy Rule 23(a)(3).

(d)     Adequacy:  There are no disabling conflicts of interest between the Plaintiff and Settlement Class Members and the Plaintiff has retained competent counsel to represent the Settlement Class. Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter. The adequacy requirement is satisfied.

(e)     There is predominance and superiority. The common legal and factual issue listed is predominant of all claims in the litigation. Resolution of the common question constitutes a significant part of Plaintiff's and Settlement Class Members' claim. Further, because the Settlement Class is being certified for purposes of settlement only, the Court need not consider factors, if any, that might render a class action unmanageable and which might otherwise destroy superiority so as to preclude certification of a class for trial.

6.     In the interest of clarity, the Court notes that the Court makes the findings set forth above regarding certification of the proposed Settlement Class subject to the provision in the Agreement which provides for restoring the Parties to their positions as of October 29, 2009 if the settlement is not consummated. The Court's findings regarding the class certification requirements of Rule 23 are subject to the Fairness Hearing and are done without prejudice to the facts, record, and argument that will be before the Court in connection with any class proposed for litigation of any remaining claims in the case against any other party.

7.     The Court appoints the following person as Class Representative: Arnesha M. Garner.

8.     The Court appoints the following persons as Class Counsel: David M. Birka-White of Birka-White Law Offices, and Robert J. Nelson, of Lieff, Cabraser, Heimann & Bernstein, LLP.

EXHIBIT 2 – page 4-
PRELIMINARY APPROVAL ORDER

9.      The Court preliminarily approves the Agreement, together with all of its Exhibits, attached hereto as Exhibit A, as being fair, reasonable and adequate, entered into in good faith, free of collusion, and within the range of possible judicial approval.

10.     The Court approves the form and content of the Settlement Notice, substantially in the form attached as Exhibit 1 to the Agreement.  This Court finds that the Notice Plan, described in section 5 of the Agreement, is the best practicable under the circumstances.  The Notice Plan is reasonably calculated to apprise the Settlement Class Members of class certification, as well as the proposed Settlement and Class Counsel's application for fees and expenses, and constitutes sufficient notice to all persons entitled to notice.  The Notice Plan satisfies all applicable requirements of law, including, but not limited to, Rule 23 of the Federal Rules of Civil Procedure and the Constitutional requirement of due process.

11.     The Court directs that Rust Consulting, Inc. act as the Administrator (as defined in the Agreement) and directs the Administrator to disseminate the Settlement Notice in the following manner, which satisfies the requirements of Federal Rule of Civil Procedure 23 and due process:

(a)      Within 25 days following entry of the Preliminary Approval Order, the Administrator shall mail, or cause to be mailed, copies of the Settlement Notice, by first class United States mail, postage prepaid, to all potential Settlement Class Members at the most recent address obtained by the methods described in the Agreement.  The Court finds that the procedures provided for in the Agreement constitute an appropriate effort to locate current addresses for Settlement Class Members.  No additional efforts are required.

(b)      The Administrator shall create and manage a toll free number with an automated system providing information about the Agreement, with the ability to request copies of the Settlement Notice or the Agreement, and to speak with live operators.

12.     Rust Consulting, Inc. is directed to perform all other responsibilities under the Notice Plan assigned to the Administrator in the Agreement.

EXHIBIT 2 – page 5-
PRELIMINARY APPROVAL ORDER

13. The Court directs that a hearing be scheduled for _____, 2010, at __ o'clock __.m. (the "Fairness Hearing") to assist the Court in determining whether the Settlement provided for in the Agreement is fair, reasonable and adequate; whether Final Judgment should be entered dismissing with prejudice the above-captioned action and any other actions by Settlement Class Members pending before this Court; and whether Class Counsel's application for fees and expenses should be approved.

14. The Court further directs that any Settlement Class Member who objects to the Agreement must mail his, her or its objection to the Administrator postmarked by the U.S. Postal Service on or before the Objection Deadline. Objections must be in writing and must provide a detailed description of the nature and basis for each objection, the Settlement Class Member's name, address and telephone number and, if represented by personal counsel, counsel's name, address, and telephone number. Prior to the Fairness Hearing, the Administrator will file with the Court any timely objections received, and will promptly provide unredacted copies of any timely objections received to Class Counsel and State Farm.

