# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BERNADETTE WILLIAMS, RICK MCCONNELL, ROSILYN WILSON, LINDA LEWIS, LATASHA HUFF, HAUNANIMAE CERVANTES-WHITE, MARIA MUNOZ, KIMBERLY BENSON, ROY TUINSTRA, EVELYN BROWN, MICHELLE SNYDER, WILLIAM ROSS DEAN, RICHARD DACHEFF, DIANE NEWKIRK, SANDRA SMILING, SHAUN ROBERT, ROQUE ESPINOZA, JENNIFER PAYNE, LATISHIA BOWDEN, and DJ NEILL, on behalf of themselves and all others similarly situated, | Case No.: 1:22-cv-01422 Judge Virginia M. Kendall |
| Plaintiffs, | |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | |
| Defendant. | |

**DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant State Farm Mutual Automobile Insurance Co. ("State Farm") submits *Cudd v. State Farm Mutual Automobile Insurance Co.*, Case No. 4:21-cv-217 (CDL), ECF No. 29 (M.D. Ga. Oct. 28, 2022), as supplemental authority. The *Cudd* slip opinion is attached as **Exhibit 1**.

*Cudd* dismissed a materially identical putative class action alleging that State Farm systemically undervalued total loss claims through its use of a "typical negotiation adjustment" because the plaintiff there had failed to comply with the insurance policy's mandatory appraisal provision. (Ex. 1, slip op. at 1-2, 12-13.) Interpreting the same policy

language at issue here, the Court reasoned that "actual cash value," an undefined term in the policy, is simply the amount agreed upon by Plaintiff and State Farm. (*Id*. at 7-8.) But if they "could not initially reach an agreement as to the amount to which he was entitled under the policy should his vehicle be damaged, either party would have the right to attempt to resolve the disagreement through the appraisal process." (*Id*. at 8.) Until then, Plaintiff could not allege "compliance with all the provisions of [the] policy." (*Id*. at 9.) Accordingly, the Court dismissed Plaintiff's claims because the appraisal "provision is a condition precedent for payment of a disputed covered loss." (*Id*. at 1.)

*Cudd* is directly relevant to State Farm's arguments in its Motion to Compel Appraisal or, In the Alternative, Dismiss or Grant Summary Judgment that (i) appraisal is mandatory once invoked (ECF No. 34 at 7-8), (ii) Plaintiffs' allegations raise a valuation dispute covered by appraisal (ECF No. 34 at 4-6), and (ii) Plaintiffs cannot state claims without complying with the mandatory appraisal process, which is a condition precedent to suit. (ECF No. 34 at 9-13.)

State Farm also provides notice that with *Cudd* now dismissed, there no longer is any first-filed Georgia case to which the Court could apply the first-filed rule specifically to the Georgia Plaintiff's claims. However, because her claims are subject to mandatory appraisal, there would be no need for the Court to reach the first-filed argument.

Dated: November 1, 2022    Respectfully submitted,


*s/ Peter W. Herzog III*

Joe Carlasare
SMITH AMUNDSEN
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
Phone: 312.8894.3200
Email: jcarlasare@salawus.com

Peter W. Herzog III (*pro hac vice*)
WHEELER TRIGG O'DONNELL LLP
211 N. Broadway, Suite 2825
St. Louis, MO 63102
Phone: 314.326.4129
Email: pherzog@wtotrial.com

Eric L. Robertson (*pro hac vice*)
WHEELER TRIGG O'DONNELL LLP
370 17th Street, Suite 4500
Denver, CO 80202
Phone: 303.244.1842
Email: robertson@wtotrial.com

*Attorneys for Defendant State Farm Mutual Automobile Insurance Co.*

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JARRETT CUDD, on behalf of       *
himself and all others
similarly situated,              *

    Plaintiff,                   *

vs.                              *       CASE NO. 4:21-CV-217 (CDL)

STATE FARM MUTUAL AUTOMOBILE     *
INSURANCE COMPANY,
                                 *
    Defendant.
                                 *

