## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BERNADETTE WILLIAMS, RICK MCCONNELL, IVAN SERRATA REYES, ROSILYN WILSON, LINDA LEWIS, LATASHA HUFF, HAUNANIMAE CERVANTES-WHITE, MARIA MUNOZ, TRACY OBRIEN, KIMBERLY BENSON, ROY TUINSTRA, EVELYN BROWN, MICHELLE SNYDER, PATRICIA COUCH, SABRINA CAPERS, WILLIAM ROSS DEAN, RICHARD DACHEFF, KRISTY KELLER, JASIMEN HERNANDEZ, EDGAR FLORIAN, MICHAEL GROSSBERG, MERRILL LOVE, DIANE NEWKIRK, SANDRA SMILING, DAVEY JOHNSTON, CYNTHIA ROEMER, SHAUN ROBERT, ROQUE ESPINOZA, JENNIFER PAYNE, LATISHIA BOWDEN, and DJ NEILL, TYSON DEWSNUP, and DEIRDRE PALMER, themselves and on behalf of all others similarly situated, | Case No. 1:22-cv-01422 **CLASS ACTION** **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, | |
| Defendant. | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, by and through undersigned counsel, bring this class action, individually and on behalf of all others similarly situated, against Defendant State Farm Mutual Automobile Insurance Company ("Defendant"), and allege as follows:

### INTRODUCTION

1.     This class action lawsuit arises from Defendant's deceptive, fraudulent, and unfair scheme through which Defendant systematically undervalues total-loss vehicles in order to

arbitrarily reduce its ultimate payment to insureds who make total loss claims under insurance policies issued by Defendant.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiffs and all putative Class members (defined below) promise to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as **Exhibit 1** are copies of each Plaintiffs' Policy ("Policy"), which are materially identical to the policies that provides coverage to all members of the putative Classes (defined below).

3.      Defendant ignores and avoids its straightforward contractual obligation by directing or relying on its third-party vendor to systematically reduce total loss evaluations. Specifically, to determine the amount of Defendant's total-loss payments to insureds, Defendant's third-party vendor identifies the price of comparable vehicles listed for sale in the relevant market. *After* the vendor determines the value of the comparable vehicles, Defendant's vendor applies an arbitrary and baseless flat-rate reduction to the value of each "comparable vehicle," which Defendant and its vendor call a "typical negotiation" adjustment.

4.      The "typical negotiation" adjustment is not based on any negotiations, typical or otherwise, and is not based on any market realities. Rather the "typical negotiation" adjustment ranges from 4-11% of the value of the "comparable vehicle." The vehicles with lesser value are subject to a greater percentage reduction, with the percentage adjustment becoming lower as the value of the "comparable vehicles" increases. This percentage reduction artificially reduces the total-loss payment for the totaled vehicle and, with the sliding percentage scale, ensures that every total loss payment Defendant offers to insureds is significantly, but unconscionably, reduced, and is, thus, never the insured vehicle's ACV.

5.     Notably, Defendant does ***not*** apply such arbitrary reductions to the value of insured vehicles in the state of California because Defendant in 2008 was sued in California for doing so, and as part of the settlement of that lawsuit, Defendant agreed to stop applying a "projected sold adjustment" (effectively the same as a "typical negotiation" adjustment) until "(1) a change in the law (including, without limitation, any changes to applicable regulations, case law or CDI statements…requires or permits use of a different method of computation, or (2) State Farm is instructed to use a different method of computation by the [California Department of Insurance] or any court of law." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 4:08-cv-01365-CW, ECF No. 244, Ex. A, Agreement of Compromise and Settlement, at 21-22 (N.D. Cal) (attached as **Exhibit 2**). Defendant, however, continues to use this arbitrary and unfair "typical negotiation" adjustment to artificially reduce its total loss payments in other states.

6.     An integral part of Defendant's fraudulent scheme is a provision of the Policy that requires the parties to submit to an appraisal if there is a disagreement over the ACV. The appraisal provision requires the insured and the insurer to each hire, ***at their own expense***, an appraiser, and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the artificially determined loss-payment for their total-loss claims, which is never as high as ACV. As designed by Defendant, the appraisal provision either prevents Plaintiffs and the Class from effectively vindicating their rights under the Policy or adds to the damages incurred by Defendant's insureds who must incur the expenses of appraisal to receive what they are entitled to in the first instance (and without the need for appraisal), that is the ACV.  If Plaintiffs and the members of the Class had known about

Defendant's fraudulent scheme, including the appraisal provision, they would not have insured their vehicles with Defendant or would have sought a lower premium to account for the actual loss payment Defendant would offer and, for many, the need to pay for appraisal to obtain what they believed was promised them in the event of a total loss: ACV.

7.      To be clear, this case does not present a dispute about ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policy, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

8.      Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant, and without any role, input or say from Plaintiffs or members of the Class, with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles including for many policyholders, the additional costs of appraisal required to obtain what they are entitled to in the first instance, but are never offered by Defendant: ACV.

9.      Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant violated consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*, breached its contracts and the covenant of good faith and fair dealing with its insureds, committed fraud, including fraud in the inducement, and was unjustly enriched.

10.     As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiffs did not receive the benefit of the bargain, and otherwise sustained actual damages.

11.     By this action, Plaintiffs, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

## PARTIES

### A.     Plaintiffs

12.     Plaintiff Bernadette Williams, at all relevant times, was an Alabama citizen. Williams owned a 2010 Toyota Camry LE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around June 7, 2018. Williams made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Williams for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Williams' total loss vehicle at $8,831.00 and paid Williams $8,792.72. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 7-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 3.**

13.     Plaintiff Rick McConnell, at all relevant times, was an Arkansas citizen. McConnell owned a 2018 Kia Soul Plus 4 door hatchback that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 3, 2021. McConnell made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to McConnell for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued McConnell's total loss vehicle at $12,235.00 and paid McConnell $12,785.98. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to all

comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 4.**

14.     Plaintiff Ivan Serrata Reyes, at all relevant times, was a Connecticut citizen. Serrata Reyes owned a 2015 Nissan Altima 2.5 SV 4D Sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 20, 2021. Serrata Reyes made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Serrata Reyes for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Serrata Reyes' total loss vehicle at $7,363.00 and paid Serrata Reyes $7,439.73. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6-7% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6-7, attached as **Exhibit 5.**

15.     Plaintiff Rosilyn Wilson, at all relevant times, was a Delaware citizen. Wilson owned a 2005 GMC Envoy SLT 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 5, 2018. Wilson made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Wilson for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Wilson's total loss vehicle at $5,177.00 and paid Wilson $5,212.00. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 8-9% to all comparable

vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6, attached as **Exhibit 6.**

16.     Plaintiff Linda Lewis, at all relevant times, was a Florida citizen. Lewis owned a 2003 Kia Sorento EX 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 23, 2017. Lewis made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Lewis for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Lewis' total loss vehicle at $4,364.00 and paid Lewis $4,227.41. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10-11% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4, attached as **Exhibit 7.**

17.     Plaintiff Latasha Huff, at all relevant times, was a Georgia citizen. Huff owned a 2015 Mercedes-Benz CLA250 STD Turbo 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 21, 2021. Huff made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Huff for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Huff's total loss vehicle at $20,656.00 and paid Huff $21,042.30. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4-5% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 7-8, attached as **Exhibit 8.**

18.     Plaintiff Haunanimae Cervantes-White, at all relevant times, was a Hawaii citizen. Cervantes-White owned a 2017 Volkswagen Jetta 4-door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 22, 2019. Cervantes-White made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Cervantes-White for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Cervantes-White's total loss vehicle at 11,950.00 and paid Cervantes-White $12,007.75. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6%-11% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 9**.

19.     Plaintiff Maria Munoz, at all relevant times, was an Illinois citizen. Munoz owned a 2020 Ford Escape SEL Turbo 4 door wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around February 13, 2021. Munoz made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Munoz for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Munoz's total loss vehicle at $26,067.00 and paid Munoz $28,518.37. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6-7, attached as **Exhibit 10**.

20.     Plaintiff Tracy Obrien, at all relevant times, was an Iowa citizen. Obrien owned a 2016 Kia Sorento LX V6 4WD 4D Wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around October 18, 2017. Obrien made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Obrien for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Obrien's total loss vehicle at $22,240.00 and paid Obrien $23,089.00. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 5% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 11.**

21.     Plaintiff Kimberly Benson, at all relevant times, was a Kansas citizen. Benson owned a 1997 Chrysler Sebring JX 2 door convertible that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 3, 2019. Benson made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Benson for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Benson's total loss vehicle at $2,916.00 and paid Benson $3,124.87. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10-11% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 12.**

22.     Plaintiff Roy Tuinstra, at all relevant times, was a Kentucky citizen. Tuinstra owned a 2011 Chevy Camaro LS2 that was insured under a Policy issued by Defendant, which was deemed a total loss on or around June 23, 2018. Tuinstra made a claim with Defendant for the total

loss of the vehicle. Defendant provided a total loss valuation to Tuinstra for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Tuinstra's total loss vehicle at $7,601 and paid Tuinstra $5,333.06. The market valuation report listed the value of one comparable vehicle and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to the comparable vehicle without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5, attached as **Exhibit 13**.

