UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| BERNADETTE WILLIAMS, RICK MCCONNELL, IVAN SERRATA REYES, ROSILYN WILSON, LINDA LEWIS, LATASHA HUFF, HAUNANIMAE CERVANTES-WHITE, MARIA MUNOZ, TRACY OBRIEN, KIMBERLY BENSON, ROY TUINSTRA, EVELYN BROWN, MICHELLE SNYDER, PATRICIA COUCH, SABRINA CAPERS, WILLIAM ROSS DEAN, RICHARD DACHEFF, KRISTY KELLER, JASIMEN HERNANDEZ, EDGAR FLORIAN, MICHAEL GROSSBERG, MERRILL LOVE, DIANE NEWKIRK, SANDRA SMILING, DAVEY JOHNSTON, CYNTHIA ROEMER, SHAUN ROBERT, ROQUE ESPINOZA, JENNIFER PAYNE, LATISHIA BOWDEN, and DJ NEILL, TYSON DEWSNUP, and DEIRDRE PALMER, on behalf of themselves and all others similarly situated,<br><br>                            Plaintiffs,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>                            Defendant. | Case No.: 1:22-cv-01422<br><br>Judge Virginia M. Kendall |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
RENEWED MOTION TO COMPEL APPRAISAL OR, IN THE ALTERNATIVE,
<u>DISMISS OR GRANT SUMMARY JUDGMENT</u>**

Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm") fraudulently underpays insureds who are owed the "Actual Cash Value" (also referred to as "ACV") of their totaled vehicles by applying a purported "typical negotiation adjustment" after the value of vehicles is determined by Defendant. *See* First Amended Class Action Complaint (ECF No. 58) ("Compl.") ¶¶ 1-4, 49-54. The "typical negotiation adjustment" is upwards of 11% of the value of the vehicle, State Farm never disclosed this to its insureds in any of its policy documents or disclosures. *Id.* ¶ 4, 53. After a total loss, Defendant burries reference to the "typical negotiation adjustment" in its Market Valuation documents in a footnote to its discussion of the comparator vehicles. *See, e.g.,* ECF No. 58-3 at 78-87. The "typical negotiation adjustment" is not based on any empirical data derived from actual negotiations. Compl. ¶¶ 4, 53, 54. Indeed, this adjustment is not made for insureds in California as the result of litigation similar to this. *Id.* ¶ 5, Exhibit 2.[1] Rather, this "adjustment" is extraneous to Defendant's policies with its insureds, including Plaintiffs, who paid their premiums expecting they would receive the full policy benefits, but were defrauded. *Id.* ¶¶ 4, 7, 54, 55, 57.

With its Motion to Compel Appraisals or, in the Alternative, Dismiss or Grant Summary Judgment ("Motion"),[2] Defendant seeks to compel vehicle appraisals or, in the alternative, to use Plaintiffs' refusal to participate in Defendant's appraisal process as a basis for dismissal of the claims of only fourteen (14) of the Plaintiffs.[3] However, Defendant's appraisal process is part-and-parcel of its fraud, ensuring that Defendant keeps what it took from Plaintiffs. *Id.* ¶¶ 6, 57.

---

[1] Further, it is Plaintiffs understanding that, subsequent to the filing of this instant litigation, State Farm has entirely discontinued the use of "typical negotiation adjustment."
[2] Citations to the Memorandum of Law supporting the Motion will be to "Mem."
[3] The fourteen Plaintiffs are Linda Lewis, Latasha Huff, Haunanimae Cervantes-White, Maria Munoz, Michelle Snyder, Richard Dacheff, William Ross Dean, Diane Newkirk, Sandra Smiling, Shaun Robert, Jennifer Payne, Patricia Couch, Tyson Dewsnup. and Latishia Bowden.

1

The appraisal provision requires that State Farm and the insured each to hire, at their own expense, an appraiser, and to bear half the expenses of a third appraiser, and further leaves the insurer covering any other expenses of the appraisal, including attorneys' fees. *Id.* Defendant knew and intended that appraisal fees quickly meet or exceed the amount of its "typical negotiation adjustment," and intended that insureds would forego the appraisal process and just accept the artificially determined loss-payment for their vehicles. *Id*

Because the dispute between the parties about Defendant's fraudulent scheme will not be resolved by an appraisal, it is outside the scope of the appraisal provision. Even if appraisal provision were relevant, it was designed to deter challenges to Defendant's valuation of totaled vehicles and unenforceable. Finally, refusal to submit to Defendant's appraisal process is no basis for dismissal of any of Plaintiffs' claims. In sum, Defendant's Motion should be denied.

