THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERNADETTE WILLIAMS, et al., on behalf of themselves and all others similarly situated, | ) ) | |
| | ) | No. 22 C 1422 |
| *Plaintiffs*, | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) | |
| | ) | |
| *Defendant*. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs are insureds from thirty-two states who totaled their vehicles and then made claims under their insurance policies from State Farm Mutual Automobile Insurance Company. In calculating the actual cash value of Plaintiffs' vehicles, State Farm applied a "typical-negotiation adjustment," which reduced Plaintiffs' total-loss payments. In this putative nationwide class action, Plaintiffs allege State Farm's use of the typical-negotiation adjustment was a fraudulent scheme and a breach of their insurance policies. They bring common-law and statutory claims under the laws of forty-seven states and the District of Columbia. State Farm moves: (1) to dismiss, transfer, or stay the claims of ten Plaintiffs in favor of earlier-filed cases in other districts; (2) to compel appraisal of fourteen plaintiffs' claims, or alternatively, dismiss or grant summary judgment on those claims; and (3) to dismiss "headless" claims—meaning, claims under the laws of states where none of the named Plaintiffs resides. (Dkts. 62, 65, 69). State Farm's motion to transfer [62] is granted in part as to six Plaintiffs; the first motion is otherwise denied. State Farm's motion to compel appraisal, dismiss, or grant summary judgment [65] is denied. State Farm's motion to dismiss "headless" claims [69] is also denied.

1

# BACKGROUND

## A.      Factual Background

Plaintiffs, citizens of thirty-two states, are thirty-three insureds under State Farm uniform automobile insurance policies who submitted claims after totaling their vehicles. (Dkt. 58 ¶¶ 12–44).[1] State Farm's drafted its form insurance policies in Illinois, where it has its headquarters. (*Id.* at ¶ 62). Under the policies, when repair of an insured vehicle is impossible or uneconomical—rendering it a "total loss"—State Farm may settle the claim by paying the insured the actual cash value of the vehicle. (*Id.* at ¶ 2; *see also* Dkt. 58-1). To determine the actual cash values of Plaintiffs' vehicles, State Farm used Autosource Market-Driven Valuation, a system which aggregated prices from online sales and listings of comparable vehicles. (Dkt. 58 ¶ 51; *see also* Dkt. 58-3). Audatex, a Texas-based third-party vendor provided Autosource to State Farm. (Dkt. 58 ¶¶ 51, 55; Dkt. 63 at 9). At State Farm's directive, Autosource applied a "typical-negotiation" adjustment to the market-value price to decide its total-loss payments—an adjustment reflecting the average difference between the list price and a lower theoretical price that a dealer would accept. (Dkt. 58 ¶¶ 51–52). Actual negotiations did not factor into the typical-negotiation adjustment. (*Id.* at ¶ 53). Nor did State Farm consult with any dealers or consider that "no-haggle" pricing predominates in the used-car market, especially online. (*Id.*) At the time State Farm determined the actual cash values of Plaintiffs' vehicles, due to car-parts supply-chain issues during the COVID-19 pandemic, used cars often sold at or above list prices. (*Id.*)

---

[1] Plaintiffs (and their states of citizenship) are Bernadette Williams (Alabama); Rick McConnell (Arkansas); Ivan Serrata Reyes (Connecticut); Rosilyn Wilson (Delaware); Linda Lewis (Florida); Latasha Huff (Georgia); Haunanimae Cervantes-White (Hawaii); Maria Munoz (Illinois); Tracy Obrien (Iowa); Kimberly Benson (Kansas); Roy Tuinstra (Kentucky); Evelyn Brown (Louisiana); Michelle Snyder (Maryland); Patricia Couch (Michigan); Sabrina Capers (Minnesota); William Ross Dean (Mississippi); Richard Dacheff (Missouri); Kristy Keller (Nebraska); Jasimen Hernandez (Nevada); Edgar Florian (New Hampshire); Michael Grossberg (New Jersey); Merrill Love (New Mexico); Diane Newkirk (New York); Sandra Smiling (North Carolina); Shaun Robert (Ohio); Davey Johnston (Oklahoma); Cynthia Roemer (Oregon); Roque Espinoza (Pennsylvania); Jennifer Payne (South Carolina); Latishia Bowden (Tennessee); DJ Neill (Texas); Tyson Dewsnup (Utah); Deirdre Palmer (Utah). (*Id.*)

Nonetheless, in calculating Plaintiffs' vehicles' actual cash values, the typical-negotiation adjustment took 4–11% off the prices of comparable vehicles—in turn, reducing the total-loss payments Plaintiffs received. (*Id.* at ¶¶ 12–44, 53–55). To determine the value of Brown's car, for example, State Farm applied a 4–6% typical-negotiation adjustment to four comparable vehicles. (*Id.* at ¶ 23; Dkt. 58-3 at 118–19). Starting with the comparable vehicles' advertised prices of $16,995, $14,991, $15,990, and $14,718, State Farm adjusted "to account for differences in vehicle description" and then reduced by 4–6% to reflect "typical negotiation." (Dkt. 58-3 at 118–23). State Farm further reduced the comparable vehicles' adjusted values ($16,295, $14,752, $15,851, and $14,495) for differences in mileage to reach their "final market values" ($13,955, $13,497, $13,811, and $13,235). (*Id.* at 118–19). Averaging the final market values, State Farm calculated the "condition adjusted market value" of Brown's car—$13,625. (Dkt. 58 ¶ 23; Dkt. 58-3 at 119). Adding Louisiana sales tax and subtracting a deductible, the final "net adjusted value" of Brown's car was $13,878.50. (Dkt. 58-3 at 119).[2] For comparison, the National Automobile Dealers Association (NADA) Fully Adjusted Value of Brown's car was $14,675. (Dkt. 58-3 at 124).

State Farm did not tell insureds about the typical-negotiation adjustment before they bought their policies. (Dkt. 58 ¶ 52). Instead, when State Farm offered total-loss payments to Plaintiffs, it provided a valuation report showing that, for each comparable vehicle that Autosource factored into the average market price, the "advertised price . . . was adjusted to account for typical negotiation." (Dkt. 58-3; *e.g.*, *id.* at 17–18). The report noted further: "[t]he selling price may be substantially less than the asking price," and "[w]hen indicated, the asking price has been adjusted

---

[2] Plaintiffs allege State Farm paid Brown $13,955, (Dkt. 58 ¶ 23), but the valuation report, which Plaintiffs attached as an exhibit, indicates Brown's car's net-adjusted value was $13,878.50. (Dkt. 58-3 at 118). The exhibit controls. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

to account for typical negotiation." according to each comparables [sic] price." (Dkt. 58 ¶ 52; *e.g.*, Dkt. 58-3 at 5).

Some Plaintiffs' policies include an appraisal clause like the following:

The owner of the covered vehicle and we must agree upon the actual cash value of the covered vehicle. If there is disagreement as to the actual cash value of the covered vehicle, then the disagreement will be resolved by appraisal upon written request of the owner or us, using the following appraisal procedures:

(a) The owner and we will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or we may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the covered vehicle. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the covered vehicle and us.

(Dkt. 58 ¶¶ 1, 6; Dkt. 58-1 at 12, 153–54, 197, 272–73, 317, 362, 394, 457–58, 534–35, 623, 668–69, 708, 754, 785–86).

Plaintiffs' policies also provide: "Legal action may not be brought against us until there has been full compliance with all the provisions of the policy." (Dkt. 58-1 at 15, 168, 210, 282, 330, 372, 405, 467, 501, 544, 575, 636, 683, 717, 766, 795). Under the policies' choice-of-law provisions, with exceptions not relevant here, the laws of the insureds' home states "will control." (*Id.* at 15, 211, 282, 332, 372, 405, 467, 502, 545, 575, 636, 684, 718, 767; Dkt. 68-3 at 11; Dkt. 68-13 at 13).

### B.     Procedural History

### 1.     This Lawsuit

On March 18, 2022, twenty insured Plaintiffs[3] brought this putative nationwide class action. (Dkt. 1). The February 14, 2023 First Amended Class Action Complaint added Plaintiffs from Minnesota, New Jersey, and Michigan, among other states. (Dkt. 58 ¶¶ 25, 26, 32). The amended complaint has not added any new claims or changed the proposed class definition from the original complaint. (*Compare* Dkt. 1 ¶¶ 52–53, 62–2023, *with* Dkt. 58 ¶¶ 65–66, 75–637). Plaintiffs bring thirty-two claims: breach of contract (Count 2); breach of the covenant of good faith and fair dealing (Count 3); fraudulent concealment (Count 4); fraud in the inducement (Count 5); unjust enrichment (Count 6); declaratory judgment (Count 7); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count 1); and violation of twenty-five other consumer-protection statutes (Counts 8–33). (Dkt. 58 ¶¶ 75–637).[4] In Counts 8, 10, 12, 18, 21, 28, 30, and 33, Plaintiffs allege violations of the consumer-protection statutes of seven

---

[3] The Plaintiffs in the original Class Action Complaint were Williams, McConnell, Wilson, Lewis, Huff, Cervantes-White, Munoz, Benson, Tuinstra, Brown, Snyder, Dean, Dacheff, Newkirk, Smiling, Robert, Espinoza, Payne, Bowden, and Neill. (Dkt. 1).

[4] Specifically, Counts 8–33 bring claims under the Alaska Unfair Trade Practices and Consumer Protection Act (Alaska CPA) (Count 8); the Arkansas Deceptive Trade Practices Act (Arkansas DTPA) (Count 9); the Colorado Consumer Protection Act (Colorado CPA) (Count 10); the Connecticut Unfair Trade Practices Act (Connecticut UTPA) (Count 11); the District of Columbia Consumer Protection Procedures Act (D.C. CPPA) (Count 12); the Delaware Consumer Fraud Act (Delaware CFA) (Count 13); the Florida Deceptive and Unfair Trade Practices Act (Florida DUPTA) (Count 14); the Hawaii Uniform Deceptive Trade Practices Act (Hawaii UDTPA) (Count 15); the Kentucky Consumer Protection Act (Kentucky CPA) (Count 17); the Maine Unfair Trade Practices Act (Maine UTPA) (Count 18); the Minnesota Prevention of Consumer Fraud Act (Minnesota PCFA) (Count 19); the Mississippi Consumer Protection Act (Mississippi CPA) (Count 20); the Montana Unfair Trade Practices and Consumer Protection Act (Montana CPA) (Count 21); the Nebraska Consumer Protection Act (Nebraska CPA) (Count 22); the Nevada Deceptive Trade Practices Act (Nevada DTPA) (Count 23); the New Jersey Consumer Fraud Act (New Jersey CFA) (Count 24); the New Mexico Unfair Trade Practices Act (New Mexico UTPA) (Count 25); the New York General Business Law (New York GBL) (Count 26); the North Carolina Unfair Trade Practices (North Carolina Unfair Practices Act) (Count 27); the North Dakota Unlawful Sales or Advertising Practices Act (North Dakota USAPA) (Count 28); the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) (Count 29); the South Dakota Deceptive Trade Practices and Consumer Protection Law (South Dakota CPL) (Count 30); the Texas Deceptive Trade Practices Act (Texas DTPA) (Count 31); the West Virginia Consumer Credit and Protection Act (West Virginia CCPA) (Count 32); and the Wyoming Consumer Protection Act (Wyoming CPA) (Count 33). (*Id.* at ¶¶ 150–637). There is no "Count 16." (*See id.*)

states plus the District of Columbia where none of the Plaintiffs reside. (Dkt. 58 ¶¶ 150–66, 187–204, 223–41, 313–30, 365–83, 486–502, 561–78, 620–37).[5]

Plaintiffs allege State Farm "systematically undervalues total-loss vehicles" by applying the typical-negotiation adjustment. (*Id.* at ¶ 1). They claim further that the appraisal clause is "[a]n integral part of [State Farm's] fraudulent scheme." (*Id.* at ¶¶ 6, 57). Because the appraisal clause requires insureds to bear their own appraisal costs—which can exceed the amount by which State Farm allegedly underpays total-loss claims—Plaintiffs assert that the clause pressures insureds to accept the underpayment and prevents them from "vindicating their statutory and common law rights." (*Id.*) Plaintiffs seek actual damages including "the amounts improperly deducted by [State Farm] from their payments to insureds" using the typical-negotiation adjustment. (*Id.* at ¶ 108). They also seek statutory and punitive damages, restitution, interest, equitable relief, and attorneys' fees. (*Id.* at ¶ 637).

