THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNADETTE WILLIAMS, et al., on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> *Defendant*. | No. 22 C 1422 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are twenty-seven insureds from twenty-six states who totaled their vehicles and then made claims under their insurance policies from Defendant State Farm Mutual Automobile Insurance Company. In calculating the actual cash value of Plaintiffs' vehicles, State Farm applied a "typical-negotiation adjustment," which reduced Plaintiffs' total-loss payments. In this putative nationwide class action, Plaintiffs allege State Farm's use of the typical-negotiation adjustment was a fraudulent scheme and a breach of their insurance policies. They bring common-law and statutory claims under the laws of forty-seven states and the District of Columbia. State Farm now moves to: (1) dismiss twenty-six non-Illinois Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA); (2) dismiss the statutory and common-law fraud claims for failure to state a claim; and (3) dismiss Plaintiff Sabrina Capers's breach-of-contract claims pursuant to an arbitration agreement in her insurance policy. For the following reasons, State Farm's motion to dismiss [94] is denied. The Court compels Capers to arbitrate her breach-of-contract claims and stays all her claims pending arbitration.

1

## BACKGROUND

### A. Factual Background

The Court assumes familiarity with the facts of this case from its prior opinion ruling on State Farm's first motion to dismiss. *See Williams v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 4106067 (N.D. Ill. June 21, 2023). In short, State Farm provided car insurance coverage for Plaintiffs and, between 2017 and 2021, deemed their vehicles as total losses. (Dkt. 58 ¶¶ 12–44). Under State Farm's Comprehensive and Collision Coverage, when repair of an insured vehicle is impossible or uneconomical—rendering it a "total loss"—State Farm may settle the claim by paying the insured the actual cash value of the vehicle. (*Id.* at ¶ 2; *see also* Dkt. 58-1). To determine the actual cash values of Plaintiffs' vehicles, State Farm used Autosource Market-Driven Valuation, a system which aggregated prices from online sales and listings of comparable vehicles. (Dkt. 58 ¶ 51; *see also* Dkt. 58-3). At State Farm's directive, Autosource applied a typical-negotiation adjustment to the market-value price to decide its total-loss payments—an adjustment reflecting the average difference between the list price and a lower theoretical price that a dealer would accept. (Dkt. 58 ¶¶ 51–52). Actual negotiations did not factor into the typical-negotiation adjustment. (*Id.* at ¶ 53). Nor did State Farm consult with any dealers or consider that "no-haggle" pricing predominates in the used-car market, especially online. (*Id.*) At the time State Farm determined the actual cash values of Plaintiffs' vehicles, due to car-parts supply-chain issues during the COVID-19 pandemic, used cars often sold at or above list prices. (*Id.*) Nonetheless, in calculating Plaintiffs' vehicles' actual cash values, the typical-negotiation adjustment took 4–11% off the prices of comparable vehicles—in turn, reducing the total-loss payments Plaintiffs received. (*Id.* at ¶¶ 12–44, 53–55).

State Farm did not tell insureds about the typical-negotiation adjustment before they bought their policies. (*Id.* at ¶ 52). Rather, in the policy—which was consistent across all of Plaintiffs' states, (*Id.* at ¶ 72)—State Farm shall "[p]ay the actual cash value of the **covered vehicle** minus any applicable deductible." (Dkt. 58-1 at 39) (emphasis and bolding in original). Further, it states "[i]f a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to the Collision Coverage is shown on the Declarations Page." (*Id.* at 193).

For example, Plaintiff Diane Newkirk, a New York citizen, owned a 2015 Subaru Impreza sedan insured by State Farm. (Dkt. 58 ¶ 34). Around January 23, 2021, State Farm deemed Newkirk's vehicle a total loss and Newkirk filed a claim for its actual cash value. (*Id.*) On September 9, 2021, Newkirk received a letter from Julie Hicks, a claims specialist at State Farm, stating that "the actual cash value of [her] vehicle, less any applicable deductible"[1] was $10,544 and paid her $10,887.52.[2] (*Id.;* Dkt. 58-25 at 2–5). The market valuation report, dated February 1, 2021, was attached to the letter. (Dkt. 58-25 at 4). Yet, on the report, State Farm, through Autosource, applied a typical-negotiation adjustment of approximately 4–6% across comparable vehicles to arrive at a lower valuation. (Dkt. 58 ¶ 34; Dkt. 58-25 at 8–9 ("The advertised price…was adjusted to account for typical negotiation.")). Moreover, Newkirk's Declarations Page listed the various premiums, deductibles, and expenses associated with her claim, but it did not mention a typical-negotiation adjustment. (Dkt. 58-1 at 118).

---

[1] Plaintiffs characterize the typical-negotiated adjustment as a deductible. State Farm has not disputed this characterization in its motion to dismiss, so the Court will accept it.
[2] The amount Newkirk received was adjusted to add a sales tax and subtract a deductible. (Dkt. 58-25 at 2).

