UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNADETTE WILLIAMS, RICK MCCONNELL, IVAN SERRATA REYES, ROSILYN WILSON, LINDA LEWIS, LATASHA HUFF, HAUNANIMAE CERVANTES-WHITE, MARIA MUNOZ, TRACY OBRIEN, KIMBERLY BENSON, ROY TUINSTRA, EVELYN BROWN, MICHELLE SNYDER, PATRICIA COUCH, SABRINA CAPERS, WILLIAM ROSS DEAN, RICHARD DACHEFF, KRISTY KELLER, JASIMEN HERNANDEZ, EDGAR FLORIAN, MICHAEL GROSSBERG, MERRILL LOVE, DIANE NEWKIRK, SANDRA SMILING, DAVEY JOHNSTON, CYNTHIA ROEMER, SHAUN ROBERT, ROQUE ESPINOZA, JENNIFER PAYNE, LATISHIA BOWDEN, and DJ NEILL, TYSON DEWSNUP, and DEIRDRE PALMER, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,<br><br>      Defendant. | Case No.: 1:22-cv-01422<br><br>Judge Virginia M. Kendall<br><br>Magistrate Judge Keri L. Holleb Hotaling |

## ESI PROTOCOL ORDER

    Plaintiffs and Defendant State Farm Mutual Automobile Insurance Co. ("Defendant") are engaged in discovery proceedings in the above-captioned civil lawsuit (the "Lawsuit"), and their counsel have engaged in substantive discussions regarding the discovery of documents and electronically stored information ("ESI").

    This ESI Protocol Order (the "Protocol") in no way alters the Parties' rights, obligations, and/or abilities to produce documents and/or to raise objections about production of information, consistent with the Federal Rules of Civil Procedure and common law. This Protocol is intended

1

to supplement the Federal Rules of Civil Procedure and to promote a "just, speedy, and inexpensive determination" of this Lawsuit. Fed. R. Civ. P. 1.

## I. SCOPE & PRESERVATION

1. <u>General</u>. The procedures and protocols outlined here govern the production of Discoverable Information by all parties to the Lawsuit, whether they currently are involved or become so in the future (collectively, the "Parties"). The Parties will take reasonable steps to comply with this agreed-upon Protocol for the production of Discoverable Information. This Protocol does not supersede prior pretrial orders issued in this action, which shall remain in effect except to the extent inconsistent with the provisions herein.

2. <u>Transparency and Cooperation</u>. The Parties acknowledge that they will work together cooperatively throughout the discovery process and permit an appropriate level of transparency. Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of discovery process, including the identification, preservation, and collection of sources of potentially relevant ESI. By agreeing to work together cooperatively, the Producing Party does not waive any right to work product protections, and this Order is not intended to compel disclosure of work product.

3. <u>ESI</u>. The term "ESI" refers to any electronically stored information in the possession, custody, or control of the Parties that are reasonably accessible or active-user files—including, but not limited to: email, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible ESI in which it is reasonably anticipated that information relevant and proportional to the matter may be found.

4. <u>Native Format</u>. The term "Native Format" or "Native File" means the format in which ESI was used and stored by the Producing Party in its ordinary course of business.

5. <u>Not Reasonably Accessible ESI</u>. The Parties agree that the circumstances of the Lawsuit do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible, unless the Party producing ESI (a "Producing Party") believes in good faith that not reasonably accessible ESI is likely to contain significant relevant information not otherwise available in reasonably accessible sources. For purposes of this paragraph, the Parties agree that the following sources of ESI are not reasonably accessible:

    a. ESI stored in a backup system, tape, or other media for the purpose of system recovery or information recovery that a party knows to be duplicative of data including metadata, including but not limited to: disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadow copies.

    b. Legacy Data or any data remaining from systems no longer in use that is unintelligible to and inaccessible by the systems currently in use provided such systems are disclosed and any non-duplicative data is preserved.

    c. Deleted, erased, or overwritten ESI, whether fragmented or whole, which were deleted in the regular course of business. However, if a Producing Party learns that

responsive ESI that once existed was lost, destroyed, or is no longer retrievable, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, whether any backup or copy of such original responsive ESI exists, and take reasonable steps to restore or replace it through additional discovery.

      d.     ESI stored in volatile and non-volatile memory, including Random Access Memory ("RAM"), Read-only Memory ("ROM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

      e.     Temporary internet files, history, cache, cookies, and the like.

      f.     ESI affected by ransomware or malware or that otherwise has been materially corrupted. Such impacted ESI shall be disclosed by the Producing Party.

      g.     ESI stored on photocopiers, printers, scanners, and fax machines.

      h.     ESI stored as server, system, or network logs.

Nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B) or from later seeking production of information in any of these sources after a meet and confer during which the nature of information relevant to the Lawsuit available on such a source and the particular burdens associated with accessing and collecting such information is discussed.

**II.    IDENTIFICATION OF DOCUMENTS AND ESI**

    1.    <u>Custodians and Sources</u>. The Parties shall exchange information regarding the identification, preservation, and collection of sources of relevant ESI, including information related to relevant current and former internal departments, committees, or teams, and relevant individual members of such departments, committees, or teams likely to possess potentially relevant information. The Parties agree to meet and confer upon the following: (a) the identity and role of custodians possessing relevant information and (b) the location(s) and description(s) of relevant data sources including custodial and non-custodial, and third-party documents.

    2.    <u>Known Responsive ESI Must Be Produced</u>. Documents or ESI known to be responsive to a discovery request or relevant to the subject matter of this action shall be produced without regard to whether it was responsive to any search methodology described herein or developed in accordance with this Order on a rolling basis within thirty (30) days of entry of this Order, unless Counsel specifically identifies the documents being withheld and as a specific objection for withholding each withheld document.

    3.    <u>Search Methodology</u>. Each Party will conduct a reasonable inquiry of reasonably accessible sources it has reason to believe contain relevant documents or ESI responsive to the opposing Party's discovery requests or relevant to the issues of this Lawsuit. The Parties recognize and agree that each Party may use one or more search methodologies to collect, review, and

produce relevant, responsive, non-privileged documents and ESI and undertake reasonable efforts to locate discoverable information. The parties therefore agree to cooperate in good faith, in an iterative manner, regarding the disclosure and formulation of appropriate search methodology. The parties agree to meet and confer regarding any methodologies that remove relevant or responsive information from human review and withhold such information from production (e.g., search terms) and the document sources to which they will be applied, prior to the application of any such methodologies to any ESI source that may contain potentially relevant or responsive ESI. The Parties recognize that as the litigation evolves, there may be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI.

      a.    <u>Key Word Searching</u>. If the Producing Party is identifying or culling potentially responsive materials, which are not already known to be responsive, using search terms, the Parties will meet and confer about search terms in English and any other languages used in the Producing Party's documents. During the meet and confer process, the Producing Party will disclose information regarding the search platform to be used, a list of search terms in the exact forms that they will be applied (i.e., as adapted to the operators and syntax of the search platform)—including an explanation of any relevant company or other terminology, code names, abbreviations, if any—any date filters, or other culling methods after which the Receiving Party may propose additional terms or culling parameters. The Parties shall participate in an iterative and cooperative approach, with reasonable opportunities for the Parties to propose additional search terms, as well as transparent and cooperative validation procedures.

      b.    To facilitate the process described above, the Parties agree to meet and confer in an effort to agree upon the following: (a) custodians or business area contacts from whom information will be collected or produced (including their job title, description of duties, and employment dates); (b) data sources, including custodial, and non-custodial documents, which will be collected or produced; (c) the identity and scope of sources of documents and ESI to be produced without the use of technology-assisted review or search terms; (d) the identity and scope of sources of documents and ESI to be produced with the use of search terms, and the conditions governing such use and validation; (e) applicable timeframe for collection and review of documents; and (f) prioritization of categories of documents and ESI to be collected, reviewed, and produced. It is currently not the intention of either Party to use technology assisted review ("TAR") for any purposes in the collection and production of ESI; if this position changes, the Parties will meet and confer about the use and validation of such technology and negotiate a suitable TAR protocol.

      c.    The Parties recognize that different categories of ESI may require different search methodologies and that different search methodologies may be required depending on the category of ESI. The Parties agree to meet and confer regarding search methodologies, search terms, and validation procedures and will be set forth in a separate agreement. If the parties are unable to reach agreement, the parties shall notify the Court of their unresolved dispute(s) and seek resolution.

