# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BERNADETTE WILLIAMS, *et al.*, on behalf
of themselves and all others similarly situated,

                                    Plaintiffs,

                v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                                    Defendant.

Case No.: 1:22-cv-01422

Judge Virginia M. Kendall

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY

Plaintiffs, by and through their counsel, hereby file their response in opposition to Defendant State Farm's Motion to Stay ("Motion"), ECF 170.

## INTRODUCTION

Defendant State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") seeks a stay on any further discovery and proceedings, including its requested motions for summary judgment of some of Plaintiffs' individual claims, for an indefinite period of time pending the recently filed appeal in *Progressive Paloverde Ins. Co., et al. v. Schroeder, et al.*, No 24-1559 (7th Cir. 2024) ("*Schroeder*"). In doing so, State Farm ignores that *Schroeder* involves the valuation of total loss claims by a different insurer using a different method of determining the value of total loss vehicles, which includes a Projected Sold Adjustment which is part of Progressive's vendor's, Mitchell International, Inc.'s ("Mitchell" or "Mitchell International"), valuation. *Schroeder* also, as Defendant concedes, will only address certifiability under Rule 23

of the claims asserted in that case, but not any issue relevant to any of the motions State Farm has brought or intends to bring as to the claims of any of the Plaintiffs.

Plaintiffs are in the midst of discovery related to their claims. Class certification is a distant question that will be presented in due course after discovery closes, after the parties disclose their experts and these experts are deposed, and after class briefing is fully complete. Notwithstanding the entirely different procedural posture of this case and *Schroeder*, State Farm wants to stay this case for an *indefinite* period of time because the *Schroeder* appeal, which is at its infant stage, *may* affect class certification in this case. A stay for such an undetermined amount of time after Plaintiffs expended substantial amounts of time and resources and still have much discovery to uncover is prejudicial. Moreover, their claims against State Farm challenge *State Farm's* use of a different method of determining the value of total loss vehicles, does not involve Mitchell International's total loss valuation. Rather, State Farm uses valuations by Audatex North America, Inc. ("Audatex") which includes a Typical Negotiation Adjustment.

Whether or not *Schroeder* ultimately provides any guidance for the certification of Plaintiffs' claims can be incorporated when class briefing ultimately begins. For now, Plaintiffs should be allowed to proceed with their discovery, and Defendant's Motion should be denied.

## BACKGROUND

For years, State Farm chose to determine its payment to insureds who were owed the "Actual Cash Value" (also referred to as "ACV") of their totaled vehicles using a method called Multiple Comparable Reports, which method identifies comparable vehicles which values are adjusted to match objective features of the insured's vehicle (e.g. mileage, trim levels, condition). However, State Farm goes a step further with this method of valuation, and applies a purported "Typical Negotiation Adjustment" (also referred to as "TNA") after it determined the value of

those comparable vehicles. *See* First Amended Class Action Complaint (ECF No. 58) ("FAC") ¶¶ 1-4, 49-54. This adjustment is not based on any objective, verifiable features, and is not based on any market realities. *Id*. ¶¶ 4, 53. Worse, this arbitrary deduction will always result in an underpayment to insureds in breach of State Farm's contractual promise to pay the vehicle's ACV.

The "Typical Negotiation Adjustment" is an artificial reduction upwards of 11% of the value of the comparable vehicle. State Farm never disclosed this practice to its insureds in its Policy or anywhere else, until after the fact. *Id.* ¶¶ 4, 53. After a total loss, Defendant provides insureds with "Market Valuation" reports to purportedly value the totaled vehicle, which include State Farm's first and only reference to the "Typical Negotiation Adjustment," that is buried in a footnote. *See, e.g.*, ECF No. 58-3 at 78-87.

The "Typical Negotiation Adjustment" was not based on any empirical data derived from actual negotiations. FAC ¶¶ 4, 53, 54. Rather, this downward "adjustment" was entirely arbitrary (pegged to the value of the vehicle, with more valuable vehicles having a greater reduction and less valuable vehicles having a lower adjustment). *Id.* ¶¶ 4, 7, 54, 55, 57. Despite reasonable consumers' expectation, Defendant put its profits over its clients' interests with its scheme to systematically undervalue insureds' vehicles without their knowledge or permission – all while charging them insurance premiums.

