THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNADETTE WILLIAMS, et al., on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> *Defendant*. | No. 22 C 1422 <br><br> Judge Virginia M. Kendall |

### MEMORANDUM OPINION AND ORDER

On December 21, 2023, the Court addressed Defendant State Farm Mutual Automobile Insurance Company's motion to dismiss (1) Plaintiffs' common-law and statutory fraud claims for failure to state a claim, and (2) Plaintiff Sabrina Capers's breach-of-contract claims for improper venue. (Dkt. 126). The Court found that Capers must arbitrate her breach-of-contract claims and therefore, stayed her case pending arbitration. As for State Farm's remaining arguments, the Court denied them on procedural grounds, noting that absent an intervening amended complaint, a defendant cannot raise new arguments in a successive Rule 12(b)(6) motion when he could have raised them earlier. State Farm now moves for reconsideration, stating that this Court previously permitted State Farm to file a successive Rule 12(b)(6) motion that raises new arguments. Upon a review of the record, the Court did err in denying State Farm's arguments on procedural grounds and now reconsiders State Farm's fraud arguments [129]. But even upon their merits, State Farm's motion to dismiss [94] is still denied.

1

BACKGROUND

**I.   Factual Background**

The Court assumes familiarity with the facts of this case from its prior opinions. *See, e.g.*, *Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980, 987 (N.D. Ill. 2023). In short, State Farm provided car insurance coverage for Plaintiffs and, between 2017 and 2021, deemed their vehicles as total losses. (Dkt. 58 ¶¶ 12–44). Under State Farm's Comprehensive and Collision Coverage, when repair of an insured vehicle is impossible or uneconomical—rendering it a "total loss"—State Farm may settle the claim by paying the insured the actual cash value of the vehicle. (*Id.* at ¶ 2; *see generally* Dkt. 58-1). To determine the actual cash values of Plaintiffs' vehicles, State Farm used Autosource Market-Driven Valuation, a system which aggregated prices from online sales and listings of comparable vehicles. (Dkt. 58 ¶ 51; *see generally* Dkt. 58-3–58-35). At State Farm's directive, Autosource applied a typical-negotiation adjustment to the market-value price of comparable vehicles to decide the total-loss payments—an adjustment reflecting the average difference between the listed price and a lower theoretical price that a dealer would accept. (Dkt. 58 ¶¶ 51–52). But actual negotiations did not factor into the typical-negotiation adjustment. (*Id.* at ¶ 53). Nor did State Farm consult with any dealers or consider that "no-haggle" pricing predominates in the used-car market, especially online. (*Id.*) At the time State Farm determined the actual cash values of Plaintiffs' vehicles, due to car-parts supply-chain issues during the COVID-19 pandemic, used cars often sold at or above listed prices. (*Id.*) Furthermore, no state or local insurance regulations permitted State Farm to make such an adjustment. (*Id.*) Nonetheless, in calculating Plaintiffs' vehicles' actual cash values, the typical-negotiation adjustment took 4–11% off the prices of comparable vehicles—in turn, reducing the total-loss payments Plaintiffs received. (*Id.* at ¶¶ 12–44, 53–55).

State Farm did not tell insureds about the typical-negotiation adjustment before they bought their policies. (*Id.* at ¶ 52). Rather, in the policy—which was consistent across all of Plaintiffs' states, (*id.* at ¶ 2)—State Farm shall "[p]ay the actual cash value of the **covered vehicle** minus any applicable deductible." (*See, e.g.*, Dkt. 58-1 at 39) (emphasis and bolding in original). For example, Plaintiff Diane Newkirk, a New York citizen, owned a 2015 Subaru Impreza sedan insured by State Farm. (Dkt. 58 ¶ 34). Around January 23, 2021, State Farm deemed Newkirk's vehicle a total loss and she filed a claim for its actual cash value. (*Id.*) On September 9, 2021, Newkirk received a letter from Julie Hicks, a claim specialist at State Farm, stating that "the actual cash value of [her] vehicle, less any applicable deductible" was $10,544 and paid her $10,887.52.[1] (*Id.*; Dkt. 58-25 at 2–5). Hicks went on to state that "[a]ctual cash value is generally determined by the age, condition, equipment, and mileage of your vehicle at the time the loss occurred." (Dkt. 58-25 at 2). Yet, on the market valuation report, dated February 1, 2021, State Farm, through Autosource, applied a typical-negotiation adjustment of approximately 4–6% across comparable vehicles to arrive at a lower valuation. (Dkt. 58 ¶ 34; Dkt. 58-25 at 8–9 ("The advertised price…was adjusted to account for typical negotiation.")). Specifically, State Farm looked at four comparable vehicles with advertised prices of: $12,850; $9,922; $11,900; and $11,995. (Dkt. 58-25 at 8–9). Those advertised prices were then "adjusted to account for typical negotiation" respectively: $12,079; $9,227; $11,186; and $10,695. (*Id.*)

