**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BERNADETTE WILLIAMS, et al., on behalf of themselves and all others similarly situated, | ) ) ) | No. 22 C 1422 |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, and STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation. | ) ) ) ) ) | |
| *Defendant*. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this putative national class action, Plaintiffs are insureds who filed "total loss" claims for the actual cash value ("ACV") of their totaled vehicles under their automobile insurance policies sold by State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company (collectively, "State Farm"). Plaintiffs challenge State Farm's application of a "typical-negotiation adjustment" ("TNA") in the calculation of the ACV of Plaintiffs' vehicles, which reduced Plaintiffs' total loss payments based on the average difference between the list price and a lower price that a dealer would theoretically accept. Alleging that this methodology resulted in undervalued payments, Plaintiffs bring various claims, including breach of contract, breach of the covenant of good faith and fair dealing, fraudulent concealment, fraudulent inducement, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act

1

("ICFA") and various other state consumer protection statutes. (Second Amended Complaint, Dkt. 242 ¶¶ 76–555).

Pending before the Court is Defendant State Farm's Motion for Partial Summary Judgment [250], and Motion to Compel Appraisal [264]. State Farm argues it is entitled to summary judgment on a host of grounds. Those are reproduced here, alongside the Court's determination for ease of reading: summary judgment is denied as to all Plaintiffs' unjust enrichment claims but granted as to all but four of Plaintiffs' duty of good faith and fair dealing claims, with two of the remaining claims dismissed on other grounds. Summary judgment is granted as to claims brought under the consumer protection acts of Alaska and West Virginia but denied as to claims brought under the consumer protection acts of Kentucky and Mississippi. Sixteen individual Plaintiffs' breach of contract and declaratory judgment claims are dismissed as time-barred (denied as to eight and granted as to eight); summary judgment as to Plaintiff Monica Woods's individual claims is granted in its entirety; and a ruling on summary judgment as to Bernadette Williams's individual claims is reserved for further briefing.

State Farm also moves to compel appraisal, renewing its earlier motion [65] that this Court denied [83], and moves to compel appraisal in the first instance as to an additional group of Plaintiffs.

For the reasons below, the Court grants in part and denies in part Defendant's Motion for Partial Summary Judgment [250] and denies Defendant's Motion to Compel Appraisal [264].

## **BACKGROUND**

The Court assumes familiarity with the scope of this case from its prior rulings. *See, e.g.*, *Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980 (N.D. Ill. 2023); *see, e.g.*, *Williams v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 3888832 (N.D. Ill. Aug. 21, 2024). As far as the

present action is concerned, State Farm's arguments in favor of summary judgment are, by and large, purely legal in nature and do not depend on the facts as the Parties present them. Even so, the Parties are broadly in agreement on the operative facts for this Motion. (Dkts. 252, 259).

That includes the following: one of the State Farm entities—State Farm Mutual or State Farm Fire—issued insurance policies to Plaintiffs, Plaintiffs made a claim for physical damage coverage, and each of these Plaintiffs' vehicles was deemed a total loss. (Dkt. 259 ¶¶ 3–6). The dates of loss are not in dispute, nor are each individual policy's stated limitations window for legal action regarding damage coverage, nor that State Farm accurately quotes from Plaintiffs' actual policies in its Motion for Partial Summary Judgment, though Plaintiffs pepper their response with disputes as to "the completeness and relevance" of the policy provisions. (Id. ¶¶ 1, 10–30). The Parties similarly agree that State Farm sent valuation letters regarding these total loss claims,[1] which all Plaintiffs received, and that State Farm subsequently made payments to Plaintiffs (and/or any lienholders). (Id. ¶ 7). Plaintiffs also do not dispute the existence of the legal proceedings that State Farm argues bar Monica Woods's and Bernadette Williams's respective claims, arguing instead that they are not dispositive in the present action. (Id. ¶¶ 31–33). In short, the clashes here are legal, not factual, in nature.

The present Motion for Partial Summary Judgment was submitted on November 21, 2024—prior to the close of fact discovery. (Dkt. 250). After the close of fact discovery at the end of 2024, State Farm renewed its Motion to Compel Appraisal. (Dkt. 264). This Court denied State Farm's motion to compel appraisal in an earlier ruling on the grounds that the appraisal process

---

[1] State Farm does assert that the valuation letters tell Plaintiffs to contact the insurance agency if they believe the stated value of their car is incorrect, and that insureds are always free to ask for the AutoSource report. (Dkt. 252 ¶¶ 8–9). Plaintiffs note that State Farm only cites this statement in its discussion of Plaintiff Chavez's contract claim and thus declare it "disputed and denied as immaterial and irrelevant as to the other Plaintiffs." (Dkt. 259 ¶¶ 8–9). Regardless, the disputed fact does not weigh on Plaintiff Chavez's contract claim, nor any other part of this Opinion.

could not resolve the Parties' disputes. *Williams*, 678 F. Supp. 3d at 1012. State Farm now argues that evidence unearthed in subsequent depositions has materially changed the landscape on the appraisal issue for 19 plaintiffs.[2] (Dkt. 264 at 2).

Briefing regarding expert discovery and class certification is ongoing, (Dkt. 317), and the parties are set to present the Magistrate Judge presiding over discovery with an updated joint status report on September 30, 2025. (Dkt. 323). Separate and apart from the present action, State Farm filed a motion for summary judgment on August 8, 2025. (Dkt. 310). Only the Motion for Partial Summary Judgment and the Motion to Compel Appraisal are in front of the Court today.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). A material fact is genuinely disputed when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party bringing the motion bears the initial burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)).

---

[2] Specifically, State Farm renews the motion against eight Plaintiffs subject to State Farm's original appraisal motion: Haunanimae Cervantes-White, Patricia Couch, William Ross Dean, Maria Munoz, Diane Newkirk, Diane Newkirk, Sandra Smiling, and Michelle Snyder. State Farm's Motion also seeks to compel the appraisal of Plaintiff Yvette Mouer, who was added to this case after State Farm filed its original appraisal motion. Third, in the case of the denial of its Motion for Partial Summary Judgment, State Farm moves to compel the appraisal of Plaintiffs Cheri Anbar, James Ashe, Rafael Chavez, Davey Johnston, Merrill Love, Tracy O'Brien, Deirdre Palmer, Ivan Serrata Reyes, Jamie Walker, and Monica Woods. (Dkt. 264 at 2).

The Court "construe[s] all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir.2013). The Court also gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor[.]" *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (cleaned up). At this stage, the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Summary judgment should be denied when "a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted[.]" *White*, 829 F.3d at 841.

## DISCUSSION

State Farm moves for summary judgment on three general grounds, that: 1) some of plaintiffs' claims are not legally cognizable; 2) an additional group of claims are time-barred; and 3) two plaintiffs are collaterally attacking prior claim resolutions, and thus should have their individual claims dismissed in the entirety. (251 at 4, 8, 11).

State Farm states that a threshold issue for its motion is which state law applies, an assertion with which Plaintiffs—and this Court—disagree. (Dkts. 251 at 4; 258 at 3). This is the third time this Court has reminded State Farm that the choice-of-law issues implicit in its challenge "are best resolved at the class-certification stage." *Williams*, 678 F. Supp. 3d. at 1012–14; *Williams*, 2024 WL 3888832, at *3 (relying on *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011)). In line with this determination, Plaintiffs wish to reserve briefing on choice of law for a later time while accepting "for the purposes of the present Motion the law Defendants assert governs each of the disputes." (Dkt. 258 at 3).

"Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426–27 (7th Cir.1991). Indeed, the Seventh Circuit has noted it would be "a foolish expenditure of judicial resources" to not honor parties' stipulation on the issue. *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998). That is the nature of our adversarial system, and it rings especially true when, as here, parties demonstrate no quarrel on the applicable law. Courts "are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)." *Mid-Valley Inc.*, 942 F.2d at 427. Thus, the Court will proceed according to the Plaintiffs' declaration that "the law Defendants assert governs each of the disputes." (Dkt. 258 at 3). The relevant portion of Defendants' brief reads as follows:

> There is not an actual conflict between the forum law and another state's law in the arguments supporting State Farm's motion, so Illinois law applies. But if an actual conflict arises, any Plaintiffs whose policies contain a choice-of-law clause must submit to the laws of their respective home states.