15. The Court further directs that any Settlement Class Member may appear at the Fairness Hearing, either in person or through personal counsel, retained at the Settlement Class Member's expense, to voice an objection to the Settlement or to Class Counsel's application for fees and expenses, only if the Settlement Class Member has made a timely written objection postmarked by the U.S. Postal Service on or before the Objection Deadline. Settlement Class Members or their attorneys who wish to appear at the Fairness Hearing must make such a request in writing and mail it to the Administrator prior to the Objection Deadline. The written request to appear must include the name, address and telephone number of the person who will appear at the Fairness Hearing and a copy of the written objection to the Settlement. Prior to the Fairness Hearing, the Administrator will file with the Court any timely written requests to appear received, and will promptly provide unredacted copies of any timely written requests to appear received to Class Counsel and State Farm.

16. The Court further directs that any person within the Settlement Class definition who wishes to be excluded from the Settlement Class must mail a written Request for Exclusion

EXHIBIT 2 – page 6-
PRELIMINARY APPROVAL ORDER

to the Administrator postmarked by the U.S. Postal Service on or before the Opt Out Deadline. Any Request for Exclusion must be signed by the person seeking exclusion, or the authorized representative of an entity seeking exclusion, and must clearly state his, her or its desire to be excluded from the Settlement Class, and include his, her or its name, address and telephone number. Any person within the Settlement Class definition who mails a Request for Exclusion to the Administrator may withdraw such Request for Exclusion, and thus elect to be included as a Settlement Class Member, at any time prior to the Opt-Out Deadline.

17.     The names, addresses, telephone numbers, and any other personal identifying information of all potential Settlement Class Members and Settlement Class Members shall be kept confidential by the Administrator and not disclosed to any person except as ordered by the Court upon good cause shown and shall be used only for the purposes of this Agreement. Whenever in a report, the Administrator or any other Party needs to identify a specific claim, it can refer to the claim by State Farm Claim Number, which is not required to be redacted from publicly available documents.

18.     The Court further directs the Administrator to file with the Court a report on efforts undertaken to implement the Notice Plan on or before the Fairness Hearing. Copies shall be provided to Class Counsel and State Farm.

19.     The cost of providing Notice, as provided for by this Order and the Agreement, shall be paid from the Gross Settlement Fund.

20.     The Court further directs the Administrator to promptly provide unredacted copies of any Requests for Exclusion, and any withdrawals thereof, to State Farm and Class Counsel. On the date of the Fairness Hearing, the Administrator will submit to the Court, under seal, a report identifying all persons making Requests for Exclusion that were not thereafter timely withdrawn and the date on which each request was postmarked (or if there is no legible postmark date, the date received by the Administrator). A copy of the report will be provided to State Farm and Class Counsel, who will keep the report confidential.

21.     The Court further directs that, pending final determination of whether the Agreement should be approved, neither the Plaintiff, nor any Settlement Class Member, either

EXHIBIT 2 – page 7-
PRELIMINARY APPROVAL ORDER

directly, representatively, or in any other capacity, shall commence or prosecute any action or proceeding in any court or tribunal asserting any of the Released Claims (as defined in the Agreement) against the Released Parties (as defined in the Agreement).

22. Neither the Agreement, nor any exhibit, document or instrument delivered thereunder shall be construed as or deemed to be evidence of an admission or concession by State Farm or the Released Parties of an interpretation of, or course of conduct in connection with, the policy language and forms of the Subject Insurance Policies, or of any liability or wrongdoing by State Farm, or of the truth of any allegations asserted by Plaintiff, Settlement Class Members or any other person.

23. The Court finds that the Agreement, along with all related drafts, motions, court papers, conversations, negotiations, mediations and correspondence, including statements made in mediations or written submissions to the mediator, constitute an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408, California Rule of Evidence 1152 and any equivalent rule of evidence of any state; and are privileged pursuant to Section 1119 of the California Evidence Code.