_____

O R D E R

In this putative class action, Plaintiff alleges that Defendant breached its insurance contract with him when it initially evaluated the actual cash value of his covered total loss vehicle using a formula that underestimates that value. Although the systematic undervaluation of insureds' claims could under certain circumstances constitute a breach of the insurance contract, Plaintiff's claim ignores another provision of the policy which provides that either party shall have the right to submit any dispute as to the actual cash value of a covered loss to an appraisal process. Because this provision is a condition precedent for payment of a disputed covered loss and because Plaintiff failed to give Defendant the opportunity to submit this claim to an appraisal process, Plaintiff's claims are premature.

Accordingly, Plaintiff's complaint must be dismissed, and Defendant's motion to do so (ECF No. 23) is granted.

FACTUAL ALLEGATIONS

Preliminarily, the Court observes the obvious.  Its role is not to serve as the state insurance commissioner deciding best practices for the adjustment of claims.  The courts are not the proper forum for deciding such public policy issues.  The courts are established to provide a forum for the resolution of justiciable cases and controversies.  The disputed controversy here is whether Defendant breached its insurance contract with Plaintiff because the method it used to evaluate the amount to which he was entitled was flawed.  The analysis of this issue must begin with an ascertainment of the parties' agreement, and that determination begins with an examination of the policy language.

State Farm Mutual Automobile Insurance Company ("State Farm") insured Jarrett Cudd ("Cudd") under a standard insurance policy that provided coverage for damage to an insured vehicle.  That policy provides State Farm with an option when presented with an insured claim.  It may pay either the repair cost minus any applicable deductible or "the actual cash value of the **covered vehicle** minus any applicable deductible."  1st Am. Compl. Ex. A, Cudd State Farm Policy 23, ECF No. 17-1 at 30.[1]  The policy does

---

[1] "Under the doctrine of incorporation by reference, [the Court] may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed

not define "actual cash value." Instead, it contemplates that the parties will negotiate an agreement as to that amount.

Importantly, the policy specifically addresses how this process shall work. The policy states that the insured and State Farm "must agree upon the actual cash value of the **covered vehicle**. If there is disagreement as to the actual cash value of the **covered vehicle**, then the disagreement will be resolved by appraisal upon written request" by either party. *Id.* Once a party requests appraisal, each party "will . . . select a competent appraiser," and those "two appraisers will select a third competent appraiser"; if they cannot select a third appraiser within thirty days, either party "may petition a court that has jurisdiction to select the third appraiser." *Id.* The policy requires each party to "pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party," but both "parties will share equally the cost of the third appraiser." *Id.* These appraisers "*shall only determine the actual cash value of the covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis."

---

authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Cudd attached to the complaint a copy of his policy and State Farm's report reflecting the insurer's actual cash value calculation. These documents are central to his claims against State Farm, and no party disputes their authenticity, so the Court considers them for the present motion.

*Id.* (emphasis added). "A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the ***covered vehicle*** and" State Farm. *Id.* The policy also states unequivocally that "[l]egal action may not be brought against [State Farm] until there has been full compliance with all the provisions of this policy." *Id.* at 37.

Having established what the parties agreed to in their insurance contract, the Court must next determine whether what State Farm did breached that agreement. Cudd alleges that State Farm handled his claim consistent with its normal pattern and practice as follows. If State Farm determines that the vehicle's repair cost would exceed its value, State Farm declares the vehicle a "total loss" and pursues the actual cash value option. 1st Am. Compl. ¶ 17, ECF No. 17. To calculate a totaled vehicle's actual cash value, State Farm relies on a report prepared by a third-party vendor, Audatex. Audatex "identifies the price of comparable vehicles listed for sale online in the relevant market." *Id.* ¶ 23. At State Farm's direction, Audatex applies a "typical negotiation" deduction to the advertised price of each comparable vehicle, which reduces its price to purportedly "reflect the amount for which the car dealer will actually sell the vehicle." *Id.* ¶¶ 24, 26 (internal quotation marks omitted). After applying the typical negotiation deduction, Audatex adjusts for differences in features

4

and mileage between the comparable vehicle and the covered vehicle. 1st Am. Compl. Ex. B, Cudd Audatex Report 1-2, ECF No. 17-2. Audatex then averages the adjusted prices of the comparable vehicles and accounts for the covered vehicle's condition to produce the totaled vehicle's actual cash value. *Id.* at 2.