23.     Plaintiff Evelyn Brown, at all relevant times, was a Louisiana citizen. Brown owned a 2018 Toyota Corolla SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 22, 2021. Brown made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Brown for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Brown's total loss vehicle at $13,625.00 and paid Brown $13,955.00. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4-6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 14.**

24.     Plaintiff Michelle Snyder, at all relevant times, was a Maryland citizen. Snyder owned a 2013 Volkswagen Jetta SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 23, 2018. Snyder made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Snyder for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Snyder's total loss vehicle at $4,975 and paid Snyder $5,283.50. The market

valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 15.**

25.     Plaintiff Patricia Couch, at all relevant times, was a Michigan citizen. Couch owned a 2005 Chevrolet Impala LS 4D Sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around September 22, 2021. Couch made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Couch for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Couch's total loss vehicle at $3,805.00 and paid Couch $4,058.30. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 8-10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 16.**

26.     Plaintiff Sabrina Capers, at all relevant times, was a Minnesota citizen. Capers owned a 2012 GMC Acadia SLT-1 4WD 4D Wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around June 18, 2018. Capers made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Capers for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Capers' total loss vehicle at $14,687.00 and paid Capers $15,296.41. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4-5% to all comparable

vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-7, attached as **Exhibit 17.**

27.     Plaintiff William Ross Dean, at all relevant times, was a Mississippi citizen. Dean owned a 2016 Dodge Ram that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 31, 2020. Dean made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Dean for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Dean's total loss vehicle at $39,930.00 and paid Dean $40,938.83. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6-8, attached as **Exhibit 18.**

28.     Plaintiff Richard Dacheff, at all relevant times, was a Missouri citizen. Dacheff owned a 2016 Toyota Avalon XLE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around February 26, 2017. Dacheff made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Dacheff for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Dacheff's total loss vehicle at $23,728.00 and paid Dacheff $22,744.50. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4, attached as **Exhibit 19.**

29.     Plaintiff Kristy Keller, at all relevant times, was a Nebraska citizen. Keller owned a 2012 Chevrolet Silverado K1500 LT 4WD 4D Short Bed Ext Cab that was insured under a Policy issued by Defendant, which was deemed a total loss on or around October 27, 2017. Keller made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Keller for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Keller's total loss vehicle at $21,302.00 and paid Keller $20,926.65. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 6-7, attached as **Exhibit 20.**

30.     Plaintiff Jasimen Hernandez, at all relevant times, was a Nevada citizen. Hernandez owned a 2008 Scion tC STD 2D Coupe that was insured under a Policy issued by Defendant, which was deemed a total loss on or around August 6, 2020. Hernandez made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Hernandez for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Hernandez's total loss vehicle at $4,628.00 and paid Hernandez $5,050.85. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 9% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 21.**

31.     Plaintiff Edgar Florian, at all relevant times, was a New Hampshire citizen. Florian owned a 2014 Jeep Wrangler Unlmtd Altitude 4WD 4D Wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 23, 2020. Florian made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Florian for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Florian's total loss vehicle at $26,770.00 and paid Florian $26,295.00. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 22.**

32.     Plaintiff Michael Grossberg, at all relevant times, was a New Jersey citizen. Grossberg owned a 2010 Toyota Corolla LE 4D Sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 19, 2020. Grossberg made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Grossberg for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Grossberg's total loss vehicle at $4,992.00 and paid Grossberg $5,387.22. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 8-10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 23.**

33.     Plaintiff Merrill Love, at all relevant times, was a New Mexico citizen. Love owned a 2018 Kia Soul Base 4D Hatchback that was insured under a Policy issued by Defendant, which was deemed a total loss on or around July 1, 2018. Love made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Love for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Love's total loss vehicle at $16,588.00 and paid Love $16,590.64. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to one of the comparable vehicles without itemizing or explaining the basis of the adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5, attached as **Exhibit 24.**

34.     Plaintiff Diane Newkirk, at all relevant times, was a New York citizen. Newkirk owned a 2015 Subaru Impreza 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around January 23, 2021. Newkirk made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Newkirk for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Newkirks's total loss vehicle at $10,544.00 and paid Newkirk $10,887.52. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4-6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 25.**

35.     Plaintiff Sandra Smiling, at all relevant times, was a North Carolina citizen. Smiling owned a 2014 Nissan Altima 4 door sedan that was insured under a Policy issued by Defendant,

which was deemed a total loss on or around August 1, 2019. Smiling made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Smiling for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Smiling's total loss vehicle at $5,181.00 and paid Smiling $5,181.00. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6-8% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 26.**

36.     Plaintiff Shaun Robert, at all relevant times, was an Ohio citizen. Robert owned a 1999 Dodge Durango 4WD that was insured under a Policy issued by Defendant, which was deemed a total loss on or around April 8, 2021. Robert made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Robert for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Robert's total loss vehicle at $3,361 and paid Robert $3,138.16. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 27.**

37.     Plaintiff Davey Johnston, at all relevant times, was an Oklahoma citizen. Johnston owned a 2018 Volkswagen Tiguan SEL Turbo 4WD 4D Wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around March 14, 2021. Johnston made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Johnston for the total loss claim. Defendant based its offer upon a valuation report obtained

from Audatex. Defendant valued Johnston's total loss vehicle at $21,365.00 and paid Johnston $21,305.93. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 4-5% to three of the comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-7, attached as **Exhibit 28.**

38.     Plaintiff Cynthia Roemer, at all relevant times, was an Oregon citizen. Roemer owned a 2009 Mercury Milan V6 Premier 4D Sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 24, 2018. Roemer made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Roemer for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Roemer's total loss vehicle at $7,792.00 and paid Roemer $6,723.00. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 9% to one of the comparable vehicles without itemizing or explaining the basis of the adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5, attached as **Exhibit 29.**

39.     Plaintiff Roque Espinoza, at all relevant times, was a Pennsylvania citizen. Espinoza owned a 2016 Hyundai Sonata SE 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around October 10, 2020. Espinoza made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Espinoza for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Espinoza's total loss vehicle at $8,310.00 and paid Espinoza

$8,372.60. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 30.**

40.     Plaintiff Jennifer Payne, at all relevant times, was an South Carolina citizen. Payne owned a 2008 Ford Focus SE that was insured under a Policy issued by Defendant, which was deemed a total loss on or around August 23, 2020. Payne made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Payne for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Payne's total loss vehicle at $4,850 and paid Payne $4,617.50. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10-13% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 31**.

41.     Plaintiff Latishia Bowden, at all relevant times, was a Tennessee citizen. Bowden owned a 2015 Chevrolet Malibu 1LT 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around November 27, 2020. Bowden made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Bowden for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Bowden's total loss vehicle at $13,447.00 and paid Bowden $13,990.79. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately

6% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 32.**

42.     Plaintiff DJ Neill, at all relevant times, was a Texas citizen. Neill owned a 2009 Mazda Mazda3 i Touring 4 door sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around September 8, 2020. Neill made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Neill for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Neill's total loss vehicle at $3,608.00 and paid Neill $3,861.50. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 33.**

43.     Plaintiff Tyson Dewsnup, at all relevant times, was a Utah citizen. Dewsnup owned a 2019 Mitsubishi Outlander Sport 2.0 ES 4WD 4D Wagon that was insured under a Policy issued by Defendant, which was deemed a total loss on or around August 23, 2021. Dewsnup made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Dewsnup for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Dewsnup's total loss vehicle at $17,018.00 and paid Dewsnup $18,096.54. The market valuation report listed values of two different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 5% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or

how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 4-5, attached as **Exhibit 34.**

44.     Plaintiff Deirdre Palmer, at all relevant times, was a Utah citizen. Palmer owned a 2011 Nissan Sentra 2.0SR 4D Sedan that was insured under a Policy issued by Defendant, which was deemed a total loss on or around May 18, 2020. Palmer made a claim with Defendant for the total loss of the vehicle. Defendant provided a total loss valuation to Palmer for the total loss claim. Defendant based its offer upon a valuation report obtained from Audatex. Defendant valued Palmer's total loss vehicle at $5,700.00 and paid Palmer $5,567.50. The market valuation report listed values of four different comparable vehicles and shows that Defendant and its vendor applied a "typical negotiation" adjustment of approximately 9-10% to all comparable vehicles without itemizing or explaining the basis of each adjustment and/or how the value of the deduction was determined. *See* Plaintiff's Market Value Report at 5-6, attached as **Exhibit 35.**

### B.     Defendant

45.     Defendant State Farm Mutual Automobile Insurance Company is an Illinois company with its principal place of business in Illinois. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

### JURISDICTION AND VENUE

46.     This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of Illinois, and makes its insurance services available to residents of Illinois. Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiffs occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals

within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.

47. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), because at least one member of the putative class, including certain Plaintiffs, are citizen of states outside Illinois, and Defendant is a citizen of Illinois, thus CAFA's minimal diversity requirement is met. Additionally, Plaintiffs seek an award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiffs and the Class in an amount to be determined at trial, for each violation, which, when aggregated among a proposed class of potential thousands, exclusive of interests and costs, exceeds the $5,000,000 threshold for federal jurisdiction under CAFA.

48. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because certain Plaintiffs were injured in this District.

## FACTUAL ALLEGATIONS

**"Typical Negotiation"**

49. When valuing total-loss automobile claims, insurance companies like Defendant use third party companies to determine the ACV of an insured's totaled vehicle.

50. To avoid full payment of ACV owed under its policies, Defendant has devised a blatant and unlawful scheme to reduce its total-loss payments to insureds, by use of a deceptive, arbitrary, and baseless "typical negotiation adjustment."