## ARGUMENT

**A. The Dispute Over State Farm's "Typical Negotiation Adjustment" Is Beyond the Scope of the Appraisal Provision**

Plaintiffs agree with Defendant on one point, the propriety of compelling appraisal turns on whether the appraisal provision covers the dispute. Mem. at 4. The impropriety of Defendant's Motion is illustrated as much by what Plaintiffs' claims are about as much as it is about what Plaintiffs are not challenging.[4] This case does not present a dispute about ACV, Defendant never

---

[4] Defendant refers to an email exchange between its counsel and Mr. Ayers, one of the counsel for Plaintiffs, about the appraisal of Plaintiffs' vehicles to assert that appraisal would resolve "the heart of the case." Mem. at 4; Herzog Decl. at ¶ 8; Rule 56.1 Statement at ¶ 12. Nothing is further from the truth. As Mr. Ayers made clear in his initial email to Mr. Herzog, "Plaintiffs believe the appraisal process is a central part of State Farm's fraudulent scheme to deceive insureds. State Farm included the appraisal process -- a cost the insureds must pay -- into the agreements in order to disincentivize and ensure insureds do not contest State Farm's systematic underpayment of the true and fair value of their vehicles. Nonetheless, while preserving all rights and objections to such appraisal process, Plaintiffs for which State Farm requests appraisal will agree to participate in the appraisal process, to proceed concurrently with the pending litigation. . . . Please confirm." Mr.

2

determines it, although it received policy premiums with the promise to do so. Plaintiffs are not contesting the comparator vehicles Defendant selected as the first step to determine the value of their total-loss vehicles, no more than they are contesting the values assigned by Defendant to differences in trim, condition, mileage, packages, and equipment between the comparable vehicles and their total-loss vehicles. Compl. ¶ 55. Rather, Plaintiffs challenge Defendant's systematic and fraudulent scheme to mis-value insureds' totaled vehicles by deploying its undisclosed "typical negotiation adjustment." *Id*., ¶¶ 49-56. The ACV of the totaled vehicles is not at issue (Defendant never offers it); Defendant's fraudulent scheme to reduce as a matter of course its payments to insureds, like Plaintiffs, by deploying the "typical negotiation adjustment" is. Appraisal would do nothing to resolve Plaintiffs' claims about Defendant's fraud; appraisal would only increase Plaintiffs' damages and attorneys' fees.

Accordingly, *Travis v. Am. Mfrs. Mut. Ins. Co*., 782 N.E.2d 322 (Ill. App. 2002) is instructive. There, like here, the plaintiff alleged that the defendant engaging in a fraudulent scheme in which it contracted with a valuation vendor to provide defendant with below-market estimates of total-loss-vehicle values to systematically undervalue the ACV of total-loss vehicles to defraud its insureds. *Id*. at 324. Like here, the *Travis* plaintiff alleged that an integral part of the fraudulent scheme was an appraisal provision in the policy that required the insured and the insurer to each hire, at their own expense, an appraiser and to bear equally the expenses of a third appraiser, as well as any other expenses of the appraisal." *Id.*

---

Herzog did not "confirm that litigation would proceed concurrently with the appraisals" and Defendant chose to file the instant motion. Mr. Ayers has since reiterated Plaintiffs' offer to proceed with appraisals concurrently with litigation and for Defendant to withdraw its motion, which offer Defendant has not responded to. Shamis Decl. at ¶ 8, Exhibit B

3

The defendant in Travis moved to compel appraisal to determine only a single fact, the actual cash value of plaintiff's vehicle, but which defendant argued was the "'key actual issue underlying each of plaintiff's theories of recovery'-the amount of loss[,] and that the appraisal provision clearly stated how the parties had agreed to make that determination.'" *Id.* at 326. The trial court found that the defendant missed the mark: the plaintiff's claims of breach of contract and fraud did not fall within the scope of the appraisal provision. *Id.* at 324.

Affirming the denial of the motion to compel appraisal, the court of appeals explained that "plaintiff's complaint raises much more than a dispute over the actual cash value of her vehicle, that is, the amount of loss, and that the issues raised by the complaint do not fall within the scope of the appraisal clause and could not, in any event, be resolved through the appraisal process." *Id.* at 326; see *also id.* at 327 ("[W]e find that the instant case presents much more than a disagreement between the parties concerning the actual cash value of plaintiff's vehicle."). The court explained, as follows:

> Plaintiff's claims focus upon whether defendant defrauded her and thereby breached the terms of the policy. Plaintiff's amended complaint specifically focuses upon the appraisal provision and claims that defendant inserts the appraisal provision into its policy as one way to effectuate its wrongful scheme, because insureds will forego their unpaid claims rather than pursue the expensive appraisal process, especially because the disputed amount is virtually always worth less than the cost of pursing an appraisal. The amended complaint further alleges, "As designed, the appraisal clause prevents plaintiff and the class from effectively vindicating their statutory and common law causes of action." This language establishes that plaintiff's amended complaint presents much more than a disagreement between the parties concerning the actual cash value of the vehicle.