As to their common-law claims (Counts 2–7), Plaintiffs invoke Illinois law, or in the alternative, the laws of forty-five states and the District of Columbia. (*Id.* at ¶¶ 65–66).[6] In total, Plaintiffs bring claims under the laws of forty-eight jurisdictions—including sixteen where no Plaintiffs reside. (*Id.* at ¶¶ 66, 348–64, 620–37).[7] Plaintiffs seek to represent a class of State Farm insureds "in any state," except California, who "received a first-party total loss valuation and

---

[5] No Plaintiff resides in Alaska, Colorado, the District of Columbia, Maine, Montana, North Dakota, South Dakota, or Wyoming. (*Compare* Dkt. 58 ¶¶ 150–66, 187–204, 223–41, 313–30, 365–83, 486–502, 561–78, 620–37, *with id.* at ¶¶ 12–44).

[6] The forty-six jurisdictions Plaintiffs list are Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin. (*Id.* at ¶ 66).

[7] Although Mississippi and Wyoming are not among the states in Plaintiffs' list, (*see* Dkt. 58 ¶ 66), Plaintiffs bring Mississippi CPA and Wyoming CPA claims. (*Id.* at ¶¶ 348–64, 620–37). The sixteen "Plaintiff-less" jurisdictions are Alaska, Arizona, Colorado, the District of Columbia, Idaho, Indiana, Maine, Massachusetts, Montana, North Dakota, South Dakota, Virginia, Washington, Wisconsin, and Wyoming. (*See* Dkt. 58 ¶¶ 12–44).

payment on an automobile total loss claim that included a 'typical negotiation' or similar adjustment." (*Id.* at ¶ 65 & n.3). Alternatively, Plaintiffs propose subclasses of insureds from forty-six jurisdictions. (*Id.* at ¶¶ 65–67).

## 2. Parallel Actions

This is not the only lawsuit challenging State Farm's use of the typical-negotiation adjustment to determine total-loss payments. Back in October 2021, Plaintiffs Munoz and Smiling, of Illinois and North Carolina, respectively, raised similar claims in a putative class action against State Farm in this District, before the Honorable Charles R. Norgle. Class Action Complaint, *Munoz v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-05211 (N.D. Ill. Oct. 1, 2021), ECF No. 1. On October 29, 2021, Judge Norgle *sua sponte* dismissed the complaint for lack of subject-matter jurisdiction and closed the case. Order, *Munoz*, No. 21-cv-05211 (N.D. Ill. Oct. 29, 2021), ECF No. 6.

On November 23, 2021, Munoz and Smiling moved to reopen *Munoz*, explaining that they made an "inadvertent mistake" in failing to allege federal jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). Plaintiffs' Motion for Relief from Judgment at 2–3, *Munoz*, No. 21-cv-05211 (N.D. Ill. Nov. 23, 2021), ECF No. 7. The accompanying proposed amended complaint named sixteen additional plaintiffs, including from Arkansas, Georgia, Kansas, Louisiana, Ohio, and Tennessee. Proposed First Amended Class Action Complaint at 4–12, *Munoz*, No. 21-cv-05211, ECF Nos. 7-1, 7-2. Although State Farm did not oppose the motion to reopen—noting that the proposed amended complaint sufficiently alleged subject-matter jurisdiction under CAFA—Munoz and Smiling withdrew the motion on March 18, 2022, the same day they joined in filing this action. Defendant's Response to Plaintiffs' Motion for Relief from Judgment at 2, *Munoz*, No. 21-cv-05211 (N.D. Ill. Dec. 13, 2021), ECF No. 9; Plaintiffs' Notice

7

of Withdrawal of Motion, *Munoz*, No. 21-cv-05211 (N.D. Ill. Mar. 18, 2022), ECF No. 16. In April

2023, Munoz and Smiling renewed their motion to reopen *Munoz* and moved to consolidate that

case with this one. Plaintiffs' Renewed Motion to Reopen Case and for Consolidation, *Munoz*, No.

21-cv-05211 (N.D. Ill. Apr. 28, 2023), ECF No. 18. State Farm has opposed that motion, which is

pending before the Honorable Elaine E. Bucklo. Defendant's Response in Opposition to Plaintiffs'

Motion to Reopen Case and for Consolidation, *Munoz*, 21-cv-05211 (N.D. Ill. May 26, 2023), ECF

No. 25.

      In addition, there are ten parallel cases against State Farm in other federal district courts.

Seven of those cases were filed before this case: *Shields* (W.D. La.), *Clippinger* (W.D. Tenn.),

*Wiggins* (D.S.C.), *Chadwick* (E.D. Ark.), *Gulick* (D. Kan.), *Cudd* (M.D. Ga.), and *Nichols* (S.D.

Ohio).[8] *Shields* and *Clippinger* predated *Munoz*. *Chadwick*, *Gulick*, *Cudd*, and *Nichols* were filed

while the motion to reopen *Munoz* was pending. Three additional cases, *Varela* (D. Minn.),

*Muhammad* (D.N.J.), and *Schmidt* (E.D. Mich.), began after this case but before Capers,

Grossberg, and Couch—citizens of the states where those cases are pending—joined this action as

Plaintiffs in the First Amended Class Action Complaint.[9] All ten of the other federal cases allege

state-law claims stemming from State Farm's use of the typical-negotiation adjustment in

---

[8] Complaint, *Shields v. State Farm Mut. Auto. Ins. Co.*, No. 6:19-cv-01359 (W.D. La. Oct. 16, 2019), ECF No. 1; Notice of Removal, *Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-02482 (W.D. Tenn. July 2, 2020), ECF No. 1 (filed in state court on May 8, 2020); Notice of Removal, *Wiggins v. State Farm Mut. Auto. Ins. Co.*, No. 8:21-cv-03803 (D.S.C. Nov. 19, 2021), ECF No. 1 (filed in state court on October 15, 2020); Class Action Complaint, *Chadwick v. State Farm Mut. Auto. Ins. Co.*, No. 4:21-cv-01161 (E.D. Ark. Nov. 29, 2021); Class Action Complaint, *Gulick v. State Farm Mut. Auto. Ins. Co.*, No. 2:21-cv-02573 (D. Kan. Dec. 6, 2021), ECF No. 1; Class Action Complaint, *Cudd v. State Farm Mut. Auto. Ins. Co.*, No. 4:21-cv-00217 (M.D. Ga. Dec. 21, 2021), ECF No. 1; Class Action Complaint, *Nichols v. State Farm Mut. Auto. Ins. Co.*, No. 2:22-cv-00016 (S.D. Ohio Jan. 4, 2022), ECF No. 1.

[9] Complaint, *Varela v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00970 (D. Minn. Apr. 15, 2022), ECF No. 1; Complaint, *Muhammad v. State Farm Indem. Co.*, No. 2:22-cv-06149 (D.N.J. Oct. 18, 2022), ECF No. 1; Notice of Removal, *Schmidt v. State Farm Mut. Auto. Ins. Co.*, No. 2:22-cv-12926 (E.D. Mich. Dec. 2, 2022), ECF No. 1 (filed in state court on November 2, 2022).

determining total-loss payments.[10] And the ten other cases' proposed (and in one case, certified)

class definitions are similar to the class definition Plaintiffs propose here.[11]

Some of the other cases are further along than this one. For instance, the *Shields* court

certified a class, and the certification order is pending appeal. *Shields v. State Farm Mut. Auto. Ins.*

---

[10] Complaint at 8–13, *Shields*, No. 6:19-cv-01359 (breach of contract, breach of covenant of good faith and fair dealing, and violation of Louisiana statute); Amended Class Action Complaint at 12–15, *Clippinger*, No. 2:20-cv-02482 (breach of contract, breach of covenant of good faith and fair dealing, and declaratory judgment), ECF No. 1-1; Class Action Complaint at 11–20, *Wiggins*, No. 8:21-cv-03803 (breach of contract and declaratory judgment), ECF No. 1-1; Class Action Complaint at 9–11, *Chadwick*, No. 4:21-cv-01161 (breach of contract and declaratory judgment); Amended Class Action Complaint at 8–10, *Gulick*, No. 2:21-cv-02573 (D. Kan Dec. 7, 2021) (breach of contract and declaratory judgment), ECF No. 3; Plaintiff's First Amended Class Action Complaint at 20–24, *Cudd*, No. 4:21-cv-00217 (M.D. Ga. Mar. 10, 2022) (breach of contract, unjust enrichment, breach of covenant of good faith and fair dealing, declaratory judgment, and litigation expenses under Georgia statute), ECF No. 17; Class Action Complaint at 10–13, *Nichols*, No. 2:22-cv-00016 (breach of contract and unjust enrichment); Class Action Complaint at 22–32, *Varela*, No. 22-cv-00970 (breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, violation of Minnesota CFA, and declaratory judgment); Complaint at 12–14, *Muhammad*, No. 2:22-cv-06149 (breach of contract and breach of covenant of good faith and fair dealing); First Amended Class Action Complaint at 17–20, *Schmidt*, No. 2:22-cv-12926 (E.D. Mich. Feb. 10, 2023) (breach of contract and breach of covenant of good faith and fair dealing), ECF No. 15.

[11] *Compare* (Dkt. 58 ¶¶ 65–66), *with* Complaint at 13, *Shields*, No. 6:19-cv-01359 (Louisiana and nationwide "policyholders who have made claims against their policy for the total loss of a vehicle and had those claims valued through the use of the Autosource Market-Driven Valuation Report system and/or other unfair valuation tools used by State Farm"); *Shields v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 37347, at *7 (W.D. La. Jan 3, 2022) (certifying class as modified, to include Louisiana insureds "who have made a claim for first party total loss, which State Farm evaluated using Autosource, or a predecessor product, . . . and whose Autosource Base Value was less than the NADA Fully Adjusted Value ('Clean Retail')"); Amended Class Action Complaint at 9, *Clippinger*, No. 2:20-cv-02482 (Tennessee insureds who "received a first-party total loss valuation and payment that included a downward adjustment premised on a 'Typical Negotiation Adjustment' or similar adjustment"); Class Action Complaint at 14, *Wiggins*, No. 8:21-cv-03803 (South Carolina insureds who "received a first-party total loss valuation and payment that included a downward adjustment premised on a 'Typical Negotiation Adjustment' or similar adjustment"); Class Action Complaint at 6–7, *Chadwick*, No. 4:21-cv-01161 (Arkansas insureds who "received a first-party total loss valuation and payment that included a downward adjustment premised on a 'Typical Negotiation Adjustment' or similar adjustment"); Amended Class Action Complaint at 6–7, *Gulick*, No. 2:21-cv-02573 (Kansas insureds who "received a first-party total loss valuation and payment that included a downward adjustment premised on a 'Typical Negotiation Adjustment' or similar adjustment"); Plaintiff's First Amended Class Action Complaint at 18, *Cudd*, No. 4:21-cv-00217 (Georgia insureds "who received compensation . . . for the total loss of their own vehicles under their First Party . . . coverages, and . . . whose claim was settled using the amount determined by a total loss valuation from Audatex based on the value of comparable vehicles which took a deduction or adjustment for 'typical negotiation'"); Class Action Complaint at 7–8, *Nichols*, No. 2:22-cv-00016 (Ohio insureds "who received compensation . . . for the total loss of their own vehicles under their First Party . . . coverages, and . . . whose claim was settled using the amount determined by a total loss valuation from Audatex based on the value of comparable vehicles which took a deduction or adjustment for 'typical negotiation'"); Plaintiff's Class Action Complaint at 18–19, *Varela*, No. 22-cv-00970 (Minnesota insureds "who received compensation . . . for the total loss of their own vehicles under the First Party . . . coverages, and . . . whose claim was settled using the amount determined by a total loss valuation . . . based on the value of comparable vehicles which took a deduction or adjustment for 'typical negotiation'"); Complaint at 10, *Muhammad*, No. 2:22-cv-06149 (insureds "who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a 'typical negotiation' or similar adjustment"); First Amended Class Action Complaint at 13, *Schmidt*, No. 2:22-cv-12926 (Michigan insureds "who received a first-party total-loss valuation and payment on an automobile total-loss claim that included a 'typical negotiation' or similar adjustment").