B.  **Procedural History and Parallel Cases**

Plaintiffs bring thirty-three claims: breach of contract (Count 2); breach of the covenant of good faith and fair dealing (Count 3); fraudulent concealment (Count 4); fraud in the inducement (Count 5); unjust enrichment (Count 6); declaratory judgment (Count 7); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count 1); and violation of twenty-five other consumer-protection statutes (Counts 8–33). (Dkt. 58 ¶¶ 75–637).

In a previous opinion, the Court denied State Farm's motion to dismiss "headless" claims[3] and motion to compel appraisal, or in the alternative, dismiss or grant summary judgment, but granted State Farm's motion to transfer six Plaintiffs and denied it for four. *See generally Williams*, 2023 WL 4106067.

There are several concurrent lawsuits challenging State Farm's use of the typical-negotiation adjustment to determine total-loss payments. *Id.* at *4.[4]

## DISCUSSION

I.  **Motion to Dismiss for Failure to State a Claim**

At the outset, State Farm's successive motion to dismiss for failure to state a claim—raising new arguments that it could have raised in its previous Rule 12(b)(6) motion—is improper.

---

[3] "Headless" claims are Plaintiffs' claims under the laws of states where no named Plaintiff is a citizen. *Williams*, 2023 WL 4106067, at *21.

[4] Complaint, *Shields v. State Farm Mut. Auto. Ins. Co.*, No. 6:19-cv-01359 (W.D. La. Oct. 16, 2019), ECF No. 1; Notice of Removal, *Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-02482 (W.D. Tenn. July 2, 2020), ECF No. 1 (filed in state court on May 8, 2020); Notice of Removal, *Wiggins v. State Farm Mut. Auto. Ins. Co.*, No. 8:21-cv-03803 (D.S.C. Nov. 19, 2021), ECF No. 1 (filed in state court142 on October 15, 2020); Class Action Complaint, *Chadwick v. State Farm Mut. Auto. Ins. Co.*, No. 4:21-cv-01161 (E.D. Ark. Nov. 29, 2021); Class Action Complaint, *Gulick v. State Farm Mut. Auto. Ins. Co.*, No. 2:21-cv-02573 (D. Kan. Dec. 6, 2021), ECF No. 1; Class Action Complaint, *Cudd v. State Farm Mut. Auto. Ins. Co.*, No. 4:21-cv-00217 (M.D. Ga. Dec. 23, 2021), ECF No. 1; Class Action Complaint, *Nichols v. State Farm Mut. Auto. Ins. Co.*, No. 2:22-cv-00016 (S.D. Ohio Jan. 4, 2022), ECF No. 1. Complaint, *Varela v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00970 (D. Minn. Apr. 15, 2022), ECF No. 1; Complaint, *Muhammad v. State Farm Indem. Co.*, No. 2:22-cv-06149 (D.N.J. Oct. 18, 2022), ECF No. 1; Notice of Removal, *Schmidt v. State Farm Mut. Auto. Ins. Co.*, No. 2:22-cv-12926 (E.D. Mich. Dec. 2, 2022), ECF No. 1 (filed in state court on November 2, 2022).

Rule 12(g)(2) provides: "Except as provided in Rule 12(h)(2) or (3),[5] a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). Thus, in *Ennenga v. Starns,* the Seventh Circuit interpreted Rule 12(g)(2) as allowing defendants to raise new arguments in successive Rule 12(b)(6) motion——at least, in response, to an amended complaint. *Id.* at 771–73. The policy underlying Rule 12(g), Ennenga acknowledged, "is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." *Id.* at 773.

That policy applies in full force here. Unlike in *Ennenga*, Plaintiffs did not amend their complaint after the Court denied State Farm's previous Rule 12(b)(6) motion. State Farm could have raised its present failure-to-state-a-claim arguments in its previous motion. By saving its new arguments for a successive motion, State Farm has delayed this litigation by months. While that delay may be State Farm's goal, it is antithetical to the spirit of Rule 12(g). State Farm "has presented precisely the kind of piecemeal litigation Rule(g) is meant to avoid." *Kramer v. Am. Bank & Tr. Co.*, 2014 WL 3638852, at *2 (N.D. Ill. July 23, 2024) (Lee, J.) (citing *Ennenga*, 677 F.3d at 773). As such, State Farm's motion to dismiss for failure to state a claim is improper in light of Rule 12(g)(2)'s consolidation requirement. The motion to dismiss for failure to state a claim is denied.[6]

---

[5] Rule 12(h)(2) provides, in pertinent part: "Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). And Rule 12(h)(3) requires courts to dismiss a case whenever it becomes clear that subject-matter jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3).

[6] State Farm is free to re-raise its argument that ICFA does not apply to claims by non-Illinois residents at class certification. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (observing that choice-of-law principles "may affect whether a class should be certified").