4.    <u>Exchange of Hit Reports</u>. The Producing Party will provide a hit report for each document collection where the terms were applied, to include the number of documents with hits

for that term, and the number of family members if any associated with that document, to determine whether there is an appropriate level of recall (the percentage of responsive documents in the collection against which the search terms were run which include a search term). The Parties will meet and confer to resolve disagreements over the search terms or their application.

5. <u>Unsearchable Documents</u>. Documents which are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, or hard copy documents, must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text. Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections.

6. <u>Inaccessible Documents</u>. If a Party believes any potentially relevant documents are not reasonably accessible, the Party will provide sufficient information about the documents (and their custodial or non-custodial sources) to enable the Parties to confer in good faith about whether such documents will be produced.

7. <u>Reassessment</u>. After the completion of the search methodology meet and confer sessions, a producing Party may encounter the need to reassess a search methodology and/or validation process and, in such case, the Producing Party will notify the Requesting Party and the Parties will meet and confer to address any issues in a reasonable and timely manner.

8. <u>Good faith</u>. The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by the Producing Party.

9. <u>Continuing Obligations</u>. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as necessary and appropriate.

10. <u>Reservation of Rights</u>. The Parties retain the right, upon reviewing any productions made by another Party in this action or conducting other investigation and discovery, to request that documents or ESI from additional non-custodial data sources and custodians be produced. The Parties will meet and confer regarding such request(s) prior to any search or production related thereto.

**III. FILTERING ESI**

1. <u>Deduplication</u>. A Producing Party will make reasonable efforts to globally deduplicate identical ESI within their own productions, as follows:

    a. Duplicate non-email ESI (such as Microsoft Word documents) will be identified based upon MD5 or SHA-1 hash values as compared against the same document type (i.e., family or stand-alone file). All ESI bearing an identical value are a duplicate group. The Producing Party may produce only one document image or native file for such true-duplicate ESI documents. The Producing Party will identify the additional custodian(s) and original file paths of a document prior to deduplication for duplicate documents not produced (i.e., the ALLCUSTODIAN and ALLFILEPATH metadata fields

included in Appendix A) to the extent such information can be automatically populated by the processing of the documents.

      b.      Duplicate email or other messaging files will be identified based upon MD5 or SHA-1 hash values based upon the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment Names, Body, and the hash values of all attachments. Email families bearing an identical value are considered a duplicate group. The Producing Party may produce only one document image or native file for such true-duplicate ESI documents within the duplicate group. The Producing Party will identify each custodian(s) from whom the duplicate email was collected and the original file path(s) of a document prior to deduplication (i.e, the ALLCUSTODIAN and ALLFILEPATH metadata fields included in Appendix A), provided that such information can be automatically populated with industry standard ESI processing tools.

      2.      <u>Email Threading</u>. The Parties may use industry standard analytic tools to employ "email thread suppression." As used in this Protocol, email thread suppression means producing the most inclusive email in a conversation thread, as well as all attachments within the thread, and not producing the individual messages from that thread as separate documents. Only email messages that are included within the more complete and produced thread part will be considered appropriate for exclusion from production. Metadata will not be produced for email thread parts suppressed under this paragraph and the suppressed thread parts need not be reflected on the Producing Party's privilege log.

      3.      <u>Databases, Structured, Aggregated or Application Data</u>. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. The parties will reasonably cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format, including available relevant data fields/objects and schema, in good faith in an attempt to reach agreement on the data to be produced and the format and scope of the production. If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

      4.      <u>De-NISTing</u>. ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.[1]

      5.      <u>Email Domains</u>. A Producing Party may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email (e.g., fantasy-football-related emails, retailer advertising, or newsletters or alerts from non-industry sources). To the extent a Party opts to exclude uniquely identifiable email domain names typically associated with junk or irrelevant topics as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names proposed to be excluded under this paragraph prior to such use and to meet and confer regarding the use of such domains to filter potentially responsive documents.

---

[1] The current NIST file list is published by the National Software Reference Library (NSRL) and can be found here: https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl.

6. <u>Embedded Objects</u>. The Parties agree that other embedded objects (as distinct from embedded files), including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a Producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments). Embedded files that are not images are to be produced as family groups with assigned Bates numbers directly following the Bates numbers on the documents within which they are embedded.

7. <u>Zero-byte Files</u>. The Parties shall filter out files identified as zero bytes in size.

8. <u>Parent-Child Relationships</u>. Parent-child relationships (the association between an attachment and its parent document or between embedded documents or linked internal or non-public documents and their parents) shall be preserved. Attachments should be consecutively produced with their parent.