Through Defendant's deceptive and unfair scheme, Defendant violated state consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505, *et seq*., breached its contracts and the covenant of good faith and fair dealing with its insureds, committed fraud, including fraudulent concealment and in the inducement, and was unjustly enriched.

In contrast, *Schroeder* involves the use by Progressive of a Projected Sold Adjustment. Projected Sold Adjustment, which is not used by State Farm or its vendor, Audatex, is a feature of the valuation undertaken by Progressive's vendor Mitchel International.[1]  Unlike State Farm's TNA, Progressive's Projected Sold Adjustment is not entirely arbitrary.  Rather, as the *Schroeder* court noted in its order granting class certification, the Projected Sold Adjustment is based on a "statistical analysis of at least 40 separate transactions to determine PSA that best describes the relationship between list prices and sale process for vehicles of that type." *Id.*, ___ F.Supp.3d ___, 2024 WL 308330, *3 (S.D. Ind. Jan. 26, 2024).  Relatedly, *Schroeder* only involves claims for breach of contract and not fraud.

After a sequence of various dispositive motions, challenged Plaintiffs' claims in a wide range of ways and which were largely unsuccessful (ECF Nos. 83, 126) and a request by Defendant to file early summary judgment as to some Plaintiffs (ECF No. 154),[2] the Parties remain in the midst of discovery related to Plaintiffs' claims.  The Court has set the end of fact discovery for October 31, 2024 (ECF No. 166), but has set no schedule for any other pretrial events, including expert disclosures and related discovery or, as is most relevant to State Farm's Motion, a schedule governing Plaintiffs' eventual Motion for Class Certification.

---

[1]   At the hearing and in opposition to Plaintiffs' Motion to Compel documents related to State Farm's earlier use of Mitchel's Projected Sold Adjustment (which was the subject of suit in a case titled *Garner*), counsel for State Farm argued that the Projected Sold Adjustment was proprietary to Mitchell (rather than its current vendor Audatex) and irrelevant to Plaintiffs' claims in this case. *See* May 8, 2024 Hrng. Tr., 19:10-12, 20-21, 20:6-8, 18-19, 21:5-7, 11-12, attached hereto as Exhibit A.  Based, at least in part of counsel's representations, the Court denied Plaintiffs' Motion to Compel such documents.  ECF No. 176 ("as to Doc Request 42 and 43: the Garner materials are not relevant.")

[2]   None of these motions raise or involve issues pertinent to the rubric of standing under Rule 23 taken up by the Seventh Circuit in *Schroeder*.

While the Seventh Circuit has taken review of class certification in *Schroeder*, claims like Plaintiffs against State Farm have been certified for class treatment.[3] *See Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-02482(TLP)(CGC), 2023 WL 7213796 (W.D. Tenn. Aug. 25, 2023); *Chadwick v. State Farm Mut. Auto. Ins. Co*., No. 4:21-CV-1161-DPM, 2024 WL 1156944 (E.D. Ark. Mar. 18, 2024). Similarly, claims like those asserted by the *Schroeder* plaintiffs against Progressive have repeatedly been certified for class treatment. *See Volino v. Progressive Cas. Ins. Co.*, 21 Civ. 6243 (LGS), 2023 WL 2532836 (S.D.N.Y. Mar. 16, 2023), *Rule23(f) petition denied*, Mandate of 2d Cir. Case No. 23-0472, ECF No. 75; *Brown v. Progressive Mountain Ins. Co*., No. 3:21-CV-175-TCB, 2023 WL 7219499, (N.D. Ga. Aug. 3, 2023)) *Rule23(f) petition denied*, Mandate of 11th Cir. Case No. 23-90024, ECF No. 33-2; *Drummond v. Progressive Specialty Ins*. Co., No. CV 21-4479, 2023 WL 5181596 (E.D. Pa. Aug. 11, 2023); *Costello v. Mountain Laurel Assurance Co*., No. 2:22-CV-35, 2024 WL 239849 (E.D. Tenn. Jan. 22, 2024) (E.D. Tenn. Jan. 22, 2024) (report & recommendation); *Schroeder v. Progressive Paloverde Ins. Co*., 117 Fed. R. Serv. 3d 1762, 2024 WL 308330 (S.D. Ind. 2024); *Curran v. Progressive Direct Ins. Co*., 345 F.R.D. 498 (D. Colo. 2023) ; *Reynolds v. Progressive Direct Ins. Co.*, No. 5:22-CV-503-LCB, 2024 WL 1551226 (N.D. Ala. Apr. 3, 2024); *Freeman v. Progressive Direct Ins. Co.*, No. 1:21-CV-03798-DCC, 2024 WL 2044782 (D.S.C. May 8, 2024). Indeed, following the great weight of authority, the *Schroeder* court certified the claims in that action.