**II.    Procedural Background**

Plaintiffs bring 33 claims: breach of contract (Count 2); breach of the covenant of good faith and fair dealing (Count 3); fraudulent concealment (Count 4); fraud in the inducement (Count 5); unjust enrichment (Count 6); declaratory judgment (Count 7); violation of the Illinois Consumer

---

[1] The amount Newkirk received was adjusted to add a sales tax and subtract a deductible. (Dkt. 58-25 at 2).

Fraud and Deceptive Business Practices Act ("ICFA") (Count 1); and violation of 25 other consumer-protection statutes (Counts 8–33). (Dkt. 58 ¶¶ 75–637).

In a previous opinion, the Court denied State Farm's motion to dismiss "headless" claims[2] and motion to compel appraisal, or in the alternative, dismiss or grant summary judgment, but granted State Farm's motion to transfer six Plaintiffs and denied it for four. *See generally Williams*, 678 F. Supp. 3d. In a subsequent opinion, the Court rejected State Farm's fraud arguments on procedural grounds and stayed Plaintiff Sabrina Capers's case pending arbitration of her breach-of-contract claims. *See generally Williams v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 8827946 (N.D. Ill. Dec. 21, 2023).

There are several concurrent lawsuits challenging State Farm's use of the typical-negotiation adjustment to determine total-loss payments.[3] Some of these cases have advanced to the class-certification stage.

## DISCUSSION

"Motions for reconsideration serve a limited purpose and are 'only appropriate where the court has misunderstood a party, where a court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have

---

[2] "Headless" claims are Plaintiffs' claims under the laws of states where no named Plaintiff is a citizen. *Williams*, 678 F. Supp. 3d at 1012–14. The Court denied State Farm's motion to dismiss Plaintiffs' headless claims, stating that the question of whether Plaintiffs can adequately represent unnamed class members from other states is a question better saved for class certification. *Id.*

[3] *See, e.g.*, Complaint, *Shields v. State Farm Mut. Auto. Ins. Co.*, No. 6:19-cv-01359 (W.D. La. Oct. 16, 2019), ECF No. 1; Notice of Removal, *Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-02482 (W.D. Tenn. July 2, 2020), ECF No. 1 (filed in state court on May 8, 2020); Notice of Removal, *Wiggins v. State Farm Mut. Auto. Ins. Co.*, No. 8:21-cv-03803 (D.S.C. Nov. 19, 2021), ECF No. 1 (filed in state court on October 15, 2020); Class Action Complaint, *Chadwick v. State Farm Mut. Auto. Ins. Co.*, No. 4:21-cv-01161 (E.D. Ark. Nov. 29, 2021); Class Action Complaint, *Nichols v. State Farm Mut. Auto. Ins. Co.*, No. 2:22-cv-00016 (S.D. Ohio Jan. 4, 2022), ECF No. 1; Complaint, *Varela v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00970 (D. Minn. Apr. 15, 2022), ECF No. 1; Complaint, *Muhammad v. State Farm Indem. Co.*, No. 2:22-cv-06149 (D.N.J. Oct. 18, 2022), ECF No. 1.

been discovered.' " *Nat'l Sur. Corp. v. Bedivere Ins. Co.*, 2020 WL 6277335, at *1 (N.D. Ill. Jan. 28, 2020) (quoting *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011)). When State Farm filed its second motion to dismiss under Rule 12(b)(6), the Court declined to address the merits of its fraud arguments, and instead, denied it on procedural grounds. The Court reasoned that in the absence of an intervening amended complaint, if State Farm could have raised its present failure-to-state-a-claim arguments in a previous motion and did not, then it forfeited its ability to do so. *See* Fed. R. Civ. P. 12(g); *see also Kramer v. Am. Bank & Tr. Co.*, 2014 WL 3638852, at *2 (N.D. Ill. July 23, 2024) (Lee, J.). After all, the spirit of Rule 12(g) is to prevent piecemeal litigation and delays. In response, State Farm argues that during a status hearing on June 21, 2023, the Court gave State Farm permission to file a successive motion to dismiss under Rule 12(b)(6). (Dkt. 82).