(Dkt. 251) (citations modified).[3]

With that stipulation in hand, the Court applies Illinois law to all of Plaintiffs' state-law claims and turns now to the Motion for Partial Summary Judgment.

## I.     Motion for Partial Summary Judgment

State Farm makes six arguments in support of its motion. First, that plaintiffs cannot bring unjust enrichment claims where a valid contract governs the parties' relationship. (251 at 4). Second, that Illinois law and the law of twenty states around the duty of good faith and fair dealing entitles them to summary judgment to all but four of Plaintiffs' good faith and fair dealing claims. (*Id.* at 6). Third, that the law of four states—Alaska, Kentucky, Mississippi, and West Virginia—

---

[3] Despite this statement in their brief, Defendants include in their Local Rule 56.1 statement the assertion that "[t]he law of the state where each Plaintiff resides governs each policy," which Plaintiffs correctly note is legal argument not appropriate for a 56.1 statement of fact. (Dkt 259 ¶ 2). Accordingly, the Court discards it.

preclude plaintiffs' ability to bring consumer protection claims under the relevant acts. (*Id.* at 7). Fourth, regarding timeliness: Defendant argues that contractual suit limitation provisions in seventeen plaintiffs' policies bar those plaintiffs' contract-based claims. (*Id.* at 8). And for its fifth and sixth contentions, State Farm moves for summary judgment as to two specific plaintiffs on distinct grounds. (*Id.* at 11).

### A. Motion for Summary Judgment on Unjust Enrichment Claims, Good Faith and Fair Dealing Claims, and State Consumer Protection Claims

#### 1. Unjust Enrichment

The first issue is whether Plaintiffs can bring unjust enrichment claims alongside claims relating to breach of valid contract. While the Seventh Circuit previously declined to "resolve definitively whether Illinois law recognizes unjust enrichment as an independent cause of action," *see Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011), more recent cases have erred on the side of permitting no independent action. *See, e.g.*, *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (declining to discuss *Cleary* but finding no standalone claim for unjust enrichment under Illinois law). Therefore, the Court evaluates Plaintiffs' claims only under the circumstances in which an unjust enrichment claim can be brought alongside relevant claims.

As a general matter, "[u]nder Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985) (citing *La Throp v. Bell Federal Savings & Loan Ass'n*, 370 N.E.2d 188 (Ill. 1977)); *see also People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165 (Ill. 1992) (holding that a claim for unjust enrichment is "based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application"). Where an actual contract governs the

7

parties' relationship, plaintiffs can only establish a legally sufficient claim of unjust enrichment by simultaneously establishing a legally sufficient claim of fraud, relevant statutory violation, or the like. *See, e.g.*, *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741–42 (7th Cir. 2017) (affirming the dismissal of an unjust enrichment claim because the plaintiff "failed to state a claim for fraud or for violation of [the Illinois Consumer Fraud and Deceptive Practices Act (ICFA)] and because there is an actual contract governing the parties' relationship so one cannot be implied in law").

State Farm is correct that the implied contract pathway to an unjust enrichment claim is not available to the plaintiffs. *See, e.g.*, *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021) ("[W]hat a plaintiff may not do is include allegations of an express contract which governs the relationship of the parties in the count for unjust enrichment") (internal citations omitted). But courts interpreting and applying Illinois law have found that "where the unjust enrichment allegations sound in tort, a plaintiff may allege both the existence of a governing contract and unjust enrichment." *Liberty Mut. Ins. Co. v. Decking & Steel, Inc.*, 301 F.Supp.2d 830, 835 (N.D. Ill. 2004) (citing *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998); *United States Gypsum Co. v. Dependable, LLC*, 2023 WL 3479177, at *7 (N.D. Ill. May 16, 2023); *Mashallah, Inc.* 20 F.4th at 325 ("A successful showing of fraudulent inducement invalidates a contract, clearing the way for an unjust enrichment claim") (internal citation omitted).

Plaintiffs' claims for unjust enrichment are premised on the same conduct as their claims for fraudulent concealment and fraud in inducement. (Dkt. 258 at 5). State Farm nonetheless suggests that the doctrine outlined in *Mashallah*—resulting in an invalidated contract—does not apply where, as here, Plaintiffs seek damages and therefore "affirm," rather than "seek to invalidate," their contracts. (Dkt. 261 at 3). But this misses the point. This Court has already denied State Farm's motion to dismiss the Plaintiffs' well-pled fraud claims, (Dkt. 224), and State Farm

does not challenge the merits of the fraud claims today. A jury could reasonably find that State Farm's failure to disclose the TNA amounted to fraudulent omission for many of the same reasons discussed in this Court's earlier ruling. (Dkt. 224 at 13). State Farm does not suggest that any evidence unearthed or not unearthed in discovery changes that analysis. Rather, it dedicates most of its argument to the contract's validity, as discussed above. But that is not the only pathway to an unjust enrichment claim. "[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). Thus, because the Plaintiffs' fraud claims are not appropriate for summary judgment, and a reasonable jury could find that State Farm's omission was fraudulent in nature, the Court denies summary judgment with respect to the unjust enrichment claims.

Finally, State Farm argues that the Court should grant summary judgment because of a technicality that doomed a recent unjust enrichment claim at the Seventh Circuit. In *Gociman*, student-plaintiffs "incorporated by reference allegations of the existence of a contract between the parties. . . . [that] prevent[ed] their unjust enrichment claim from going forward." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022) (permitting students an opportunity to amend their complaint and remanding for further proceedings). State Farm argues that *Gociman* governs because Plaintiffs acknowledge the existence of insurance policies for each individual plaintiff and for the purposes of the unjust enrichment claims in the Second Amended Complaint,

and "do not dispute" the "existence of policies" in Plaintiffs' Local Rule 56.1 response. (Dkt. 242 ¶¶ 12–39, 136; Dkt. 259 at 2).

But *Gociman* also held that the parties' agreement "that a valid contract exists and governs the dispute" was not fatal to the unjust enrichment claim where the parties disagreed "about whether the contract includes an implied promise to provide students in-person instruction and access to on-campus facilities." *Gociman*, 41 F.4th at 887 ("Until the validity or the scope of a contract is determined, it is typically premature to dismiss an unjust enrichment claim"). Here, a key dispute between the parties is whether State Farm's use of the TNA, as well as the lack of disclosure of the TNA, was permissible under the terms of the contract. (Dkt. 259 at 3). Those determinations are not appropriate for summary judgment; thus, the Court cannot follow State Farm's proposed reasoning to strike the unjust enrichment claims where a jury could reasonably find a *Gociman*-style implied promise exists. Further, the Seventh Circuit declined to extend *Gociman* in the case of student-plaintiffs whose complaint expressly stated that their unjust enrichment claim "is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth [] above." *Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 672 (7th Cir. 2023). In the present case, Plaintiffs' fraudulent concealment claim specifically declines to adopt "those allegations made under the preceding Counts," including their breach of contract claim. (Dkt. 242 ¶ 110). This language is analogous to the language in *Hernandez* that the Seventh Circuit determined did not fall into the *Gociman* trap.

Therefore, State Farm's Motion for Summary Judgment regarding all Plaintiffs' unjust enrichment claim is denied.

## 2. Good Faith and Fair Dealing Claims

The next issue is whether twenty-three of the named Plaintiffs' good faith and fair dealing claims warrant summary judgment. (Dkt. 251 at 6).[4] These twenty-three Plaintiffs live in 20 states, including Illinois. (*Id.*) As discussed above, both parties stipulated to the application of Illinois law wherever there is no actual conflict between that state's law and another state's law. Here, both parties make their arguments under Illinois law, and both suggest that the law of all other relevant states follow Illinois. (Dkts. 251 at 6; 258 at 6). Nonetheless: both parties, somewhat confusingly, also provide indexes regarding the treatment of these claims under other state laws containing one cherrypicked case per state to support their positions. (Dkts. 251-1 at 2–3; 258-1 at 2–4). But per their stipulations and scope of their substantive argument, Illinois law controls the analysis.