24. Except as provided in paragraph 25, neither the Agreement, approved or not approved, nor any exhibit, document or instrument delivered thereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of the Agreement, shall be admissible in evidence in this or any other proceeding for any purpose, including as evidence of an interpretation of, or course of conduct in connection with, the policy language and forms of the Subject Insurance Policies. Without limitation of the foregoing, nothing contained in the Agreement, approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of the Agreement, shall be given any form of res judicata, collateral estoppel or judicial estoppel effect against State Farm or the Released Parties in any administrative or judicial forum or proceeding.

EXHIBIT 2 – page 8-
PRELIMINARY APPROVAL ORDER

25.     Notwithstanding the foregoing, the Agreement, any order granting preliminary or final approval of the Agreement and any appellate decision affirming Final Judgment is admissible as follows.

(a)     The Agreement is admissible by any Party for the purpose of obtaining approval of, implementing and/or enforcing the Agreement.

(b)     The Agreement, any order granting preliminary or final approval to the Agreement, any appellate decision affirming Final Judgment, and any proceedings and submissions in connection with this Agreement are admissible for purposes of determining Class Counsel's application for attorneys' fees and costs or in connection with any appeal of an award of Class Counsel's attorneys' fees and costs in this Action.

(c)     If finally approved, the Agreement, any order granting preliminary or final approval to the Agreement and any appellate decision affirming any order of this Court with respect to the Agreement, may be pleaded by State Farm or the Released Parties as a full and complete defense (including any defense based upon release, res judicata, or injunction) to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims; and the Agreement, any order granting preliminary or final approval to the Agreement and any appellate decision affirming this Final Judgment, or any other proceedings in connection therewith, may be filed, offered or submitted by State Farm or the Released Parties or otherwise used in support of such defense.

(d)     If finally approved, the Agreement, any order granting preliminary or final approval to the Agreement, any appellate decision affirming Final Judgment, any proceedings in connection with the Agreement, or any action by the California Department of Insurance regarding the Agreement, may be filed, offered or submitted only by State Farm or the Released Parties as evidence that the action that State Farm agrees to undertake in section 11 of the Agreement is fair and reasonable and complies with the TLR.

EXHIBIT 2 – page 9-
PRELIMINARY APPROVAL ORDER

26.     If the Settlement Agreements is not approved, or the Effective Date does not occur, or the Agreement is terminated pursuant to its terms, then (a) all parties will be restored to their respective positions in this litigation as they were on October 29, 2009; (b) all parties will proceed in all respects as if the Agreement (except those provisions that, by their terms, expressly survive disapproval or termination of the Settlement) had not been executed and the related orders and judgment had not been entered, preserving in that event all of their respective claims and defenses in the Action; and (c) all releases given will be null and void. In such an event, this Court's orders regarding the Settlement, including this Preliminary Approval Order, shall not be used or referred to in litigation for any purpose whatsoever.

27.     The Court further directs that the following deadlines are established by this Preliminary Approval Order:

Opt Out Deadline            _____

Objection Deadline          _____

Fairness Hearing            _____

Dated this __ day of _____, 2010.