State Farm declared Cudd's vehicle a total loss in May 2021. Audatex compared Cudd's vehicle to four comparable vehicles for sale. For each comparable vehicle, Audatex reduced its advertised price by the typical negotiation deduction, which resulted in an adjusted price that was 8% or 9% lower than the asking price and which Cudd alleges reduced his "ultimate payment from State Farm by $670.25." 1st Am. Compl. ¶ 32. Cudd then filed this action without notifying State Farm that he disagreed with State Farm's calculation of the actual cash value of his vehicle, without any attempt to reach an agreement as to the actual cash value, and without providing State Farm with an opportunity to request an appraisal. After Cudd filed the present action, State Farm requested that they pursue the appraisal process provided in the policy, but Cudd refused.

Cudd claims that State Farm breached the insurance contract and was unjustly enriched by applying the "negotiation deduction." On behalf of himself and other putative class members, he seeks monetary damages, a declaration that the "typical" negotiation

deduction violates the policy and a Georgia insurance regulation, and attorneys' fees pursuant to O.C.G.A. § 13-6-11.

## DISCUSSION

It is undisputed that Cudd failed to allege the following in his complaint: that he notified State Farm that he disagreed with its actual cash value calculation, that he requested an appraisal before initiating this action, and that he provided State Farm with a meaningful opportunity to invoke the policy's appraisal process. It also appears undisputed that Cudd could not have made these allegations in good faith because he failed to do any of these things, and in fact, after he filed this action, he refused State Farm's request that they pursue the appraisal process as provided for in the policy.

The question for the Court is whether providing State Farm with a meaningful opportunity to invoke the appraisal process before filing suit is a condition precedent to filing this action. The plain and unambiguous language in the parties' contract clearly indicates that it is.[2]  "An insurance policy is a contract." *Haulers Ins. Co. v. Davenport*, 810 S.E.2d 617, 619 (Ga. Ct. App.

---

[2] A plaintiff must at least allege "generally" that all conditions precedent have been performed, something Cudd has not done. *See* Fed. R. Civ P. 9(c).  Even if his complaint could be construed to generally allege the satisfaction of this pleading requirement, it is undisputed that he did not comply with the specific conditions precedent applicable here, and it makes little sense to delay the determination of whether these undisputed facts require dismissal given that any opportunity to amend the complaint would be futile.

2018).  "A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." O.C.G.A. § 13-3-4.  Conditions precedent in contracts "are created by language such as 'on condition that,' 'if,' and 'provided,' or by explicit statements that certain events are to be construed as conditions precedent." *Choate Constr. Co. v. Ideal Elec. Contractors, Inc.*, 541 S.E.2d 435, 438 (Ga. Ct. App. 2000) (quoting *Fulton Cnty. v. Collum Props., Inc.*, 388 S.E.2d 916, 918 (Ga. Ct. App. 1989)).  If "the plain language of the contract is clear and unambiguous," then "the contract is enforced as written according to its plain terms and no further construction is needed or allowed." *Healthy-IT, LLC v. Agrawal*, 808 S.E.2d 876, 882 (Ga. Ct. App. 2017).