51. Specifically, Defendant purports to determine the ACV of total-loss vehicles via a third-party vendor, Audatex or AudaExplore, through a system called Autosource Market-Driven Valuation ("Autosource"). The Autosource system identifies the price of comparable vehicles sold

or listed for sale online in the relevant market. Autosource then, at Defendant's directive, applies a deceptive and arbitrary "typical negotiation" adjustment to the value of the comparable vehicles before determining the total-loss payment Defendant will make.

52.     Defendant's "typical negotiation" adjustment is arbitrary and unsupportable. When offering the total-loss payment to an insured whose car was totaled, Defendant represents that the "typical negotiation" adjustment reflects some sort of average difference between a dealer list price and "what the dealer would be willing" to sell it for. *See, e.g.*, Ex. 3 at 5 ("The selling price *may* be substantially less than the asking price. When indicated, the asking price has been adjusted to account for typical negotiation according to each comparables [*sic*] price."). However, Defendant's practice of applying a "typical negotiation" adjustment to reduce its calculation of ACV is not disclosed when Plaintiffs and Class members are presented with the terms of Defendant's Policy. It is only disclosed after the fact, when it is buried among the extensive facts and information in the multi-page documents Defendant provides its insureds when it offers its total loss payment.

53.     Moreover, the across-the-board 4-11% reduction made by Defendant on used vehicles' internet prices is based on no negotiations, typical or otherwise, and does not reflect market realities, and neither relevant state insurance laws and regulations nor the Policy permit Defendant to make this arbitrary deduction. Indeed, Defendant applies the "typical negotiation" adjustment without contacting the identified dealerships or sellers, or considering whether the online retailer ever discounts its vehicles and, thus, it has no basis to assume that a selling price of a comparable vehicle might be "substantially less than the asking price." Notably, in applying a universal percentage-based "typical negotiation" adjustment reduction, Defendant failed to consider that it is the predominant practice in the used car market to avoid price negotiation by

implementing "no haggle" pricing, particularly as to internet-posted prices.[1] Indeed, in addition, particularly during the COVID-19 pandemic, when Plaintiffs and members of the Class were victimized by Defendant's scheme, and the related supply chain problems with parts such as electronics for vehicles, used cars sold for a premium, with sale price typically *increasing* from posted price, if it changed at all.[2]

54. Further, the arbitrary "typical negotiation adjustment," ranging from 4-11% of the value of the comparable vehicle is keyed only to the value of that vehicle, as the value of the "comparable vehicles" increases. This sliding percentage scale does not reflect "actual value" of the vehicles or any "typical negotiation," but rather is meant to ensure that Defendant's total loss payments are significantly reduced, even when a vehicle is not valuable.

55. Plaintiffs do not contest the vehicles Defendant selected to use as comparable vehicles. Plaintiffs do not contest Defendant's representations of the listed price of comparable vehicles. Plaintiffs do not contest the value assigned to differences in trim, condition, mileage, packages, and equipment between comparable vehicles and the total-loss vehicle. What Plaintiffs contest is that Defendant instructed Audatex to apply an arbitrary, capricious, and invalid "typical negotiation" adjustment across-the-board in determining its total-loss payments. This leads to Defendant never offering, in the first instance, ACV to any of its insureds.

---

[1]  *See, e.g.*, https://www.autonationlincolnclearwater.com/autonation-one-price.htm (last visited Feb. 12, 2023) ("Not only is our no-haggle price low, it's guaranteed."); https://www.carmax.com/about-carmax (last visited Feb. 12, 2023) ("our 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

[2]  *See* https://www.cnbc.com/2021/08/07/used-car-prices-to-stay-high-until-automakers-fix-production-issues.html (last visited Feb. 12, 2023); https://abc7chicago.com/car-chip-shortage-2021-prices-auto-gm-closes-factories/11005980/ (last visited Sept. 16, 2021).

56.     Notably, Defendant does **not** apply such arbitrary adjustments to reduce the of value insured vehicles in the state of California because Defendant in 2008 was sued in California for doing so, and as part of the settlement of that lawsuit, Defendant agreed to stop applying a "projected sold adjustment" (effectively the same as a "typical negotiation" adjustment) until "(1) a change in the law (including, without limitation, any changes to applicable regulations, case law or CDI statements…requires or permits use of a different method of computation, or (2) State Farm is instructed to use a different method of computation by the [California Department of Insurance] or any court of law." **Ex. 2**. Defendant, however, continues to use this arbitrary and unfair "typical negotiation" adjustment to artificially reduce its total loss payments in other states.

**Defendant's Deceptive and Unfair Appraisal Process**

57.     An integral part of Defendant's fraudulent scheme is a provision of Policy which requires the parties to submit to an appraisal if there is a disagreement over the ACV (which Defendant never determines). The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less than the cost of the appraisal, Defendant knows that the insureds will forego the appraisal process and accept the artificially reduced loss payment of the vehicle for their total-loss claims. As designed, the appraisal clause prevents Plaintiffs and the Class from effectively vindicating their statutory and common law rights to be offered ACV under their Policies, and not pay further costs and suffer additional delays associated with appraisal to obtain true ACV, the calculation of which is corrupted by the "typical negotiation" adjustment Defendant requires its appraiser to include.

58. To be clear, this case does not present a dispute about ACV, which Defendant never determines. Rather, this case challenges Defendant's fraudulent scheme to illegally undervalue insureds' vehicles that are declared a total loss, in order to increase its own profits. This is an issue that cannot be resolved through an appraisal process that is part of that very scheme.

59. Moreover, the Policy is an unconscionable contract of adhesion that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiffs nor the members of the Class had any role in drafting its terms.

## APPLICATION OF ILLINOIS LAW NATIONWIDE

60. The application of Illinois law as the substantive basis for relief for Defendant's violations of the rights of Plaintiffs and each of the members of the proposed national class is appropriate because Illinois retains the most significant relationship to Defendant's "typical negotiation" reduction and the parties.

61. Defendant's principal place of business is in Illinois, and Defendant's deceptive scheme was developed in, and emanated from, Illinois.

62. The form insurance Policies Defendant used to carry out its scheme were developed and drafted in Illinois.

63. Illinois has a strong interest in regulating the conduct of companies headquartered in Illinois, particularly when they engage in fraud on a systematic and national level.

64. The application of Illinois law to a national class will not present any difficulty or run afoul of any other state's interest in the issues raised by this litigation, which present simple matters related to the claims of fraud, routine breach of contract, and violation of the rights of Plaintiffs and other of Defendant's insureds as consumers.

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring this action against State Farm on behalf of themselves, and as a class action, under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Multistate Class ("Multistate Class"), to which Illinois law will apply:

> All persons insured by Defendant in any state who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.[3]

66.     In addition to the Multistate Class, and pursuant to Federal Rule of Civil Procedure 23(c)(5) and 23(c)(4), Plaintiffs seek to represent all members of the following Subclass of the Multistate Class, as well as any subclasses or issue classes as Plaintiffs may propose and/or this Court may designate at the time of class certification, which brings claims under the respective consumer protection and/or unfair and deceptive trade practices statutes of each state, and otherwise under the laws of each of the jurisdictions below:

> All persons insured by Defendant in Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin, who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

67.     Unless otherwise stated, the Multistate Class and the alternative State Subclasses are collectively referred to as the "Class."

---

[3] Excluded from the Multistate Class are persons in California where earlier litigation had established that Defendant's "typical negotiation adjustment" scheme is illegal, as well as persons insured in any additional states where Defendant does not apply a "typical negotiation" adjustment.

68. Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

69. Plaintiffs reserve their right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way

70. **Numerosity**. The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of Class members, the precise number is unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

71. **Commonality and Predominance**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a. whether Defendant's practice of applying a "typical negotiation" adjustment in determining total-loss payments results is a breach of its obligation to pay ACV;

    b. whether Defendant's failure to disclose its practice of having a "typical negotiation" adjustment calculated and applied when determining ACV for the purpose of total-loss payments for a totaled vehicle until such an assessment is provided to the policyholder is deceptive to a reasonable consumer, unconscionable or otherwise a violation of the relevant consumer protection statute(s);

c. whether Defendant's practice of applying a "typical negotiation" adjustment in determining ACV for the purpose of total-loss payments breached the covenant of good faith and fair dealing it has with Plaintiffs and the other Class members;

d. Whether Defendant was unjustly enriched at the expense of Plaintiffs and the other Class members as a result of its conduct

e. whether Plaintiffs and the Class are entitled to injunctive relief based on Defendant's conduct; and

f. whether Plaintiffs and the Class are entitled to damages and the measure of damages owed to them.

72. **Typicality.** Plaintiffs' claims are typical of the other Class members' claims because Defendant undertook the same practice of applying a "typical negotiation" adjustment in determining total-loss payments under materially similar policy provisions requiring payment of ACV. Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

73. **Adequacy of Representation**. Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members whom they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

74.     **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### I. CLAIMS BROUGHT ON BEHALF OF THE MULTISTATE CLASS AND STATE SUBCLASSES

### COUNT 1

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS, 505/1, *et seq.*

75.     Plaintiffs repeat and re-allege all previously alleged paragraphs as if fully alleged herein.

76.     Plaintiffs bring this claim individually and on behalf of all members of the Multistate Class. In the alternative, Plaintiffs bring this claim on behalf of the Illinois subclass of insureds who received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

77.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of 815 ILCS 505/l(c).