Id. at 327. Accordingly, "the dispute is not covered by the appraisal clause[.]" *Id.*

The guidance of *Travis* has been applied time and again to properly limit efforts by insurers to force appraisal, typically with expense to the insured, when the dispute exceeds the mere value of insured property. *See Breckenridge Apartment Homes, LLC v. Greater New York Mutual Ins.*

4

*Co.*, 2016 WL 11700913, at * 3 (N.D Ill. Oct. 31, 2016) (citing cases) (finding causation or coverage issues not covered by appraisal provision)[5]; *Lundy v. Farmers Group, Inc.,* 750 N.E.2d 314, 318 (Ill. App. 2001)[6]; *Hanke v. American Intern. South Ins. Co.*, 782 N.E.2d 328, 331 (Ill. App. 2002)[7]; *cf. Lewis v. Mid-Centry Ins. Co.*, 2003 WL 23724735, at *3 (Ill. App. Jan 31, 2003).[8]

    Notably, most courts to address identical claims against State Farm have concluded that appraisal is not appropriate. In *Ngethpharat*, the Western District of Washington rejected State Farm's motion to compel appraisal, noting that an appraisal would not resolve the underlying dispute of the legality of the "typical negotiation discount." *Ngethpharat v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 3d 908, 919 (W.D. Wash. 2020). More recently, the Southern District of Illinois also denied State Farm's motion to compel appraisal under its policies, noting that

---

[5] The *Breckenridge* court noted that state law provides the law of decision in a dispute such as this and, accordingly, cited to varying Illinois appellate decisions. *Id.* For obvious reasons, State Farm appears to avoid these guiding state court decisions in its Motion.

[6] The *Lundy* court noted that "the appraisal process provided for in the policy was designed solely to resolve disputes over the amount of the loss. Farmers argues that the amount of the loss is the threshold issue for each of plaintiff's claims, but that argument oversimplifies the issues raised in plaintiff's second amended complaint. The resolution of plaintiff's claims will require a determination of whether Farmers misrepresented to its policyholders the quality of repair parts that Farmers would pay for under its policies. This question requires an interpretation of the policy language, in particular, the phrase 'like kind and quality.' These issues cannot be resolved through the appraisal process. Consequently, we agree with the trial court that the issues plaintiff raised in her second amended complaint were not subject to the appraisal clause." *Id.,* 750 N.E.2d at 319.

[7] The *Hanke* court noted that "The instant case presents much more than a disagreement between the parties concerning the actual cash value of plaintiff's truck. . . . Here, plaintiff contends that defendant is engaged in a fraudulent scheme to undervalue its insureds' vehicles that are declared a total loss, in order to increase its own profits. Plaintiff's claims focus upon whether defendant defrauded him and thereby breached the terms of the policy. Plaintiff's second amended complaint specifically focuses upon the appraisal provision and makes this claim: "[Defendant] inserts the appraisal provision into its policy as one way to effectuate its wrongful scheme." *Id.*

[8] The *Lewis* court noted that "[a]t issue is the manner in which Mid-Century reduces and/or denies the allowable medical services. Sallie challenges the methodology Mid-Century employs in reducing and/or denying its responsibility for medical bills submitted pursuant to its medpay policy coverage. Sallie also challenges the lack of disclosure Mid-Century makes in reaching its decisions. These issues do not fall within the arbitrable matters Mid-Century includes in its policy language." *Id.*

5

"[d]etermining the meaning of an insurance policy terms is a question of law that cannot be resolved by submitting a dispute to an appraisal." *Nichols v. State Farm Mut. Auto. Ins. Co.*, --- F.Supp. 3d ---, 2022 WL 6671695, at * 5 (S.D.Oh. Oct. 11, 2022).