*Co.*, 2022 WL 37347 (W.D. La. Jan. 3, 2022), *motion for leave to appeal under Fed. R. Civ. P. 23(f) granted*, No. 22-90002 (5th Cir. Mar. 14, 2022), *appeal transferred*, No. 22-30126 (5th Cir. Mar. 14, 2022). The district court in *Chadwick* denied State Farm's motion to dismiss for failure to state a claim. *Chadwick v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 18779022 (E.D. Ark. July 5, 2022). The *Clippinger* and *Wiggins* courts denied State Farm's motions to dismiss or for summary judgment while compelling the plaintiffs to submit to appraisal. *Clippinger v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 4887984 (W.D. Tenn. Oct. 19, 2021). *Wiggins v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 2276556 (D.S.C. June 23, 2022). In contrast, the *Nichols* court denied State Farm's motion to dismiss and refused to compel appraisal. *Nichols v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 6671695 (S.D. Ohio Oct. 11, 2022), *reconsideration denied*, No. 2:22-cv-00016 (S.D. Ohio Oct. 24, 2022), ECF No. 42. State Farm's renewed motion to compel appraisal, responding to the plaintiff's amended complaint, is pending. Renewed Motion to Compel Appraisal, *Nichols*, No. 2:22-cv-00016 (S.D. Ohio May 5, 2023), ECF No. 72.

Then, in *Cudd*, the district court granted State Farm's motion to dismiss based on the plaintiff's failure to comply with his policy's appraisal clause—a ruling which is pending appeal. *Cudd v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 16541166 (M.D. Ga. Oct. 28, 2022), *appeal docketed*, No. 22-13916 (11th Cir. Nov. 23, 2022). More recently, the *Varela* district court granted State Farm's motion to dismiss in part, finding the plaintiff's common-law claims were subject to a binding arbitration clause, while allowing the Minnesota CFA claim to move forward. *Varela v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 1971753 (D. Minn. Feb. 13, 2023), *appeal docketed*, No. 23-1516 (8th Cir. Mar. 17, 2023). The *Varela* decision is also pending appeal.

Other cases are behind this one. State Farm's motions to dismiss are pending in *Gulick*, *Muhammad*, and *Schmidt*. Motion to Dismiss, *Gulick v. State Farm Mut. Auto. Ins. Co.*, No. 2:21-

cv-02573 (D. Kan. Feb. 21, 2022), ECF No. 16; Motion to Dismiss Amended Complaint, *Muhammad v. State Farm Indem. Co.*, No. 2:22-cv-06149 (D.N.J. Apr. 28, 2023), ECF No. 27; Motion to Dismiss Amended Complaint, *Schmidt v. State Farm Mut. Auto. Ins. Co.*, No. 2:22-cv-12926 (E.D. Mich. Mar. 17, 2023), ECF No. 18.

### 3.     Appraisal Demand

After Plaintiffs filed this suit, State Farm demanded that fourteen Plaintiffs[12] submit to appraisal. (Dkt. 68 ¶¶ 6–8; Dkts. 68-1, 73-1, 73-2, 78-1). On January 28, 2023, Plaintiffs' counsel indicated that the appraisal Plaintiffs would "agree to participate in the appraisal process, to proceed concurrently with the pending litigation." (Dkt. 78-1 at 7). Those Plaintiffs have since refused to submit to appraisal. (Dkt. 78-1 at 3).

### 4.     Present Motions

State Farm now brings three motions. First, it moves to dismiss, transfer, or stay ten Plaintiffs'[13] claims in favor of cases in other districts. (Dkt. 62). Second, as to the fourteen appraisal Plaintiffs' claims, State Farm moves to compel appraisal, or alternatively, dismiss or grant summary judgment. (Dkt. 65). Third, State Farm moves to dismiss the amended complaint's "headless" claims (Counts 8, 10, 12, 18, 21, 28, 30, and 33 in their entirety, and Counts 2–7 to the extent they invoke the laws of Plaintiff-less states). (Dkt. 69).

### LEGAL STANDARD

Deciding a motion to dismiss, stay, or transfer venue, the Court makes necessary factual findings. *See In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008); *see, e.g.*, *Crothall Laundry*

---

[12] The fourteen "appraisal" Plaintiffs are Lewis, Huff, Cervantes-White, Munoz, Snyder, Couch, Dacheff, Dean, Newkirk, Smiling, Robert, Payne, Bowden, and Dewsnup. (Dkt. 65 at 1–2).

[13] The ten so-called "second-filed" Plaintiffs (and their home states), are McConnell (Arkansas), Huff (Georgia), Benson (Kansas), Brown (Louisiana), Couch (Michigan), Capers (Minnesota), Grossberg (New Jersey), Robert (Ohio), Payne (South Carolina), and Bowden (Tennessee). (Dkt. 62 at 1–2). Huff, Couch, Robert, Payne, and Bowden are also among the appraisal Plaintiffs. (Dkt. 65 at 2 n.1).

*Servs., Inc. v. OSF Health Care Syst*, 2018 WL 1695364, at \*4 (N.D. Ill. Apr. 6, 2018). The Court will "consider only undisputed facts presented . . . by affidavit, deposition, stipulation, or other relevant documents." *Crothall*, 2018 WL 1695364, at \*4 (quoting *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 790 (N.D. Ill. 2001)). Put differently, the Court accepts the complaint's well-pleaded facts as true, "unless contradicted by affidavits or other appropriate evidence from the defendant." *Id.* at \*4 (quoting *Howze v. United States*, 2015 WL 9315542, at \*1 (N.D. Ill. Dec. 23, 2015), and collecting cases).

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in Plaintiffs' complaint as true, "drawing all reasonable inferences in [their] favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).

Then, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when there is "sufficient evidence" for a jury to return a verdict in favor of the party opposing summary judgment. *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The Court does not "weigh conflicting evidence, resolve swearing

contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021).

## DISCUSSION

### I.    Motion to Dismiss, Transfer, or Stay Under the First-Filed Rule

State Farm first moves to dismiss, stay, or transfer ten Plaintiffs' claims to ten other districts pursuant to the first-filed doctrine. "Federal district courts have inherent power to administer their dockets so as to conserve scarce judicial resources." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (citing *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)). Thus, "for reasons of wise judicial administration," the Court may dismiss, stay, or transfer a case "whenever it is duplicative of a parallel action already pending in another federal court." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888–89 (7th Cir. 2012) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)); *see also, e.g.*, *Nicholson v. Nationstar Mortg. LLC of Del.*, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018). "A suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. 2021) (quoting *McReynolds*, 694 F.3d at 889). Put another way, the claims, parties, and available relief must "substantially overlap," although duplicative cases need not be identical. *Nicholson*, 2018 WL 3344408, at *5 (collecting cases).

In the face of duplicative litigation, "the general rule favors the forum of the first-filed suit." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 832 (N.D. Ill. 2004); *see also Serlin*, 3 F.3d at 223–24 (deferring to first-filed action was "wise judicial administration"). So "district courts normally stay or transfer a federal suit" that duplicates an earlier-filed action. *Nicholson*, 2018 WL 3344408, at *4 (citing *GE Bus. Fin. Servs. Inc. v. Spratt*, 2009 WL 1064608, at *2 n.1

(N.D. Ill. Apr. 20, 2009)). Yet, the Seventh Circuit "does not rigidly adhere to a first-to-file rule." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010) (citing *Trippe Mfg.*, 46 F.3d 629). Rather, "[a] district court has 'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation." *Trippe Mfg.*, 46 F.3d at 629 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

### A.    Chronology

At the outset, the Court considers which of the ten other cases were filed before this one. Conceding that *Shields* (W.D. La.) and *Clippinger* (W.D. Tenn.) were filed first by any measure, Plaintiffs argue that the eight other actions—*Wiggins* (D.S.C.), *Chadwick* (E.D. Ark.), *Gulick* (D. Kan.), *Cudd* (M.D. Ga.), *Nichols* (S.D. Ohio), *Varela* (D. Minn.), *Muhammad* (D.N.J.), and *Schmidt* (E.D. Mich.)—were filed after *Munoz* in this District, and so, are not first-filed. (Dkt. 74 at 9–10). Because the parties and claims in *Munoz* and this case overlap, Plaintiffs urge the Court to impute *Munoz*'s filing date to this case. (*Id.* at 9). This argument misses the mark. *Munoz* was dismissed for lack of subject-matter jurisdiction, and that case remains closed. *See* Order, *Munoz*, No. 21-cv-05211, ECF No. 6.

Although Munoz's and Smiling's motion to reopen *Munoz* and consolidate it with this case is pending, unless and until Judge Bucklo grants that motion, *Munoz*'s filing date is irrelevant. *See, e.g.*, *Tech. Licensing Corp. v. Harris Corp.*, 2012 WL 1298611, at *4 (N.D. Ill. Apr. 16, 2012) ("[T]he first-to-file rule involves districts in which related cases are *ongoing*, and there exists a danger of simultaneous rulings in two different venues." (emphasis added)).[14] The similarities

---

[14] Plaintiffs have misplaced their reliance on decisions of other district courts which deemed a case to be "filed," for purposes of first-to-file analysis, upon the filing of an original complaint *in the same case* that failed to establish subject-matter jurisdiction. *See Tongfang Glob. Ltd. v. Element Television Co.*, 2020 WL 12602227, at *4 (C.D. Cal. Apr. 6, 2020); *Hilton v. Apple Inc.*, 2013 WL 5487317, at *4 (N.D. Cal. Oct. 1, 2013).

between *Munoz* and this case are beside the point. Nor does it matter that the original *Munoz* complaint inadvertently failed to plead subject-matter jurisdiction, that State Farm did not oppose the first motion to reopen, or that State Farm earlier conceded that the proposed amended complaint would have cured the original complaint's jurisdictional deficiencies. Thus, *Shields*, *Clippinger*, *Wiggins*, *Chadwick*, *Gulick*, *Cudd*, and *Nichols* were filed before this case.

Plaintiffs are correct, however, that *Varela*, *Muhammad*, and *Schmidt* were filed after this case. Those cases began after Plaintiffs filed the original March 18, 2022 Class Action Complaint but before they filed the February 14, 2023 First Amended Class Action Complaint. Because Plaintiffs from Minnesota, New Jersey, and Michigan did not join this action until the later amended complaint, State Farm contends that the cases filed in those states were earlier filed. In support of this questionable position, State Farm asks the Court to find that the Minnesota, New Jersey, and Michigan Plaintiffs' claims do not relate back to the original complaint, citing Federal Rule of Civil Procedure 15(c)(1)(B). (Dkt. 63 at 4 n.1). Under that Rule, an amendment relates back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

Typically, Rule 15(c)(1)(B) governs the relation back of an amended pleading filed past the statute of limitations to a timely pleading. *See* Fed. R. Civ. P. 15(c) advisory committee's note to 1966 amendment ("Relation back is intimately connected with the policy of the statute of limitations."); 6A Charles Alan Wright et al., Federal Practice and Procedure § 1498 (3d ed. 2023) ("[Rule 15(c)] alters the generally accepted rule that new parties, either plaintiffs or defendants, cannot be added to an action by amendment after the applicable limitations period has expired."). As to whether the relation-back inquiry is useful to determining the chronology of parallel actions,

there is room for disagreement. *See No Cost Conference, Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1306 (S.D. Cal. 2013) (observing, in the absence of binding precedent, that district "courts are split on whether the relation-back doctrine applies in the context of the first-filed rule").