**II.        Motion to Dismiss for Improper Venue**

State Farm argues that Plaintiff Sabrina Capers's breach-of-contract claims, Counts 2 and 3, are governed by Minnesota's No-Fault Act's arbitration requirement and the Federal Arbitration Act (FAA). Her policy contains a provision stating: "When the amount of the claim is $10,000 or less, any dispute in the amount owed must be decided by arbitration conducted in accordance with the Rules Of Procedure For No-Fault Arbitration of the [Minnesota] No-Fault Act." (Dkt. 94 at 15). Therefore, State Farm contends that Capers must arbitrate her contract claims—depriving the Court of subject-matter jurisdiction under Rule 12(b)(1). Capers does not dispute that the arbitration provision is valid. Rather, she contends that: (1) the No-Fault Act does not apply to her case and (2) the amount of her claim is over $10,000.

The parties spend considerable effort discussing whether Capers must arbitrate her claims under the No-Fault Act's arbitration requirement, but when the FAA governs a contract, as is the case here, states are forbidden from interfering with the parties' agreement. *Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 842–43 (7th Cir. 2009); *see Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995) ("The Federal Arbitration Act governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts."). Under the FAA, courts compel arbitration when "(1) there is a valid agreement to arbitrate; (2) the claims fall within the scope of the agreement; and (3) the opposing party refused to arbitrate." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 701 (7th Cir. 2022) (quoting *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014)). An arbitration agreement's validity is a matter of state contract law. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011).

Federal courts sitting in diversity "look to the choice-of-law rules of the forum state to determine which state's law applies" to the issues before it. *Heiman v. Bimbo Foods Bakeries*

*Distrib. Co.*, 902 F.3d 715, 718 (7th Cir. 2018). "Under Illinois choice-of-law rules, forum law is applied 'unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply.'" *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (quoting *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)). Here, both parties rely on Minnesota law and do not dispute its application to the arbitration clause.

To start, although Capers opposes arbitration, she concedes the validity of the clause. The parties' dispute, therefore, concerns the scope of the clause. The plain language states that any disputes involving $10,000 or less must be arbitrated. *See Minnesota Jud. Branch v. Teamsters Loc. 320*, 971 N.W.2d 82, 88 (Minn. App. 2022) ("When the language of [a] contract is unambiguous, it should be given its plain meaning."). Capers's rebuttal—that her "claim for the total loss of her vehicle was for over $10,000," (Dkt. 99 at 15)—is misleading. She alleges that State Farm valued the total loss of her vehicle at $14,687 and paid her $15,296.41. (Dkt. 58 ¶ 26). Absent the alleged 4–5% typical-negotiation reduction, Capers's vehicle would have been valued at $15,460—a $773.00 difference.[7] Capers's allegation is that she was *underpaid*, so her monetary damages are the difference between what was paid and what is owed. Capers has not alleged any facts to suggest that the 4–5% reduction in her vehicle's total loss valuation exceeds $10,000. Accordingly, Capers is compelled to arbitrate.

But Rule 12(b)(1) is not the correct procedural mechanism to enforce an arbitration clause. To start, "[s]ubject-matter jurisdiction ... refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009) (internal quotation marks omitted). "An arbitration agreement, however,

---

[7] The Court's math does not match State Farm's figure. State Farm appeared to have taken 5% of $14,687 to arrive at $734.35. The Court divided $14,687 by 95% to determine what the total loss valuation would be *prior* to taking a 5% reduction. For the purpose of this analysis, the methodology is irrelevant.

7

can be waived by the parties, so the effect of such an agreement on a lawsuit is not jurisdictional." *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) (citing *Gabbanelli Accordions & Imports, L.L.C., v. Gabbanelli*, 575 F.3d 693, 695 (7th Cir. 2009)). The No-Fault Act, a state law, cannot deprive a federal court of its subject-matter jurisdiction to hear a case. *See Goetzke v. Ferro Corp.*, 280 F.3d 766, 779 (7th Cir. 2002) ("Once Congress has conferred subject matter jurisdiction on the federal courts, state law cannot expand or contract that grant of authority.").

The proper mechanism is dismissal under the doctrine of *forum non conveniens*, *Rock Hemp*, 51 F.4th at 701, and the Court will construe State Farm's motion accordingly. Normally, when considering a motion to dismiss under *forum non conveniens*, the court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62, (2013). But the FAA obviates any need to consider private or public interests because it mandates enforcement of arbitration agreements. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019).

Still, dismissal is inappropriate. FAA's § 3 "states that the court shall 'stay the trial of *the action*'—not just *a part* of the action—if the suit is 'brought upon' an arbitrable issue." *Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) (citing 9 U.S.C. § 3) (emphasis in original). Courts, however, have interpreted § 3 to give themselves discretion to stay "cases involving both arbitrable and non-arbitrable issues." *Id.* (quoting *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir. 1997)). At the very least, arbitrable issues must be stayed. *Id.* To that end, the Court stays Capers's case for all counts pending arbitration. *See Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to stay the

8

proceedings pending arbitration rather than to dismiss outright."). The parties shall notify the Court of the disposition of the arbitration.

## CONCLUSION

For the reasons above, the Court denies State Farm's motion to dismiss [94]. Yet, the Court compels arbitration of Plaintiff Capers's breach-of-contract claims in Counts 2 and 3. All her claims are stayed pending arbitration.

_____
Virginia M. Kendall
United States District Judge

Date: December 21, 2023