9. <u>Family Groups</u>. Productions will be family inclusive, meaning all documents in an attachment range (such as cover emails and attachments thereto or files with extracted embedded OLE documents) will be produced if any part of the attachment range is produced. Redactions may be applied where appropriate under the protective order and placeholder images will be used for any part of the family withheld for privilege.

## IV. PRODUCTION TIMEFRAME

1. <u>Rolling Production</u>. The Parties will produce documents, including ESI, on a rolling basis. The Parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of responsive information, its relative accessibility, efficiencies in the process of search and review, and additional processing time required for certain types of ESI.

2. <u>Supplemental Production</u>. Each Party reserves the right to supplement its productions as allowed under the rules of procedure.

## V. PRODUCTION FORMAT

1. <u>TIFF/Native File Format Production</u>. All spreadsheet (e.g., Microsoft Excel, Corel Quattro, etc.) files shall be produced as native files with TIFF placeholder images. All word processing (e.g., Microsoft Word), presentation (e.g., Microsoft PowerPoint), image (e.g., .jpg, .gif), and PDF files shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs. All media files, such as audio and video files, files shall be produced as native files with TIFF placeholder images. Emails shall be produced as TIFFs. In advance of depositions, the Parties reserve the right to produce TIFF versions of any previously produced native file at their discretion. ESI items shall be processed in a manner that preserves the source native file and all metadata without modification, to extent technically possible.

2. To the extent any ESI poses unique circumstances that make production, as contemplated in this protocol not reasonably practical, the Parties will meet and confer in good

faith. Nothing in this provision prohibits the Requesting Party from requesting a native file from the Producing Party following production of a document in image format. The Producing Party will use best efforts to produce a native file in response to such a request. If a native file is unavailable, not reasonably accessible, or otherwise impossible or burdensome to obtain or produce, the Parties agree to meet and confer regarding the request.

   3.  <u>Native Files</u>. Any file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively." To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. Where redaction makes production of native-format files other than spreadsheets infeasible, the Parties will confer to determine a reasonably usable form for the production.

   4.  <u>TIFF Images</u>. Documents produced with TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files

   5.  <u>Database Production.</u> Discoverable Information that is stored in a database (i.e., structured data) will be produced in reasonably usable standard report formats available in the ordinary course of business as will be agreed to by the Parties. To facilitate this, the Parties will cooperate in the exchange of information concerning such databases, including available data fields/objects and schema. The Producing Party understand that, upon review of the report(s), the Requesting Party may request from the Producing Party additional information to explain any codes, abbreviations, or other information necessary to ensure the report is reasonably usable, and will cooperate with any such reasonable requests for information without the need for formal discovery.

   6.  <u>Numbering/Endorsement</u>. All produced Discoverable Information will have a unique Control ID assigned ("Bates Number"), regardless of the format of the Discoverable Information, and the file produced will be named with the unique Control ID. Bates numbering should be consistent across the production—with the caveat that State Farm may produce claim-specific documents using one Bates Number format and "institutional" documents using another Bates Number format—contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. To the extent feasible, attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. For Discoverable Information produced in .TIFF image format, each .TIFF image will have a legible, unique page identifier ("Bates Number") electronically "burned" onto

the image at a location that does not obliterate or obscure any information from the source document. A Producing Party should use a consistent format for the Bates Numbers it uses across its productions.

  a. In the case of materials deemed confidential in accordance with any applicable federal, state, or common law, pursuant to a protective order or confidentiality stipulation entered into by the Parties, documents and ESI should be marked in accordance with that order.

  b. The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

  7. <u>Scanned Documents</u>. The Parties agree that paper documents that contain Discoverable Information may be scanned and produced in an imaged format set forth in Section IV.1. When scanning paper documents, the Parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (i.e., the Parties shall attempt to logically unitize scanned hardcopy documents). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.

The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

  a. Objective Coding Fields. The following coding fields identified in the table appearing under Metadata (below) will be provided.

  b. Text. OCR text will be provided for paper documents.

  c. Load Files/Cross-Reference Files. Fielded data should be exchanged via a document-level-database load file in one of two delimited formats: either standard Concordance (.DAT) or comma delimited (.CSV). All image data should be delivered with a corresponding image load file in one of three formats: standard IPro (.LFP), Opticon (.OPT), or Summation (.DII). The total number of image files referenced in the image load file should match the total number of images in the production delivery.