---

[3] State Farm's reliance on *Kartman v. State Farm Mut. Auto Ins. Co.*, 634 F.3d 883, 890 (7th Cir. 2011) is entirely inapposite. *Kartman* involved appraisal of hailstorm damage to individual homes where there were no allegations of deceit or unfair advantage on the part of the defendant; rather the appraisals, like the cost of reconstruction from roof to roof necessarily varied. *Id.* at 890-91. Here, State Farm applied an arbitrary and easily measured reduction in its determination of ACV for total-loss vehicles.

**ARGUMENT**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 19 C 2965, 2023 WL 22141, at *5 (N.D. Ill. Jan. 3, 2023) (Kendall, J.) (quoting *Tex. Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 672–673.

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* To determine whether the "rare circumstances" necessary to justify a stay exist, courts consider: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *See, e.g.*, *Trustees of Chicago Reg'l Council*, 2023 WL 22141, at *5. Notably, the "party requesting a stay bears the burden of showing that circumstances justify an exercise" of the Court's discretion to issue a stay. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

When the stay is sought based on the pendency of an appellate decision in an unrelated case, the Court should be convinced that there are "persuasive indications" that such a decision

will change the law in the manner predicted by the party moving for the stay.[4] *Avila v. JDD Inv. Co.,* No. 21 C 1917, 2021 WL 5905627, at *3 (N.D. Ill. Dec. 13, 2021). "[I]f there is even a fair possibility that the stay * * * will work damage to someone else, the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward." *See, e.g., Lynk Labs, Inc. v. Schneider Elec. USA, Inc.*, No. 16 C 4636, 2016 WL 11940142, at *2 (N.D. Ill. Sept. 13, 2016) (Kendall, J.) (internal quotations and citations omitted).

---

[4] State Farm asserts that "[o]ther Illinois district courts have granted stays where an appellate court will decide issues that provide guidance for some issues in the case before them," and cites several cases. Def. Mem. at 9. However, each of these cases involved issues that would entirely dispose of the pending litigation, particularly when judicial guidance on a statutory cause of action would inform disposition of the litigation, such as for a pending dispositive motion. *Burnett v. Ocwen Loan Servicing, LLC*, No. 17 C 3474, 2017 WL 5171226, at *1 (N.D. Ill. Nov. 8, 2017) (stay pending appellate guidance regarding several provisions of the Telephone Consumer Protection Act, including the definition of an automatic telephone dialing system, formation of prior express consent", and procedures for revocation of consent.); *Conrad v. Boiron, Inc.*, No. 13 C 7903, 2014 WL 2937021, at *3 (N.D. Ill. June 30, 2014) (stay pending resolution of pending appeal that would lead to litigation being "subsumed" in another action); *CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, No. 16 C 11223, 2020 WL 5297045, at *5 (N.D. Ill. Sept. 4, 2020) (stay pending decision by the Supreme Court of California regarding California's Invasion of Privacy Act which would inform pending motion to dismiss); *Vaughan v. Biomat USA, Inc.*, No. 1:20 CV 04241, 2020 WL 6262359, at *1 (N.D. Ill. Oct. 23, 2020) (stay pending Illinois Appellate Court's ruling regarding the statute of limitations for BIPA claims, which would inform dismissal of the plaintiff's claims); *Obrzut v. LVNV Funding, LLC*, No. 19-CV-01780, 2020 WL 3055958, at *1 (N.D. Ill. June 8, 2020) (stay of summary judgment briefing sought by the plaintiff pending guidance from a related case on appeal).

**ARGUMENT**

State Farm's stay request is unjustified. State Farm has not met—and cannot meet—its burden to show that the circumstances warrant a stay.

**I.      It is Unlikely the Seventh Circuit Will Overrule the Certification Order in *Schroeder*.**

A district court's class certification is reviewed under an abuse of discretion standard, which can occur "when [the] district court commits legal error." *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023). The Seventh Circuit has likened appellants attempting to hurdle this high standard of review to "rich men who wish to enter the Kingdom; their prospects compare with those of camels who wish to pass through the eye of a needle." *United States v. Glecier*, 923 F.2d 496, 503 (7th Cir.), *cert. denied,* 502 U.S. 810 (1991) (citing Matthew 19:24).