Upon a review of the record, the Court did allow State Farm to file a successive motion to dismiss pursuant to Rule 12(b)(6). As a general matter, the Court still finds that successive motions to dismiss, absent an intervening amended complaint, offend Rule 12(g). But, as prior permission was granted, the Court will address the merits of State Farm's fraud arguments.

I. **Legal Standard**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-

5

pleaded factual allegations in Plaintiffs' Complaint as true, "drawing all reasonable inferences in [their] favor." *Id*. (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)); *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("Taking all facts pleaded in the complaint as true and construing all inferences in the plaintiff's favor, we review the complaint and all exhibits attached to the complaint.").

**II.     Illinois Consumer Fraud and Deceptive Business Practices Act (Count 1)**

In Count 1, all 27 remaining Plaintiffs allege that State Farm violated ICFA. State Farm now seeks to dismiss the ICFA claims by 26 Plaintiffs who are non-Illinois residents, arguing that it does not "apply to fraudulent transactions which take place outside of Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005); (*see* Dkt. 94 at 5–9). In other words, State Farm is asking this Court to perform a choice-of-law analysis. Although State Farm insists otherwise, the Seventh Circuit's decision in *Morrison v. YTB International, Inc.* stops the argument in its tracks. There, the defendant moved to dismiss non-Illinois class members under Rule 12(b)(6) because "the Illinois Consumer Fraud Act does not apply to its customers outside Illinois." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011). The Seventh Circuit held that if ICFA did not apply to events outside of Illinois, then plaintiffs must rely on another state's law—that is a choice-of law question that affects class certification and does not lend itself to resolution under Rule 12(b)(6). *Id.* at 535–38. Indeed, relying on *Morrison* and rejecting a similar argument in State Farm's motion to dismiss the headless claims, this Court explained: the "choice-of-law issues implicit in State Farm's challenge are best resolved at the class-certification stage." *Williams*, 678 F. Supp. 3d. at 1012–14.

Resisting the Court's prior ruling, State Farm presents a strained interpretation of the Rules Enabling Act. It argues that declining to rule on a 12(b)(6) motion because there are class

allegations violates the Rules Enabling Act by "permitting a putative representative plaintiff to avoid a dismissal that a plaintiff in an individual case could not." (Dkt. 94 at 9). The argument is underdeveloped and without merit.

The Rules Enabling Act "forbids interpreting Rule 23," or any rule of procedure, "to 'abridge, enlarge, or modify any substantive right.' " *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (citing 28 U.S.C. § 2072(b)). "The test is not whether the rule affects a litigant's substantive rights; most procedural rules do." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (citing *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946)). "What matters is what the rule itself regulates: If it governs only the manner and the means by which the litigants' rights are enforced, it is valid; if it alters the rules of decision by which the court will adjudicate those rights, it is not." *Id.* (cleaned up).

Underlying State Farm's argument is the faulty premise that Rule 12(b)(6) somehow gives State Farm a substantive right. Yet, State Farm musters no caselaw, law review articles, or any support for this position. Rule 12(b)(6) is a procedural tool that allows courts to weed out factually deficient claims and facilitate judicial economy. Rule 12(b)(6) does not create any substantive rights. By extension, interpreting Rule 23 to require different treatment of Rule 12(b)(6) motions in the putative class context in no way alters any substantive right. By kicking the choice-of-law can down the road to the class-certification stage, the Court leaves no footprint on the merits. Rather, the decision is procedural, and it finds support in *Morrison*: the class-certification stage—

not the Rule 12(b)(6) stage—is the appropriate time to address Count I's choice-of-law question. Thus, the Court denies the motion to dismiss the non-Illinois Plaintiffs' ICFA claims.