Implicit in every contract is a duty of good faith and fair dealing. *Barwin v. Village of Oak Park*, 54 F.4th 443, 454 (7th Cir. 2022) (internal citation omitted). But that duty does not give rise to an independent cause of action. (*Id.* at 454; *LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 565 (7th Cir. 1991). Instead, Illinois law frames the independent covenant of good faith and fair dealing as "only an aid to interpretation, not a source of contractual duties or liability." *See Zeidler v. A & W Restaurants*, *Inc.*, 301 F.3d 572, 575 (7th Cir. 2002); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443–44 (7th Cir.1992); *Cramer v. Insurance Exch. Agency*, 675 N.E.2d 897, 903 (Ill.1996). The duty of good faith and faith dealing exists to ensure that a party to a contract exercises its contractual discretion "reasonably, and not arbitrarily or capriciously, or in a

---

[4] State Farm does not move for summary judgment as to the duty of good faith and fair dealing claims of Cervantes-White, Johnston, Roemer, and Sager (Dkt. 251 at 7). This Court, however, disposes of all of Plaintiffs Johnston's and Roemer's individual claims on other grounds later in this Opinion. Thus, Cervates-White and Sager are the two Plaintiffs with good faith and fair dealing claims outstanding.

manner inconsistent with the reasonable expectations of the parties." *See Barwin*, 54 F.4th at 454 (citing *Reserve at Woodstock, LLC v. City of Woodstock*, 958 N.E.2d 1100, 1112 (Ill. App. Ct. 2011)) (citations modified).

Plaintiffs incorrectly assert that their claims for breach of the duties of good faith and fair dealing can exist separate and apart from their breach of contract claims under Illinois law. (Dkt. 258 at 6). But the case law they cite only reaffirms that the former is only a method of demonstrating the latter. *See, e.g.*, *Holmes v. Progressive Universal Ins. Co.*, 2023 WL 130477, at *8 (N.D. Ill. Jan. 9, 2023) (characterizing the duties as "not a standalone claim); *Malik v. Prairie Raynor LLC*, 2023 WL 85451688, at *9-10 (N.D. Ill. Dec. 6, 2023) (same); *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) ("Defendant's contention that Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing is correct").

Whether or not there exists a dispute of material fact as to the Defendants' alleged breach of these duties is irrelevant when there is no independent legal claim at stake. *See Household Fin. Servs., Inc. v. Coastal Mortg. Servs., Inc.*, 152 F. Supp. 2d 1015, 1024 (N.D. Ill. 2001). Plaintiffs are welcome to utilize relevant facts to support their claims for breach of contract, which are not subject to this Motion. But there is no standalone claim for breach of the duty of good faith and fair dealing to support under Illinois law. Accordingly, the Court grants State Farm's motion for summary judgment on the twenty-three claims for breach of duty of good faith and fair dealing. (Dkt. 250).

### 3. State Consumer Protection Act Claims

The next issue is whether Plaintiffs' claims under the consumer protection acts of four states are actionable. (Dkt. 251 at 7). State Farm argues that the consumer protection acts of Alaska,

Mississippi, and West Virginia do not apply to claims against insurance companies. State Farm also asserts that the laws of those three states, plus Kentucky, do not permit class action claims either expressly, implicitly, or as interpreted by the courts. (*Id.* at 8).

At the outset, Plaintiffs "concede that the Alaska Consumer Protection Act excludes, more broadly, claims against insurers" and offer nothing further to counter State Farm's motion that this claim fails as a matter of law. (Dkt. 258 at 8, n.7). Thus, the Court grants summary judgment as to the claim, as well as the claim under the consumer protection act of West Virginia. The Court denies summary judgment as to all other relevant claims.

### i.     Claims under the MCPA and WVCCPA

Prior to assessing the class action question, the Court must determine whether plaintiffs can bring a claim under the Mississippi Consumer Protection Act ("MCPA") and the West Virginia Consumer Credit and Protection Act ("WVCCPA") on the merits.

The MCPA prohibits "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1). The statute defines "commerce" broadly, encompassing "the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include without limitation, both domestic and foreign persons . . . ." *Id*. § 75-24-3. The MCPA similarly suggests a broad interpretation for "unfair methods of competition and unfair or deceptive trade practices," offering a list of examples of prohibited behavior while expressly stating that the list does not limit the scope of the statutory ban. *Id*. § 75-24-5(2).

Defendants suggest that the MCPA applies only to "merchandise," which does not include automobile insurance policy claims. (Dkt. 251 at 8). But this proposition is not supported by the

statutory text nor by any of the three cases that Defendants use to support their position. In *Taylor*, the Mississippi Court of Appeals upheld the lower court's determination that insurance policies are not "merchandise" under the provisions of the MCPA. *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1048–49 (Miss. Ct. App. 2007). But the lower court focused on "merchandise" because the plaintiff in that case explicitly pled as such, relying on one of the MCPA's non-exhaustive list of prohibited behavior that only references "merchandise." The appellate court expressly declined to address whether the automobile policy would be a "good" or "service" within the meaning of the MCPA, and held only that it was not "merchandise." *Id*. at 1049.

In *Burley*, the U.S. District Court for the Southern District of Mississippi concluded that the plaintiffs in that case could not amend their complaint to add a claim under the MCPA because the home insurance policy at issue was "not a 'good' or 'service' " and that the defendants in that case "made no representations which could subject them to liability under the statute even if it were applicable." *Burley v. Homeowners Warranty Corp.*, 773 F. Supp. 844, 863 (S.D. Miss. 1990*), aff'd sub nom.*, *Burley v. Homeowners Warranty*, 936 F.2d 569 (5th Cir. 1991) (affirmed without opinion). The court did not cite a single Mississippi state court case—or any case law at all—to support the interpretation of the state law. While the *Taylor* court referenced the logic in *Burley* as "persuasive," it utilized it only so far as its determination as to "merchandise." *Taylor*, 954 So. 2d 1049.

Finally, in *Cook*, the U.S. District Court for the Northern District of Mississippi utilized *Burley* and *Taylor* to hold that "a homeowner's insurance policy [] falls outside the MCPA's limits"

14

and dismissed the case's relevant claim. *Cook v. Allstate Vehicle & Prop. Ins. Co.*, 2024 WL 4594233, at *3 (N.D. Miss. Oct. 28, 2024).

None of these cases present binding authority for the proposition that automobile insurance policies cannot constitute goods or services under Mississippi state law. And at minimum, the Supreme Court of Mississippi has at least acknowledged claims brought under the MCPA for "the sale and alleged breach of an insurance contract" while assessing whether that case's plaintiffs' claims should have been brought in the state's courts of equity (and thus not actually addressing the merits of the claim). *State v. Walgreen Co.*, 250 So. 3d 465, 475–76 (Miss. 2018) (citing *Union Nat'l Life Ins. Co. v. Crosby*, 870 So.2d 1175, 1182 (Miss. 2004)). Meanwhile, Plaintiffs, in countering the motion for summary judgment on this claim, rely only on the statutory text (without supportive case law) to support their contention that their claim under the MCPA is a valid one. (Dkt. 258 at 8).

Summary judgment is appropriate only where a party has demonstrated that it "is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Wilson v. Chicago, Milwaukee, St. Paul, & Pac. R. Co.*, 841 F.2d 1347, 1352 (7th Cir. 1988). State Farm has not met that burden. Thus, the Court denies the motion for summary judgment with regard to the Mississippi claim.

As for West Virginia: Article 6 of the WVCCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" and provides a cause of action for "any person who purchases or leases goods or *services* and thereby suffers an ascertainable loss of money or property" as a result. W. Va. Code Ann. §§ 46A-6-104, 46A-6-106(a) (emphasis added). Article 1, which provides the general parameters of the WVCCPA, goes on to define "services" as "insurance," but then proceeds to exclude from its coverage the "sale of insurance by an insurer, except as otherwise provided in this chapter." *Id.* §§

15

46A-1-102(47), 46A-1-105(a)(2). No party disputes this. Instead, both parties cite the same singular case in support of their respective (and opposite) positions: a recent decision by the Fourth Circuit interpreting West Virginia law and holding that "Article 6 doesn't refer to insurance, the [WV]CCPA excludes sales of insurance from coverage unless expressly provided otherwise, and the provisions of Articles 1–4 expressly refer to and regulate insurance in unrelated contexts." *Hinkle v. Safe-Guard Prods. Int'l, LLC*, 839 F. App'x 770, 777 (4th Cir. 2020) (noting that the "West Virginia Supreme Court of Appeals has not specifically addressed the precise issue" and analogizing from comparable cases).