_____
The Honorable Claudia Wilken
United States District Court Judge

EXHIBIT 2 – page 10-
PRELIMINARY APPROVAL ORDER

| 1 | SEDGWICK, DETERT, MORAN & ARNOLD LLP | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP |
|---|---|---|
| 2 | KEVIN J. DUNNE  Bar No. 40030 | ROBERT J. NELSON Bar No. 132797 |
| | LAURA L. GOODMAN  Bar No. 142689 | MICHAEL W. SOBOL Bar No. 194857 |
| 3 | MICHELLE Y. MCISAAC Bar No. 215294 | ROGER HELLER Bar No. 215348 |
| | ANDREW J. KING Bar No. 253962 | Embarcadero Center West |
| 4 | One Market Plaza | 275 Battery Street, 30th Floor |
| | Steuart Tower, 8th Floor | San Francisco, California 94111 |
| 5 | San Francisco, California 94105 | Telephone: (415) 956-1000 |
| | Telephone: (415) 781-7900 | Facsimile: (415) 956-1008 |
| 6 | Facsimile: (415) 781-2635 | |
| 7 | | BIRKA-WHITE LAW OFFICES |
| | SKADDEN, ARPS, SLATE, MEAGHER & | DAVID M. BIRKA-WHITE Bar No. 85721 |
| 8 | FLOM LLP | 411 Hartz Avenue, Suite 200 |
| | KATHERINE ARMSTRONG (pro hac vice) | Danville, California 94526 |
| 9 | Four Times Square | Telephone: (925) 362-9999 |
| | New York, New York  10036 | Facsimile: (925) 362-9970 |
| 10 | Telephone: (212) 735-3000 | |
| | Facsimile: (212) 735-2000 | Attorneys for Plaintiff |
| 11 | | ARNESHA M. GARNER |
| | Attorneys for Defendant | |
| 12 | STATE FARM MUTUAL AUTOMOBILE | |
| | INSURANCE COMPANY | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 17 | ARNESHA M. GARNER, on behalf of herself and all others similarly situated, | CASE NO. CV 08 1365 CW (EMC) |
| 18 | | **FINAL ORDER AND JUDGMENT** |
| 19 | Plaintiff, | |
| 20 | v. | |
| 21 | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| 22 | | |
| 23 | Defendant. | |

Having considered all motions, memoranda and submissions made in connection with the

proposed class action settlement agreement, together with all of its Exhibits attached thereto,

dated [date], (the "Agreement"), and the record of these proceedings, the representations,

argument, and recommendation of counsel for the moving parties, and the requirements of law;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

EXHIBIT 3 – page 1-

FINAL ORDER AND JUDGMENT

1.     The definitions and terms set forth in the Agreement are hereby adopted and incorporated into this Final Order and Judgment.

2.     The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1332.

3.     Venue is proper in this district.

4.     This Court incorporates into this Final Judgment its prior rulings in this Action, including the following:

     (a)     On June 30, 2008, this Court entered an order granting the motion to compel an appraisal filed by Defendant State Farm Mutual Automobile Insurance Company ("State Farm").  This Court held that State Farm "had the contractual right to demand an appraisal, and Plaintiff had the contractual obligation to proceed with the appraisal process.  Pursuant to the terms of the contract, this was a precondition to Plaintiff's filing a lawsuit."  (Docket 47, June 30, 2008 Order at 14-15.)  This Court further found that the appraisal process provided for in State Farm's insurance policy was not one-sided, was sanctioned by state statute and was not unconscionable.  (*Id.* at 18-19.)

     (b)     On March 23, 2009, this Court entered an order denying State Farm's motion for summary judgment and granting Plaintiff's cross-motion for summary adjudication, holding that the TLR was in effect during the relevant time frame.  (Docket 159, March 23, 2009 Order at 17-19.)  In its March 23, 2009 Order, this Court found that the "CDI [had] informed Mitchell that the agency would be satisfied if Mitchell used the midpoint of the [DMV VLF Data] range in conducting [total loss] valuations."  (*Id.* at 10.)  The Court further found that "the $200 dollar range of sales prices that can be derived from the DMV's VLF codes constitute[d] sales price data" that could be used by insurers as actual sales price data for comparable vehicles in performing total loss valuations pursuant to the TLR.  The Court noted that "the CDI takes the position that VLF data relates to 'actual sales prices,' and thus can be used to conduct valuations in accordance with the TLR," that CDI had indicated that the mid-range of the

EXHIBIT 3 – page 2-

FINAL ORDER AND JUDGMENT

1    VLF Data could be used, and that "the $200 [VLF] range . . . is suitable and is accepted

2    by the agency in charge of enforcing the TLR."  (*Id.* at 13.)