The policy here states that Cudd and State Farm "must agree upon the actual cash value" of his totaled vehicle.  Cudd State Farm Policy 23.  So, in the absence of a disagreement, the actual cash value offered by State Farm and accepted by the insured is the "actual cash value." *Id.*  Cudd clearly disagrees with State Farm's actual cash value assessment: he alleges that, by applying the typical negotiation deduction, "State Farm breaches its contractual obligation to pay 'actual cash value'" for total loss vehicles.  1st Am. Compl. ¶ 49; *see id.* ¶ 32 (claiming that the typical negotiation deduction "improperly reduced . . . his

7

ultimate payment from State Farm by $670.25"). Thus, a disagreement exists as to the actual cash value of Cudd's vehicle.

State Farm contends that the typical negotiation deduction reasonably accounts for market conditions, while Cudd claims that it unreasonably depresses total loss claims below market value. If the policy were silent as to how such disagreements shall be resolved, Cudd would have had every right to proceed with this action to let a jury decide whether State Farm breached the contract by not paying him actual cash value. But the policy directly addresses this issue. And thus the parties "agreed" as to how such issues of disagreement would be resolved. The policy states "*[i]f* there is disagreement [between State Farm and the insured] as to the actual cash value of the covered vehicle, *then* the disagreement will be resolved by appraisal upon written request" of either party. Cudd State Farm Policy 23 (emphasis added). So, Cudd and State Farm agreed—before Cudd ever suffered any damage to his vehicle—that if he and State Farm could not initially reach an agreement as to the amount to which he was entitled under the policy should his vehicle be damaged, either party would have the right to attempt to resolve the disagreement through the appraisal process. Yet Cudd never provided State Farm with the opportunity to invoke this appraisal process prior to filing this action. He simply chose to ignore the appraisal provision in the policy as if it was superfluous.

8

Furthermore, had the parties not agreed as to the consequences of failing to comply with the policy conditions, Cudd's failure to comply with this condition perhaps could have been excused. But the parties expressly addressed this issue in their contract, too. The clear and unambiguous language in the policy states that "[l]egal action may not be brought against [State Farm] until there has been full compliance with all the provisions of this policy." *Id.* at 37. Thus, Cudd's failure to notify State Farm of the disagreement and to comply with the appraisal provision makes this action premature.

The intention of the parties is clear from the unambiguous language in the policy. State Farm owes Cudd actual cash value for his loss. But the parties contractually agreed to a process for satisfying that obligation. That process contemplated that the parties would first attempt to agree as to the amount of the loss, and if they could not agree, each party would be provided the opportunity to invoke the appraisal process in a further attempt to resolve the dispute. It is a meaningful part of the process for attempting to resolve claims in an expeditious and less costly manner. And thus it is included as an express condition in the policy which must be satisfied before the insured can file a lawsuit. Cudd failed to satisfy this condition, and consequently, this action is premature. *See Moore v. Travelers*, 321 F. App'x 911, 913 (11th Cir. 2009) (per curiam) (concluding

9

that the insured, whose policy contained an appraisal provision constituting a condition precedent to suit, failed to state a claim without appraisal because he disputed "the dollar amount of the loss").

For the sake of completeness, the Court addresses *McGowan v. Progressive Preferred Insurance Co.*, the primary case relied upon by Cudd. 637 S.E.2d 27 (Ga. 2006). Trying to fit this case into the *McGowan* holding, Cudd argues that the appraisal provision does not apply to his claims because he challenges the practice of applying the typical negotiation deduction, not the amount underpaid.[3] In *McGowan,* the Georgia Supreme Court reversed the trial court's conclusion that a total loss vehicle appraisal mooted the plaintiff's fraud, breach of contract, and RICO claims. *Id.* at 28. The Georgia Supreme Court explained that those claims "reach[ed] beyond the mere actual cash value of [the insured's] vehicle" and an appraisal limited to the issue of value "cannot render these issues moot." *Id.* at 29. The *McGowan* Court acknowledged that appraisal provisions in insurance policies are enforceable. *Id.* (citing *Eberhardt v. Ga. Farm Bureau Mut. Ins.*

---

[3] Cudd also argues that the policy did not require him to pursue appraisal as a condition precedent to suit because no party made a written appraisal request before he filed this action. But Cudd never told State Farm that he disagreed with his totaled vehicle's actual cash value assessment before he filed this action, so State Farm could not make a written appraisal request or otherwise resolve Cudd's disagreement beforehand. State Farm made such a request once it learned, through this action, that Cudd disagreed with its assessment.