78.     Plaintiffs and the Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

79.     Defendant was and is engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

80.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

81.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce Defendant's loss payment to insureds, as detailed above, and to further use its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

82.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFA.

83.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

84.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

85.     The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

86.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

87.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Illinois CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

88.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the Illinois CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" reduction to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

89.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

90.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for such coverage. As a result, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

91.     Defendant's violations of the Illinois CFA present a continuing risk of future harm to Plaintiffs and the Class members.

92.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Illinois CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

## COUNT 2

## BREACH OF CONTRACT

93.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Count, as if fully alleged herein.

94.     Plaintiffs bring this claim individually and on behalf of all members of the Multistate Class.  In the alternative, Plaintiffs bring this claim on behalf of each state Subclass under the law of each state in which Plaintiffs and Class members were insured by Defendant and received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

95.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendant, as described herein.

96.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

97.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

98.     Defendant, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

99.      Thus, Defendant failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

100.    As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 3

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

101.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

102.    Plaintiffs bring this claim individually and on behalf of all members of the Multistate Class.  In the alternative, Plaintiffs bring this claim on behalf of each state Subclass under the law of each state in which Plaintiffs and Class members were insured by Defendant and received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

103.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

104.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

105.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle.

106. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

107. As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

a. Intentionally applying "typical negotiation" adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b. Failing to pay insureds the ACV of their total-loss vehicles;

c. Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d. Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

108. Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendant from their payments to insureds on the basis of a "typical negotiation" adjustment.

## COUNT 4

## FRAUDULENT CONCEALMENT

109. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

110. Plaintiffs bring this claim individually and on behalf of all members of the Multistate Class. In the alternative, Plaintiffs bring this claim on behalf of each state Subclass

under the law of each state in which Plaintiffs and Class members were insured by Defendant and received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

111.    Plaintiffs and the Class members each purchased an insurance Policy from Defendant.

112.    A material term in the Policy is Defendant's promise to pay the ACV of an insured vehicle in the event that Defendant chooses to limit its liability to pay the full cost to repair or replace an insured vehicle that sustains a "loss."

113.    As described above, Defendant fraudulently concealed and suppressed material facts regarding its application of a "typical negotiation" discount or similar adjustment. Despite Defendant's Policy promising to pay ACV, Defendant knew that it would never calculate or pay ACV because it would apply an arbitrary and improper "typical negotiation" adjustment.

114.    Defendant's Policy omitted material facts regarding its promise to pay ACV, including that it would never calculate or pay ACV because it would apply an arbitrary and improper "typical negotiation" adjustment, and that any right its insureds had to receive an offer of ACV would require additional expenses and delay through Defendant's appraisal process.

115.    Defendant failed to disclose these facts to consumers at the time it marketed and sold its insurance Policies. Defendant knowingly and intentionally engaged in this concealment in order to boost sales and revenue by systematically undervaluing insureds' total loss vehicles, maintain its competitive edge in the insurance market, and obtain windfall profits.

116.    These facts and omissions were material because a reasonable person would attach importance to them and rely on them in deciding to purchase a Policy with Defendant as they relate to one of Defendant's central promises in the Policy, and because they cause the substantial

undervaluing of insureds' total loss vehicles under Policies that Plaintiffs and Class members purchased.

117. Whether Defendant systematically undervalued total loss vehicles by applying a concealed "typical negotiation" adjustment with no legal or factual justification would have been an important factor in Plaintiffs' and Class members' decisions to purchase a Policy. The Policies are expensive, and Plaintiffs and Class members trusted Defendant not to deceive them into buying products that do not pay ACV.

118. Defendant intentionally made these false misrepresentations and actively concealed and suppressed these material facts with knowledge or belief of the representation's falsity to falsely assure consumers that Defendant would calculate and pay ACV, and for the purpose of inducing Plaintiffs and Class members into purchasing a Policy from Defendant.

119. Plaintiffs and Class members had no reasonable means of knowing that Defendant's representations were false and misleading, or that Defendant had omitted to disclose material details relating to the Polices. Plaintiffs and Class members did not and could not reasonably discover Defendant's concealment on their own. Reasonable consumers would reasonably rely upon such representation to their detriment, and Plaintiffs and Class members alike did so rely to their detriment.

120. Defendant had a duty to disclose, rather than conceal and suppress, the full scope and extent of the "typical negotiation" adjustment and calculation of ACV because:

      a. Defendant had exclusive knowledge of its practices under its Policies, its calculation of its loss payments, and its use of an undisclosed "typical negotiation" adjustment;

b. The details regarding the "typical negotiation" adjustment and concealment thereof were known and/or accessible only to Defendant;

c. Defendant knew Plaintiffs and Class members did not know about the "typical negotiation" adjustment and concealment thereof and that the reasonable consumer would not be able to detect Defendant's fraudulent scheme; and

d. Defendants made representations and assurances about its calculation of the ACV, including statements about its superior performance and abilities that were misleading, deceptive, and incomplete without the disclosure of the fact that, despite its promise to pay ACV, Defendant was systematically undervaluing insureds' total loss vehicles by applying an arbitrary and capricious "typical negotiation" adjustment and would continue to do so.

121. Contrary to its Policy promise, Defendant would never pay the ACV of Plaintiffs' and Class members' vehicles because Defendant applied an arbitrary and capricious "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

122. Plaintiffs and Class members were unaware of these false and omitted material facts and would not have purchased Defendant's insurance Policy, or would not have agreed to pay as much for it, but for Defendant's misrepresentations and omissions of material fact alleged above.

123. Plaintiffs and Class members did not receive the benefit of their bargain due to Defendant's fraudulent concealment.

124. Plaintiffs' and Class members' actions in purchasing the Policies were justified. Defendant was in exclusive control of the material facts and such facts were not reasonably known or knowable to the public, Plaintiffs, or Class members.

125. Plaintiffs and Class members relied to their detriment upon Defendants' reputations, fraudulent misrepresentations, and material omissions regarding the Policy, the loss payments it would make, and the "typical negotiation" adjustment.

126. Defendant's deceit and fraudulent concealment was also uniform across all Class members; Defendant concealed from everyone the true nature of the Policy, the loss payments it would make, and the "typical negotiation" adjustment.

127. As a result of Defendant's deceit and fraudulent concealment, including its suppression of the true facts, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate. They purchased Polies that had a diminished value by reason of Defendant's concealment of, and failure to disclose, the true nature of the ACV and "typical negotiation" adjustment.

128. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights, with the aim of enriching Defendant, justifying an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future.

## COUNT 5

## FRAUD IN THE INDUCEMENT

129. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

130. Plaintiffs bring this claim individually and on behalf of all members of the Multistate Class. In the alternative, Plaintiffs bring this claim on behalf of each state Subclass under the law of each state in which Plaintiffs and Class members were insured by Defendant and

received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

131.    As described above, Defendant induced through fraud and deception Plaintiffs and Class members to contract to purchase a Policy with Defendant through knowing and intentional material misrepresentations and omissions of fact concerning the true nature of the calculation and payment of ACV for total loss vehicles and its application of the "typical negotiation" adjustment.

132.    Plaintiffs and Class members justifiably relied to their detriment on the truth and completeness of Defendant's material representations about the Policy, the loss payments it would make, and its application of the "typical negotiation" adjustment in deciding to contract for the purchase of a Policy with Defendants because those facts are material to any reasonable consumer's decision to purchase a Policy.

133.    Defendant's fraud and concealment was also uniform across all Class members; Defendant concealed from everyone the true nature of the Policies, calculation and payment of ACV for total loss vehicles, and its application of the "typical negotiation" adjustment.

134.    Plaintiffs and Class members would not have agreed to purchase a Policy, or would have paid less for them, but for Defendant's misrepresentations and omissions of material facts concerning the actual calculation and payment of ACV for total loss vehicles and its application of the "typical negotiation" adjustment.

135.    As a result of Defendant's inducements, Plaintiffs and Class members sustained actual damages, including not receiving an insurance product that performs as promised and not receiving the benefit of the bargain of their purchases of the Policies.

136.    Defendant's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class

members' rights and interests. Defendant's conduct thus warrants an assessment of punitive damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

**COUNT 6**

**UNJUST ENRICHMENT**

137.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

138.    Plaintiffs bring this claim individually and on behalf of all members of the Multistate Class. In the alternative, Plaintiffs bring this claim on behalf of each state Subclass under the law of each state in which Plaintiffs and Class members were insured by Defendant and received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

139.    Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

140.    Defendant requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

141.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically, Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds, Plaintiffs and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

142.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

143.    Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 7**

**DECLARATORY JUDGMENT**

144.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

145.    Plaintiffs bring this claim individually and on behalf of all members of the Multistate Class. In the alternative, Plaintiffs bring this claim on behalf of each state Subclass under the law of each state in which Plaintiffs and Class members were insured by Defendant and received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

146.    A dispute between Plaintiffs and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiffs and the Class arising under that policy.

147.    Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by "typical negotiation" adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

148.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiffs and members of the Class.

149.     As a result of these breaches of contract, Plaintiffs and the Class members have been injured.

## II.     STATE LAW CONSUMER PROTECTION CLAIMS BROUGHT ON BEHALF OF THE STATE SUBCLASSES

### A.     Alaska

### COUNT 8

### VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### ALASKA STAT. ANN. § 45.50.471, *et seq.*

150.     Plaintiffs repeat and re-allege all previously alleged paragraphs as if fully alleged herein.

151.     This Count is brought on behalf of all members of the Multistate Class and/or the Arkansas Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

152.     Defendant was and is engaged in "trade" or "commerce" within the meaning of ALASKA STAT. ANN. § 45.50.471.

153.     The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services"; and "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon

the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." ALASKA STAT. ANN. § 45.50.471.

154. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's loss payment to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

155. Defendant also failed to comply with Alaska law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost to purchase a comparable automobile," determined by "(i) the cost of a comparable motor vehicle in the local market area to the claimant, if that motor vehicle is available in that area or was available during the last 90 days; (ii) the average of two or more cost quotations obtained for a comparable motor vehicle from two or more licensed dealers located within the local market area…; (iii) a computerized database valuation service that produces statistically valid fair market values under (i) of this section; (iv) the average retail value of a comparable motor vehicle, if that value is obtained from two industry sources published on a regular basis, at least once every two months, that contain the average retail, wholesale, and finance values for all makes and models for at least each of the last five model years, as well as a listing for all major options…; or (v) the cost of a comparable motor vehicle using a basis that is allowable under the coverage, if supported by documentation in the claim file and fully explained to the claimant…" 3 ALASKA ADMIN. CODE § 26.080(B).

156.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Alaska CPA.

157.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

158.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

159.     The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

160.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

161.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Alaska CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

162.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Alaska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

163.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

164.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for such coverage and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

165.    Defendant's violations of the Alaska CPA present a continuing risk of future harm to Plaintiffs and the Class members.

166.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Alaska CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

### B.    Arkansas

### COUNT 9

### VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT
### Ark. Code § 4-88-101, *et seq.*

167.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

168.    This Count is brought on behalf of all members of the Multistate Class and/or the Arkansas Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

169.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of A.C.A. § 4-88-102(5).

170.    Defendant provides "services" within the meaning of A.C.A. § 4-88-102(7).

171.    Defendant advertised, offered, or sold services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

172.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), A.C.A. §§ 4-88-101, *et seq.*, prohibits unfair, deceptive, false, and unconscionable trade practices.

173.    As alleged herein, Defendant engaged in the concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression or

omission in violation of A.C.A. § 4-88-108(2), and engaged in unconscionable, false, or deceptive act or practice in business, commerce, or trade, in violation of A.C.A. § 4-88-107.

174. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the ADTPA by knowingly and intentionally concealing and failing to disclose material facts regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

175. Defendant also fail to comply with Arkansas law, which requires an insurer to determine the "actual cost" of a total loss vehicle by determining "(A) The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area; or (B) Use of one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not available in the local market area[,]" and provides that "[w]hen a first party automobile total loss is settled on a basis which deviates from the methods described in subsections (a)(1) and (2) of this section, the deviation must be supported by documentation giving particulars of the automobile's condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ark. Rules and Regs. 43 § 10.

176. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment

to comparable vehicles, and its failure to comply with Arkansas law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the ADTPA.

177.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

178.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to their insureds.

179.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

180.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

181.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the ADTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts

concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

182.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the ADTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

183.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payment to insureds.

184.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

185.    Defendant's violations of the ADTPA present a continuing risk of future harm to Plaintiffs and the Class members.

186.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the ADTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the ADTPA.

C.     **Colorado**

**COUNT 10**

**VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT**
**COLO. REV. STAT. § 6-1-101,** *et seq.*

187.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

188.     This Count is brought on behalf of all members of the Multistate Class and/or the Colorado Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

189.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of COLO. REV. STAT. § 6-1-102(6) & 6-1-113(1)(a).

190.     Plaintiffs and the Class members are "consumers" within the meaning of COLO. REV. STAT. § 6-1-113(1)(a).

191.     The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, deceptive, false and unconscionable trade practices, including, without limitation: "Advertis[ing] goods, services, or property with intent not to sell them as advertised"; "Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction"; or "knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." COLO. REV. STAT. § 6-1-105

51

192. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

193. Defendant also failed to comply with Colorado law, which requires insurance companies to "establish a fair and consistent method for determining total loss of a motor vehicle." COLO. REV. STAT. § 10-4-639.

194. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Colorado law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Colorado CPA.

195. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

196. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

197.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

198.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

199.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Colorado CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

200.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Colorado CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

201.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

202.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

203.    Defendant's violations of the Colorado CPA present a continuing risk of future harm to Plaintiffs and the Class members.

204.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Colorado CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

### D.    Connecticut

### COUNT 11

### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### CONN. GEN. STAT. TITLE 42, Ch. 735a, *et seq.*

205.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

206.    This Count is brought on behalf of all members of the Multistate Class and/or the Connecticut Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

207. Defendant, Plaintiffs, and the Class members are each a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

208. Defendant was and is engaged in "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).

209. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

210. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

211. Defendant also failed to comply with Connecticut law, which requires insurance companies, when calculating the value of a total loss vehicle, to "use at least the average of the retail values given such vehicle by (1) the National Automobile Dealers Association used car guide or any other publicly available automobile industry source that has been approved for such use by the Insurance Commissioner, and (2) one other automobile industry source that has been approved for such use by said commissioner." CONN. GEN. STAT. § 38a-353.

212. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Connecticut law, as detailed above,

Defendant engaged in one or more unfair or deceptive business practices prohibited by the Connecticut UTPA.

213.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

214.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

215.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

216.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

217.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Connecticut UTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts

concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

218.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Connecticut UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

219.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

220.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

221.    Defendant's violations of the Connecticut UTPA present a continuing risk of future harm to Plaintiffs and the Class members.

222.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Connecticut UTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Connecticut UTPA.

### E.     District of Colombia

### COUNT 12

### VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT
### D.C. CODE § 28-3901, *et seq.*

223.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

224.     This Count is brought on behalf of all members of the Multistate Class and/or the District of Columbia Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

225.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of D.C. CODE § 28-3901(a)(1).

226.     Plaintiffs and the Class members are "consumers" within the meaning of D.C. CODE § 28-3901(1)(2).

227.     Defendant was and is engaged in "trade practices" within the meaning of D.C. CODE § 28-3901.

228.     The District of Columbia Consumer Protection Procedures Act ("D.C. CPPA") makes unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. D.C. CODE § 28-3901, *et seq*.

229.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the D.C. CPPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable

vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

230.    Defendant also failed to comply with District of Columbia law by "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to the claim at issue"; "[k]nowingly misrepresent[ing] pertinent facts or insurance policy provisions relating to coverage at issue"; not attempting "in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear"; "[a]ttempt[ing] to settle a claim for less than the amount to which a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of an application or policy"; and "[m]ak[ing] false or fraudulent statements or representations on, or relative to an application for, a policy, for the purpose of obtaining a fee, commission, money, or other benefit from a provider or individual person." D.C. CODE § 31–2231.17.

231.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with District of Columbia law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the D.C. CPPA.

232.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

233.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

234.   The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

235.   Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

236.   Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the D.C. CPPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

237.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the D.C. CPPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and

failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

238. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

239. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

240. Defendant's violations of the D.C. CPPA present a continuing risk of future harm to Plaintiffs and the Class members.

241. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the D.C. CPPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the D.C. CPPA.

### F. Delaware

### COUNT 13

### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
**6 Del. Code §§ 2513,** *et seq.*

242. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

243.    This Count is brought on behalf of all members of the Multistate Class and/or the Delaware Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

244.    Defendant is a "person" as engaged in the sale of "merchandise" as defined by 6 Del. Code § 2511(6), (7).

245.    The Delaware Consumer Fraud Act ("Delaware CFA"), 6 Del. Code §§ 2513, *et seq*., prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is an unlawful practice.

246.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Delaware CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

247.    Defendant also failed to comply with  Delaware law, which, when insurance companies are determining "fair market value" of insured's vehicles, requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's

residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

248.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and Defendant's failure to comply with Delaware law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Delaware CFA.

249.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

250.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

251.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

252.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

253.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Delaware CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

254.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the Delaware CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

255.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

256.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

257.     Defendant's violations of the Delaware CFA present a continuing risk of future harm to Plaintiffs and the Class members.

258.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Delaware CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

### G.     Florida

### COUNT 14

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. §§ 501.201, *et seq.*

259.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

260.     This Count is brought on behalf of all members of the Multistate Class and/or the Florida Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

261.     Plaintiffs and the Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

262.     Defendant was and is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

263.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq., prohibits unfair methods of competition, unconscionable acts or practices, and

unfair or deceptive acts or practices in the conduct of any trade or commerce.

264.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

265.    Defendant also failed to comply with Florida law when determining "actual cash value" of insured's vehicles, which requires that insurers derive the "actual cost to purchase a comparable motor vehicle" from: 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days; 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as: a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743(5).

266.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Florida law, as detailed above, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices prohibited by the FDUTPA.

267. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

268. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

269. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

270. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

271. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the FDUTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

272.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

273.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payment to insureds.

274.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

275.     Defendant's violations of the FDUTPA present a continuing risk of future harm to Plaintiffs and the Class members.

276.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the FDUTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

### H.      Hawaii

### COUNT 15

### VIOLATION OF THE HAWAII UNIFORM DECEPTIVE TRADE PRACTICE ACT HAW. REV. STAT. § 480-1, *et seq.*

277.      Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

278.      This Count is brought on behalf of all members of the Multistate Class and/or the Hawaii Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

279.      Defendant, Plaintiffs, and the Class members are "persons" within the meaning of HAW. REV. STAT. § 480-1.

280.      Plaintiffs and the Class members are "consumers" within the meaning of HAW. REV. STAT. § 480-1.

281.      The Hawaii Uniform Deceptive Trade Practice Act ("Hawaii UDAP") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." HAW. REV. STAT. § 480-2.