Likewise, courts reviewing materially identical claims against other insurance companies besides State Farm have also concluded that appraisal is unnecessary. In *Johnson,* the Western District of Wisconsin reviewed materially indistinguishable claims against American Family Insurance Company and refused to stay or dismiss the case pending appraisal holding that "the appraisal process will not resolve plaintiffs' claims." *Johnson v. Am. Fam. Ins. Co.*, No. 22-cv-214-jdp, 2023 U.S. Dist. LEXIS 57193, at *4 (W.D. Wis. Mar. 31, 2023). In *Stanikzy,* the Western District of Washington also refused to dismiss or stay a case pending appraisal holding that "appraisal would not obviate Stanizky's claim that *any* [typical negotiation adjustment] is illegal. *Stanikzy v. Progressive Direct Ins. Co.*, 2020 U.S. Dist. LEXIS 94545, at *6 (W.D. Wash. May 29, 2020). In short, appraisal will not resolve the dispute about State Farm's fraud against each of Plaintiffs and the insureds they seek to represent as class representatives.[9]

In contrast, State Farm relies primarily on *Wexler v. Chubb Nat'l Ins Co.*, 2022 WL 888944 (N.D.Ill. Mar. 25 2022). However, *Wexler* did not involve claims of fraud on the part of the insurer where appraisal was not only futile, but also improper for the scope of appraisal.[10] The one

---

[9] As is pertinent to the scope of the dispute, State Farm expressly limits the authority of an appraiser solely to determining ACV, they "shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class representative basis." Subsection (d) of Appraisal Provision. As the weight of authority cited by Plaintiffs holds, this is the purview of the courts. *See, e.g., Clippinger v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 4887984, at *16 (W.D. Tenn. Oct. 19, 2021) (noting under State Farm's appraisal provision that "[a]ppraisal here will not show whether Defendant violated the Policy or Tennessee law by applying an unexplained, arbitrary negotiation adjustment. Instead, that is a question for the Court to decide ") (citing cases)

[10] Similarly, State Farm's assertion that "courts facing these exact facts and this exact contract language have compelled appraisal" (Mem. at 6), overlooks that neither *Cudd*, *Wiggins* nor

relevant point of *Wexler* for the purposes of State Farm's Motion is the recognition that appraisal is not binding, and will not put the plaintiff out of court. *Id.*, at * 6. That is, the Plaintiffs' underlying claims will inevitably need to be resolved by the Court.[11] Thus, State Farm's concerns about the conservation of judicial resources (Mem. at 6) is better served by recognizing that appraisal of Plaintiffs' claims is outside the scope of the scope and purpose of the State Farm's appraisal provision.

Finally, State Farm neglects one additional requirement for appraisal in Illinois which puts its request plainly outside of the scope of the appraisal provision. As reflected in the Policy it asserts controls the Illinois claims, State Farm's written request for appraisal must have been made "within 60 days after *we* offer to pay the actual cash value of the covered vehicle. ECF No. 68-5 at 30. State Farm did not make a demand within 60 days of February 18, 2021, when it made its offer to Plaintiff Munoz (ECF No. 58-3 at 78), and offers no proof that it made a timely request. Rather, its request for appraisal was untimely. Declaration of Andrew J. Shamis in Support of Plaintiffs' Opposition to Defendant's Motion to Compel Appraisal or, in the Alternative, Dismiss or Grant Summary Judgment ("Shamis Decl.") at ¶ 7.

Accordingly, Defendant's Motion must be denied.

---

*Clippinger*, involved claims of fraud which are plainly beyond the ambit of appraisal or the authority of any appraiser under Defendant's policy. Indeed, the *Cudd* Court's decision was at variance with a decision by the state's supreme court, but argued that the *Cudd* plaintiffs had not alleged fraud. *See Cudd v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 16541166, at *4 (M.D. Ga. Oct. 28, 2022) (distinguishing *McGowan v. Progressive Preferred Ins. Co.*, 637 S.E.2d 27 (Ga 2006). The same is true for *Urbassik*, Defendant's other, new authority. S*ee also Urbassik v. Am. Family Mut. Ins. Co.*, --- F.3d ---, 2023 WL 2185973 (N.D. Oh. Feb. 23. 2023).

[11] Like the language State Farm portrays as "mandatory", in *Wexler* "the appraisal clause simply explains the mechanics of how the appraisers will be chosen and that their decision "*shall* set the amount of the loss." This language is not sufficient to make the appraisal binding on the parties." *Id.* (emphasis added). Indeed, the Court noted that because "the common law placed great importance upon the individual's right to seek redress in court," "any waiver of that right must be clear and unambiguous." *Id.*.

**B. State Farm's Appraisal Provision is Unconscionable and Unenforceable**

Even if Plaintiffs' claims arising from Defendant's fraudulent use of the "typical negotiation adjustment" were properly within the ambit of the appraisal provision, its application would be unconscionable. The parties largely agree on the basic contours that should guide the Court's analysis. Not surprisingly, they disagree about the outcome, with State Farm overlooking several key facts, including the terms of its appraisal provision.