Specifically, where a case becomes duplicative of another case through an amended complaint, some courts have held that the amended complaint sets the case's effective filing date unless it relates back to the original complaint. *Compare, e.g.*, *Halo Elecs., Inc. v. Bel Fuse Inc.*, 2008 WL 1991094, at *2–3 (N.D. Cal. May 5, 2008) (amended complaint's filing date controlled because new claims did not relate back), *and Mann Design Ltd. v. Bounce, Inc.*, 138 F. Supp. 2d 1174, 1178–79 (D. Minn. 2001) (same), *with O2COOL, LLC v. Discovery Commc'ns, LLC*, 2013 WL 157703, at *3 (N.D. Ill. Jan. 15, 2013) ("The factual allegations were the same in both complaints, and therefore the amended complaint relates back, and the California Lawsuit was the first-filed lawsuit."), *and Naula v. Rite Aid of N.Y.*, 2010 WL 2399364, at *1 n.2 (S.D.N.Y. Mar. 23, 2010) (finding an amended complaint—which adds a new defendant but is otherwise "identical to the initial complaint"—"relates back to the filing date of the original complaint for purposes of the first-filed rule").

Other courts have rejected relation-back analysis in this context, especially where the amended complaint merely adds new plaintiffs. *See, e.g.*, *Berry Floor USA, Inc. v. Faus Grp., Inc.*, 2008 WL 4610313, at *4–5 (E.D. Wis. Oct. 15, 2008) ("This court, confronted with conflicting case law on whether it should look to the time it took possession of the case, or the time the non-relating-back amended complaint was filed, finds that the rationale for looking to the time of possession is more logical."); *SMIC, Ams. v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021, 1025 (N.D. Cal. 2020) ("[T]he filing of a complaint triggers the first-filed rule, regardless

of whether the plaintiff later amends the complaint." (quoting *Hilton*, 2012 WL 5487317, at *6)); *McGarry v. Delta Air Lines, Inc.*, 2018 WL 6928799, at *3 & n.29 (N.D. Ga. Nov. 20, 2018) (collecting cases and refusing to apply relation-back analysis where the "amended complaint substituted in new named plaintiffs," and "did not materially change the subject matter of the action").

This Court need not decide whether relation back controls the first-filed chronology inquiry—although it is doubtful. *See Morlan v. Univ. Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002) ("The only significance of relation back is avoidance of the bar of the statute of limitations . . . ."). Either way, this case is earlier filed than *Varela*, *Muhammad*, and *Schmidt*. Of course, if relation back does not apply here, the filing date of the original complaint would govern. And assuming for the sake of argument that relation back applies, Plaintiffs' amended complaint would relate back to the original complaint.

Rule 15(c)(1)(B)'s "central inquiry" focuses on notice—asking "whether the original complaint 'gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one.'" *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018) (quoting *Santamarina v. Sears Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006)). "Even 'significant' changes to a complaint or to a class definition can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." *Id.* (citing *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005)).

Where an amendment changes the defendant, Rule 15(c)(1)(C) imposes additional requirements geared toward ensuring the new defendant's notice of the amended complaint's

claims.[15] The policy of ensuring fair notice "extends by analogy to amendments changing plaintiffs." Fed. R. Civ. P. 15(c) advisory committee's note to 1966 amendment ("The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier."); *see also Paskuly v. Marshall Field & Co.*, 646 F.2d 1210, 1211 (7th Cir. 1981) (holding an amended complaint related back to an original complaint which put the defendant "on notice that it might be required to defend its employment practices from charges of class-based discrimination").

Thus, "[a] plaintiff may usually amend his complaint under Rule 15(c) . . . to substitute or add as plaintiff the real party in interest; or to add additional plaintiffs where the action, as originally brought, was a class action." *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993) (quoting *Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir. 1980)); *see also Phillips v. Ford Motor Co.*, 435 F.3d 785, 787–88 (7th Cir. 2006) ("Unless jurisdiction never attached . . . , substitution for the named plaintiffs [in a class action] is allowed." (citing *Walters v. Edgar*, 163 F.3d 430, 432–33 (7th Cir. 1998))). A new plaintiff's claim relates back to an original complaint "where (1) the new plaintiff's claim arose out of the same conduct, transaction or occurrence set forth in the original complaint; (2) the new plaintiff shares an identity of interest with the original plaintiff; (3) the defendants have fair notice of the new plaintiff's claim; and (4) the addition of the new plaintiff will not cause the defendants prejudice." *Jordan v. Jewel Food Stores, Inc.*, 2015 WL 4978700, at *2 (N.D. Ill. Aug. 20, 2015) (quoting *Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 232 (N.D. Ill. 2002)).

---

[15] Rule 15(c)(1)(C) allows an amendment changing defendants where (1) Rule 15(c)(1)(B) is met; (2) the new defendant received sufficient notice to "not be prejudiced in defending on the merits; and" (3) it "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

Plaintiffs' claims in the amended complaint, no doubt, arise from the same "conduct, transaction, or occurrence" alleged in the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B); *see also, e.g.*, *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 616 (7th Cir. 2020). The amended complaint, like the original complaint, challenges State Farm's use of the typical-negotiation adjustment, asserts the same common-law and statutory causes of action, and proposes an identical class definition. (*Compare* Dkt. 1 ¶¶ 52–53, 62–2023, *with* Dkt. 58 ¶¶ 65–66, 75–637). State Farm does not contest that the new Plaintiffs in the amended complaint share an identity of interest with the original Plaintiffs: they have all alleged similar injuries from State Farm's use of the typical-negotiation adjustment. *See, e.g.*, *Hawkins*, 210 F.R.D. at 232. The original complaint gave State Farm adequate notice of the new Plaintiffs' claims. And the addition of new Plaintiffs has not prejudiced State Farm.

Nonetheless, State Farm argues that the new Plaintiffs' claims in the amended complaint— in particular, those of the Minnesota, New Jersey, and Michigan Plaintiffs—do not relate back to identical claims in the original complaint because none of the original twenty Plaintiffs was a citizen of those states. (Dkt. 63 at 4 n.1). As asserted in the original complaint, State Farm contends, Plaintiffs' "headless claims" under Minnesota, New Jersey, and Michigan law were "a legal nullity." (*Id.*) But State Farm offers no support for its contention that headless class claims are null for purposes of relation back. *Cf. Morlan*, 298 F.3d at 617 (noting that relation back "allows even jurisdictional defects in the original complaint to be cured provided the amended complaint relates back"). Even if the original complaint's claims under Minnesota, New Jersey, and Michigan law were null, the claims of Plaintiffs from those states relate back to the original Plaintiffs' claims under the laws of other states because the underlying facts are the same. Thus,

19

this case is first-filed relative to *Varela*, *Muhammad*, and *Schmidt*—but not the seven other parallel actions.

### B. Substantial Overlap

In determining whether parallel cases are duplicative, district courts have "a great deal of latitude and discretion." *Serlin*, 3 F.3d at 223 (quoting *Ridge Gold*, 572 F. Supp. at 1213). Except for *Shields* and *Clippinger*, Plaintiffs concede that this case and the parallel actions are duplicative. (Dkt. 74 at 1–4 & n.4). Focusing on those cases, *Shields* and *Clippinger* are duplicative too.

#### 1. *Shields*

*Shields*, Plaintiffs argue, "is based on a different legal theory and is brought on behalf of a different class." (Dkt. 74 at 2 n.4, 4). The Court disagrees: "the claims, parties, and available relief do not significantly differ between the two actions." *See Serlin*, 3 F.3d at 223. Similar to this case, *Shields* is a class action against State Farm—although the *Shields* class is already certified. To determine whether the parties to these cases substantially overlap, the Court compares the absent class members in *Shields* to the putative class members here. *See Nicholson*, 2018 WL 3344408, at *5; *Askin v. Quaker Oats Co.*, 2012 WL 517491, at *4 (N.D. Ill. Feb. 15, 2012) (collecting cases). Recall that Plaintiffs here propose a class of insureds "in any state," except California, who "received a first-party total loss valuation and payment on an automobile total loss claim that included a 'typical negotiation' or similar adjustment." (Dkt. 58 ¶ 65 & n.3). The *Shields* Court certified a similar class of Louisiana insureds "who have made a claim for a first party total loss, which State Farm evaluated using Autosource, or a predecessor product, . . . and whose Autosource Base Value was less than the NADA Fully Adjusted Value ('Clean Retail')." *Shields*, 2022 WL 37347, at *7–8 (explaining that NADA is a lawful method of assessing actual cash value under a Louisiana statute). Although the *Shields* plaintiffs' complaint sought to certify a class

20

virtually indistinguishable from the putative class here,[16] the district court modified the class definition to omit putative class members who suffered no economic harm. *Shields*, 2022 WL 37347, at *7–8. That difference is not significant.

Certainly, many insureds would fall into both classes. *See, e.g.*, *Nicholson*, 2018 WL 3344408, at *6 (finding substantial overlap between putative classes including "at least some of the same individuals"). Brown—the Louisiana Plaintiff whose claims State Farm seeks to sever and dismiss, transfer, or stay in favor of *Shields*—received a total-loss payment that was less than the NADA Fully Adjusted Value of her car, which means she is a member of the *Shields* class. (Dkt. 58 ¶ 23; Dkt. 58-3 at 118, 124); *see Shields*, 2022 WL 37347, at *7. Although the similarity of absent class members is typically the focus of the substantial-overlap inquiry, *see Askin*, 2012 WL 517491, at *4, Brown's membership in the *Shields* class reflects substantial overlap between the parties. *See, e.g.*, *Moore v. Morgan Stanley & Co.*, 2007 WL 4354987, at *2 (N.D. Ill. Dec. 6, 2007) (finding putative class actions duplicative where "twelve of the fourteen named plaintiffs [were] members of the proposed class" in the parallel action).

The claims and available relief in this case and *Shields* also substantially overlap. Both complaints allege breach of contract, breach of the covenant of good faith and fair dealing, and statutory violations stemming from State Farm's valuation of total-loss vehicles. *Compare* (Dkt. 58-3 ¶¶ 93–108), *with* Complaint at 8–13, *Shields*, No. 6:19-cv-01359. The claims depend on the same underlying "core factual allegations": State Farm purportedly undervalued total-loss vehicles and underpaid insureds. *See Humphrey v. United Healthcare Servs., Inc.*, 2014 WL 3511498, at *2 (N.D. Ill. July 16, 2014); *see also Nicholson*, 2018 WL 3344408, at *7 (collecting cases).

---

[16] *See* Complaint at 13, *Shields*, No. 6:19-cv-01359 (seeking certification of a class of Louisiana and nationwide "policyholders who have made claims against their policy for the total loss of a vehicle and had those claims valued through the use of the Autosource Market-Driven Valuation Report system and/or other unfair valuation tools used by State Farm").

Specifically, both actions challenge State Farm's use of the typical-negotiation and similar adjustments through Autosource.[17] Although the claims in these two actions are not identical, complete overlap is not necessary. *See, e.g.*, *Humphrey*, 2014 WL 3511498, at *2 ("Claims need not be identical to satisfy the 'same issues' requirement of the first-to-file doctrine." (quoting *Preci-Dip, SA v. Tri-Star Elecs. Int'l, Inc.*, 2008 WL 5142401, at *2 (N.D. Ill. Dec. 4, 2008))). Nor is the available relief significantly different between this case and *Shields*. Both actions, on behalf of a class or putative class, seek damages, interest, and attorneys' fees. *Compare* (Dkt. 58 ¶ 637), *with* Complaint at 15, *Shields*, No. 6:19-cv-01359. Plaintiffs' request for declaratory judgment— the only available relief distinguishing this case from *Shields*—does not present a significant difference. Thus, *Shields* is duplicative.