  8. <u>Native Files</u>. The Parties agree that, for any Discoverable Information produced in the image format as set forth and provided for in this protocol, the Requesting Party may request from the Producing Party that certain imaged files be produced in native format according to the following protocol:

  a. The Requesting Party shall provide a list of Bates Numbers of the imaged documents sought to be produced in native file format. The Requesting Party also shall provide the reasons for the request.

  b. The Producing Party shall either produce the native files or object to the demand for any particular file as unreasonable as follows:

    i. The Producing Party will respond in writing, setting forth its objection(s) to the production of the requested native format files.

    ii. The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court.

    iii. Requests will not be unreasonably denied.

  9. <u>Encrypted Files</u>.  To the extent practical, the Producing Party shall take reasonable efforts to ensure that encrypted files are decrypted prior to processing, search, and production.

  10. <u>Production Media</u>.  The Producing Party may produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media including: CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

  11. <u>Metadata.</u>

   a. The Parties agree to produce a load file in one of two delimited formats: either standard Concordance (.DAT) or comma delimited (.CSV) that contains the available metadata fields set forth in the table attached as Appendix A to the extent a document is not redacted and the fields exist in the ordinary course of business or are automatically created in the processing of the documents:

   b. No Party has an obligation to create or manually code metadata fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the electronic document except for: (1) beginning Bates Number; (2) ending Bates Number; (3) beginning attachment Bates Number for each attachment; (4) ending attachment Bates Number for each attachment; (5) Confidentiality; and (6) Custodian(s).  Custodians should be identified using the convention "Last Name, First Name."

   c. The Parties may rely on metadata automatically generated by the processing of the ESI.

  12. <u>Redactions</u>.

   a. Other than as permitted by this Order or the order concerning confidentiality agreed and/or entered in this litigation, no redactions for relevance may be made within a produced document or ESI item.  Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "A/C Privilege").  Where a responsive document contains both redacted and non-redacted content, the parties shall produce the remainder of the non-redacted portions of the document and the text/OCR

corresponding to the non-redacted portions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, will be redacted natively if feasible.

  b. All TIFF images of redacted native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.

  c. Redacted versions of documents that contained color in their un-redacted form shall be produced in color in TIFF format.

  d. The Parties have agreed that State Farm may redact claim file information relating to third-party claimants (when not relevant to the claims or defenses asserted in this litigation) and information relating to personal injuries.

  e. To the extent not addressed by the above, the Parties agree to meet and confer regarding any issues that may arise regarding the redaction of documents.

## VI. PRIVILEGE

  1. <u>Privilege</u>. Each Party may review documents (both ESI and paper documents) for privileged information (or other information subject to a recognized immunity from discovery) prior to production. In accordance with the Parties' Rule 502(d) stipulation, no disclosure, production, or exchange of information in the Lawsuit constitutes a waiver of attorney-client privilege or of any work product protection in this or any other federal or state proceeding.

  2. <u>Redactions</u>. The Producing Party may redact, consistent with the provisions above, any document (image or native) or metadata field that is protected from disclosure by applicable privilege or immunity or that is required by applicable law or regulation ("privileged information"). Documents (image or native) and metadata fields that include both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document and to display the reason therefore (e.g., "Attorney-Client Privilege" or "Work Product" or equivalent). Documents or portions thereof withheld on privilege grounds will be identified in a privilege log in accordance with Federal Rules of Civil Procedure 26(b)(5). Redacted information need not be included on the privilege log.

3. <u>Privilege Logs</u>.

    a. The obligation to provide a log of privileged or work-product-protected materials pursuant to Federal Rules of Civil Procedure 26(b)(5)(A) presumptively shall not apply to attorney-client communications or work product created after the date the first total loss lawsuit was filed involving Outside Counsel in this matter, *Bilhimer v. State Farm Mut. Auto. Ins. Co.*, No. 2:19-cv-2248 (D. Kan.), which was filed on May 21, 2019, in the following categories:

    i. Communications solely between a Party and its Outside Counsel or solely between Corporate Counsel and Outside Counsel relating to this litigation or any other class action litigation challenging Defendant's use of 'typical negotiation adjustment' in determining the "actual cash value" of a total-loss vehicle including, at the earliest, *Bilhimer*;