Given the fact that *ten* district courts across the country have found class certification treatment appropriate on substantially similar claims and records, it is unlikely the Seventh Circuit overrules on such a (high) deferential standard. *See supra* (collecting cases). As such, a stay in this case pending a decision that will likely result in Plaintiffs' favor is unnecessary, particularly given the case's posture where discovery is far from complete and class certification is still in the distant future. *See Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir. 1985) (affirming denial of stay pending appeal where the district court considered likelihood of success as a factor).

**II.      A Stay Will Not Simplify or Streamline the Issues of this Case.**

*First*, State Farms' proposed stay would do nothing to simplify or streamline the litigation, but will instead be yet another effort to delay the progress of this case. To be sure, any guidance from the Seventh Circuit regarding Rule 23 may be considered by the Parties and the Court when a schedule is set for Plaintiffs' eventual Motion for Class Certification, and as such a motion is briefed and, eventually, decided. But fact discovery in this case does not close until October 31,

2024.  Any briefing related to class certification is not likely to start until 2025.  Given that State Farm sees the Seventh Circuit as "already poised to address" *Schroeder*, there is no need to put the brakes on this litigation. Def. Mem. at 7.

Indeed, State Farms' hopes for a change in the law that will start favoring it in cases involving its use of "typical negotiation adjustment" are speculative, at best.  The cases it cites to, such as *Bourque*, *Sampson*, and *Lara* (Def. Mem. at 5) do not involve such an adjustment, but rather either challenge to the entire method chosen by an insurer (*e.g.* the use or non-use of NADA or Kelly Blue Book price guides)[5] or involve an adjustment ("condition adjustment") that could increase the valuation as much as decrease it.[6]  Def. Mem. at 5.  Here, Plaintiffs' are not challenging State farm's use of Multiple Comparable Reports (as opposed to another, permitted, method), but instead its surreptitious and systematic reduction in its payment with its TNA which will *always* reduce the payment an insured is offered.

Even if State Farm's wishes came true with *Schroeder*, it applies, as State Farm readily concedes, to class standing related to contract claims.  Def. Mem. at 6.  State Farm's efforts to argue (prematurely) the futility of a motion to certify Plaintiffs' other claims misses the mark.  State Farm mischaracterizes Plaintiffs' claims as based on affirmative misrepresentations which only damaged Plaintiffs because of the premiums they paid.  However, State Farm's deception and unfairness involves fraudulent omission and concealment as well as violations of the ICFA (among other consumer protection laws) which lead to their being systematically paid less for their total

---

[5]  *See Bourque v. State Farm Mut. Auto. Ins. Co.*, 89 F.4th 525, 528–29 (5th Cir. 2023); *Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414, 416–17 (5th Cir. 2023).
[6]  *See Lara v. First Nat'l Ins. Co. of Am.,* 25 F.4th 1134, 1136–37 (9th Cir. 2022); *see also Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th 452, 457 (3d Cir. 2024) (same).

loss.  *See, e.g.*, FAC ¶¶ 50, 84, 88, 113, 121.  Contrary to State Farm's assertion that Plaintiffs'

claims of fraud are not certifiable due to individual questions, such as reliance, the law clearly

supports Plaintiffs' forthcoming motion to certify such claims. *See, e.g.,* 815 ILCS 505/2 (the

ILCFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or

employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce

. . . *whether any person has in fact been misled, deceived or damaged thereby*.") (emphasis added);

*see also Saltzman v. Pella Corp.*, 257 F.R.D. 471, 485 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir.

2010) (granting motion for class certification of consumer protection and fraud claims and noting

that "reliance in cases of omission, individual reliance is not required or may be inferred from the

purchase itself"); *Phillips v. Ford Motor Co.*, No. 99-L-1041, 2003 WL 23353492, at *6 (Ill. Cir.