### III. Fraud Allegations (Counts 1, 4–6, 8–33)

State Farm next moves to dismiss all the fraud claims because they were not pleaded with particularity. *See* Fed. R. Civ. P. 9(b). According to State Farm, Plaintiffs allege a total of 33 counts, 30 of which are fraud related. (Dkt. 94 at 9). State Farm categorizes Plaintiffs' allegations into two buckets: (1) fraudulent misrepresentation and (2) fraudulent omission. But State Farm does not take aim at any specific fraud statute or its elements. Rather, it asserts that under the general theory of pleading fraud, Plaintiffs have not met the particularity requirement to satisfy Rule 9(b). Or otherwise put, Plaintiffs have failed to describe the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quotation omitted). State Farm argues that Plaintiffs, at best, have only provided vague allegations of fraud without any factual support to answer the five basic questions describing it. In response, Plaintiffs clarify that their fraud theory is premised on a fraudulent omission and argue that they have pleaded with sufficient particularity.

State Farm is correct that Rule 9(b) requires the plaintiff to plead fraud with particularity, often shorthanded to the "who, what, when, where, and how." *Id.* But Rule 9(b) does not demand "form for form's sake": "although 'plaintiffs are not absolutely required to plead the specific date, place, or time of the fraudulent acts,' they still must 'use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' " *Id.* at 442 (internal quotation omitted). Thus, the requisite level of detail to support a fraud claim varies from case to case. *Id.* (citing *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998)). The purpose

behind Rule 9(b) is "to force the plaintiff to do more than the usual investigation before filing his complaint," *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quotation omitted), so to give fair notice to the defendant of his role in the fraud, *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). Moreover, the heightened standards of Rule 9(b) are relaxed where the plaintiff pleads a claim of fraud by omission rather than misrepresentation. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Patel*, 2020 WL 6681348, at *2 (N.D. Ill. Nov. 12, 2020) (collecting cases).

As State Farm does not argue that Plaintiffs failed to state a claim for any specific fraud statute, the Court will test if Plaintiffs' allegations state a claim by assuming, without deciding, that ICFA applies because both parties predominantly cite Illinois substantive law. *See, e.g.*, *NuWave, LLC v. Cincinnati Specialty Underwriter Ins. Co.*, 2016 WL 11708238, at *1 n.1 (N.D. Ill. Oct. 11, 2016) (assuming Illinois law applied because both parties cited to Illinois law); *Platinum tech., inc. v. Fed. Ins. Co.*, 2000 WL 875881, at *2 n.1 (N.D. Ill. June 28, 2000) (same).[4] To plead an ICFA claim, a plaintiff must allege: "(1) "that the defendant committed a deceptive or unfair act"; (2) "with the intent that others rely on the deception"; (3) that the act occurred in the course of trade or commerce"; and (4) actual damages; (5) proximately caused by the deception. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quotation

---

[4] The Court recognizes that the elements of each state's consumer-protection statute vary from one another. *Compare Volino v. Progressive Cas. Ins. Co.*, 2022 WL 5242894, at *4 (S.D.N.Y. Oct. 6, 2022) ("To state a claim under GBL § 349, a plaintiff must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." (cleaned up)) *with Williams v. Progressive Direct Ins. Co.*, 631 F. Supp. 3d 202, 207 (D. Del. 2022) ("Delaware's General Assembly defines an unlawful fraudulent practice through: The act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, *in connection with the sale, lease, receipt, or advertisement of any merchandise*, whether or not any person has in fact been misled, deceived, or damaged thereby." (emphasis in original)); *see also O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 961 (N.D. Ill. 2021) (noting that "some state consumer protection statutes may allow claims to proceed on the grounds of 'unfair'…that may not rise to the level of being fraudulent"). But as discussed, the Court will not rule on the choice-of-law question until the class-certification stage. *See Morrison*, 649 F.3d at 536–38.

omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Taking the Complaint and its exhibits together, Plaintiffs have pleaded a fraudulent act with sufficient particularity. Plaintiffs allege that the injury from State Farm's fraud occurred between 2017 and 2021, when State Farm underpaid the actual cash value of Plaintiffs' vehicles by applying a 4–11% typical-negotiation adjustment across all comparable vehicles. (*See, e.g.*, Dkts. 58-3–58-35). Plaintiffs included market valuation reports that contain the dates of when State Farm deemed the vehicles as total losses and the advertised prices of comparable vehicles. (*Id.*) Those prices were then "adjusted to account for typical negotiation." (*Id.*) Taking Plaintiff Diane Newkirk's vehicle as an example, State Farm deemed her 2015 Subaru Impreza a total loss on or around January 23, 2021. (Dkt. 58 ¶ 34). According to the market valuation report for her vehicle, State Farm looked at the advertised prices for four comparable vehicles and then adjusted them downward by 4–6% to account for typical negotiation. And the report then used the adjusted numbers to calculate the 2015 Subaru's Impreza's adjusted market value.