Plaintiffs do not expound upon how the holding in this case supports their position beyond emphasizing that the exclusion is limited to the "sale" of insurance. (Dkt. 258 at 8). But it is unclear to the Court how the Plaintiffs' claims are not predicated on exactly that. At its core, Plaintiffs' case alleges illegality at *point of sale*. In their own words, Defendant's behavior "does not comport with representations made by Defendants or obligations undertaken by Defendants in their Policy, in order to illegally increase their own profits." (Dkt. 242 ¶ 7). Even if a jury agreed with Plaintiffs' characterization, the facts do not amount to a viable claim under West Virginia law. The Court "has no duty to research and construct legal arguments available to a party." *United States v. Black*, 2007 WL 9752034, at *3 (N.D. Ill. Apr. 24, 2007) (internal citation omitted). And even with further briefing on the issue, it would be difficult to overcome the reasoning presented in the Fourth Circuit's holding. Thus, the Court grants summary judgment on the WVCCPA claim.

### ii.  State Law Class Actions Bars

State Farm also seeks summary judgment on the grounds that the MCPA and the Kentucky Consumer Protection Act ("KCPA") do not permit class claims, the bans define the scope of these

state-created substantive rights, and thus, the bans are not mere procedural bars preempted by Fed. R. Civ. P. 23. (Dkts. 251 at 8; 261 at 6).

The KCPA outlaws "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. § 367.170. Nowhere does the statute ban class action claims. Rather, Defendants claim that "courts widely agree plaintiffs can not bring a class action claim under the Kentucky statute" and cites one case from the U.S. District Court of the Northern District of California. (Dkt. 251 at 8) (internal citation omitted). That case relied on a Kentucky Circuit Court's decision to read a class action ban into the KCPA based on "venue requirements and other language," and similarly concluded that the KCPA was not meant to be a vehicle for class action suits. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 999 (N.D. Cal. 2016) (citing *Arnold v. Microsoft Corporation*, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000)) (internal citation omitted). It was not the first court to rely on *Arnold* for such a proposition. *Id.* at 999 (collecting cases). However, as Plaintiffs point out, that determination is far from unanimous. *See, e.g.*, *Havrilla v. Centene Corp.*, 2024 WL 1932916, at *14 (N.D. Ill. May 2, 2024). Both before and since *In re Anthem*, federal courts in Kentucky interpreting state law have certified class actions under the KCPA. *See Kempf v. Lumber Liquidators, Inc.*, 2017 WL 4288903, at *4 (W.D. Ky. Sept. 27, 2017) (citing *Wiggins v. Daymar Colls. Grp.*, 317 F.R.D. 42, 43–44, 46 (W.D. Ky. 2016)); *Corder v. Ford Motor Co.*, 297 F.R.D. 572, 577, 579 (W.D. Ky. 2014); *Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847, 849, 854-55 (W.D. Ky. 2007). *Kempf*, in particular, discusses a Kentucky Supreme Court decision affirming a lower court's certification

of a class in a case involving KCPA claims. *Kempf*, 2017 WL 4288903 at *4 (citing *Merck & Co. v. Combs*, 2011 WL 1104133, at *1-2 (Ky. Mar. 24, 2011)).[5]

The Court finds *Kempf*'s reasoning persuasive and, absent any controlling authority to the contrary, similarly concludes that class actions are not prohibited under the KCPA. The Court therefore denies Defendant's motion for summary judgment on this ground.

Turning back to the MCPA: The Mississippi ban is express in the statute. The MCPA states that "[n]othing in this chapter shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person." Miss. Code Ann. § 75-24-15(4). Neither party disputes this. The question is whether or not the MCPA ban applies where, as here, the action takes place in a federal court.

Whether a plaintiff can bring a claim under the MCPA in a federal class action depends on the characteristic of the class action ban—procedural or substantive. Federal courts sitting in diversity must use state substantive law and federal procedural rules. *Sumrall v. LeSea, Inc.*, 104 F.4th 622, 629 (7th Cir. 2024); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

Federal Rule 23 is a "categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove*, 559 U.S. at 398–99 (plurality) (explaining that Federal Rule 23 "provides a one-size-fits-all formula for deciding the class-action question"). In *Shady Grove* itself, the Supreme Court held that in a conflict between a New York State class action bar and Federal Rule 23, the federal rule applied. *Shady Grove*, 559 U.S. 393. Justice Scalia's plurality decision took the position that properly enacted federal rules of procedure

---

[5] *Merck* is an unpublished decision, which are non-binding under the Kentucky Rules of Appellate Procedure. Ky. R. App. P. 41. But Rule 41 allows reliance on the reasoning of an unpublished decision so long as it was published after 2003 and no other published opinion of the Supreme Court or the Court of Appeals would adequately address the point of law, as is the case here. Ky. R. App. P. 41(a).

always apply in federal court. *Id.* at 410. Justice Stevens's concurring opinion took the position that because state procedural law "may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy," under limited circumstances, state law could displace a federal rule. *Id.* at 420 (Stevens, J., concurring in part and concurring in the judgment).

The Seventh Circuit has not formally sided with either Justice Scalia's plurality or Justice Steven's narrower concurrence but has repeatedly indicated a preference for the formalist approach, at least where class actions are involved. *See Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022) (discussing Rule 23's certification requirements and citing *Shady Grove* for the proposition that "in each and every case where the Rule's criteria are met, the plaintiff may bring his claim in a class action if he wishes"); *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1251 (7th Cir. 2022) ("When a federal rule conflicts with a state law though, the federal rule governs."); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 564 (7th Cir. 2011) (characterizing the *Shady Grove* holding as "Rule 23 applies to all federal civil suits, even if that prevents achieving some other objective that a court thinks valuable"). Indeed, at least two courts in this district have adopted that determination with respect to Rule 23. *See In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 4333246, at *13 (N.D. Ill. Sept. 27, 2024) (denying motion to dismiss based on class action bars in a variety of states); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510 (N.D. Ill. 2019) (same). *In re Hair Relaxer* explicitly held that Rule 23 trumps Mississippi's ban as laid out in in the MCPA. *In re Hair Relaxer*, 2024 WL 4333246 at *13.

State Farm makes no effort to square those cases with its argument other than to (incorrectly) point out that neither one holds that Fed. R. Civ. P. 23 preempts the class action bar

in the MCPA. (Dkt. 261 at 6). It is correct that neither case addresses the KCPA, but as discussed above, the Court does not adopt the position that the KCPA contains an implicit class action ban. Rather, Defendants nod only to the decisions of two out-of-circuit district courts that explicitly adopt Justice Stevens's approach as the controlling *Shady Grove* opinion in order to subjugate Rule 23 to a variety of state class action bars. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1163 (D. Minn. 2014); *Davenport v. Charter Commc'ns*, LLC, 35 F. Supp. 3d 1040, 1051 (E.D. Mo. 2014).[6] State Farm does not distinguish the MCPA from the New York class action ban at issue in *Shady Grove*, nor why the law should be characterized as substantive beyond a conclusory declaration that it should be so. (Dkt. 261 at 6–7). As such, this Court finds that, pursuant to the reasoning in *Shady Grove* and its progeny in the Seventh Circuit, Plaintiffs can bring a claim under the MCPA despite the state law ban on class actions because Federal Rule 23 governs.

### B. Time-Barred Contract Claims

State Farm also moves for summary judgment as to 17 plaintiffs' breach of contract claims and declaratory judgment claims on the grounds that the terms of the contractual agreement deem them untimely. (Dkt. 251 at 10). Fourteen plaintiffs' policies contained language limiting "legal action relating to [coverage to] one year immediately following the date of the accident or loss."[7]

---

[6] Further, the *Davenport* court was not presented with a KCPA claim, but rather a claim under Ky. Rev. Stat. § 337.385, a statute governing unpaid overtime. *See Davenport*, 35 F.Supp.3d at 1051.