3       5.    The Court hereby confirms its prior findings regarding certification of the

4    Settlement Class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23.

5       6.    The Court reconfirms the appointment of the following person as Class

6    Representative:  Arnesha M. Garner.

7       7.    The Court reconfirms the appointment of the following attorneys as Class

8    Counsel:  David M. Birka-White of Birka-White Law Offices, and Robert J. Nelson, of Lieff,

9    Cabraser, Heimann & Bernstein, LLP.

10      8.    The Court reconfirms the appointment of Rust Consulting, Inc. as the

11   Administrator.

12      9.    The Court finds that the Settlement Notice and Notice Plan as carried out by the

13   Administrator complied with this Court's Preliminary Approval Order dated [date] and satisfied

14   the requirements of Federal Rule of Civil Procedure 23(e) and due process.  This Court has

15   previously held the Notice Plan to be the best practicable under the circumstances.  The Court

16   ordered notice by mail to identifiable Settlement Class Members and finds that such notice was

17   reasonably calculated to apprise the Settlement Class Members of class certification, the

18   proposed Settlement and Class Counsel's application for fees and expenses, constituted

19   sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law,

20   including, but not limited to, Rule 23 of the Federal Rules of Civil Procedure and the

21   Constitutional requirement of due process.  The Settlement Notice clearly and concisely

22   informed Settlement Class Members of the relevant aspects of the litigation and the Settlement,

23   including:  (i) the definition of who is a Settlement Class Member; (ii) the history of the

24   litigation; (iii) the terms of the Settlement; (iv) the binding effect of any judgment for those

25   persons who are Settlement Class Members; (v) the right of Settlement Class Members to

26   request exclusion (opt out) from the Settlement Class and the procedures and deadlines for doing

27   so; (vi) the right of Settlement Class Members to object to any aspect of the Settlement and/or to

28   appear at the Fairness Hearing and the procedures and deadlines for doing so; (vii) the date, time,

EXHIBIT 3 – page 3-
FINAL ORDER AND JUDGMENT

and location of the Fairness Hearing; (viii) how to obtain additional information; (ix) the benefits of the Settlement and how to participate in the Settlement; and (x) information on Class Counsel's fees and expenses.

10.     The Court holds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this case.

11.     The Court approves the Agreement, all terms of which are incorporated herein by reference, as being fair, adequate, and reasonable and in the best interests of the Settlement Class, satisfying Federal Rule of Civil Procedure 23(e) and the fairness and adequacy factors of this Circuit.

12.     In the Agreement, State Farm agrees that, with respect to claims administered in California, within thirty (30) days following the Effective Date, Mitchell (or any other total loss vendor that State Farm may in the future use) will use any one or some combination of the following for comparable vehicles used by Mitchell (or any other total loss vendor) when preparing a Total Loss Comparable Vehicle Valuation Report for State Farm: (i) the high point of VLF Data obtained from the DMV, or (ii) actual sales prices from other sources compliant with the TLR, or (iii) the asking price of advertised vehicles (without a projected sold or age of ad adjustment). State Farm will continue to require the company that provides it with Total Loss Comparable Vehicle Valuation Reports in California to use either the high point of DMV VLF Data, or actual sales prices from other sources compliant with the TLR, or the asking price of advertised vehicles (without a projected sold or age of ad adjustment), or a combination thereof, when preparing a Total Loss Comparable Vehicle Valuation report for use by State Farm in California in connection with vehicle total loss claims made under the Physical Damages Coverages of automobile policies administered in California until (1) a change in the law (including, without limitation, any changes to applicable regulations, case law or CDI statements interpreting those regulations, or constitutional challenges to the validity of the regulations) requires or permits use of a different method of computation, or (2) State Farm is instructed to use a different method of computation by the CDI or any court of law.

EXHIBIT 3 – page 4-
FINAL ORDER AND JUDGMENT

13.     The Settlement of this Action on the terms and conditions set forth in the Agreement is approved and confirmed in all respects as fair, reasonable and adequate under Federal Rule of Civil Procedure 23, and in the best interest of the Settlement Class and Settlement Class Members, especially in light of the benefits to the Settlement Class and the costs and risks associated with the complex proceedings necessary to achieve a favorable result at trial and through any post-judgment appeals.  Class Counsel and State Farm are directed to consummate the Settlement in accordance with the Agreement.