*Co.*, 477 S.E.2d 907, 908 (Ga. Ct. App. 1996)). It explained, however, that these provisions apply to disputes over the "amount" owed under the policy based upon calculations related to actual value of the loss. *Id.* These appraisal provisions are not "[a]rbitration clauses," which are not authorized in these types of insurance policies. *Id.* The question in *McGowan* was whether the insured's claims that alleged liability beyond simply a breach of the policy for failure to pay the actual cash value under the policy were subject to the policy's appraisal process. *Id.* The *McGowan* Court found that the appraisal provision did not apply to claims arising from conduct such as systemic fraud and racketeering activities. *Id.* These claims went beyond a dispute about the amount of the insured's property damage loss. *Id.*

Here, the substance of the dispute is whether State Farm's method for calculating actual cash value under the policy using a "typical negotiation deduction" resulted in a failure to comply with the policy, which obligates State Farm to pay actual cash value. While Cudd uses inflammatory language such as "surreptitiously," "improper scheme," "illegal[] . . . profits," "arbitrary deductions," "hidden," "unsupportable," and "baseless," he only alleges two independent substantive claims: one for breach of the insurance contract, and another for unjust enrichment. 1st Am. Compl. ¶¶ 5, 7, 25, 26, 30, 53. He has alleged no cause of action for fraud. He makes no racketeering claim under any RICO

11

statute.  And he alleges no claim in tort.  Although he does seek declaratory and injunctive relief in addition to damages for the breach of contract, his equitable relief simply seeks a confirmation that State Farm's method for calculating actual cash value using a negotiating deduction is contrary to the parties' contract.  The essence of his claims and prayers for relief is State Farm's alleged miscalculation of the "amount" of the actual cash value of his vehicle under the terms of his insurance policy.

Whether a negotiation deduction is an appropriate factor to consider in evaluating the fair market value of a vehicle is certainly within the realm of what a qualified appraiser would consider in determining the specific "amount" of the actual cash value of Cudd's vehicle under the policy.  The appraisers would not be asked to consider whether State Farm is liable for fraud, racketeering, or some other type of tortious conduct.  The appraisers would not even be deciding whether State Farm breached the contract.  They will simply be deciding the "amount" of the actual cash value of Cudd's vehicle.  To hold that the appraisal provision does not apply in this context would have the effect of making these appraisal clauses meaningless.  This Court does not have the authority to rewrite insurance contracts under these circumstances.  With all due respect to the Georgia Supreme Court, the Court finds that *McGowan* does not control here.  Sophisticated (and creative) lawyering cannot make it fit.  Because the appraisal

provision clearly applies and because Cudd never gave State Farm an opportunity to invoke those provisions, his action is premature and must be dismissed.[4]

CONCLUSION

For the foregoing reasons, the Court grants State Farm's motion to dismiss (ECF No. 23), and this action is dismissed in its entirety without prejudice.[5]


IT IS SO ORDERED, this 28th day of October, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[4] To the extent that Cudd maintains that the appraisal provision in the State Farm policy does not apply to his unjust enrichment claim, the Court dismisses that claim on the alternative ground that such a claim cannot be stated when a contract exists covering the same subject matter. *See Tidikis v. Network for Med. Commc'ns & Rsch. LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005) (stating that if "any benefit conferred on the defendant[] was triggered by a provision in the contract, the validity of which neither [the plaintiff] nor the defendant[] challenge . . . the unjust enrichment claim fails as a matter of law").

[5] The Court offers no opinion as to whether Cudd's complaint would state a claim upon which relief may be granted if it is filed in the future after complying with the appraisal condition in the policy.