282.      As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Hawaii UDAP by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

283.    Defendant also failed to comply with Hawaii law, which provides as follows: (1) "The cash settlement shall be based upon the retail value of the motor vehicle as determined from a source or sources which are reflective of the market value of the total loss vehicle"; (2) "The use of dealer quotations (when the vehicle is available at the quoting dealer's lot) and newspaper advertisements may be used in lieu of the source generally used by the insurer, if the claim file reflects that the vehicle was not quoted in the source generally used by the insurer or the source was not reflective of the market value. Dealer quotations and newspaper advertisements shall not be considered sole sources reflective of market values. When dealer quotations are used, the vehicle identification number shall be contained in the insured's claim file"; and (3) "Estimates from at least three licensed dealers may be used when vehicles are not quoted in the source usually used by the insurer and are not available for replacement. Dealer estimates shall take into consideration the condition of the insured vehicle prior to the loss." HAW. REV. STAT. § 431:10C-311.

284.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Hawaii law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Hawaii UDAP.

285.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

286.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

287.   The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

288.   Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

289.   Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Hawaii UDAP in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

290.   Plaintiffs and the Class members were aggrieved by Defendant's violations of the Hawaii UDAP because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary

"typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

291. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

292. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

293. Defendant's violations of the Hawaii UDAP present a continuing risk of future harm to Plaintiffs and the Class members.

294. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Hawaii UDAP and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Hawaii UDAP.

## I. Kentucky

### COUNT 17

### VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### KY. REV. STAT. § 367.110, *et seq.*

295. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

296.     This Count is brought on behalf of all members of the Multistate Class and/or the Kentucky Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

297.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of KY. REV. STAT. § 367.110(1).

298.     Defendant was and is engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.220(1).

299.     The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce…" KY. REV. STAT. § 367.170(1).

300.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

301.     Defendant also failed to comply with Kentucky law, which requires insurance companies to determine the cash settlement amount based upon "(1) The cost of a comparable motor vehicle in the local market area if a comparable motor vehicle is available in the local market area; (2) If a comparable motor vehicle is not available in the local market area, one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified and licensed dealers which engage in the buying and selling of comparable motor vehicles in the ordinary course of

their business located within the local market area; or (3) Any source for determining statistically valid fair market values including nationally-recognized automobile evaluation publications that meet all of the following criteria: a. The source shall give consideration to the values of vehicles in the local market area and may consider data on vehicles outside the area; b. The source's data base shall produce values for at least eighty-five (85) percent of all makes and models for the last eight (8) model years taking into account the values of all major options for these vehicles; c. The source shall produce fair market values based on current data available from the local market area where the insured vehicle was principally garaged or a necessary expansion of parameters such as travel time and area to assure statistical validity." 806 KY. ADMIN. REGS. 12:095 SEC. 7.

302.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Kentucky law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Kentucky CPA.

303.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

304.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

305.     The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

306.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

307.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Kentucky CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

308.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the Kentucky CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

309.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

310.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

311.     Defendant's violations of the Kentucky CPA present a continuing risk of future harm to Plaintiffs and the Class members.

312.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Kentucky CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

## J.     Maine

### COUNT 18

### VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
### ME. REV. STAT. ANN.  5, § 205-A, *et seq.*

313.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

314.     This Count is brought on behalf of all members of the Multistate Class and/or the Maine Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

315.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of ME. REV. STAT. ANN.  5, § 206(2).

316.    Defendant was and is engaged in "trade" or "commerce" within the meaning of ME. REV. STAT. ANN.  5, § 206(2).

317.    The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . .." ME. REV. STAT. ANN.  5, § 207.

318.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Maine UTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

319.    Defendant also failed to comply with Maine law, which requires insurance companies to determine cash settlements based upon the "average of at least 2 industry standard valuation manuals current at the date of loss and adjusted to reflect: (1) The cost of a comparable motor vehicle in the local market area when one is available in that area if a market survey locates such a motor vehicle: or (2) If a market survey fails to locate such a motor vehicle: (a) The price for which a comparable motor vehicle was recently sold by a qualified dealer in the local market area; or (b) The average of quotations obtained by the insurer from at least 3 qualified dealers located within the local market area." ME. REV. STAT. ANN.  24-A § 2925.

320. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Maine law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Maine UTPA.

321. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

322. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

323. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

324. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

325.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Maine UTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

326.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the Maine UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

327.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

328.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or79ouldy suffered out-of-pocket loss.

329.    Defendant's violations of the Maine UTPA present a continuing risk of future harm to Plaintiffs and the Class members.

330.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Maine UTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Maine UTPA.

### K.    Minnesota

### COUNT 19

### VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### MINN. STAT. § 325F.68, *et seq.*

331.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

332.    This Count is brought on behalf of all members of the Multi-State Class and/or the Minnesota Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

333.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of MINN. STAT. § 325F.68.

334.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1)

335.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to

comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

336. Defendant also failed to comply with Minnesota law, which requires insurance companies to determine the actual cost for cash settlements by "(i) the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area; or (ii) one of two or more quotations obtained from two or more qualified sources located within the local market area when a comparable automobile is not available in the local market area. The insured shall be provided the information contained in all quotations prior to settlement; or (iii) any settlement or offer of settlement which deviates from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured." MINN. STAT. § 72A.201 Subd.6(b).

337. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Minnesota law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Minnesota CFA.

338. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

339. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

340.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

341.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

342.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Minnesota CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

343.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Minnesota CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary

"typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

344.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

345.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

346.    Defendant's violations of the Minnesota CFA present a continuing risk of future harm to Plaintiffs and the Class members.

347.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Minnesota CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.


### L.    Mississippi

### COUNT 20

### VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT
### MISS. CODE § 75-24-3, *et seq.*

348.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

349. This Count is brought on behalf of all members of the Multi-State Class and/or the Mississippi Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

350. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of Miss. Code § 75-24-3(a).

351. Defendant was and is engaged in "trade" or "commerce" within the meaning of Miss. Code § 75-24-3(b).

352. The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." Miss. Code § 75-24-5(1).

353. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Mississippi CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

354. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Mississippi CPA.

355.    Defendant's misrepresentations and omissions regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

356.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

357.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

358.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

359.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Mississippi CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

360.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Mississippi CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

361.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

362.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

363.    Defendant's violations of the Mississippi CPA present a continuing risk of future harm to Plaintiffs and the Class members.

364.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Mississippi CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Mississippi CPA.

**M.      Montana**

**COUNT 21**

**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER
PROTECTION ACT
MONT. CODE ANN.§ 30-14-101, *et seq.***

365.      Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

366.      This Count is brought on behalf of all members of the Multistate Class and/or the Montana Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

367.      Defendant, Plaintiffs, and the Class members are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

368.      Plaintiffs and the Class members are "consumers" within the meaning of MONT. CODE ANN. § 30-14-102(1).

369.      Defendant was and is engaged in "trade" or "commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8).

370.      The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.

371.      As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal

process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

372.    Defendant also failed to comply with Montana law by "misrepresent[ing] pertinent facts or insurance policy provisions relating to coverages at issue"; "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "compel[ing] insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds"; and "attempt[ing] to settle a claim for less than the amount to which a reasonable person would have believed the person was entitled by reference to written or printed advertising material accompanying or made part of an application." MONT. CODE ANN. § 33-18-201.

373.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Montana law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Montana CPA.

374.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

375.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about

Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

376.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

377.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

378.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Montana CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

379.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Montana CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation"

adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

380.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

381.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

382.    Defendant's violations of the Montana CPA present a continuing risk of future harm to Plaintiffs and the Class members.

383.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Montana CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Montana CPA.

### N.    Nebraska

### COUNT 22

### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### NEB. REV. STAT. § 59-1601, *et seq.*

384.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

385.     This Count is brought on behalf of all members of the Multistate Class and/or the Nebraska Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

386.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of NEB. REV. STAT. § 59-1601(1).

387.     Defendant was and is engaged in "trade" or "commerce" within the meaning of NEB. REV. STAT. § 59-1601(2).

388.     The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602.

389.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

390.     Defendant also failed to comply with Nebraska law by: "[k]nowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue"; "[f]ailing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies"; and "[c]ompelling insureds or beneficiaries to institute litigation to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in litigation brought by them." Neb. Rev. Stat. Ann § 44-1540.

391. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Nebraska law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Nebraska CPA.

392. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

393. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

394. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

395. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

396.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Nebraska CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

397.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Nebraska CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

398.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

399.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

400. Defendant's violations of the Nebraska CPA present a continuing risk of future harm to Plaintiffs and the Class members.

401. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Nebraska CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nebraska CPA.

### O. Nevada

### COUNT 23

### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### NEV. REV. STAT. § 598.0903, *et seq.*

402. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

403. This Count is brought on behalf of all members of the Multistate Class and/or the Nevada Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

404. The Nevada Deceptive Trade Practices Act ("Nevada DTPA") prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0903, *et seq.*

405. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

406. Defendant also failed to comply with Nevada law by "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue"; "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear"; "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." Nev. Rev. Stat. § 686A.310(1).

407. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Nevada law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Nevada DTPA.

408. Defendant's misrepresentations and omissions regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

409. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

410.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

411.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

412.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Nevada DTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

413.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the Nevada DTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

414.     Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

415.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

416.     Defendant's violations of the Nevada DTPA present a continuing risk of future harm to Plaintiffs and the Class members.

417.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Nevada DTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Nevada DTPA.

## P.     New Jersey

### COUNT 24

### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### N.J. STAT. ANN. § 56:8-1, *et seq.*

418.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

419.     This Count is brought on behalf of all members of the Multistate Class and/or the New Jersey Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

420.     Defendant, Plaintiffs, and the Class members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

421.     Defendant was and is engaged in "sales" or "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

422.     The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . ." N.J. STAT. ANN. § 56:8-2.

423.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

424.     Defendant also failed to comply with New Jersey law, which provides that "at all times…the insured's position is that of a retail consumer and the settlement value arrived at must be reasonable and fair for a person in that position" and that "[i]f the insurer elects to make a cash settlement, its offer, subject to applicable additions or deductions, must be one of the following plus applicable sales tax:

**1.** The average of the retail values for substantially similar motor vehicles as listed in the editions current for the date of loss of two valuation manuals approved by the Commissioner.

    **i.** The average figure arrived at may be reduced or increased by considering all factors, including, but not limited to, mileage tables and the presence or absence of extras.

    **ii.** If the destroyed vehicle included an option which is listed in one manual but not in the other, the value of the option shall not be averaged. The insured shall receive full value for the option by carrying over the amount listed to the other manual. The option carryover shall apply only in those instances where the option has not been considered by the used vehicle guide either as a separate item or included in the vehicle's base value.

    **iii.** If a manual is submitted for approval by the Commissioner its accuracy must meet objective criteria for the values of substantially similar vehicles of at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles shall be used for each year, make and model to represent a cross-section sufficient to determine fair market values. At the time of request for approval, the source of the manual's data must be revealed to the Commissioner in a manner that can be verified by the Department. Manuals approved for use on or after January 1, 1976 are "Automobile Red Book" and "Older Car/Truck Red Book" published by Maclean Hunter Market Reports, Inc. and the "N.A.D.A. Official Used Car Guide" and "N.A.D.A. Official Older Car Guide" published by the National Automobile Dealers Used Car Guide Company.

**2.** A quotation obtained by the insurer for a substantially similar motor vehicle from a dealer located within a reasonable distance from the principal place of garagement of the insured vehicle. Unless otherwise agreed by the insured, a reasonable distance shall not exceed 25 miles from the principal place of garagement. The vehicle must be available for purchase by the insured and the insured must be able to purchase it for the insurer's cash offer plus applicable deductions. The insurer shall maintain in its claim file proof of the vehicle's availability and the name and location of the dealer, stock number, vehicle identification number and description of the substantially similar vehicle.

**3.** The fair market value of the insured vehicle, determined by using a source including a computerized database approved by the Commissioner that meets all of the following minimum criteria:

    **i.** The source must give primary consideration to the values of vehicles in the local market area, but if necessary to obtain a reasonable cross-section of the market, may consider vehicles in the next closest area.

**ii.** The source shall produce fair market values of substantially similar vehicles for at least 85 percent of all makes and models for the last 15 years and shall include all major options. A sufficient number of vehicles must be used for each year, make, and model to represent a cross-section of the market sufficient to determine fair market value.

**iii.** If the database uses several price ranges for the same model vehicle depending on the condition of the vehicle, it must clearly indicate what condition the vehicle is being valued at and define in detail the difference between such rating categories. Documentation of the condition of the insured vehicle must be made a part of the written valuation.

**iv.** At the time of request for approval the source of the database shall be revealed to the Commissioner in a manner that can be verified by the Department.

**4.** If it is not possible to value the insured vehicle by using the method set forth in (a)1, 2 and 3, the insurer shall determine the retail value of the vehicle by using the best available method and shall fully explain in writing to the insured how its offer was calculated.

N.J. Admin. Code § 11:3-10.4.

425.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with New Jersey law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the New Jersey CFA.

426.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

427.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about

Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

428.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

429.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

430.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the New Jersey CFA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

431.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Jersey CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation"

adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

432. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

433. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

434. Defendant's violations of the New Jersey CFA present a continuing risk of future harm to Plaintiffs and the Class members.

435. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the New Jersey CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Jersey CFA.

### Q.    New Mexico

### COUNT 25

### VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### N.M. STAT. ANN. § 57-12-1, *et seq.*

436. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

437. This Count is brought on behalf of all members of the Multistate Class and/or the New Mexico Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

438. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of N.M. STAT. ANN. § 57-12-2(A).

439. Defendant was and is engaged in "trade" or "commerce" within the meaning of N.M. STAT. ANN. § 57-12-2(C).

440. The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") prohibits "unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. STAT. ANN. § 57-12-3.

441. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the New Mexico UTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

442. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the New Mexico UTPA.

443.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

444.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

445.     The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

446.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

447.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the New Mexico UTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it

intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

448.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the New Mexico UTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

449.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

450.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

451.    Defendant's violations of the New Mexico UTPA present a continuing risk of future harm to Plaintiffs and the Class members.

452. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the New Mexico UTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New Mexico UTPA.

### R. New York

### COUNT 26

### VIOLATION OF NEW YORK CONSUMER PROTECTION ACT, N.Y. Gen. Bus. Law §§ 349, *et seq*.

453. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

454. This Count is brought on behalf of all members of the Multistate Class and/or the New York Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

455. The New York General Business Law ("New York GBL") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state..." N.Y. Gen. Bus. Law § 349(a).

456. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the New York GBL by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

457.    Defendant also failed to comply with New York law, which requires insurance companies who use a "computerized database" to determine the "retail value" of a totaled vehicle to "rely upon values derived from licensed dealers, which have minimum sales of 100 motor vehicles per year in the local market area… and be based upon the physical inventory of vehicles sold within the 90 days prior to the loss and vehicles with are available." N.Y. Comp. Codes R. & Regs. Tit. 11 § 216.7(c)(1)(iii)(b).

458.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with New York law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the New York GBL.

459.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

460.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

461.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable

consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

462.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

463.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the New York GBL in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

464.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the New York GBL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

465.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's

application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

466.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

467.     Defendant's violations of the New York GBL present a continuing risk of future harm to Plaintiffs and the Class members.

468.     Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the New York GBL and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the New York GBL.

**S.      North Carolina**

**COUNT 27**

**NORTH CAROLINA UNFAIR TRADE PRACTICES ACT,**
**N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.***

469.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

470.     This Count is brought on behalf of all members of the Multistate Class and/or the North Carolina Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

471.     Defendant advertised, offered, or sold goods services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

472. The North Carolina Unfair Trade Practices Act ("NCUTPA"), N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq*., prohibits unfair or deceptive acts or practices in or affecting commerce.

473. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the NCUTPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

474. Defendant also violated North Carolina law, which requires total loss settlement offers to be based upon the following values: "(1) The published regional average values of substantially similar motor vehicles; and (2) The retail cost of two or more substantially similar motor vehicles in the local market area when substantially similar motor vehicles are available or were available within 90 days of the accident to consumers in the local market area [or] If no substantially similar motor vehicle is able to be located in the local market area, the settlement offer may be based upon quotations obtained from two or more licensed motor vehicle dealers located within the local market area." North Carolina 11 NCAC 04 .0418.

475. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles and failure to comply with North Carolina law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the NCUTPA.

476. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the

110

Class members in a uniform manner.

477.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

478.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

479.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

480.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the NCUTPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning their application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

481.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the NCUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding their application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

482.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

483.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or they would have paid less and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

484.    Defendant's violations of the NCUTPA present a continuing risk of future harm to Plaintiffs and the Class members.

485.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the NCUTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the NCUTPA.

T.    **North Dakota**

**COUNT 28**

**VIOLATION OF THE NORTH DAKOTA UNLAWFUL
SALES OR ADVERTISING PRACTICES ACT
N.D. CENT. CODE § 51-15-01, *et seq.***

486.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

487.    This Count is brought on behalf of all members of the Multistate Class and/or the North Dakota Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

488.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of N.D. CENT. CODE § 51-15-01(4).

489.    The North Dakota Unlawful Sales or Advertising Practices Act ("North Dakota USAP") prohibits "any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." N.D. CENT. CODE § 51-15-02.

490.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the North Dakota USAP by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

491.    Defendant also failed to comply with North Dakota law by "[k]nowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear"; "[c]ompelling insureds to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable person would have believed one was entitled by reference to written or printed advertising material accompanying or made a part of an application." N.D. CENT. CODE § 26.1-04-03.

492.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with North Dakota law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the North Dakota USAP.

493.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

494.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about

Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

495.     The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

496.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

497.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the North Dakota USAP in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

498.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the North Dakota USAP because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary

"typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

499. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

500. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

501. Defendant's violations of the North Dakota USAP present a continuing risk of future harm to Plaintiffs and the Class members.

502. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the North Dakota USAP and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Dakota USAP.