Determination of unconscionability considers both the "procedural" and "substantive" nature of the challenged contractual provision. *See Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006).[12] In considering the propriety of a provision, "all of the circumstances surrounding the transaction should be examined." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 265 (Ill. 2006).[13]

Here, the circumstances surrounding the appraisal provision are not limited to the terms themselves (which alone are sufficiently unconscionable). Rather, the appraisal provision is an instrumental part of Defendant's fraudulent scheme, demanding Plaintiffs pay the premium costs of appraisal on top of the policy premiums they already paid before Defendant would pay ACV. Indeed, the provision is part of the wider policy which Plaintiffs were fraudulently induced to

---

[12] *See also Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 992 (Fla. Dist. Ct. App. 2004); *Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008); *Woods v. QC Fin. Servs., Inc.*, 280 S.W.3d 90, 94–95 (Mo. Ct. App. 2008); *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 842 (S.D. Ohio 2021); *Narayan v. The Ritz-Carlton Dev. Co., Inc.*, 400 P.3d 544, 551 (Haw. 2017); *Smith v. D.R. Horton, Inc.*, 790 S.E.2d 1, 4 (S.C. 2016); *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y. 2017); *Caplin Enterprises, Inc. v. Arrington*, 145 So. 3d 608, 614 (Miss. 2014).

[13] *See also Tillman*, 655 S.E.2d at 370 ("unconscionability is ultimately a determination to be made in light of a variety of factors"); *Woods*, 280 S.W.3d at 95 (noting that contract formation and substance need to be viewed *in toto*); *Eisen*, 244 F. Supp. 3d at 341.

8

purchase from Defendant, and as such is unconscionable *ab initio. See, e.g. M & T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405, 413 (E.D.N.Y. 2004);[14] Compl., Count 5.

Procedural unconscionability concerns the formation of a provision, including the "lack of bargaining power" of the plaintiff. *Razor,* 854 N.E.2d at 622.[15] Accordingly, while not unconscionable *de jure*, contracts of adhesion in the consumer context are inherently suspect. *See Kinkel*, 857 N.E.2d 250, 265 (citing *Razor*, 854 N.E.2d at 622).[16]

In contrast, substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed by each of the parties. *See Kinkel*, 857 N.E.2d at 267.[17] "Indicative of substantive unconscionability are contract terms so one-sided as to

---

[14] "While a contract is not rendered unconscionable merely because one party made a poor business decision, where, as here, that decision was induced through fraud that effectively limited, if not eliminated, the aggrieved parties' ability to make an informed decision, a claim of unconscionability is proper. This variety of manipulative business practice is not validated because the abused party had a fleeting opportunity to avoid a contractual predator." *Id.*; *see also Material Handling Sys., Inc. v. Cabrera*, 572 F. Supp. 3d 375, 390 (W.D. Ky. 2021) ("Contracts obtained by lies or fraud, of course, may be considered procedurally unconscionable"); *Jones Distrib. Co. v. White Consol. Indus., Inc.*, 943 F. Supp. 1445, 1459 (N.D. Iowa 1996) ("[Plaintiff] has indeed alleged fraud in the inducement to the contract, thus escaping the bar on assertion of an unconscionability claim under Ohio law")

[15] *See also Palm Beach Motor Cars*, 885 So. 2d at 992; *Tillman*, 655 S.E.2d at 370; *Woods*, 280 S.W.3d at 95; *Walker*, 541 F. Supp. 3d at 842; *Narayan*, 400 P.3d at 551; *Eisen*, 244 F. Supp. 3d at 341; *Caplin*, 145 So. 3d at 614.

[16] *See also Woods*, 280 S.W.3d at 97; *Brunke v. Ohio State Home Servs., Inc.*, 2008 WL 4615578, at * 2 (Oh. Ct. App. Oct. 20, 2008) (citing *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 866 (Oh. 1998); *Narayan*, 400 P.3d at 552 (noting that "[a]lthough adhesion contracts are not unconscionable *per se*, they are defined by a lack of meaningful choice and, thus, often satisfy the procedural element of unconscionability"); *Smith*, 790 S.E.2d at 4 (noting that "adhesion contracts are not unconscionable *per se*, [but] courts tend to look upon them with 'considerable skepticism' because they give rise to "considerable doubt that any true agreement ever existed"); *Caplin Enterprises*, 145 So. 3d at 614 (noting that "we have held that a finding that a contract is adhesive makes an argument targeting . . . substantive unconscionability . . . easier to prove.")