### 2. *Clippinger*

So is *Clippinger*. While Plaintiffs acknowledge that *Clippinger* "aris[es] out of the same set of facts and alleg[es] the same legal theory" as this case, they attempt to distinguish *Clippinger* as a putative class of Tennessee insureds alleging violations of only Tennessee law. (Dkt. 74 at 1– 2). That is not a meaningful distinction, particularly since the First Amended Class Action complaint here also invokes Tennessee law—at least in the alternative to Illinois law. (*See* Dkt. 58-3 ¶¶ 66–67). Both *Clippinger* and this case are putative class actions with nearly identical proposed class definitions, bringing claims of breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment, challenging the same conduct, and seeking the same relief. *Compare* (Dkt. 58-3 ¶¶ 65–67, 93–108, 144–49), *with* Amended Class Action

---

[17] *Compare* (Dkt. 58-3 ¶¶ 50–56, 65–66 (complaining that State Farm uses Autosource to apply "a deceptive and arbitrary 'typical negotiation' adjustment to the value of the comparable vehicles before determining the total-loss payment")), *with* Complaint at 8, *Shields*, No. 6:19-cv-01359 (complaining that Autosource "applies an 'adjustment' . . . by using comparable vehicles but without knowing or examining [their] condition," and State Farm uses Autosource to "intentionally undervalue total loss vehicles through the use of obscure adjustments which systematically reduce values derived from comparables [sic]").

Complaint at 9, 12–15, *Clippinger*, No. 2:20-cv-02482. Further, Bowden, the Tennessee Plaintiff here, is a member of the *Clippinger* class.

Having resolved the chronology and determined that all ten parallel actions are duplicative, the Court next considers whether any relief is appropriate.

### C.    Motion to Dismiss or Stay

There is no need to dismiss or stay the claims of Brown, Bowden, McConnell, Payne, Benson, Huff, or Robert in favor of the first-filed cases in their home states, *Shields*, *Clippinger*, *Wiggins*, *Chadwick*, *Gulick*, *Cudd*, and *Nichols*. The Court "has broad discretion to dismiss a complaint"—or sever and dismiss parties or claims—in favor of earlier-filed duplicative actions. *See McReynolds*, 694 F.3d at 888; *see also* Fed. R. Civ. P. 21.[18] But dismissal is disfavored. *See Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002) ("Even when prudence calls for putting a redundant suit on hold, it must be stayed rather than dismissed unless there is no possibility of prejudice to the plaintiff."); *Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444–45 (7th Cir. 2000) ("Outright dismissal is most likely to be appropriate when . . . the same party has filed all of the suits." (citing *Serlin*, 3 F.3d 221)); *Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*, 892 F.2d 566, 571 (7th Cir. 1990) (noting that dismissal of a harassing or vexatious second suit is proper). Since dismissal can cause statute-of-limitations problems for Plaintiffs down the road, "why take chances?" *See Asset Allocation*, 892 F.2d at 571.

Deciding whether to stay, "courts balance the competing interests of the parties and the interest of the judicial system." *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill.

---

[18] Rule 21 provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Courts may sever claims which are "discrete and separate"—*i.e.*, where one claim is "capable of resolution despite the outcome of the other claim." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (quoting *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000)).

2011) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). Often, courts consider: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *Norix Grp., Inc. v. Corr. Techs., Inc.*, 542 F. Supp. 3d 824, 830 (N.D. Ill. 2021). Yet, those three factors do not curb the Court's discretion to balance additional considerations. *Kove IO, Inc. v. Amazon Web Servs., Inc.*, 2022 WL 683666, at *2 (N.D. Ill. Mar. 8, 2022) (citing *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016)).

Staying some Plaintiffs' claims could prejudice them. Regardless of a potential piecemeal stay, the remaining Plaintiffs would march on toward class certification and trial. If a duplicative case ends without resolving a stayed Plaintiff's claim, warranting lifting the stay, the resulting inefficiency would be untenable. To the extent any differences between Plaintiffs—such as the terms of their policies, their states of residence, and relatedly, the law governing their claims—impact the scope of discovery, a stayed-and-later-unstayed Plaintiff would need to play catchup. Presumably, stayed Plaintiffs would not become members of the class in this case. So if a stay of individual claims were lifted after class certification in this case, the unstayed Plaintiffs would need to seek modification of the class, or else, forgo resolution of their claims. Either possibility would slow this case down, undermining the efficiency of class-action litigation.

Second, staying select Plaintiffs' claims could only marginally simplify the issues or streamline litigation. Plaintiffs all bring the same claims, raising the same issues. Although different states' laws may govern Plaintiffs' claims, the Court will determine the scope of this action at the class-certification stage. For now, the presence of Plaintiffs from numerous states is not a strong reason to stay some of their claims. Third, the apparent inefficiencies that could result

24

from eventually lifting a stay as to certain Plaintiffs would burden the parties and the Court. Staying individual Plaintiffs' claims risks needlessly complicating this case and wasting resources—dangers which outweigh any efficiency gained by (temporarily) reducing the number of Plaintiffs. Finally, this action has the potential to be broader than the duplicative actions, which could render this a "superior vehicle" for resolving insureds' claims. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999).

As to the duplicative actions filed after this one, the first-filed doctrine, of course, does not apply. In addition to the reasons deferring to the first-filed actions is unwarranted, this action being first in time weighs against dismissing or staying claims in favor of *Varela*, *Muhammad*, or *Schmidt*. Of those three later-filed cases, only *Varela* is farther along than this case—and barely. *See Varela*, 2023 WL 1971753 (granting in part and denying in part State Farm's motion to dismiss), *appeal docketed*, No. 23-1516 (8th Cir. Mar. 17, 2023). In *Muhammad* and *Schmidt*, State Farm's motions to dismiss are pending. *See* Motion to Dismiss Amended Complaint, *Muhammad*, No. 2:22-cv-06149 (D.N.J. Apr. 28, 2023), ECF No. 27; Motion to Dismiss, *Schmidt*, No. 2:22-cv-12926 (E.D. Mich. Mar. 17, 2023), ECF No. 18. State Farm has not shown that deferring to the later-filed actions would reflect "wise judicial administration." *See McReynolds*, 694 F.3d at 888 (quoting *Serlin*, F.3d at 223). Seeing no reason to depart from "the general rule favor[ing] the forum of the first-filed suit," *see Schwarz*, 317 F. Supp. 2d at 832, the Court declines to dismiss or stay the claims of Capers, Grossberg, or Couch.

### D. Motion to Transfer

While the filing order of duplicative actions factors into the transfer analysis, "[t]he statutory language [in 28 U.S.C. § 1404(a)] provides the ultimate touchstone." *Rsch. Automation*, 626 F.3d at 982. "For the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a); *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707 (7th Cir. 2020). The Court may, in its discretion, transfer the case (or part of the case) to another district if: "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Hanover Ins. Co. v. N. Bldg. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012); *see also* Fed. R. Civ. P. 21. The movant, here State Farm, bears the burden of showing "that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). The parties do not dispute the propriety of venue in this District or in the ten other districts. So the Court turns to convenience and the interests of justice.

## 1. Convenience

"In evaluating the convenience of the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017) (quotation omitted); *accord Rsch. Automation*, 626 F.3d at 978.

Plaintiffs' choice of forum deserves deference. Usually, a plaintiff's choice of forum receives "substantial deference." *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, 2015 WL 738694, at *2 (N.D. Ill. Feb. 19, 2015); *see also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("[U]nless the balance is strongly in favor the defendant, the plaintiff's choice of forum should rarely be disturbed." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947))); *Rsch. Automation*, 626 F.3d at 979 ("[A] plaintiff's choice of forum is afforded deference so long as the chosen forum is related to the case."); *Atl. Marine. Constr. Co. v. U.S. Dist. Ct. for W. Dist. of*

*Tex.*, 571 U.S. 49, 63 (2013) (observing that "plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous").

But courts often give less deference to a putative nationwide class representative's choice of forum. *See, e.g.*, *Kahn v. Target Corp.*, 2023 WL 2306940, at *2 (N.D. Ill. Mar. 1, 2023) ("[C]ourts greatly discount the weight given to a plaintiff's choice of forum in putative class actions, particularly when a nationwide class is alleged . . . ."); *Ratliff v. Venture Express, Inc.*, 2019 WL 1125820, at *10 (N.D. Ill. Mar. 12, 2019) (finding deference to the plaintiff's choice of forum "is somewhat diminished" in a putative nationwide class action); *Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant."); *see also* 15 Charles Alan Wright et al., Federal Practice and Procedure § 3848 (4th ed. 2023) ("[W]here the plaintiff seeks to vindicate rights of others the plaintiff's venue preference is weakened."). On the other hand, some courts have found that deference remains appropriate in the class-action context. *See AL & PO*, 2015 WL 738694, at *3 ("[U]nnamed class members benefit from the class representative being able to aggressively litigate without significant inconvenience due to travel."); *Dale v. Deutsche Telekom AG*, 2022 WL 6123365, at *3 (N.D. Ill. Oct. 7, 2022) ("The nationwide class . . . presumably benefits from any lessened burden imposed on their representatives."); *O'Connor v. RealPage Inc.*, 2022 WL 1487374, at *2–3 (N.D. Ill. May 11, 2022) (finding a plaintiff's "potential representation of two largely Illinois-based subclasses" in a putative nationwide class action "weighs against transfer").

Plaintiffs hail from thirty-three jurisdictions including Illinois. And they seek to represent a nationwide class. Naturally, "any venue selection is bound to be inconvenient to some plaintiffs." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009); *accord Obento Unlimited v. qMenu Inc.*, 2021 WL 4264374, at *3 (N.D. Ill. Sept. 20, 2021). Nor is there any indication that

27

the Plaintiffs who State Farm seeks to transfer would play a more active role in this litigation than any other named Plaintiff; so their convenience is not paramount in weighing the choice of forum. *Cf. AL & PO*, 2015 WL 6123365, at \*3. Since State Farm is headquartered in Illinois, however, this forum has an obvious connection to the case, which justifies deferring to Plaintiffs' choice. *Rsch. Automation*, 626 F.3d at 979. Thus, Plaintiffs' freedom to choose an advantageous forum weighs against transfer.

Next, the situs of material events also weighs against transfer—but only slightly. The location of material events underlying an alleged breach of an insurance contract include "where the business decisions leading up to and causing the breach occurred" and "the location of performance or non-performance under the contract." *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, 2009 WL 3055374, at \*4 (N.D. Ill. Sept. 18, 2009) (citations omitted). In putative class actions sounding in fraud, courts pin down the situs of material events by focusing on the defendant's conduct. *See, e.g.*, *Preston v. Am. Honda Motor Co.*, 2017 WL 5001447, at \*3 (N.D. Ill. Nov. 2, 2017) (citing *Jaramillo*, 664 F. Supp. 2d at 914); *Gierwatowski v. Trader Joe's Co.*, 2021 WL 2660760, at \*1 (N.D. Ill. June 29, 2021). The place where the insurance policies were "solicited, negotiated, delivered, and executed" is also relevant to an insurance dispute. *Econ. Preferred Ins. Co. v. Lamb*, 2022 WL 1556115, at \*6 (N.D. Ill May 17, 2022) (quoting *Hartford Cas. Ins. Co. v. Topsail Sportswear, Inc.*, 2010 WL 2757556, at \*2 (N.D. Ill. July 8, 2010)).

Plaintiffs contend that State Farm devised "an enterprise-wide scheme to defraud its insureds" and drafted the underlying insurance policies in Illinois. (Dkt. 74 at 11; Dkt. 58 ¶¶ 61–62). Since State Farm's policy-drafting and decision-making occurred at its Illinois headquarters, Illinois is a situs of material events. Pointing elsewhere, however, is State Farm's assertion that it adjusted and settled Plaintiffs' total-loss claims at its regional offices throughout the country. (Dkt.