    ii. Attorney work product created in anticipation of this litigation or any or any other class action litigation challenging Defendant's use of 'typical negotiation adjustment' in determining the "actual cash value" of a total-loss vehicle including, at the earliest, *Bilhimer* by Corporate Counsel or Outside Counsel for any Parties;

    iii. Internal communications within Corporate Counsel or Outside Counsel for any Parties referencing, discussing, or directing attorney work product relating to this litigation or or any other class action litigation challenging Defendant's use of 'typical negotiation adjustment' in determining the "actual cash value" of a total-loss vehicle including, at the earliest, *Bilhimer*; and

    iv. Communications between or among co-counsel or between outside counsel and their experts or professional vendors, and attorney work product created by such experts or professional vendors.

    b. The Parties agree that, except as provided herein regarding the categories of presumptively exempt privileged and work product materials set forth in Section V.3.a., they will produce privilege logs on a rolling basis and will exchange information regarding claims of privilege and/or work-product protection. Privilege logs will be in a searchable/sortable Excell format and will be cumulative, incorporating on each subsequently produced log any newly logged documents or information. The privilege log shall contain the following information: (i) the date of the document; (ii) the identity of all persons who sent, authored, signed or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees, including blind copyees; (iv) a description of the contents of the document sufficient to understand the subject matter of the document and the basis of the claim of privilege or protection; (v) the type and nature of the privilege asserted (*e.g.* attorney-client, work product, etc.); (vi) for redacted documents, the Bates numbers corresponding to the first page of any document redacted; and (vii) for documents withheld in their entirety, a unique document number, which need not be formatted as, or consecutive with, Bates Numbers of produced documents (e.g.,

"Def_Priv_00001"). Each redaction will be addressed in the log with sufficient information to allow the Parties to understand the basis for the redactions.

  c. In addition, the Producing Party will provide either as a separate exhibit or as part of any privilege log, which shall be updated as needed, to the privilege log listing the names and employees of all attorneys or other legal staff or legal personnel whose names appear on the log and each persons' employer.

  d. The Producing Party may include only a single privilege log entry for multiple email messages in the same email thread to the extent such messages are included within one individual email thread and subject to the same claim of privilege. The email that will be logged will be the most inclusive thread and any non-privileged portion or attachment shall be produced..

  e. Where a Party is asserting privilege on the same basis with respect to multiple documents, such descriptions may be provided by group or category.

  f. Redacted documents need not be logged provided the basis for the redaction is made plain on the face of the redacted document.

**VII. GENERAL PROVISIONS**

  1. <u>Discoverability and Admissibility</u>. Nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information. All objections to the discoverability or admissibility are preserved and may be asserted at any time.

  2. <u>Limitations & Non-Waiver</u>. The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine.

  3. <u>Cooperation and Proportionality</u>. The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and paper documents in this Lawsuit. This Protocol is not intended to expand the Parties' obligations under Rules 1, 26, and 34.

  4. <u>Meet and Confer</u>. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties agree to meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol. To the extent a Producing Party reasonably expects production of specific paper documents or ESI will be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production.

  5. <u>Variations</u>. In light of the varying and disparate data systems and architectures employed by the Parties, variations from this Protocol may be required. In the event that any Party identifies a circumstance where application of this Protocol is not technologically possible or practicable, the Producing Party will disclose to the Requesting Party the reason(s) for, and circumstances surrounding, the need to vary from this Protocol, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Protocol.

6. <u>Modification</u>. This Protocol supersedes any prior discussions or agreements of the Parties on the topics contained herein, and to the extent it is contrary to any such agreements or discussions, the terms of the Protocol control. This Protocol may be modified or amended either by written agreement of the Parties submitted to the Court for approval or by order of the Court. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the proportional, timely, and economical exchange of Discoverable Information.

7. <u>Agreed Protective/Confidentiality Order</u>. The terms of the separate stipulated Protective/Confidentiality Order governing production and treatment of confidential information, including redaction, that the Parties intend to file with the Court also govern all productions pursuant to this Protocol.

8. <u>English Language</u>. To the extent any document exists in more than one language, the document shall be produced in English, if available in the ordinary course of business or in the custodian's files. If no English version of the document is available, the Producing Party does not have an obligation to produce an English translation.