Ct. Sept. 15, 2003) (rejecting argument that reliance and proximate cause cannot be proved on a

class-wide basis).  Indeed, the one Seventh Circuit case cited by Defendant on this point actually

rejected the argument that "we have frowned upon class treatment as a poor fit for warranty and

fraud claims because they can involve so many individualized issues," stating instead that

> these theories do not automatically fail the predominance test.  See *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (certain consumer-fraud cases readily establish predominance); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759–60 (7th Cir. 2014) (the fact that "[e]very consumer fraud case involves individual elements" does not preclude class actions). [Defendant] misreads Supreme Court precedent in arguing that *liability* with regard to all class members must be resolved in a single stroke. See *1030 Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (requiring resolution in "one stroke" of a "common contention" central to the common claim); see also *Suchanek*, 764 F.3d at 759–60; *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

*Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029–30 (7th Cir. 2018).

### III.    A Stay Will Not Reduce the Burden of Any Party, Especially Considering the Stage of Litigation.

*Second*, a stay would not reduce the burden of litigation on the Parties and on the Court. *Schroeder* is a decision regarding class certification.  Plaintiffs' claims will proceed with or without certification.  State Farm's concern that the Parties "may have to re-brief certification in light of the decision" in *Schroeder* (Def. Mem. at 7) overlooks that class certification has not been briefed, is not scheduled, and is not likely to commence until 2025.  To the extent *Schroeder* offers guidance on class certification of Plaintiffs' claims, the "Seventh Circuit is already poised" (Def. Mem. at 7), it is likely that the guidance will be waiting for Plaintiffs once they start their briefing and will consider it, to the extent it may be relevant, in the course of framing their claims for class certification.

### IV.    A Stay Will Unduly Prejudice Plaintiffs and Unfairly Benefit Defendant.

*Third*, Plaintiffs would be prejudiced and State Farm advantaged by the requested stay. While State Farm's Motion has been pending, it has proceeded to take the depositions of 12 Plaintiffs.  While Plaintiffs were largely successful at the May 8, 2024 hearing of their Motion to Compel (ECF No. 176), Defendant has still not completed identification of custodians (and potential witnesses) and has yet to produce a single email.  The litigation has been pending for over two years because State Farm has zealously pursued every possible avenue to defeat Plaintiffs' and the Class's claims; further delay risks the loss of testimony, memory, and evidence. *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20 CV 3471, 2020 WL 5097076, at *3–4 (N.D. Ill. Aug. 28, 2020) (noting risk of potential loss of evidence); *cf. Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 877 (N.D. Ill.), *aff'd sub nom. Trading Techs. Int'l, Inc. v. Rosenthal Collins Grp., LLC*, 669 F. App'x 568 (Fed. Cir. 2016) (Kendall, J.)

11

("Although the potential for delay "does not, by itself, establish *undue* prejudice . . . waiting for the [appellate] process to run its course risks prolonging the final resolution of the dispute and thus may result in some inherent prejudice to the plaintiff."). Particularly in light of the lack of support for the first two factors, the risk of any further delay in moving discovery forward can only prejudice Plaintiffs and unfairly benefit Defendant.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Stay should be denied.

Dated: May 24, 2024                    Respectfully submitted,

                                       **SHAMIS & GENTILE, P.A.**

                                       */s/ Andrew J. Shamis*
                                       Andrew J. Shamis
                                       Edwin E. Elliott
                                       14 NE 1st Avenue, Suite 705
                                       Miami, Florida 33132
                                       Telephone: 305-479-2299
                                       ashamis@shamisgentile.com
                                       edwine@shamisgentile.com

                                       **EDELSBERG LAW, P.A.**
                                       Scott Edelsberg*
                                       scott@edelsberglaw.com
                                       20900 NE 30th Ave., Suite 417
                                       Aventura, FL 33180
                                       Office: (786) 289-9471
                                       Direct: (305) 975-3320

                                       **SEEGER WEISS LLP**
                                       Christopher A. Seeger*
                                       Christopher L. Ayers*
                                       55 Challenger Road, 6th Fl.
                                       Ridgefield Park, NJ 07660
                                       Telephone: (973) 639-9100
                                       Facsimile: (973) 639-8656
                                       cseeger@seegerweiss.com
                                       cayers@seegerweiss.com

**SEEGER WEISS LLP**
Scott A. George
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
sgeorge@seegerweiss.com

***Counsel for Plaintiffs and the Proposed Class***

\* Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

      I, Andrew Shamis, hereby certify that on this date, May 24, 2024, I caused the foregoing

***Opposition to Defendant's Motion to Stay*** to be filed with the Clerk of the Court via the Court's

CM/ECF system, which will provide electronic mail notice to all counsel of record.


                             */s/Andrew J. Shamis*
                             Andrew J. Shamis, Esq.