The problem, however, is that State Farm never disclosed this adjustment when Plaintiffs purchased State Farm's coverage, and the policy—which was consistent across all Plaintiffs' states—is silent on typical-negotiation adjustments. *See, e.g.*, *Holmes v. Progressive Universal Ins. Co.*, 2023 WL 130477, at *4 (N.D. Ill. Jan. 9, 2023) (finding that plaintiffs sufficiently pleaded a deceptive act where the insurance company failed to disclose the application of a projected sold adjustment in the insurance policy or vehicle valuation). The policies state that, in the event a covered vehicle is damaged, State Farm would "[p]ay the actual cash value of the covered vehicle minus any applicable deductible." (*See, e.g.*, Dkt. 58-1 at 39). But Plaintiffs assert the typical-negotiation adjustment is not applicable. In fact, there seems to be no basis rooted in practice or

law, as Plaintiffs allege, for employing such an adjustment. Based on the example letter sent by State Farm's claim specialist, the actual cash value is generally determined by "the age, condition, equipment and mileage" of the total-loss vehicle, (Dkt. 58-25 at 2)—again, silent on any negotiation practice that affects the final value. State Farm allegedly never contacted any used-car dealerships or sellers to negotiate down any prices. Citing to several used-car sellers, the predominant practice in the used-car market is to avoid any negotiation or haggling on prices, particularly those posted on the internet. (*See* Dkt. 58 ¶ 53 n.1). As Plaintiffs remarked, during COVID-19, the actual cash values of used vehicles were sold at or above the listed internet prices. (*See* Dkt. 58 ¶ 53). And no state insurance laws or regulations permit State Farm to take a deduction of this kind. (*See id.*) Neither the market valuation report nor insurance policy details the origin of the typical-negotiation adjustments or its methodology, like why some comparable vehicles have greater typical-negotiation adjustments than others. So to that end, Plaintiffs argue that they never received the actual cash value of their vehicles. Interpreting Plaintiffs' allegations liberally, the typical-negotiation adjustment appears to be arbitrary.

Although Plaintiffs did not provide precise dates as to when each Plaintiff purchased their car policies, they were all insured by State Farm under substantively similar insurance policies prior to their accidents. *See Ridings v. Am. Fam. Ins. Co.*, 2021 WL 722856, at *3 (N.D. Ill. Feb. 24, 2021). Thus, the question of who sold Plaintiffs the policies seems less important when the alleged fraudulent omission is nationwide and over an extended period of time. *See, e.g.*, *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *7 (N.D. Ill. Feb. 26, 2019) (noting that Rule 9(b)'s requirements of particularity do "not fit well in dealing with extended fraudulent schemes

involving a large volume of transactions" (quoting *U.S. ex rel. Salmeron v. Enter. Recovery Sys., Inc.*, 464 F. Supp. 2d 766, 768 (N.D. Ill. 2006))).

To bolster the plausibility of their fraud claim, Plaintiffs point to a settlement agreement between California policyholders and State Farm where State Farm agreed not to use a "projected sold" or "age of ad" adjustment when calculating the total loss comparable vehicle valuation reports. *See* Final Order and Judgment, *Garner, et al. v. State Farm Mut. Auto. Ins. Co.*, No. 4:08-cv-01365 (N.D. Cal. Apr. 22, 2010), ECF No. 282; *Est. of Brown v. Arc Music Grp.*, 523 F. App'x 407, 410 (7th Cir. 2013) (explaining that courts can take judicial notice of public records, like a settlement agreement). Plaintiffs argue that the "projected sold" or "age of ad" adjustment is effectively the same as the typical-negotiation adjustment here. Of course, that settlement agreement is not indicative of any wrongdoing by State Farm. Rather, the Court simply notes that State Farm previously employed a similar adjustment when calculating comparable vehicle valuations for California policyholders. *Garner, et al.*, No. 4:08-cv-01365, ECF No. 282 at 4. So it is reasonable to infer that State Farm uses some adjustment in other states too. In the same vein, it is worth noting that State Farm faces several concurrent lawsuits involving similar, if not the same, allegations across various federal districts. Taken together, they give Plaintiffs' claim an additional plausibility boost. *See Pirelli*, 631 F.3d at 443 ("It is appropriate to accord limited corroborative weight to allegations in another's lawsuit.").