[7] Plaintiffs Reyes, Wilson, Munoz, O'Brien, Florian, Love, Newkirk, Johnston, Roemer, Sager, Ashe, Anbar, Woods, and Walker. (Dkt. 259 ¶ 10).

Three additional plaintiffs' policies had similar language but for different time periods.[8] On the strict terms of their coverage, their claims would be untimely.

Plaintiffs do not dispute the language of the policy nor the date of the accident/loss for each plaintiff. (Dkt. 259 ¶¶ 10–30). Rather, Plaintiffs contend that Plaintiffs' claims are not untimely because the relevant contractual provisions have been tolled—either by the federal rules and *American Pipe* and its progeny, by state statute, or by general equitable tolling principles. (Dkt. 258 at 8–13); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

Two federal rules underpin Plaintiffs' arguments. First, relation back doctrine under Rule 15(c), which determines whether an amendment to a complaint (like adding a new plaintiff) is considered timely by treating it as though it were filed earlier, provided certain conditions are met. Fed. R. Civ. P. 15(c). Second, the applicability of *American Pipe* tolling, which comes into play

---

[8] Plaintiffs do not dispute any of the following: Plaintiff Keller's policy had a five-year window for legal action from October 18, 2017. (Dkt. 259 ¶¶ 11, 18). Plaintiff Palmer's policy had a two-year window for legal action from May 18, 2020. (Dkt. 259 ¶¶ 12, 24). Plaintiff Chavez's policy had a two-year-and-one-day window for legal action and both parties include his date of accident (May 15, 2020), and his valuation letter date (June 2, 2020) as relevant points. (Dkt. 259 ¶¶ 13, 25).

after a Rule 23 class action filing and preserves claims for absent class members during the pendency of class certification.

The Court reproduces here the relevant undisputed dates for the sixteen plaintiffs at issue in this motion. (Dkt. 251 at 10; Exhibit 2, Dkt. 258-2 at 1). (The Court dismisses all claims of the seventeenth plaintiff, Plaintiff Woods, on other grounds below.)

| Plaintiff | Date of Loss | Contractual Deadline to Sue | Added to Complaint |
|-----------|--------------|------------------------------|---------------------|
| Reyes | 1/20/2021 | 1/20/2022 | 2/14/2023 |
| Wilson | 11/5/2018 | 11/5/2019 | 3/18/2022 |
| Munoz | 2/13/2021 | 2/13/2022 | 3/18/2022 |
| O'Brien | 10/18/2017 | 10/18/2018 | 2/14/2023 |
| Keller | 10/27/2017 | 10/27/2022 | 2/14/2023 |
| Florian | 1/22/2020 | 1/22/2021 | 2/14/2023 |
| Love | 7/1/2018 | 7/1/2019 | 2/14/2023 |
| Newkirk | 1/23/2021 | 1/23/2022 | 3/18/2022 |
| Johnston | 3/14/2021 | 3/14/2022 | 2/14/2023 |
| Roemer | 11/24/2018 | 11/24/2019 | 2/14/2023 |
| Palmer | 5/18/2020 | 5/18/2022 | 2/14/2023 |
| Chavez | 6/3/2020 | 6/6/2022 | 11/5/2024 |
| Sager | 6/11/2021 | 6/13/2022 | 11/5/2024 |
| Ashe | 4/1/2021 | 4/1/2022 | 11/5/2024 |
| Anbar | 6/28/2021 | 6/28/2022 | 11/5/2024 |
| Walker | 10/17/2021 | 10/17/2022 | 11/5/2024 |

### 1. Applicability of *American Pipe*

"In *American Pipe*, the Supreme Court held that the timely filing of a class action tolls the applicable statutes of limitations for all persons within the scope of the class alleged in the complaint." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020) (citing *American Pipe*); *China Agritech v. Michael H. Resh*, 584 U.S. 732, 735–36 (2018). State Farm suggests that *China Agritech* permits only "substitute" and not "additional class representatives," thus making *American Pipe* inapplicable to the case at hand. (Dkt. 261 at 11). But this is an atextual reading of *China Agritech*, which held that "*when class certification is denied*, a member of the putative class

may join the existing suit or promptly file an individual action, but she may not start a new class action beyond the time allowed by the statute of limitations." *In re Allstate Corp. Sec. Litig.*, 966 F.3d at 615 (citing *China Agritech* at 1806) (emphasis added). This putative class action has not yet reached the certification stage. Further, *China Agritech* explicitly invites "additional *class* filings [to] be made early on, soon after the commencement of the first action seeking class certification," contrary to State Farm's splicing between "additional" and "substitute" representatives. *China Agritech*, 584 U.S. at 740. And the Seventh Circuit has squarely rejected a reading, like State Farm's, that "would prohibit any addition or substitution of a new class representative within the original class action after the statute of limitations period would have run, but for *American Pipe* tolling." *In re Allstate Corp. Sec. Litig.*, 966 F.3d at 615 (affirming a district court's decision to permit the addition of a new class representative prior to granting class certification even though the new representative's claims would be time-barred but for *American Pipe*).

State Farm makes two additional arguments to undermine the tolling protection of *American Pipe*. First, State Farm argues that Illinois law only recognizes *American Pipe*-style tolling for class actions first brought in state court, not those brought in federal court (such as this one). (Dkt. 261 at 10). State Farm cites one decision to support this proposition—the Illinois Supreme Court's 1998 decision in *Portwood*—but *Portwood* does not so hold. *Portwood* says that "a proposed class action timely filed in federal court d[oes] not serve to toll the statute of limitations for actions *subsequently filed* in [Illinois] circuit courts." *Mabry v. Vill. of Glenwood*, 41 N.E.3d 508, 515 (Ill. Appt. Ct. 2015) (emphasis added) (explaining *Portwood*). This case has never been filed in Illinois circuit courts, so *Portwood*'s posture is inapposite. Illinois adopted *American Pipe* principles for state law action more than 40 years ago. *See Steinberg v. Chicago*

*Med. Sch.*, 371 N.E.2d 634, 645 (Ill. 1977) (borrowing from *American Pipe*'s reasoning and holding that under state law, "commencement of the class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit continued as a class action"). Illinois law does not prohibit the tolling of the Plaintiffs' class claims.

State Farm also argues that *American Pipe* does not apply where the applicable limitations period derives from contractual agreement rather than statute. (Dkt. 261 at 10). State Farm cites two cases in support of this contention: a 1996 holding from the Eighth Circuit—which did not deal with *American Pipe*—and 2006 case out of the Eastern District of Arkansas (which is bound by the Eighth Circuit's decision). (*Id.*) The Plaintiffs, for their part, also do not provide any in-circuit case law on the matter, turning instead to holdings from the Eleventh Circuit, the Supreme Court of Georgia, and state and federal district courts in New York (Dkt. 258 at 11). This Court identifies one in-district decision deciding without explanation that *American Pipe* does not permit a plaintiff to circumvent contractual notice provisions on behalf of others, but nothing further. *See Anschul v. Sitmar Cruises, Inc.*, 67 F.R.D. 455, 456 (N.D. Ill. 1974), *appeal dismissed on other grounds*, 544 F.2d 1364 (7th Cir. 1976).

This Court finds the Eleventh Circuit's holding most persuasive. In *Kornberg*, the Eleventh Circuit addressed the specific question of whether *American Pipe* tolling applied to contractual limitations and decided in the affirmative. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1336–37 (11th Cir. 1984). The *Kornberg* court found "no essential difference" between contractual and statutory limitations that would disturb the tolling principles laid out in *American Pipe*. *Kornberg*, 741 F.2d at 1337. This Court has not identified a comparable holding in the Seventh Circuit. But a review of the scant case law on the issue, paired with the operating principles of

24

Rule 23, *American Pipe* and its progeny, as well as its subsequent application in the Seventh Circuit, this Court declines to adopt State Farm's proposed view of the law.