14.     The Court directs Rust Consulting, Inc. to perform the responsibilities of the Administrator as set forth in the Agreement.

15.     Upon the Effective Date of the Agreement, each Settlement Class Member fully releases and discharges each Released Party (as defined below) from any and all of the Released Claims (as defined below).

(a)     "Released Claims" means any and all claims that Settlement Class Members may have or may acquire against the Released Parties, or any of them, arising out of or related to State Farm's use of the Subject Valuation Reports, including without limitation, all claims for damages or remedies of whatever kind or character, known or unknown, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, administrative adjudication, or in any other manner, including without limitation for actual damages, exemplary and punitive damages, statutory damages, penalties of any kind, property damage, personal injuries, emotional distress, loss of wages, income, earning, and earning capacity, economic or business losses, restitution, disgorgement of profits, prejudgment and postjudgment interest, injunctive or declaratory relief, and any other losses or detriment of any kind. Without limiting the foregoing, Released Claims include any and all claims for breach of contract, negligence, breach of fiduciary duty, bad faith, fraud, unfair business practices, unfair competition, deceptive trade practices, conspiracy, concert of action, violations of any statute or regulation and all claims that were or could have been asserted in the Action.

EXHIBIT 3 – page 5-
FINAL ORDER AND JUDGMENT

(b)     "Subject Valuation Report" means a Total Loss Comparable Vehicle Valuation Report provided by Mitchell to State Farm that included a Projected Sold Adjustment and/or Age of Ad Adjustment and which was used by State Farm to make a payment to a Settlement Class Member under the comprehensive or collision provisions of a Subject Insurance Policy (and not pursuant to uninsured or underinsured motorist coverage).

(c)     The "Released Parties" are State Farm, Mitchell, J.D. Power & Associates, and each of their current and former agents, employees, officers, directors, attorneys, owners, shareholders, policyholders, associated and affiliated companies, parents, divisions, subsidiaries, successors, assigns, reinsurers, and liability insurance carriers.  To the extent of their liability for the alleged acts or omissions giving rise to the Released Claims, "Released Parties" also means State Farm Insurance Agents, and independent or contract vehicle repair shops consulted by State Farm, together with each of the foregoing's current and former agents, employees, officers, directors, attorneys, owners, shareholders, associated and affiliated companies, parents, divisions, subsidiaries, successors, assigns, and insurers.

16.     Upon the Effective Date of the Agreement, each Settlement Class Member shall be deemed to acknowledge and agree that the Released Claims may include claims that Settlement Class Members do not know or suspect to exist in their favor at the time of the release of the Released Parties and which, if known by them, might have affected their decision to settle and release the Released Claims or take any other action, including, but not limited to, the decision not to object to the Agreement.  Upon the Effective Date of the Agreement, Settlement Class Members expressly waive any and all rights that they may have under any statute, regulation, administrative adjudication, or common law principle that would limit the effect of the Release provided in the Agreement to the claims actually known or suspected to exist at the time of the Agreement, including the provisions of Section 1542 of the California Civil Code.

17.     Each Settlement Class Member who negotiates (i.e., cashes, deposits or endorses) the check sent to him, her or it pursuant to the Distribution Plan, shall be deemed to represent

EXHIBIT 3 – page 6-

FINAL ORDER AND JUDGMENT

and warrant that he, she or it does not owe any money to any person or entity who provided financing for, the Total Loss Vehicle that was the subject of the claim for which he, she or it is receiving a payment pursuant to the Settlement or to any other person or entity with a security interest in the Total Loss Vehicle, a lessor of the Total Loss Vehicle, or a lien on any insurance payments that the Settlement Class Member may receive for such Total Loss Vehicle. The Supplemental Notice will advise Settlement Class Members of this provision of the Settlement and that, if they cannot make this representation and warranty, they should contact the Administrator, who will re-issue payment jointly to the Settlement Class Member and any relevant lender, lien holder or lessor. The Supplemental Notice will advise Settlement Class Members that knowingly making a false representation may constitute fraud.