U.      **Pennsylvania**

### COUNT 29

**PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW,
73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq.***

541. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

542.     This Count is brought on behalf of all members of the Multistate Class and/or the Pennsylvania Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

543.     Defendant is a "person" as defined by 73 Pa. Cons. Stat. § 201-2(2).

544.     Plaintiffs and the Class members purchased services in "trade" and "commerce," as defined by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

545.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq.*, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

546.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Pennsylvania UTPCPL by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

547.     Defendant also failed to comply with Pennsylvania law, which requires replacement value to be determined by one of the following methods: "(i) Guide source method. The appraiser shall calculate the average of two figures reflecting the retail book value of a vehicle of like kind and condition, as provided by guide sources approved by the Commissioner. A listing of approved guide sources will be published once a year in the Pennsylvania Bulletin. The appraised value shall be adjusted for equipment and mileage, less the cost of repair of damage

which preexisted the accident in question. No other deductions may be taken except for salvage and then only if the owner elects to retain the vehicle. (ii) Actual cost method. The appraiser shall determine the actual cost of purchase of an available motor vehicle of like kind and quality in condition similar to or better than the motor vehicle being appraised in its predamaged condition. The appraiser shall specify, in writing, the location of the vehicle of like kind and quality. (iii)Dealer quotation method. The appraiser shall consult with dealers or other persons knowledgeable in the field to secure quotations as to the value of the motor vehicle being appraised. At least two quotations shall be secured. The figures thus secured shall be averaged." Pennsylvania 31 Pa. Code §62.3(e).

548.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles and its failure to comply with Pennsylvania law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Pennsylvania UTPCPL, including without limitation, advertising goods or services with intent not to sell them as advertised and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

549.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

550.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about

Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

551. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

552. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

553. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Pennsylvania UTPCPL in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

554. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Pennsylvania UTPCPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary

"typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

555.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

556.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

557.    Defendant's violations of the Pennsylvania UTPCPL present a continuing risk of future harm to Plaintiffs and the Class members.

558.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Pennsylvania UTPCPL and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Pennsylvania UTPCPL.

## V.    South Dakota

## COUNT 30

### VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW
### S.D. CODIFIED LAWS § 37-24-6, *et seq*.

561.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those

allegations made under the preceding Counts, as if fully alleged herein.

562. This Count is brought on behalf of all members of the Multistate Class and/or the South Dakota Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

563. Defendant, Plaintiffs, and the Class members are "persons" within the meaning of S.D. CODIFIED LAWS § 37-24-1(8).

564. Defendant was and is engaged in "trade" or "commerce" within the meaning of S.D. CODIFIED LAWS § 37-24-1(13).

565. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby [.]" S.D. CODIFIED LAWS § 37-24-6(1).

566. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the South Dakota CPL by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

567. Defendant also failed to comply with South Dakota law, by "[k]nowingly

misrepresent[ing] to a claimant or an insured a relevant fact or policy provision relating to coverages at issue"; failing "to make a good faith attempt to effectuate prompt, fair, and equitable settlement of claims submitted in which liability coverage, and causation of claims have become reasonably clear"; "[c]ompel[ing] an insured or beneficiary to institute a suit to recover an amount due under its policies by offering substantially less than the amount ultimately recovered in a suit brought by the insured or beneficiary"; and "[a]ttempt[ing] to settle a claim for less than the amount that a reasonable person would believe the insured or beneficiary is entitled by reference to written or printed advertising material accompanying or made part of an application." S.D. CODIFIED LAWS § 58-12-34.

568.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with South Dakota law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the South Dakota CPL.

569.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

570.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in

order to reduce the amount of Defendant's total-loss payments to its insureds.

571.     The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

572.     Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

573.     Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the South Dakota CPL in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

574.     Plaintiffs and the Class members were aggrieved by Defendant's violations of the South Dakota CPL because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease

Defendant's total-loss payments under the Policy.

575. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

576. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

577. Defendant's violations of the South Dakota CPL present a continuing risk of future harm to Plaintiffs and the Class members.

578. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the South Dakota CPL and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Dakota CPL.

### W.    Texas

### COUNT 31

### VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT
### Texas Bus. & Com. Code §§ 17.41, *et seq.*

581. Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

582. This Count is brought on behalf of all members of the Multistate Class and/or the Texas Subclass that received a first-party total loss valuation and payment on an automobile total

loss claim that included a "typical negotiation" or similar adjustment.

583. Defendant is a "person" engaged in "trade" or "commerce" as defined by Tex. Bus. & Com. Code § 17.45(3) & (6).

584. Plaintiffs and the Class members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

585. The Texas Deceptive Trade Practices—Consumer Protection Act ("Texas DTP-CPA"), Texas Bus. & Com. Code §§ 17.41, *et seq*., prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

586. As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Texas DTP-CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

587. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Texas DTP-CPA, including without limitation, advertising goods or services with intent not to sell them as advertised and failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

588.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

589.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to their insureds.

590.    The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

591.    Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

592.    Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Texas DTP-CPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

593. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Texas DTP-CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

594. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

595. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

596. Defendant's violations of the Texas DTP-CPA present a continuing risk of future harm to Plaintiffs and the Class members.

597. Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Texas DTP-CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Texas DTP-CPA.

**X.     West Virginia**

**COUNT 32**

**VIOLATION OF THE CONSUMER CREDIT AND PROTECTION ACT**
**W. VA. CODE § 46A-1-101,** *et seq.*

601.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

602.    This Count is brought on behalf of all members of the Multistate Class and/or the West Virginia Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

603.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of W. VA. CODE § 46a-1-102(31).

604.    Plaintiffs and the Class members are "consumers" within the meaning of W. VA. CODE § 46a-1-102(12).

605.    Defendant was and is engaged in "trade" or "commerce" within the meaning of W. VA. CODE § 46a-1-102(6).

606.    The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce...." W. VA. CODE § 46a-1-104.

607.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the West Virginia CCPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal

process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

608.     Defendant also failed to comply with West Virginia law, which requires insurance companies who make cash settlements to meet the following criteria: "1. It must use the most recent version of an "Official Used Car Guide" approved by the Commissioner and uniformly and regularly used by the company, as a guide for setting the minimum value of the motor vehicle which is the subject of the claim… 2. … the company must secure dealer quotations on the retail value of similar vehicles and base the settlement upon them. The offer must enable the insured to purchase the substantially similar vehicle for the cash settlement and any deviation from this practice must be supported by documentation giving particular information about the motor vehicle's condition… 3. The company shall provide a reasonable written explanation to the concerned parties when cash settlement offers…" W. VA. CODE § 114-14-7.4(a).

609.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with West Virginia law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the West Virginia CCPA.

610.     Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

611.     Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

612. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

613. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

614. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the West Virginia CCPA in the course of its business. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

615. Plaintiffs and the Class members were aggrieved by Defendant's violations of the West Virginia CCPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions,

concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

616.    Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

617.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

618.    Defendant's violations of the West Virginia CCPA present a continuing risk of future harm to Plaintiffs and the Class members.

619.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the West Virginia CCPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the West Virginia CCPA.

## Y.    Wyoming

## COUNT 33

## VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT
## WYO. STAT. ANN. § 40-12-102, *et seq.*

620.    Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

621.    This Count is brought on behalf of all members of the Multistate Class and/or the Wyoming Subclass that received a first-party total loss valuation and payment on an automobile total loss claim that included a "typical negotiation" or similar adjustment.

622.    Defendant, Plaintiffs, and the Class members are "persons" within the meaning of WYO. STAT. ANN. § 40-12-102(a)(i).

623.    Defendant was and is engaged in "consumer transactions" within the meaning of WYO. STAT. ANN. § 40-12-102(a)(ii).

624.    The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits "unfair and deceptive acts or practices." WYO. STAT. ANN. § 40-12-105, *et. seq.*

625.    As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Wyoming CPA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above, including use of its appraisal process to deter insureds from obtaining ACV or incur additional costs and delays in receiving ACV.

626.    Defendant also failed to comply with Wyoming law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; and "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." WYO. STAT. ANN. § 26-13-124.

627.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing

to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, and its failure to comply with Wyoming law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Wyoming CPA.

628. Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

629. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

630. The facts regarding Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

631. Plaintiffs and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendant's deception on their own.

632. Defendant had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Wyoming CPA in the course of its business.

Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary "typical negotiation" adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

633. Plaintiffs and the Class members were aggrieved by Defendant's violations of the Wyoming CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary "typical negotiation" adjustment to comparable vehicles, including that the "typical negotiation" adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

634. Plaintiffs and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary "typical negotiation" adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

635. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

636. Defendant's violations of the Wyoming CPA present a continuing risk of future harm to Plaintiffs and the Class members.

637.    Plaintiffs and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Wyoming CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Wyoming CPA.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully seek judgement in Plaintiffs' favor and in favor of the Class as follows:

A.  An Order certifying this action as a Class Action and appointing Plaintiffs as Class Representative and Plaintiffs' counsel as Class Counsel;

B.  An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiffs and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C.  Disgorgement of Defendant's profits;

D.  Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant described herein;

E.  An award of Plaintiffs' and the Class's costs of suit, including reasonable attorneys' fees as provided by law; and

F.  An award of such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.


Dated: February 14, 2023                    Respectfully submitted,

                                            **EDELSBERG LAW, P.A.**

*/s/ Chris Gold*
Chris Gold
Chris@edelsberglaw.com
Scott Edelsberg
Scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**SEEGER WEISS LLP**
Christopher A. Seeger*
Christopher L Ayers
55 Challenger Road, 6th Fl.
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

**SEEGER WEISS LLP**
Scott A. George
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
sgeorge@seegerweiss.com

*pro hac vice forthcoming*

**Counsel for Plaintiffs and the Proposed Class**