[17] *See also Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d at 992; *Tillman*, 655 S.E.2d at 370; *Woods*, 280 S.W.3d at 95; *Walker*, 541 F. Supp. 3d at 842; *Smith*, 417 S.C. at 49, 790 S.E.2d at 4; *Eisen*, 244 F. Supp. 3d at 341; *Caplin*, 145 So. 3d at 614.

9

oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 857 N.E.2d at 267

As alleged, Defendant knowingly used its appraisal provision as part of its fraud on Plaintiffs to deter challenges to State Farm's "typical negotiation adjustment."[18] Compl. at ¶¶ 6, 57. Defendant's argument not only ignores these allegations, but also the actual appraisal provision it unilaterally drafted and how this provision, buried deep and inconspicuously in the wider 40 pages of policy, was an unconscionable part of its fraud. Because Defendant did not provide or even discuss it in full it in their brief, here is State Farm's appraisal provision:

> (1) The owner of the ***covered vehicle*** and ***we*** must agree upon the actual cash value of the ***covered vehicle***. If there is disagreement as to the actual cash value of the ***covered vehicle***, then the dis-agreement will be resolved by appraisal upon written request of the owner or ***us***, using the following procedures:
>
> > (a) The owner and ***we*** will each select a competent appraiser.
> > (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or ***we*** may petition a court that has jurisdiction to select the third appraiser.
> > (c) **Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser**.
> > (d) The appraisers shall only determine the actual cash value of the covered vehicle. **Appraisers shall have no authority to** decide any other questions of fact, decide any questions of law, or **conduct appraisal on a class-wide or class-representative basis**.
> > (e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the covered vehicle and us.
> > (f) **We do not waive any of our rights by submitting to an appraisal**.

*See, e.g.,* ECF No. 58-1 at 262 (bold emphasis added in (c), (d), and (f)).

---

[18] Thus, Defendant's reliance on *Clippinger* to vindicate its appraisal provision is misplaced. Mem. at 8. The *Clippinger* Court noted that the provision "might be unconscionable if Defendant knew going in that it would apply a small enough reduction to total loss claims to reduce the chances that its insureds would agree to the hassle and cost of appraisal." *Clippinger v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 4887984, at *7 (W.D. Tenn. Oct. 19, 2021). Plaintiffs expect that discovery will establish, as a matter of fact, Defendant's knowledge and intent.

There is no dispute that State Farm unilaterally drafted this provision; it was non-negotiable. While this procedural fact is not, in and of itself, sufficient to render the provision unconscionable, the appraisal provision is indistinctly buried in the wider 40-page policy documents and lost in an a inaptly named subsection entitled "Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage." *See, e.g., id.*[19]

Moreover, the substance of the appraisal provision renders it more unconscionable. State Farm's terms are one-sided and oppressive to the insureds. Starting with section (f), State Farm reserves all of its rights after appraisal; insureds are assured no such protections. Next, in section (d), the appraisers cannot decide any other fact or questions od law that give rise to Plaintiffs' claims: the facts of Defendant's use of "typical negotiation adjustment" and the legality of this practice.[20] Rather, as is made clear by one of the cases on which State Farm relies (and which interprets *its* appraisal policy), such determinations must be made by this Court. *Clippinger*, 2021 WL 4887984, at *16.[21]

---

[19] *See Narayan*, 400 P.3d at 552 (Haw. 2017); *Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 411 (Ill. App. 3d 1980).

[20] Moreover, to eliminate any chance an insured could economically conduct an appraisal, State Farm stripped the appraisers of any "authority to . . . conduct appraisal on a class-wide or class-representative basis." Section (d). Of course, a class context is the *only* context in which the appraisal process is *not* cost prohibitive for the insured.

[21] After recognizing the limitations on the authority of appraisers in State Farm's policies, the *Clippinger* court concluded that "'[o]rdering an appraisal to determine the correct 'negotiation discount' would not resolve the underlying dispute as to whether any such discount is permissible' under state law. *Id.* This Court finds the reasoning in *Ngethpharat* sound. Appraisal here will not show whether Defendant violated the Policy or Tennessee law by applying an unexplained, arbitrary negotiation adjustment. Instead, that is a question for the Court to decide." *Id.* (citing cases); *see also Nichols*, --- F. Supp. 3d ---, 2022 WL 6671695, at * 5 (interpreting State Farm's policy); *Klein v. Secure Ins. Co.*, 2014 WL 12659923, at *4–5 (E.D. Mich. Nov. 4, 2014) (finding that whether calculating "actual cash value" includes sales tax under the contract is a question for the court, not appraisers); *Davis v. GEICO Cas. Co.*, 2020 WL 68573, at *4 (S.D. Ohio Jan. 7, 2020)

11

Rather, making the appraisal provision an instrumental part of Defendant's scheme, as provided in section (c), Defendant requires that Plaintiffs pay "at their own expenses" not only for their appraiser, but also half the fees of the third appraiser and any other attendant costs. In a dispute like this, which is not about a mere sum of underpayment, but of the use of an unexplained, arbitrary and fraudulent negotiation adjustment, the costs of counsel need also be considered. *Kinkel,* 857 N.E.2d 267-68.