28

79 at 6). Likewise, Plaintiffs bought their policies, settled their claims, and received payments in their home states. (*Id.*; Dkt. 63 at 10; Dkt. 58 ¶¶ 13, 17, 21, 23, 25–26, 32, 36, 40–41). These are material events too, which occurred throughout the country. Accordingly, the situs of material events weighs slightly against transfer.

The relative ease of access to sources of proof is not a significant consideration here. *See, e.g.*, *Preston*, 2017 WL 5001447, at *4 (noting that "[t]he location of records typically has little impact on the transfer analysis" (citing *AL & PO*, 2015 WL 738694, at *3)). The documentary evidence, in Illinois and elsewhere, is easy to transfer. *See, e.g.*, *Bull v. Ill. Union Ins. Co.*, 2017 WL 3234374, at *5 (N.D. Ill. July 31, 2017). So this factor is a wash.

Finally, the witnesses' and parties' convenience is neutral too. Courts give more weight to the convenience of non-party witnesses than to the defendant's employee witnesses, who tend to appear voluntarily. *E.g.*, *AL & PO*, 2015 WL 738694, at *4; *Kahn*, 2023 WL 2306940, at *3. The parties agree that there are unspecified witnesses in Illinois—presumably all State Farm employees. (Dkt. 74 at 11; Dkt. 79 at 6). Although Audatex, a likely third-party witness, is based in Texas, that does not favor transfer to any of the ten transferee forums (none of which are Texas). More importantly, a transfer would not be more or less convenient to Audatex or any other witnesses because this action will proceed regardless. For the same reason, transferring some Plaintiffs' claims would not convenience State Farm: either way, it will be litigating in eleven forums. Although the ten Plaintiffs could benefit from litigating in their home states, their convenience is not a significant consideration because they are likely replaceable in their roles as class representatives. *See, e.g.*, *Dale*, 2022 WL 6123365, at *5.

On balance, the convenience factors weigh against transfer.

## 2. Interests of Justice

The interests of justice, nonetheless, require transferring six of the ten Plaintiffs' claims. *See Coffey*, 796 F.2d at 220 (explaining that the interests of justice "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result"). Specifically, the Court transfers: (1) Brown's claims to the Western District of Louisiana; (2) Bowden's claims to the Western District of Tennessee; (3) Payne's claims to the District of South Carolina; (4) McConnell's claims to the Eastern District of Arkansas; (5) Huff's claims to the Southern District of Georgia; and (6) Robert's claims to the Southern District of Ohio. The remaining Plaintiffs' claims will stay put for now.

The interests of justice include "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citing *Coffey*, 796 F.2d at 221). In weighing the interests of justice, the Court does not consider the merits of the underlying claims. *Coffey*, 796 F.2d at 221. Instead, the Court focuses on the public's interest in conserving scarce judicial resources by "efficient administration of the court system." *Id.* "[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960)); *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *10 (N.D. Ill. Mar. 18, 2013).

With eleven pending duplicative actions at various stages, waste of time and effort appears inevitable: this Court and ten other district courts will preside over motion practice and discovery, and ultimately, resolve overlapping claims based on similar facts. Yet, transferring some Plaintiffs'

claims will not solve that problem. Transfer or not, this case will go on. Neither does familiarity with applicable law weigh heavily here. True, the ten other district courts are more familiar with the laws of their forum states. But federal courts are well-versed in applying other states' laws. *See De Falco*, 2013 WL 1122825, at \*11 n.10 (citing *Miller v. SKF USA, Inc.*, 2010 WL 5463809, at \*3 (N.D. Ill. Dec. 29, 2010)).

Nonetheless, *Shields*, *Clippinger*, *Wiggins*, *Chadwick*, *Cudd*, and *Nichols* are too far advanced to justify retaining jurisdiction over the claims of Brown, Bowden, Payne, McConnell, Huff, and Robert—whose interests will be represented in those duplicative actions. Beyond increasing the likelihood of speedier trials for those six Plaintiffs, transferring their claims will avoid an immediate danger of inconsistent rulings. The *Shields* court already certified a class, of which Brown is a member. *Shields*, 2022 WL 37347, *appeal pending* 22-30126 (5th Cir. Mar. 14, 2023). There is no need for her to represent a class in this case while a competing class grows closer to achieving the same relief on her behalf. And in *Chadwick*, the district court denied State Farm's motion to dismiss for failure to state a claim in July 2022. *Chadwick*, 2022 WL 18779022. McConnell is a member of that putative class, which will likely reach the certification stage before this one.

In *Clippinger* and *Wiggins*, the district courts denied State Farm's motions to dismiss or for summary judgment while compelling those plaintiffs to submit to appraisal. *Clippinger*, 2021 WL 4887984; *Wiggins*, 2022 WL 2276556. Bowden and Payne respectively, are members of those putative classes—both of which are also closer to certification than this one. In *Cudd*, the district court dismissed the complaint without prejudice because of the plaintiff's failure to comply with his policy's appraisal clause. *Cudd*, 2022 WL 16541166, *appeal docketed*, No. 22-13916 (11th Cir. Nov. 23, 2022). Conversely, the *Nichols* court denied State Farm's motion to dismiss

31

and refused to compel appraisal. *Nichols*, 2022 WL 6671695. *Nichols* (applying Ohio law) is out of step with the three other decisions. Meanwhile, *Cudd* (Georgia law) parted ways with *Clippinger* (Tennessee law) and *Wiggins* (South Carolina law) by dismissing the complaint, although all three district courts enforced the arbitration clause. Of course, since *Cudd* is pending appeal, the Eleventh Circuit could reach a different conclusion.

In short, if Bowden, Payne, Huff, and Robert remain in this action, this Court's ruling on State Farm's motion to compel appraisal could easily be inconsistent with a parallel court's ruling. At best, this Court would waste time and effort redoing the work of other courts. At worst— considering the laws of these Plaintiffs' home states might control[19]—there could be conflicting interpretations of the appraisal clause under Ohio, Georgia, Tennessee, or South Carolina law. The danger of inconsistent rulings would become more severe if this Court and any parallel courts were to certify overlapping classes.

As to *Gulick*, *Varela*, *Muhammad*, and *Schmidt*, the interests of justice do not overcome the weight of the convenience factors against transfer. *Varela*, *Muhammad*, and *Schmidt* began after this case. *Gulick* began only a few months before this case, and the Court "does not rigidly adhere to a first-to-file rule." *See Rsch. Automation*, 626 F.3d at 980. *Muhammad*, *Schmidt*, and *Gulick* are all moving behind this case. Although the *Varela* court ruled on State Farm's motion to dismiss four months ago, that action is not significantly ahead of this one. *Varela*, 2023 WL 1971753. Since *Varela*'s dismissal of certain claims did not interpret an appraisal clause, the dangers of duplicating effort and reaching inconsistent rulings are, for now, less pressing.

---

[19] Plaintiffs' policies include choice-of-law clauses pointing to their home states. (Dkt. 58-1 at 282, 405; Dkt. 68-3 at 11; Dkt. 68-13 at 13). In Illinois, forum law applies "unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (citation omitted). Yet, in the event of a conflict, "Illinois courts usually enforce contractual choice-of-law provisions." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018) (citation omitted).

Thus, State Farm's motion to transfer is granted in part. Pursuant to Rule 21, the Court severs the claims of Plaintiffs Brown, Bowden, Payne, McConnell, Huff, and Robert. Under 28 U.S.C. § 1404(a), the Court transfers: (1) Brown's claims to the Western District of Louisiana; (2) Bowden's claims to the Western District of Tennessee; (3) Payne's claims to the District of South Carolina; (4) McConnell's claims to the Eastern District of Arkansas; (5) Huff's claims to the Southern District of Georgia; and (6) Robert's claims to the Southern District of Ohio. State Farm's motion to transfer is denied as to Benson, Couch, Capers, and Grossberg.

## II.  Motion to Compel Appraisal, Dismiss, or Grant Summary Judgment

The Court next considers State Farm's motion to compel appraisal, dismiss, or grant summary judgment as to Lewis (Florida), Cervantes-White (Hawaii), Munoz (Illinois), Snyder (Maryland), Couch (Michigan), Dean (Mississippi), Dacheff (Missouri), Newkirk (New York), Smiling (North Carolina), and Dewsnup (Utah).[20]

### A.  Enforceability and Scope of Appraisal Clause

Federal courts sitting in diversity interpret insurance policies under state law. *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). In deciding which state's law to apply, courts "look to the choice-of-law rules of the forum state"—here, Illinois. *Paulsen v. Abbot Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022) (quoting *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021)). Illinois choice-of-law principles dictate that forum law applies "unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Id.* (quoting *Gunn*, 968 F.3d at 808)). "A choice-of-law determination is required only when a difference in law will make a difference in the outcome" *Sosa*, 8 F.4th at 637 (quoting *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014)).

---

[20] With respect to Huff, Robert, Payne, and Bowden, the motion is moot because their claims are severed and transferred.

This is true even where even where a party relies on a contractual choice-of-law provision, as State Farm does here. (Dkt. 66 at 5; Dkt. 77 at 4 & n.5); *see Sosa*, 8 F.4th at 637–38; *Dancor Constr., Inc. v. FXR Constr., Inc.*, 64 N.E.3d 796, 812–13 (Ill. App. Ct. 2016); *Hartford v. Burns Int'l Sec. Servs., Inc.*, 526 N.E.2d 463, 464 (Ill. App. Ct. 1988). As "[t]he party seeking the choice-of-law determination," State Farm bears the burden of demonstrating a conflict." *Sosa*, 8 F.4th at 637 (quoting *Bridgeview*, 10 N.E.3d at 905).

The choice-of-law clauses in Plaintiffs' policies point to the laws of their respective home states. Illinois courts honor contractual choice-of-law clauses unless doing so would contradict the public policy of the chosen state or another state with a "materially greater interest in the dispute. *Hendricks v. Novae Corp. Underwriting, Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017) (citing *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000), and quoting *Int'l Surplus Lines Ins. Co v. Pioneer Life Ins. Co. of Ill.*, 568 N.E.2d 9, 14 (Ill. App. Ct. 1990)); *see also Fulcrum*, 230 F.3d at 1011 ("Illinois respects the contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." (citations omitted)). No public-policy contradictions require ignoring the choice-of-law clauses. Nonetheless, because State Farm has not demonstrated any actual conflict between the laws of Illinois and the nine other states, Illinois law applies.

Variations among Plaintiffs' home states' laws do not affect the outcome. In all ten Plaintiffs' home states, appraisal clauses are enforceable.[21] Many of these states favor appraisal.[22] Missouri, and Utah, by contrast, are on the appraisal-averse end of the spectrum.[23] But even in the most appraisal-averse states, courts compel appraisal where: (1) the appraisal clause's language is unambiguous, and (2) the dispute falls within the clause's scope.[24] In states favoring and

---

[21] *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins. Co.*, 2016 WL 9526569, at *2 (M.D. Fla. July 29, 2016) (citing *Fla. Ins. Guar. Ass'n., Inc. v. Castilla*, 18 So. 3d 703, 704 (Fla. Dist. Ct. App. 2009), among other state-court decisions); *Mauna Kea Hotel Corp. v. Affiliated FM Ins. Co.*, 2008 WL 11345955, at *2 (D. Haw. Mar. 7, 2008) (citing *Christiansen v. First Ins. Co. of Haw., Ltd.*, 967 P.2d 639, 649 (Haw. Ct. App. 1998), *aff'd in part and rev'd in part on other grounds*, 963 P.2d 345 (Haw. 1998)); *Lundy v. Farmers Grp., Inc.*, 750 N.E.2d 314, 318 (Ill. App. Ct. 2001); *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 445 A.2d 14, 21 (Md. 1982); *UrbCamCom/WSU I, LLC v. Lexington Ins. Co.*, 2014 WL 1652201, at *3–4 (E.D. Mich. Apr. 23, 2014); *City of Laurel v. ARGO GRP. US*, 2009 WL 11220, at *2 (S.D. Miss. Jan. 14, 2009) (citing cases including *Hartford Fire Ins. Co. v. Conner*, 79 So. 2d 236 (Miss. 1955)); *CNS Corp. v. Glob. Aerospace, Inc.*, 2010 WL 2978063, at *5 (E.D. Mo. July 30, 2010) (citing cases including *Dworkin v. Caledonian Ins. Co.*, 226 S.W. 846 (Mo. 1920)); *Quick Response Comm. Div. v. Cincinnati Ins. Co.*, 2015 WL 5306093, at *2–3 (N.D.N.Y. Sept. 10, 2015) (citing *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 199 (2d Cir. 2012)); *New Bern Golf & Country Club, Inc. v. Underwriters at Lloyd's London*, 2020 WL 1958631, at *2 (E.D.N.C. Apr. 23, 2020) (citing *Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558, 562 (N.C. 2000)); *Miller v. USAA Cas. Ins. Co.*, 44 P.3d 663, 675 (Utah 2002).