9. <u>Costs</u>. The cost of preserving, collecting, and producing documents shall be borne by the Producing Party. In the event, however, that a Requesting Party requests ESI, documents, or information that would result in the production of cumulative or repetitive discovery that otherwise imposes an undue burden or expense upon a Producing Party, the Producing Party may object. The Parties shall work to resolve any such objection. In the event the Parties are unable to resolve such an objection, and upon substantiation of that objection in writing by the Producing Party, the Producing Party may move the Court for an order shifting the cost of producing such discovery to the Requesting Party.

10. <u>Producing Party's Right to Review Own Documents</u>. Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

11. <u>Documents Produced by Parties – Presumption of Authenticity</u>. In order to reduce the number of requests for admission, this Order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents, or contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party. No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

**SO ORDERED.**

Date: 03/06/2024

_____
Keri L. Holleb Hotaling
United States Magistrate Judge

14

15

## APPENDIX A – METADATA FIELDS[2]

| Field | Definition | Doc Type |
|---|---|---|
| PRODBEG | Beginning Bates Number (production number) | All |
| PRODEND | Ending Bates Number (production number) | All |
| PRODATTACHBATES | Bates number from the first page of each attachment | E-mail |
| PRODBEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail or document) | E-mail, E-Documents |
| PRODENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment or, if no attachments, the document itself) | E-mail, E-Documents |
| PAGE COUNT | Number of pages in the document | All |
| ATTACHMENTCOUNT | Number of attachments to an e-mail | E-mail |
| ATTACHNAMES | Names of each individual Attachment, separated by semi-colons | E-mail |
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.)* | All |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semi-colon. | All |
| FROM | Sender | E-mail |

---

[2] The Producing Party will produce the fields contained in this **Appendix A** to the extent required by the Protocol.

| TO | Recipient | E-mail |
|---|---|---|
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| DATETIMESENT | Date and Time Sent (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| DATETIMERCVD | Date and Time Received (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| TIMEZONE | The time zone used to process the document | All |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system data |
| CONVERSATIONID | Email thread identifier | E-mail |
| APPLICATION | Commonly associated application for the specified file type. | All |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. | E-document, Email |

17

| ALLFILEPATH | List of all original file/path of the locations where the item was located at the time of collection delimited by semi-colon. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. | E-document, Email |
|---|---|---|
| FILENAME | Original file name at the point of collection | E-Document |
| NATIVELINK | For documents provided in native format only | All |
| TEXTLINK | File path for OCR or Extracted Text files | All |
| MSGID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing. | E-mail |
| HASHVALUE | MD5 hash value | All |
| TITLE | Internal document property | E-document |
| AUTHOR | Internal document property | E-document |
| DATECRTD (mrn/dd/yyyy hh:mm:ss AM) | Creation Date | E-document |
| LAST MODIFIED BY | Last person who modified (saved) a document | E-document |
| LASTMODD (mrn/dd/yyyy hh:mm:ss AM) | Last Modified Date | E-document |
| HASREVISIONS | Y if a Word document with revisions, otherwise N or empty | E-document |
| HASCOMMENTS | Y if a Word or Excel document with comments, otherwise N or empty | E-document |

| HASHIDDENTEXT | Y if a Word document with hidden text, otherwise N or empty | E-document |
|---|---|---|
| HASHIDDENSLIDES | Y if a PowerPoint document with hidden slides, otherwise N or empty | E-document |
| HASSPEAKERNOTES | Y if a PowerPoint document with speaker's notes, otherwise N or empty | E-document |
| HASHIDDENROWS | Y if a Excel document with hidden rows, otherwise N or empty | E-document |
| HASHIDDENCOLUMNS | Y if a Excel document with hidden columns, otherwise N or empty | E-document |
| HASHIDDENWORKSHEETS | Y if a Excel document with hidden worksheets, otherwise N or empty | E-document |
| HASVERYHIDDENWORKSHEETS | Y if a Excel document with very hidden worksheets, otherwise N or empty | E-document |
| DocumentType | Descriptor for the type of document: **"E-document"** for electronic documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for hard copy physical documents that have been scanned and converted to an electronic image. | All |
| Importance | High Importance — indicates Priority E-mail message. | E-mail |
| Redacted | Descriptor for documents that have been redacted.<br>"Yes" for redacted documents; "No" for un-redacted documents. | All |
| ProdVol | Name of media that data was produced on. | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |

19