With a holistic view, the Court can reasonably infer that failing to disclose the typical-negotiation adjustment in the policy is a deceptive conduct. *See, e.g., Fleury v. Gen. Motors LLC*, 2023 WL 3792411, at *6 (N.D. Ill. June 2, 2023) (finding fraudulent concealment for failing to disclose warning in owner's manual). Plaintiffs have alleged sufficient facts with particularity to show that State Farm routinely undervalued and underpaid the insureds' vehicles. The Court finds

that the omission could plausibly mislead a reasonable consumer to purchase inadequate coverage. *See id.* ("A fact is material if the 'buyer would have acted differently knowing the information.' " (quoting *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (Ill. App. Ct. 2001))). As Plaintiffs allege, they would not have purchased the insurance coverage or would have paid less premiums had they known that they would not be fully compensated with the actual cash value of their vehicles. (Dkt. 58 ¶ 90); *Holmes*, 2023 WL 130477, at *4; *Fleury*, 2023 WL 3792411, at *6. That makes the omission of the typical-negotiation adjustment from the policies material. And State Farm does not dispute that the alleged deception "occurred in the course of trade or commerce." *Benson*, 944 F.3d at 646 (quotation omitted); *see Fleury*, 2023 WL 3792411, at *6 (commenting that ICFA employs a sweeping definition of "trade or commerce"). Moreover, the omission proximately caused Plaintiffs' injuries—but for the typical-negotiation adjustments, Plaintiffs would have received a greater payout from State Farm. *See Benson*, 944 F.3d at 647 (holding that a private plaintiff suing under ICFA must show that they suffered "actual damages, meaning pecuniary loss").

State Farm rebuts by citing to several out-of-circuit decisions where courts have held that the plaintiffs have failed to allege similar types of adjustment-based fraud with particularity. *See, e.g.*, *Grady v. Progressive Direct Ins. Co.*, 643 F. Supp. 3d 929, 935 (D. Minn. 2022); *Williams v. Progressive Direct Ins. Co.*, 631 F. Supp. 3d 202, 212 (D. Del. 2022). But for every case that goes State Farm's way, Plaintiffs point to cases where such allegations have survived motions to dismiss. *See, e.g.*, *Varela v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 5021182, at *4 (D. Minn. Aug. 7, 2023)[5]; *Holmes*, 2023 WL 130477, at *4. As discussed, a Rule 9(b) analysis is case

---

[5] State Farm comments on how *Varela v. State Farm Mutual Automobile Insurance Company* is distinguishable because the case involved the Minnesota Consumer Fraud Act ("MCFA") and not the common law or other state statutory causes of actions here. But in its motion to dismiss, State Farm never challenged the elements of any common law or statutory causes of actions. Rather, it argues that under the general theory of fraud, Plaintiffs failed to allege

13

specific, and the Court does not know the exact materials or allegations presented in those cases' complaints. But faced with this Complaint's allegations, the exhibits containing Plaintiffs' insurance policies and market valuation reports, and judicial notice of the 2010 settlement and several concurrent lawsuits against the same defendant challenging the same actions, the Court finds that Plaintiffs have pleaded their fraud cause of action with sufficient particularity.[6] Thus, State Farm's motion to dismiss for failure to comply with Rule 9(b) is denied.

## CONCLUSION

The Court admits error when it denied State Farm's fraud arguments on procedural grounds and grants reconsideration [129]. But even upon the merits, the Court finds that State Farm's fraud arguments fail. Thus, the motion to dismiss [94] remains denied.

_____
Virginia M. Kendall
United States District Judge

Date: August 21, 2024

---

particular facts. At this stage, the Court does not know how similar the MCFA is to the ICFA or any other states' statutory causes of actions because State Farm has not argued for any similarities or dissimilarities among the various statutes.

[6] Since the Court finds that Plaintiffs have alleged its fraud allegations with sufficient particularity, Plaintiffs' other claims that hinge on those fraud allegations survive for now.