This Court has already instructed these parties that the relevant date for this litigation's Rule 15 purposes is the original complaint's filing date—March 18, 2022—regardless of whether later plaintiffs came from different states than the original plaintiffs since State Farm was sufficiently on notice of the underlying facts connecting the claims. *Williams*, 678 F. Supp. 3d at 998; (Dkt. 1). Despite that, State Farm purports to link several Plaintiffs to the date they were added to the complaint—rather than honor the Court's prior ruling on the issue—in order to characterize their claims as "time-barred." (Dkt. 251 at 11). The only justification that State Farm offers is a Michigan state intermediate court's determination that Michigan's state-level relation-back rule does not apply to contractual limitations periods. *Ulrich v. Farm Bureau Ins.*, 792 N.W.2d 408, 414 (Mich. Ct. App. 2010). Such a holding is completely irrelevant. Accordingly, State Farm's motion for judgment as a matter of law is denied as to the contract-based claims of Plaintiffs Keller, Palmer, Chavez, Ashe, Anbar, Sager, and Walker.

That leaves the claims of Munoz, Reyes, Wilson, O'Brien, Florian, Love, Newkirk, Johnston, and Roemer. All of these Plaintiffs' contractual deadlines to sue expired prior to the filing of the March 18, 2022, complaint—some by a matter of days (such as Johnston) and others by years. The Plaintiffs turn to two arguments in defense of these claims.

### 2. Plaintiff Munoz and the Illinois Savings Statute

First, Plaintiffs argue that Munoz's claim is not time-barred because of the Illinois Savings Statute. (Dkt. 258 at 8). The full details of Munoz's earlier actions were laid out in an earlier opinion of this Court, but for present purposes, the critical dates are as follows: Munoz initially filed a complaint against State Farm on October 1, 2021, which was later dismissed for lack of

subject matter jurisdiction on October 29, 2021; Munoz made several motions to reopen the case that were never granted. *See Williams*, 678 F. Supp. 3d at 991; *Munoz v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-05211 (N.D. Ill. Oct. 1, 2021), ECF No. 28. It is undisputed that Munoz's Policy described a one-year limitation period from the February 13, 2021, date of loss. (Dkt. 259 ¶ 10). Munoz joined the present action on March 18, 2022, approximately one month after the expiration of the contractual deadline to sue.

Under Illinois law, if an action is dismissed by a United States District Court for lack of jurisdiction, "then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff . . . may commence a new action within one year or within the remaining period of limitation, whichever is greater." 735 Ill. Comp. Stat. Ann. 5/13-217. The Illinois Supreme Court has held that the statute's purpose is to avoid the frustration of litigation upon grounds unrelated to its merits and should be liberally construed in favor of hearing the plaintiff's claim. *See Rocha v. Rudd*, 826 F.3d 905, 909–10 (7th Cir. 2016) (citing *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 15 (Ill. 2016)); *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1223 (Ill. 1996)). Plaintiffs argue that Munoz was well within the one-year extension.

State Farm points to a 1979 decision from the Seventh Circuit describing the statute to mean that "if the original time limit did not expire during the pendency of the suit, the plaintiff may bring the action 'within the remaining period of limitation' originally available." *Perkins v. Hendrickson Mfg. Co.*, 610 F.2d 469, 470 (7th Cir. 1979) (addressing circumstances where the limitations period expired before the initial action was ever filed). Here, the original time limit expired after Munoz's first action was dismissed for lack of subject matter jurisdiction. State Farm argues that the dicta in *Perkins* means Munoz had to initiate the second action between October 29, 2021, and February 13, 2022, and did not have the benefit of the one-year provision. (Dkt. 261

at 8–9). But *Perkins* is best understood in the context of a case where the limitations period ran pre-suit, and has limited value to the factual scenario at present. Nor did *Perkins* address the statutory provision reserving the plaintiff's right to choose "whichever is greater" between the remaining period of limitations and the one-year extension. 735 Ill. Comp. Stat. Ann. 5/13-217. Further, the statute explicitly provides that the plaintiff's right to refile exists "*whether or not the time limitation for bringing such action expires during the pendency of such action*." (*Id.*) (emphasis added).

Notably, since *Perkins*, the statute was amended to clarify that plaintiffs who voluntarily dismiss their actions cannot take advantage of the one-year extension after the time for commencing the action has expired. This further suggests that the one-year extension is still available to litigants whose limitations period expired so long as their cases were dismissed for the other reasons listed in the statute. And the Illinois Supreme Court characterizes the statute as providing "*the absolute right* to refile their complaint within one year or within the remaining period of limitations, whichever is greater." *Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 636 (Ill. 1997) (emphasis added).

Neither party has provided, nor can this Court find, a direct ruling from any Illinois state court or the Seventh Circuit dealing with a factual scenario where, as here, a plaintiff's second filing took place after the dismissal of the first claim and after the expiration of the statute of limitations, but prior to the one-year extension contained in the Illinois Savings Statute.[9] But from the plain terms of the act, the 1995 Amendment, and the Illinois Supreme Court's instruction to

---

[9] This Court found one decision out of the Southern District of Illinois accepting without analysis the 1979 *Perkins* dicta that State Farm suggests should bar Plaintiff Munoz's claim. *See Jenkins v. Burkey*, 2018 WL 2047936, at *5 (S.D. Ill. May 2, 2018), *affirmed on other grounds*, 744 F. App'x 955 (7th Cir. 2018).

liberally construe the statute in favor of the plaintiff, this Court finds that Munoz's claim is timely under the Illinois Savings Statute.

### 3. Reyes, Wilson, O'Brien, Florian, Love, Newkirk, Johnston, and Roemer.

Finally, State Farm moves for summary judgment as to the contract-based claims of Reyes, Wilson, O'Brien, Florian, Love, Newkirk, Johnston, and Roemer, all of whose contracts contained deadlines to sue that precede the March 18, 2022, complaint in this case, and thus cannot benefit from *American Pipe* tolling. Plaintiffs argue that equitable estoppel and/or equitable tolling permits these claims due to State Farm's "active conceal[ment] [of] its use of TNA." (Dkt. 258 at 13).

As a general rule, the filing of a class action does not revive a time-barred claim. *See, e.g.*, *Healy v. Loeb Rhoades & Co.*, 99 F.R.D. 540, 543 (N.D. Ill. 1983). The exceptions come from doctrines that toll the applicable statutes of limitations, and Plaintiffs cite two. Equitable estoppel "suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing," whereas, in the absence of active steps, equitable tolling steps in to permit a plaintiff's suit where "if despite all reasonable diligence he just is not able to sue in time." *Singletary v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993); *Athmer v. C.E.I. Equip. Co. Inc.*, 121 F.3d 294, 297 (7th Cir. 1997).

Both doctrines require a high bar—neither of which the Plaintiffs meet here. As the Seventh Circuit has articulated, the actions of a defendant that merely make it difficult to trace the potential claim are a nonstarter without some basis that the defendant was "trying to throw potential [] suitors off the scent." *Athmer v. C.E.I. Equip. Co. Inc.*, 121 F.3d 294, 296–97 (7th Cir. 1997). Even construing all facts and reasonable inferences in the light most favorable to the Plaintiffs, State Farm's total loss vehicle assessments do not amount to the type of nefarious action that could justify equitable intervention to overcome the contractual provision. As plaintiffs concede, every

28

relevant policy explicitly gave notice of at least one year in which plaintiffs could bring legal action regarding their total loss payouts—a year in which to dispute State Farm's market value determination. No alleged fact suggests Plaintiffs could not exercise reasonable diligence in investigating the provided valuation during this period.

The Court thus grants summary judgment for State Farm on the breach of contract claims and declaratory judgment claims of the aforementioned eight Plaintiffs.

### C. All Claims of Monica Woods and Bernadette Williams

The final component of State Farm's motion for summary judgment relates to all claims, both contractual and not, of two specific claimants: Plaintiff Monica Woods and Plaintiff Bernadette Williams. (Dkt. 251 at 12). Addressing each in turn, the Court grants State Farm's motion with regard to Monica Woods and reserves its ruling with regard to Bernadette Williams.