18. Each Settlement Class Member who cashes, deposits, endorses, or otherwise negotiates any check from the Administrator for his, her or its share of the Net Settlement Fund will be deemed to have agreed to hold harmless and indemnify the Released Parties from any and all liens, assignments, subrogation, encumbrances, garnishments, security interests or any other legally perfected right of another person with respect to any amounts to be paid to that Settlement Class Member by State Farm as a result of the Agreement.

19. By entry of this Final Judgment, each Settlement Class Member is hereby forever barred and permanently enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against the Released Parties with respect to the Released Claims.

20. Neither the Agreement, nor any exhibit, document or instrument delivered thereunder shall be construed as or deemed to be evidence of an admission or concession by State Farm or the Released Parties of an interpretation of, or course of conduct in connection with, the policy language and forms of the Subject Insurance Policies, or of any liability or wrongdoing by State Farm, or of the truth of any allegations asserted by Plaintiff, Settlement Class Members or any other person.

21. The Court finds that the Agreement, along with all related drafts, motions, court papers, conversations, negotiations, mediations and correspondence, including statements made

EXHIBIT 3 – page 7-
FINAL ORDER AND JUDGMENT

1  in mediations or written submissions to the mediator, constitute an offer to compromise and a

2  compromise within the meaning of Federal Rule of Evidence 408, California Rule of Evidence

3  1152 and any equivalent rule of evidence of any state; and are privileged pursuant to Section

4  1119 of the California Evidence Code.

5       22.    Except as provided in paragraph 23, neither the Agreement, approved or not

6  approved, nor any exhibit, document or instrument delivered thereunder, nor any statement,

7  transaction or proceeding in connection with the negotiation, execution or implementation of the

8  Agreement, shall be admissible in evidence in this or any other proceeding for any purpose,

9  including as evidence of an interpretation of, or course of conduct in connection with, the policy

10  language and forms of the Subject Insurance Policies. Without limitation of the foregoing,

11  nothing contained in the Agreement, approved or not approved, nor any exhibit, document or

12  instrument delivered hereunder, nor any statement, transaction or proceeding in connection with

13  the negotiation, execution or implementation of the Agreement, shall be given any form of res

14  judicata, collateral estoppel or judicial estoppel effect against State Farm or the Released Parties

15  in any administrative or judicial forum or proceeding.

16       23.    Notwithstanding the foregoing, the Agreement, any order granting preliminary or

17  final approval of the Agreement and any appellate decision affirming Final Judgment is

18  admissible as follows.

19       (a)    The Agreement is admissible by any Party for the purpose of obtaining

20  approval of, implementing and/or enforcing the Agreement.

21       (b)    The Agreement, any order granting preliminary or final approval to the

22  Agreement, any appellate decision affirming Final Judgment, and any proceedings and

23  submissions in connection with this Agreement are admissible for purposes of

24  determining Class Counsel's application for attorneys' fees and costs or in connection

25  with any appeal of an award of Class Counsel's attorneys' fees and costs in this Action.

26       (c)    The Agreement, any order granting preliminary or final approval to the

27  Agreement and any appellate decision affirming this Final Judgment, may be pleaded by

28  State Farm or the Released Parties as a full and complete defense (including any defense

EXHIBIT 3 – page 8-

FINAL ORDER AND JUDGMENT

based upon release, res judicata, or injunction) to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims; and the Agreement, any order granting preliminary or final approval to the Agreement and any appellate decision affirming this Final Judgment, or any other proceedings in connection therewith, may be filed, offered or submitted by State Farm or the Released Parties or otherwise used in support of such defense.

(d)     The Agreement, any order granting preliminary or final approval to the Agreement, any appellate decision affirming Final Judgment, any proceedings in connection with the Agreement, or any action by the California Department of Insurance regarding the Agreement, may be filed, offered or submitted only by State Farm or the Released Parties as evidence that the action that State Farm agrees to undertake in section 11 of the Agreement is fair and reasonable and complies with the TLR.