These costs for Plaintiffs to participate in State Farm's appraisal are sunk costs; the policy forecloses cost-shifting if the insured receives a favorable appraisal. Accordingly, compliance with the appraisal provision will almost certainly force an insured to incur more in costs than they would recover under the best result. Compl. at ¶ 6, 44.[22]

Defendant seeks to dull the cost of its appraisal provision by arguing that the "that an appraisal clause 'may cost a litigant money does not render [it] unconscionable.'" Mem. at 8 (quoting *Bettor v. Esurance Prop. & Cas. Ins. Co.*, 2019 WL 2245564, at 5 (S.D. Fla. Mar. 28, 2019). It is not a matter of the cost of appraisal, standing alone, as a barrier. What matters is that the cost is not offset by any potential gain. Any sunk costs required from Plaintiffs by the appraisal provision are simply lost costs.[23] Because it is "an absolute certainty that [Plaintiffs] will not be

---

[22] The services of a single appraiser can run upwards of $750. *See* Shamis Decl. at ¶ 2. Adding the half of the fees for the third appraiser that State Farm's appraisal provision requires from its insureds, the appraiser fees alone can reach $1000. *Id.* at ¶ 3. On top of this, and particularly given the nature of the dispute, counsel fees might also be incurred. *Id.* at ¶ 4. However, the "typical negotiation adjustment" for the Plaintiffs here averages to just over than $810, with the adjustment made to one Plaintiff's valuation being less than $350. *Id.* at ¶¶ 5, 6.

[23] Accordingly, State Farm's effort to belatedly amend its appraisal provision, and offer that "[i]f the appraised value is less than the Autosource value, State Farm will not seek a refund." (ECF No. 67 ¶ 13 (citing Herzog Decl. ¶ 9)) which puts a base to the losses, but does not eliminate such loss that is built into the appraisal provision. Moreover, State Farm's policies contain no such provisional safeguard for insureds. State Farm cannot try and salvage this unconscionable provision by making amendments in the course of litigation to serve its concenience. *Kinkel*, 857 N.E. 2d at 259; *see also Tillman*, 655 S.E.2d at 362.

12

made whole" even if they were to gain something through the appraisal process, the appraisal provision is unconscionable. *Kinkel*, 857 N.E.2d 250, 268.[24]

### C. Dismissal of Claims is Inappropriate

If Plaintiffs' claims arising from Defendant's fraudulent use of the "typical negotiation adjustment" were properly within the narrow ambit of the appraisal provision, which they are not, and application here would not be unconscionable, which it is not, Defendant may seek to compel appraisals. However, efforts like Defendant's alternative request for relief, to turn a routine motion to compel appraisal into a dispositive motion, are routinely denied. *See, e.g., Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2021 WL 2003007, at *1 (M.D. Fla. May 19, 2021) (reconsidering *sua sponte* earlier dismissal of claims based on refusal to participate in appraisal and compelling appraisal); *Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2022 WL 1085541, at *7–8 (M.D. Fla. Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 714808 (M.D. Fla. Mar. 10, 2022) (citing cases).

Compliance with the appraisal provision (if required) would not be an element of Plaintiffs' claims as Defendant argues (Mem. at 9-13), but an affirmative defense for which State Farm bears the burden of proof. *See Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022).

Accordingly, courts have declined to dismiss claims against State Farm based on failure to participate in State Farm's appraisal process, noting that appraisal is not a prerequisite. *Clippinger*, 2021 WL 4887984, at *12 ("Defendant emphasizes that under the Policy, '[l]egal action may not be brought against [State Farm] until there has been full compliance with all the provisions of this policy.' Defendant thus argues that, because Plaintiff refuses to participate in an appraisal, there

---

[24] *See also McInnes v. LPL Fin., LLC*, 994 N.E.2d 790, 798–99 (Mass. 2013); *In re Checking Acct. Overdraft Litig.*, 2010 WL 3361127, at *2 (S.D. Fla. Aug. 23, 2010); *Walker*, 541 F. Supp. 3d at 843; <u>*Brunke*</u>, 2008 WL 4615578, at * 4

has not "been full compliance" with all of the Policy's provisions. But nothing in the appraisal provision's language makes appraisal a condition precedent to suit."); *Wiggins v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 2276556, at *4 (citing *Clippinger* for same).