[22] *See, e.g.*, *Lundy*, 750 N.E.2d at 319 (observing Illinois law disfavors waiver of an appraisal right "because of the public policy preference for conserving judicial resources through arbitration or appraisal"); *Mauna Kea*, 2008 WL 11345955, at *2–3 (explaining that Hawaii law construes binding appraisal clauses as arbitration agreements, covered by the Federal Arbitration Act (FAA), and requires "due regard" for "the federal policy favoring arbitration" (citing *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 904 F. Supp. 1142, 1148–49 (D. Haw. 1995), and quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989))); *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 445 A.2d at 420 (observing Maryland legislative policy favoring appraisal agreements); *UrbCamCom*, 2014 WL 1652201, at *3 ("When the amount of loss is in dispute, the appraisal process is preferred over judicial determination because it is 'a simple and inexpensive method for the prompt adjustment of settlement claims.'" (quoting *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 486 (Mich. Ct. App. 1991))); *ARGO*, 2009 WL 112220, at *2 ("Mississippi law favors amicable settlements of *controversies without court involvement*." (quoting *Mitchell v. Aetna Cas. & Sur. Co.*, 579 F.2d 342, 350 (5th Cir. 1978))); *Amerex Grp.*, 678 F.3d at 199 ("New York public policy favors an appraisal proceeding over a trial on damages." (quotation omitted).

[23] *See CNS*, 2010 WL 2978063, at *5 (explaining that arbitration clauses are unenforceable under Missouri law, including arbitration clauses "in disguise" as appraisal clauses); *Miller*, 44 P.3d at 674 ("[Utah] policy is to resolve doubts in favor of permitting parties to have their day in court on the merits of a controversy." (quoting *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 657 P.2d 1293, 1296 (Utah 1982) (cleaned up))); *see also Wexler v. Chubb Nat'l Ins. Co.*, 2022 WL 888944, at *6 (N.D. Ill. Mar. 25, 2022) ("[Illinois] common law placed great importance upon the individual's right to seek redress in court . . . ." (quoting *DeGroot v. Farmers Mut. Hail Ins. Co. of Iowa*, 643 N.E.2d 875, 876 (Ill. App. Ct. 1994))).

[24] *E.g.*, *70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*, 2016 WL 6582583, at *4 (N.D. Ill. Nov. 7, 2016) (citing *Travis v. Am. Mfrs. Mut. Ins. Co.*, 782 N.E.2d 322, 325–26 (Ill. App. Ct. 2002)); *see also Wright Way*, 2016 WL 9526569, at *2 ("[M]otions to compel arbitration should be granted whenever the parties have agreed to the provision." (citing *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1102 (Fla. Dist. Ct. App. 1994))); *Mauna Kea*, 2008 WL 11345955, at *2–3 (explaining that compelling appraisal is proper where the appraisal clause is binding and covers the dispute); *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 445 A.2d at 19–20 (requiring compelling appraisal according to the appraisal clause's plain meaning); *UrbCamCom*, 2014 WL 1652201, at *3–4 (compelling appraisal is appropriate subject to the clause's scope); *ARGO*, 2009 WL 112220, at *2 ("It is the duty of both parties to an insurance contract which provides for a submission to an appraisal of the question of the amount of loss or damages, to act in good faith

disfavoring appraisal, courts routinely refuse to compel appraisal of disputes over causation or insurance-policy coverage.[25] General policy differences aside, the Court perceives no actual conflict between the laws of Illinois and any of the other home states.

Here, the appraisal clause is clear as day. The insured and State Farm "*must* agree upon the actual cash value," and upon the insured's or State Farm's written request, any "disagreement as to the actual cash value . . . *will* be resolved by appraisal." (*E.g.*, Dkt. 58-1 at 12 (emphasis added)). "A written appraisal . . . *will be binding*" on the insured and State Farm. (*Id.* (emphasis added)). Underscoring the mandatory effect of the appraisal clause, the insured's compliance with a proper appraisal demand is a prerequisite to seeking relief in court. (*See* Dkt. 58-1 at 15 ("Legal action may not be brought against us until there has been full compliance with *all* the provisions of the policy." (emphasis added)). Plaintiffs thus agreed to resolve actual-cash-value disputes through binding appraisal at State Farm's request before suing in court. That agreement is mandatory and enforceable—at least to the extent Plaintiffs dispute the actual cash values of their vehicles.

---

and to make a fair effort to carry out such an agreement and accomplish its object." (citing *Conner*, 79 So. 2d at 239)); *Cincinnati Ins. Co. v. Saint Louis Produce Markets, Inc.*, 2020 WL 5848075, at *2–3 (E.D. Mo. Oct. 1, 2020) (compelling appraisal is only proper when the dispute is within the appraisal clause's scope—and not to determine a policy's coverage); *Quick Response*, 2015 WL 5306093, at *3–4 (courts must compel appraisal as to a dispute within the appraisal clause's scope (citing *Zarour v. Pac. Indem. Co.*, 2015 WL 4385758, at *3 (S.D.N.Y. July 6, 2015), and *Amerex. Grp.*, 678 F.3d at 206)); *Church Mut. Ins. Co. v. Murfreesboro United Methodist Church*, 2022 WL 3974186, at *2–3 (E.D.N.C. Aug. 31, 2022) (courts must enforce appraisal clauses according to their terms, but appraisers cannot resolve causation or coverage issues (citations omitted)); *Miller*, 44 P.3d at 676–77 (compelling appraisal is proper where the appraisal clause is unambiguous and to the extent the claims fall within the clause's scope).

[25] *See, e.g.*, *Amerex Grp.*, 678 F.3d at 205 (under New York law, "an appraiser may not resolve coverage disputes or legal questions regarding the interpretation of the policy"); *New Bern*, 2020 WL 1958631, at *3–4 ("North Carolina law does not empower appraisers to make causation or coverage determinations." (quotation omitted)); *Olga Despotis Tr. v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1060 (8th Cir. 2017) ("[A]ppraisal provisions in an insurance policy apply only if the dispute between the parties relates to the amount of the loss and not coverage." (quoting *Am. Fam. Mut., Ins. Co. v. Dixon*, 450 S.W.3d 831, 836 (Mo. Ct. App. 2014))); *Saint Louis*, 2020 WL 5848075, at *2–3 (under Missouri law, a court cannot compel appraisal of a coverage dispute, nor a valuation dispute which is "incidental to the actual underlying legal controversy . . . as to the meaning of the insurance contract and its application to the facts." (quoting *Hawkinson Tread Tire Serv. Co. v. Ind. Lumbermens Mut. Ins. Co. of Indianapolis, Ind.*, 245 S.W.2d 24, 28 (Mo. 1951))); *see also Travis*, 782 N.E.2d at 325 ("[W]here the parties' dispute does not fall within the scope of [the appraisal] agreement, the trial court may not compel it." (citing *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 692 N.E.2d 1167, 1172 (Ill. 1998))).

Certainly, State Farm's valuation of Plaintiffs' vehicles is relevant to their claims. In their claims for breach of contract, breach of good faith and fair dealing, and declaratory judgment, Plaintiffs allege that State Farm failed to pay actual cash value. (*Id.* at ¶¶ 98–99, 107, 147). But Plaintiffs' claims involve "much more than a dispute over the actual cash value[s] of [their] vehicle[s]." *Travis*, 782 N.E.2d at 326; *accord Hanke v. Am. Int'l S. Ins. Co.*, 782 N.E.2d 328, 332 (Ill. App. Ct. 2002).

Under similar circumstances, the Illinois Appellate Court refused to compel appraisal in *Travis v. American Manufacturers Mutual Insurance Co.*, 782 N.E.2d 322, and *Hanke v. American International South Insurance Co.*, 782 N.E.2d 328. Both cases interpreted appraisal clauses like the one here, providing: "If we and you do not agree on the amount of loss, either may demand an appraisal of the loss." *Travis*, 782 N.E.2d at 326; *Hanke*, 782 N.E.2d at 330; *see also* (Dkt. 58-1 at 12 ("If there is disagreement as to the actual cash value of the covered vehicle, then the disagreement will be resolved by appraisal upon written request of the owner or us . . . .")). The insured plaintiffs alleged the defendant insurers "engaged in . . . fraudulent scheme[s] to undervalue insureds' vehicles that are declared a total loss, in order to increase [their] own profits." *Travis*, 782 N.E.2d at 327; *Hanke*, 782 N.E.2d at 332. Their claims focused on whether the insurers breached the insurance policies through their fraud. *Travis*, 782 N.E.2d at 327; *Hanke*, 782 N.E.2d at 332. The insureds in *Travis* and *Hanke* further alleged that the insurers used the appraisal clauses as part of their fraudulent schemes: since "the disputed amount [was] virtually always worth less than the cost of pursuing an appraisal," the appraisal clauses prevented the insureds "from effectively vindicating their statutory and common law causes of action." *Travis*, 782 N.E.2d at 327; *Hanke*, 782 N.E.2d at 332.

These allegations, the Appellate Court ruled, presented "much more than a disagreement . . . concerning the actual cash value of the vehicle[s]." *Travis*, 782 N.E.2d at 327; *Hanke*, 782 N.E.2d at 332 (emphasizing that compelling appraisal would force the insured "to go through the allegedly fraudulent appraisal process, expending more money than he could ever hope to recover, in order to file any complaint alleging fraud in that very same process"); *see also Lundy*, 750 N.E.2d at 319 (interpreting a similar appraisal clause, rejecting the insurer's argument "that the amount of loss [was] a threshold issue," and explaining that "a determination of whether [the insurer] misrepresented to its policyholders the quality of repair parts that [it] would pay for under its policies" required interpreting the policy language, which appraisal could not resolve).

*Travis* and *Hanke* are instructive here. Plaintiffs allege State Farm's use of the typical-negotiation adjustment "systematically undervalues total-loss vehicles." (Dkt. 58 ¶ 1). State Farm's purported fraudulent scheme is central to Plaintiffs' statutory and common-law fraud claims. (*See id.* at ¶¶ 81–92, 113–28, 131–34, 264–74, 282–92, 353–62, 456–66, 473–83). Plaintiffs allege State Farm deceived insureds by failing to disclose its use of the typical-negotiation adjustment. Likewise, as to Plaintiffs' unjust-enrichment claims—alleging State Farm concealed its application of the typical-negotiation adjustment to "reduce its total-loss payments to insureds"—the concealment allegation raises more than an actual-cash-value dispute. (*See id.* at ¶ 141). The appraisal clause itself, Plaintiffs assert, is "[a]n integral part of [State Farm's] fraudulent scheme" because the costs of appraisal pressure insureds to accept underpayment and prevent them from "vindicating their statutory and common law rights." (*Id.* at ¶¶ 6, 57). Although Plaintiffs allege their actual "damages include the amounts improperly deducted by [State Farm] from their payments to insureds" using the typical-negotiation adjustment, (*Id.* at ¶ 108), Plaintiffs also seek statutory and punitive damages based on the alleged fraud and statutory violations. (*Id.*

38

at ¶ 637). Plaintiffs' allegations therefore raise issues far beyond a dispute over actual cash value. *See Travis*, 782 N.E.2d at 327.