### 1. Monica Woods

After her accident, Woods, represented by counsel, signed a settlement agreement with State Farm in 2024 that included a corresponding blanket liability release under New Mexico law for "any claim, demand, action, or cause of action which could have been asserted for any obligation arising out of contract, tort, warranty, strict liability, and punitive or exemplary damages, or otherwise," which Plaintiffs do not dispute. (Dkt. 259 ¶ 33). Plaintiffs contend only that because there is additional language in the document identifying it as a "settlement of personal injury claim," there is a dispute of material fact. (*Id.*) But there is no factual finding that could overcome the explicit terms of the settlement and corresponding discharge of all liability.

New Mexico courts operate with a "strong policy of favoring settlement agreements" as well as the state's "intersecting strong public policy of freedom to contract." *Builders Cont. Interiors, Inc. v. Hi-Lo Indus., Inc.*, 139 N.M. 508, 511 (N.M. Ct. App. 2025) (internal citation

omitted); *State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 126 (N.M. 1991); *Navajo Tribe of Indians v. Hanosh Chevrolet–Buick, Inc.*, 106 N.M. 705, 707 (N.M. 1988). That a settlement agreement later proves to have been "unwise or unfortunate" is ordinarily not enough to justify relief from a binding agreement. *See Herrera v. C & R Paving Co.*, 73 N.M. 237, 240 (N.M. 1963); *Leavy v. BNSF Ry. Co.*, 2025 WL 1475404, at *4 (D.N.M. May 22, 2025). In order to "set aside and avoid a written release, the evidence [of contractual fraud or imposition or a mistake against which equity will afford relief] must do more than merely preponderate—it must be clear and convincing." *Herrera*, 73 N.M. at 240. Plaintiffs offer no allegations of fraud in Plaintiff Woods's settlement agreement. There is no dispute to its validity, only its thoroughness— but its thoroughness is plain on its face. Accordingly, the Court grants summary judgment with regard to all claims brought by Monica Woods.

### 2. Bernadette Williams

The Court next considers State Farm's motion as to Plaintiff Bernadette Williams [hereinafter "Bernadette"]. Bernadette did not own the vehicle involved in her total loss claim; her father, Isadore Williams [hereinafter "Isadore"] did. Both parties agree on this. (Dkt. 259 ¶ 31). Plaintiffs assert, and State Farm does not dispute, that Bernadette was nonetheless insured on the vehicle, and as a named insured, had standing to bring the claim. (*Id.*; Dkt. 258 at 12–13, n.12). State Farm instead stakes its argument on Isadore's prior bankruptcy proceeding involving the same total loss claim with State Farm at issue in Bernadette's claim. (Dkts. 251 at 12; 261 at 13).

In 2018, the bankruptcy court overseeing Isadore's claim approved a settlement in which State Farm paid a total of $8,792.72—representing the proceeds of the Williams' total loss claim under the policy—directing $5,736.14 to pay off creditor Jefferson Capital's secured claim on the vehicle, and $3,056.58 directly to Isadore "for the sole purpose of purchasing a replacement

vehicle." (Order Approving Auto. Ins. Settlement, *In re Williams*, No. 1:15-bk-01134, ECF No. 21 (S.D. Ala. Bankr. Sept. 2, 2015), Dkts. 252-60, 252-61). In turn, the bankruptcy court directed Jefferson Capital to turn over the certificate of title to State Farm. (*Id.*)

The very purpose of the bankruptcy system has long been predicated on the all-encompassing nature of its proceedings. *See Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) ("[Bankruptcy] gives to the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt"). Failure to raise an objection at the bankruptcy plan confirmation hearing, or to appeal from the order of confirmation, generally precludes attack on the plan or any provision therein as illegal in a subsequent proceeding. *See Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000); *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) ("Once the bankruptcy proceeding came to a conclusion, the accuracy of the creditor's claim was established."). Plaintiffs contend, without support, that "[a] court approving an insurer's payment to a debtor (as here) is fundamentally different from a court ratifying a creditor's claim against a bankruptcy estate (as in *Adair*)." (Dkt. 258 at 14).

Plaintiffs simultaneously suggest that res judicata—claim preclusion—saves Bernadette's claim against State Farm because "an identical cause of action was not brought to final judgment in the bankruptcy court, and a finder of fact never decided the ACV of Williams's loss vehicle in a final judgment." (Dkt. 258 at 15, n.14). Setting aside that the second contention plainly misconstrues the bankruptcy judge's determination, Plaintiffs present no case law to support their view that Bernadette's challenge to the sum of State Farm's payout in the bankruptcy proceeding constitutes a special exception to the general principles of bankruptcy.

Courts are generally in agreement that insurance contracts in which the debtor has an interest at the time the petition is filed constitute property of the bankruptcy estate. *See In re*

31

*Stinnett*, 465 F.3d 309, 312 (7th Cir. 2006) (collecting cases). The same is true of the proceeds that insurers may pay out on those claims. (*Id.* at 312–13). Thus, the decisions of the bankruptcy court around those transactions mirror the finality of the proceeding overall. There are ways to appeal and challenge the judgments, to be sure. But among them is not "a thinly disguised collateral attack on the judgment confirming the sale." *See Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988) (holding that once "the time for appeal had run, the validity of the sale was established, even against nonparties to the sale proceeding."). Here, Isadore's automobile insurance settlement explicitly transferred the vehicle's certificate of title to State Farm in exchange for State Farm directing the insurance payout to Isadore's creditor. (Dkts. 252-60, 252-61). While this exchange is not the same as a judicial sale under Section 363 of the bankruptcy code, it is analogous enough to borrow the following explanation from the Seventh Circuit:

> . . . insofar as Gekas's fraud suit is on [the unsecured creditors'] behalf too—that is, on behalf of nonparties to the sale proceeding—it is not barred by res judicata. But it is barred. A proceeding under section 363 is an in rem proceeding. It transfers property rights, and *property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding*.

*Matter of Met-L-Wood Corp.*, 861 F.2d at 1017 (emphasis added).

Plaintiffs do not present a viable legal path for Bernadette to challenge State Farm's payout as a matter of course. Neither party, however, addresses if Plaintiffs' allegations of fraud, statutory consumer protection violations, or breach of contract contravene standard bankruptcy procedure. Therefore, because this issue was not briefed by either party, the Court reserves its ruling on this part of State Farm's motion pending additional briefing described below.

## II.    Motion to Compel Appraisal

The Court next considers State Farm's motion to compel appraisal. State Farm asks the Court to reverse its denial of State Farm's earlier motion to compel appraisal with regard to eight Plaintiffs in light of subsequent deposition testimony: Haunanimae Cervantes-White, Patricia

Couch, William Ross Dean, Maria Munoz, Diane Newkirk, Sandra Smiling, and Michelle Snyder. (Dkt. 264 at 2); *see Williams*, 678 F. Supp. 3d at 1012. State Farm additionally asks the court to compel the appraisal of Plaintiff Yvette Mouer on the same grounds, who was added to the case after State Farm filed its original appraisal motion. (Dkt. 264 at 2). Finally, State Farm moved to compel appraisal in the alternative for the following five Plaintiffs against whom the Court denied summary judgment: Cheri Anbar, James Ashe, Rafael Chavez, Deirdre Palmer, and Jamie Walker. (Dkt. 264 at 2). As to all three groups, the motion to compel appraisal is denied.

Given that this Court has already ruled on State Farm's earlier motion to compel appraisal, the following assumes familiarity with the appraisal clause at hand. *See Williams*, 678 F. Supp. 3d at 1008–1012. As a topline matter, the Court's earlier characterization of State Farm's appraisal clause as clear, mandatory, and generally enforceable under Illinois law rings true. Under State Farm's typical consumer contract, policyholders must comply with the appraisal policy before disputing an ACV payout in court. (*Id.*) But as this Court previously determined, to characterize the present litigation as simply an ACV dispute would misrepresent the nature of the action.