24.     Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court, that threatens to undermine the settlement in this case and this Final Judgment.

25.     The Court also awards $_____ to Arnesha Garner to compensate her for the effort, time and expense spent by her in connection with the prosecution of this action.

26.     FINAL JUDGMENT is hereby ENTERED dismissing with prejudice the above captioned action.

27.     This Final Judgment constitutes a final judgment pursuant to Federal Rule of Civil Procedure 54(a).  Alternatively, the Court finds that there is no just reason for delay and this Final Judgment is a final judgment pursuant to Federal Rule of Civil Procedure 54(b).  The Court DIRECTS the ENTRY OF JUDGMENT on all issues contained in this Final Judgment.

Dated this __ day of _____, 2010

_____
The Honorable Claudia Wilken
United States District Court Judge

EXHIBIT 3 – page 9-

FINAL ORDER AND JUDGMENT

**UNITED STATES DISTRICT COURT – NORTHERN DISTRICT OF CALIFORNIA**

**IMPORTANT LEGAL NOTICE**

**State Farm California Policyholders Who Received a
Vehicle Total Loss Payment from State Farm in 2007 or 2008**

**Notice of Distribution of Settlement Payments**

*The Court has authorized this Notice.  It is not a solicitation from a lawyer.
You are not being sued.  Please read this entire notice carefully.*

**You were previously notified of a settlement of a class action in the lawsuit known as *Garner v. State Farm*.**

The settlement was approved by the court on [date] and is now final.  Enclosed with this notice is a check made payable to [name] in the amount of [$_____], which represents his, her, its or their share of the settlement fund.

By cashing, depositing, endorsing or otherwise negotiating the enclosed settlement check, you will be deemed to represent and warrant that:

- You do not owe any money to any person or entity who provided financing for the total loss vehicle that was the subject of the claim for which this payment is being made pursuant to the settlement, and

- You do not owe any money to any other person or entity with a security or a lessor's interest in the vehicle or a lien on any insurance payments that you may receive in connection with that vehicle.

If you cannot make both of these representations, you should call the Administrator at [number], so that the settlement check can be re-issued jointly to you and your lender, lien holder, or a lessor.  Knowingly making a false representation in connection with an insurance claim may constitute fraud.

By cashing, depositing, endorsing, or otherwise negotiating this check, you agree to hold harmless and indemnify the Released Parties from any and all liens, assignments, subrogation, encumbrances, garnishments, security interests or any other legally perfected right of another person with respect to any amounts paid to you as a result of the settlement.  The Released Parties are State Farm, Mitchell International, Inc., J.D. Power & Associates, State Farm Insurance Agents, independent or contract vehicle repair shops consulted by State Farm, and each of their current and former agents, employees, officers, directors, attorneys, owners, shareholders, policyholders, associated and affiliated companies, parents, divisions, subsidiaries, successors, assigns, reinsurers, and liability insurance carriers.

You are reminded that by remaining in the Settlement Class, you gave up all right to sue State Farm or the Released Parties for any and all claims that you may have or may acquire arising out of or related to State Farm's use of the computerized valuation reports at issue in the lawsuit.

The release given was a broad general release.  It included all claims that were asserted in the lawsuit, as well as claims that could have been asserted, including, without limitation, breach of contract, negligence, breach of fiduciary duty, bad faith, fraud, unfair business practices, unfair competition, deceptive trade practices, conspiracy, concert of action, and violation of any statute or regulation.  It included all types of relief that could be sought, including without limitation, actual damages, exemplary and punitive damages, statutory damages, penalties, property damage, personal injuries, emotional distress, loss of wages, income, earning, and earning capacity, economic or business losses, restitution, disgorgement of profits, prejudgment and postjudgment interest, and injunctive or declaratory relief.  The release included both known and unknown claims.

If you have any questions, please contact the Administrator at [number].  Please do not contact your State Farm Insurance Agent of State Farm.  The Administrator will be best able to help you with any questions about your settlement check.

EXHIBIT 4 – page 1