Defendant's alternative request dismissal of these Plaintiffs' claims should be denied.

### D. Statement of Undisputed Facts and Supporting Declaration Should be Stricken

As part of State Farm's alternative request for Summary Judgment, which is not properly sought here (*supra* Section C), it submits Statement of Undisputed Material Facts pursuant to Local Rule 56.1 (ECF No. 67) ("Statement") which cites repeatedly and exclusively to the supporting declaration of its lead counsel in this Litigation, Peter W. Herzog III (ECF No. 68) ("Herzog Decl."). This Statement and the supporting declaration should be stricken as non-compliant with Local Rule 56.1 and independent grounds for denial of the Motion.

Local Rule 56.1 provides, in pertinent part (emphases added), that:

> **(a) Moving Party.** With each summary judgment motion filed under Fed. R. Civ. P. 56, the moving party must serve and file—
> (1) a supporting memorandum of law that complies with LR 56.1(g); and
> (2) a statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material.
> (3) *Failure to comply with LR 56.1(a)(1) or (a)(2) may be grounds for denial of the motion*.
>
> **(d) Statement of Material Facts.**
> (1) Form. Each LR 56.1(a)(2) statement of material facts and LR 56.1(b)(3) statement of additional facts must consist of concise numbered paragraphs.
> (2) Citations. *Each asserted fact must be supported by citation to the specific evidentiary material*, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation.
> (3) All evidentiary material identified in LR 56.1(a)(2) and LR 56.1(b)(3) citations must be included as numbered exhibits with the statements of fact.
> (4) *LR 56.1(a)(2) statements of material facts* and LR 56.1(b)(3) statements of additional facts *should not contain legal argument*.

Mr. Herzog offers facts about State Farm's practices and operations prior to the litigation, such as the estimates of loss provided to Plaintiffs (Herzog Decl. ¶ 4, 5), and Plaintiffs' responses

thereto (*id.* ¶ 6, 7), all without citation to any evidentiary support nor the basis for his purported knowledge. While Mr. Herzog does append purported policy documents for each of the Plaintiffs against whom State Farm has filed its Motion, he does not state a basis to support that such policies were those originally issued by State Farm to each of these Plaintiffs prior to his representation of State Farm in this litigation, the periods when these policies were in force, or the entirety of the policy documents. *Id.* ¶¶ 9-20. As to these policy documents, he represents terms and conditions of his client's appraisal provision that are not reflected in the plain language of the policies themselves and at variance with them. *Id.* ¶ 8. Moreover, to the extent there are provisions in these purported policy documents that are properly quoted by Mr. Herzog, he undertakes a legal interpretation of the policy language and makes legal conclusions about these provisions. *Id.* ¶¶ 3, 4, 5.[25] In sum, Mr. Herzog has *no* personal knowledge of the factual assertions in his declaration. His declaration simply provides Mr. Herzog's advocacy as counsel for State Farm. That is, he offers prohibited legal conclusions and asserts facts without the necessary evidentiary support.

Lacking any proper support, the Court should strike Mr. Herzog's declaration and the Statement, and deny the Motion to the extent it seeks summary judgment.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs request that the Motion to Compel Appraisals or, in the Alternative, Dismiss or Grant Summary Judgment be denied.

---

[25] For example, in paragraph 5 of his declaration, Mr. Herzog concludes that the "law of the state where each Appraisal Plaintiff resides governs each policy." However, the purported policy documents state something different, and contemplate that such state law will control only in the event of a disagreement as to the interpretation and application of a provision in this policy (presumably recognizing that state's insurance regulations), and that Illinois law will apply to interpretation of the Declarations Page policy documents (which include "Mutual Conditions" and "Participating Policy" provisions) which documents are not appended. Here, the relevant Plaintiff's claims are not based on insurance regulations.

15

Dated: August 28, 2023

Respectfully submitted,
**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg*
scott@edelsberglaw.com
Christopher Gold*
chris@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320

**SEEGER WEISS LLP**
Christopher A. Seeger*
Christopher L Ayers*
55 Challenger Road, 6th Fl.
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

**SEEGER WEISS LLP**
Scott A. George
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
sgeorge@seegerweiss.com

*Counsel for Plaintiffs and the Proposed Class*

\*    Admitted *pro hac vice*