State Farm's arguments against *Travis* and *Hanke* are unpersuasive. State Farm relies on *Kinkel v. Cingular Wireless, LLC*, which compelled arbitration under a cellphone-service contract. 828 N.E.2d 812, 815–18 (Ill. App. Ct. 2005). Distinguishing *Travis* and *Hanke*, the Illinois Appellate Court noted, the allegation "that the appraisal clause was part of a fraudulent scheme" was not "central to our holding." *Id.* at 816. Rather, key to the *Travis* and *Hanke* decisions was "that the issues could not be resolved through the appraisal process." *Id.* (citing *Hanke*, 782 N.E.2d at 332, and *Travis*, 782 N.E.2d at 327). The arbitration clause in *Kinkel*, by contrast, was "clearly broader": it applied to "any and all disputes" under the contract. *Id.* at 817. Arbitrators, unlike appraisers, can decide "the same types of questions courts regularly decide." *Id.* (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003), and *Lundy*, 750 N.E.2d at 319). Of course, this case is much closer to *Travis* and *Hanke* than *Kinkel*. State Farm's appraisal clause does not give the appraiser power to answer questions this Court could—including whether State Farm engaged in fraud by applying the typical-negotiation adjustment and failing to disclose that practice to insureds.

Most of State Farm's remaining citations are to decisions compelling appraisal under the laws of states other than Plaintiffs' home states.[26] Those decisions in parallel actions against State Farm—*Cudd*, *Wiggins*, and *Clippinger*—are distinguishable: none challenged State Farm's use of

---

[26] (Dkt. 66 at 6–7; Dkt. 77 at 3 n.4); *see Cudd*, 2022 WL 1654116, at *2 (Georgia law); *Wiggins*, 2022 WL 2276556, at *3 (South Carolina law); *Clippinger*, 2021 WL 4887984, at *4 (Tennessee law); *Urbassik v. Am. Fam. Mut. Ins. Co.*, 2023 WL 2185973, at *4 (N.D. Ohio Feb. 23, 2023) (Ohio law); *Enger v. Allstate Ins. Co.*, 407 F. App'x 191, 193 (9th Cir. 2010) (California law); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2620900, at *6 (N.D. Cal. June 30, 2008) (California law); *Phillips v. Garrison Prop. & Cas.*, 2020 WL 3118415, at *10, 20 (N.D. Ala. May 12, 2020) (applying Alabama law and disagreeing with *Travis* and *Hanke*); *Moore v. Travelers*, 321 F. App'x 911, 913 (11th Cir. 2009) (Alabama law); *Cuadros v. State Farm Fire & Cas. Co.*, 2014 WL 7338945, at *3–4 (D. Nev. Dec. 23, 2014) (Nevada law).

the typical-negotiation adjustment as a fraudulent scheme.[27] Only *Garner* (California law) and *Cuadros* (Nevada law) appear at odds with Illinois law.[28] Any conflicts between the laws of Illinois and states other than Plaintiffs' home states are immaterial. Similarly unconvincing are State Farm's citations to two Florida district-court decisions compelling appraisal.[29] These decisions under Florida law do not reflect an actual conflict with Illinois law.

State Farm argues further that *Travis* and *Hanke* do not apply because Plaintiffs' policies make appraisal a precondition of filing suit. (Dkt. 77 at 5 & n.6). This argument fails too. Nothing in *Travis* or *Hanke* suggests that the result hinged on the absence of precondition language in the policies. What mattered in those cases, as here, is that the disputes were beyond the scope of appraisal. Since Plaintiffs' claims fall outside the appraisal clause, their refusal to submit to appraisal is not a failure of compliance with their policies. Thus, appraisal is not a prerequisite to bringing the claims in this lawsuit.

---

[27] *See Cudd*, 2022 WL 1654116, at *4 (plaintiff "only alleges two independent substantive claims: one for breach of the insurance contract, and another for unjust enrichment . . . . He has alleged no cause of action for fraud"); *Wiggins*, 2022 WL 2276556, at *1 (breach of contract and declaratory judgment); *Clippinger*, 2021 WL 4887984, at *1 (breach of contract, breach of covenant of good faith and fair dealing, and declaratory judgment); *Urbassik*, 2023 WL 2185973, at *1 (breach of contract, breach of covenant of good faith and fair dealing, and declaratory judgment); *Enger*, 407 F. App'x at 193 (breach of contract, breach of covenant of good faith and fair dealing, and violation of California statute); *Phillips*, 2020 WL 3118415, at *20 (distinguishing *Travis* and *Hanke* based on the absence of fraud claims); *Moore*, 321 F. App'x at 912 (breach of contract); *see also Garner*, 2008 WL 2620900, at *3 (breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, and violation of California statute).

[28] The *Garner* court observed the presence of issues exceeding the scope of appraisal but distinguished *Travis* and *Hanke* based on California's more "favorable treatment of appraisal provisions." *Garner*, 2008 WL 2620900, at *6–8. *Cuadros* compelled appraisal despite the plaintiff's claims of deceptive trade practices, fraudulent misrepresentation, and negligence in addition to contract-based claims. *Cuadros*, 2014 WL 7338945, at *1.

[29] (*See* Dkt. 77 at 3 n.4); *Bettor v. Esurance Prop. & Cas. Ins. Co.*, 2019 WL 2245564 (S.D. Fla. Mar. 28, 2019), *report and recommendation adopted*, No. 18-cv-61860 (S.D. Fla. June 17, 2019), ECF No. 42; *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, 2019 WL 2245475 (S.D. Fla. Mar. 15, 2019), *report and recommendation adopted in part*, 2019 WL 5209015 (S.D. Fla. Aug. 6, 2019). Both cases raised only contract-based claims disputing actual cash value. *See Bettor*, 2019 WL 2245564; *Bloomgarden*, 2019 WL 2245475.

In sum, Plaintiffs' claims go far beyond a dispute over actual cash value. The appraisal clause does not apply. State Farm's motion to compel appraisal is denied. For the same reason, State Farm's alternative motions to dismiss or for summary judgment are denied.[30]

## III.   Motion to Dismiss "Headless" Claims

Finally, State Farm moves to dismiss Plaintiffs' claims under the laws of states where no named Plaintiff is a citizen. Courts in this District have divided in response to similar motions, which usually take the form of Article III standing challenges. *See Shirley v. Reynolds Consumer Prods., LLC*, 2022 WL 13831598, at *3 (N.D. Ill. Oct. 21, 2022) (collecting cases and deferring until class certification the argument that the plaintiff lacked standing to bring claims under laws of states in which he alleged no injury); *McDonnell v. Nature's Way Prods., LLC*, 2017 WL 1149336, at *5 (N.D. Ill Mar. 28, 2017) (same). Rather than Article III, State Farm invokes Rules 12(b)(6) and 17(a). (Dkt. 70 at 4; Dkt. 80 at 2). But Rule 23 is more pertinent: State Farm is attacking Plaintiffs' adequacy to represent unnamed class members from other states. *See In re Herbal Supplements Marketing & Sales Pracs. Litig.*, 2017 WL 2215025, at *6 (N.D. Ill. May 19, 2017) (citing *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. June 5, 2015)); *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 759 (N.D. Ill. 2019); *see also* Fed. R. Civ. P. 23(a)(4). This argument should wait until class certification.

Under Rule 17(a), "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The Rule codifies a "non-constitutional limitation on standing"— specifically, "the principle that the named plaintiff cannot sue in federal court to assert the rights of a third party." *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010) (citing *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008)). Where a case lacks a proper plaintiff, Rule 17

---

[30] The Court does not reach Plaintiffs' argument on unconscionability. (Dkt. 71 at 8–12).

contemplates dismissal of the entire action after "a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." *RK*, 622 F.3d at 850 (quoting Fed. R. Civ. P. 17(a)(3)). In the class-action context, Rule 23's adequacy-of-representation requirement ensures that named plaintiffs are suitable representatives of absent class members' claims. *See* Fed. R. Civ. P. 23(a)(4). Tellingly, State Farm cites no case law suggesting that Rule 17 imposes an additional obstacle for named plaintiffs to overcome before class certification. *Cf. Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020) ("[N]othing in the Rules frowns on nationwide class actions . . . .").

Class-certification issues, which "themselves pertain to statutory standing," are "'logically antecedent' to Article III concerns." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92 (1998)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997). Whether framed as a challenge under Rule 17 or a problem of Article III, prudential, or statutory standing, Plaintiffs' ability to represent insureds from other states arises from their pursuit of class relief—otherwise, the "issue would not exist." *McDonnell*, 2017 WL 1149336, at *5 (quotation omitted). Class certification "changes the standing aspects of a suit, because a properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff." *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (cleaned up). Thus, Plaintiffs' capacity to represent a nationwide class will come to the forefront at the certification stage: "once a class is properly certified," the Court will evaluate State Farm's concerns "with reference to the class as a whole, not simply with reference to the individual named plaintiffs." *Id.* at 680. If Article III standing can wait until class certification, so can State Farm's Rule 17 challenge.

*Morrison v. YTB International, Inc.*, dealt with similar issues, and it supports deferring resolution of State Farm's argument. 649 F.3d 533 (7th Cir. 2011). In a putative nationwide class action under the ICFA, the defendant in *Morrison* moved to dismiss the claims of non-Illinois class members under Rule 12(b)(6), arguing the ICFA did not apply outside Illinois. *Id.* at 535. The district court dismissed the non-Illinois plaintiffs for lack of "standing." *Id.* The Seventh Circuit reversed. Standing was no problem because "[p]laintiffs have standing if they have been injured, the defendants cause that injury, and the injury can be redressed by a judicial decision." *Id.* at 536 (citing *Steel Co.*, 523 U.S. at 102–04).

> If the [ICFA] does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing*, though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be.

*Id.* at 536 (citing *In re Bridgestone/Firestone, Inc., Tires Prods. Liability Litig.*, 288 F.3d 1012, and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). The *Morrison* Court went on to reason that the choice-of-law question—whether Illinois law applied to out-of-state plaintiffs—did not lend itself to resolution under Rule 12(b)(6). *Id.* at 536–38. Because "the complaint [did] not *defeat* application of Illinois law," dismissal was improper. *Id.* at 538. Surviving a Rule 12(b)(6) motion, of course, requires no more than "narrat[ing] a plausible claim for relief." *Id.* (citing *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662).

Here, as in *Morrison*, Plaintiffs have demonstrated Article III standing and plausibly alleged their entitlement to relief. The statutory-standing and choice-of-law issues implicit in State Farm's challenge are best resolved at the class-certification stage. Accordingly, the motion to dismiss "headless" claims is denied.

43

**<u>CONCLUSION</u>**

For the reasons above, the Court rules on State Farm's three motions as follows. State Farm's Renewed Motion to Dismiss, Transfer, or Stay [62] is granted in part. Pursuant to Federal Rule of Civil Procedure 21, the Court severs the claims of Plaintiffs Brown, Bowden, Payne, McConnell, Huff, and Robert. Under 28 U.S.C. § 1404(a), the Court transfers: (1) Brown's claims to the Western District of Louisiana; (2) Bowden's claims to the Western District of Tennessee; (3) Payne's claims to the District of South Carolina; (4) McConnell's claims to the Eastern District of Arkansas; (5) Huff's claims to the Southern District of Georgia; and (6) Robert's claims to the Southern District of Ohio. State Farm's Renewed Motion to Dismiss, Transfer, or Stay [62] is otherwise denied. Second, State Farm's Renewed Motion to Compel Appraisal, or, in the Alternative, Dismiss or Grant Summary Judgment [65] is denied. Third, State Farm's Renewed Motion to Dismiss "Headless" Claims [69] is denied.

Virginia M. Kendall
United States District Judge

Date: June 21, 2023

44