As this Court has described in detail, Illinois law disfavors appraisal clauses where "the issues could not be resolved through the appraisal process." *Id.* at 1011 (citing *Hanke v. Am. Int'l S. Ins. Co.*, 782 N.E.2d 328, 332 (Ill. App. Ct. 2002)); *Travis v. Am. Mfrs. Mut. Ins. Co.*, 782 N.E.2d 322, 327 (2002); *Kinkel v. Cingular Wireless, LLC*, 828 N.E.2d 812, 815–18 (Ill. App. Ct. 2005); *Lundy v. Farmers Grp., Inc.*, 750 N.E.2d 314, 319 (Ill. App. Ct. 2001)). A clear example of such an issue is the allegation of State Farm actively concealing the TNA. That is a legal dispute—one that State Farm's appraisal process could not resolve. The central inquiry is not

whether the appraisal clause was part of a fraudulent scheme, but whether Plaintiffs' claims fall outside the appraisal clause. *See Williams*, 678 F. Supp. 3d at 1008–1012.

State Farm does not argue that the governing law has changed in its renewed motion. Instead, it argues that *Travis* and *Hanke* stand only for the "shared principle [] that fraud allegations fall outside the appraisal clause's scope" (despite this Court's clear tracing of a broader holding). (Dkt. 265 at 5). Armed with that proposition, State Farm argues first that discovery has revealed Plaintiffs' statutory and common law fraud claims are "defective," and as such, the Plaintiffs must partake in the appraisal process. (*Id.*) Specifically, State Farm suggests that Plaintiffs who testified in their depositions that they did not read the details of State Farm's payout policy prior to purchasing said policy could not bring a fraud claim as a matter of law due to the lack of reliance on the fine print of State Farm's policies prior to purchase. (*Id.* at 3).

State Farm did not raise the merits of Plaintiffs' fraud claims in its Motion for Partial Summary Judgment, and the Court declines to address issues not properly raised. But even if it did, the arguments as presented do not change the fundamental truth: State Farm's appraisal process does not comport with the claims at hand, and thus, cannot be enforced as to the claims at hand.

State Farm's arguments fall flat on two fronts. First, State Farm misstates this Court's prior discussion of the treatment of the appraisal clause under Illinois law. While *Travis* and *Hanke* were particularly instructive in that those cases also dealt with allegations of fraud, the analysis did not hinge on the fraud. *See Williams*, 678 F. Supp. 3d at 1011; *Kinkel*, 828 N.E.2d at 816 (where an Illinois court noted that an appraisal clause's alleged role in a fraudulent scheme is "not central to our holding" in *Hanke* and *Travis*). Rather, the Court denied State Farm's earlier motion to compel appraisal on the grounds that the appraisal process was an improper vehicle for the present

34

dispute—namely, whether State Farm concealed its use of the TNA to systematically undervalue Plaintiffs' vehicles and reduce its total-loss payouts at scale. *See Williams*, 678 F. Supp. 3d at 1010.

Second, State Farm suggests that a broad swath of Plaintiffs' claims are doomed by deposition testimony from a number of individual plaintiffs who could not confirm that they read the terms and conditions of State Farm's formal policy prior to purchase. (Dkt. 265-1 at 1–3). This, paired with State Farm's strained reading of the aforementioned case law regarding appraisal clause enforcement, is what brings State Farm's motion to compel appraisal back in front of the Court today. This framing, however, does not fully account for the scope of the Illinois Consumer Fraud Act. Without making any determinations as to the merits of Plaintiffs' actual claims, the Court will briefly address the argument given State Farm's emphasis on this point.

State Farm is correct that a plaintiff bringing a claim under the Illinois consumer fraud act must prove the deceptive act proximately caused the plaintiff's damages. *See De Bouse v. Bayer*, 922 N.E.2d 309, 313 (2009); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (2002). In other words, the plaintiff "must actually be deceived by a statement or omission." *De Bouse*, 922 N.E.2d at 314–316 (2009) (rejecting a plaintiff's claim against a pharmaceutical company where the plaintiff had taken a later-discontinued medication pursuant to her doctor's directive, and no communication from the defendant had indirectly or directly reached the plaintiff).

But State Farm then asserts, without basis, that the only place where Plaintiffs could prove deception is in "the policy documents that omitted reference to the allegedly improper TNA." (Dkt. 264 at 3). It is true that Plaintiffs allege that the ACV's calculation is absent from the policy documents. (Dkt. 242 ¶ 52). It is also true that State Farm's actual policy documents sit at the heart of Plaintiff's claims. But more broadly, Plaintiffs allege that State Farm's wrongdoing derives not solely from the contents of the policy but from a spread of "misrepresentations, omissions,

concealments, and/or failures to disclose material facts regarding their purported payment of ACV" at point of purchase. (*Id.* ¶ 90). They suggest that State Farm "suppressed" information about the use of the TNA to "falsely assure consumers that Defendants would calculate and pay ACV, and for the purpose of inducing Plaintiffs and Class members into purchasing a Policy from Defendants." (*Id.* ¶ 117).

Whether those allegations are true or not is a dispute of fact not appropriate for a motion where neither party seeks resolution on the merits. What matters is that State Farm's fixation on whether individual Plaintiffs relied specifically on the language of the policy—rather than State Farm's representations of its insurance coverage more broadly—will not be dispositive as to the claim as a whole. In analyzing a claim under the Illinois statute, courts consider "the totality of the information made available to the plaintiff." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)). That inquiry, by its definition, will peer beyond the four corners of the policy to assess the full picture available to the reasonable consumer in their dealings with State Farm. To see their statutory fraud claims through, Plaintiffs will have to identify the direct statements or communications that led to them "actually be[ing] deceived." *See De Bouse*, 922 N.E.2d at 314–316 (2009). But that is Plaintiffs' case to present, and not State Farm's to dictate.

## CONCLUSION

For the aforementioned reasons, the Court grants in part and denies in part Defendant's Motion for Partial Summary Judgment [250] and denies Defendant's Motion to Compel Appraisal

[264]. A summary of the Court's rulings are set forth below. State Farm's Partial Motion for Summary Judgment is:

- DENIED as to all Plaintiffs' unjust enrichment claims;

- GRANTED as to all duty of good faith and fair dealing claims aside from Plaintiffs Cervates-White and Sager, whose claims State Farm did not address;

- GRANTED as to all claims brought under the Alaska Consumer Protection Act;

- GRANTED as to all claims brought under the West Virginia Consumer Credit and Protection Act;

- DENIED as to all claims brought under the Kentucky Consumer Protection Act;

- DENIED as to all claims brought under the Mississippi Consumer Protection Act;

- DENIED as to all contract-based claims brought by Plaintiffs Keller, Palmer, Chavez, Ashe, Anbar, Sager, Walkers, and Munoz. The parties jointly defined "contract-based claims" to include the breach of contract claims and the declaratory judgment claims, and did not include the fraud-based claims in their arguments. (Dkts. 251 at 8, 10; 259 ¶¶ 10–13).

- GRANTED as to all contract-based claims brought by Plaintiffs Reyes, Wilson, O'Brien, Florian, Love, Newkirk, Johnston, and Roemer; and

- GRANTED as to all claims brought by Plaintiff Monica Woods.

The Court requires additional briefing on whether the nature of the present case permits Bernadette Williams to bring this action despite Isadore Williams's prior bankruptcy proceeding. State Farm's motion is taken under advisement to that extent.

Because State Farm has a separate motion for summary judgment pending [310], the Court, in its discretion, modifies the parties' briefing schedule in that action to account for the issue on

which the Court reserves its ruling. By October 21, 2025, State Farm shall submit a supplemental brief of no more than 10 pages on the requested topic. The deadline for Plaintiffs' Opposition to Defendants' Motion for Summary Judgment is pushed to November 4, 2025, to account for the response to the supplemental issue (formerly October 3, 2025), and Plaintiffs may have 10 additional pages of briefing to mirror the extra pages granted to Defendant. Defendants' Reply in Support of Summary Judgment is due by November 18, 2025, (formerly October 17, 2025). Due dates for all other briefing relating to expert witnesses and class certification remain unchanged [317]. Thereafter, the Court will review the parties' submissions and rule on the remainder of State Farm's present motion [250] as part of the secondary motion for summary judgment [310].

Virginia M. Kendall
United States District Judge

Date: September 29, 2025