THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNADETTE WILLIAMS, et al., on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, and STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation. <br><br> *Defendant*. | No. 22 C 1422 <br><br> Chief Judge Virginia M. Kendall |

**MEMORANDUM OPINION & ORDER**

The scope of this case has been well-documented in the Court's prior rulings. *See Williams v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 2755318 (N.D. Ill. Sept. 29, 2025); *Williams v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 3888832 (N.D. Ill. Aug. 21, 2024); *Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980 (N.D. Ill. 2023). In summary, though, the Plaintiffs in this putative national class action are insureds who filed "total loss" claims for the actual cash value ("ACV") of their totaled vehicles under their automobile insurance policies sold by State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company (collectively, "Defendants" or "State Farm"). Plaintiffs challenge State Farm's application of a "typical-negotiation adjustment" ("TNA") in the calculation of the ACV of Plaintiffs' vehicles, which reduced Plaintiffs' total loss payments based on the average difference between the list price and a lower price that a dealer would theoretically accept.

Alleging that this methodology resulted in undervalued payments, Plaintiffs brought various claims, including breach of contract, breach of the covenant of good faith and fair dealing,

1

fraudulent concealment, fraudulent inducement, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and various other state consumer protection statutes. (Second Amended Complaint, Dkt. 242 ¶¶ 76–555). On September 29, 2025, this Court granted in part and denied in part State Farm's Partial Motion for Summary Judgment on those claims. (Dkt. 326). Pending in front of the Court are State Farm's other Motion for Summary Judgment (Dkt. 310) and Plaintiffs' Motion for Class Certification (Dkt. 275).

Defendants now move to exclude the proposed testimony of Jason Merritt, Plaintiffs' expert on personal property appraisal. (Dkt. 304). For the following reasons, the Court grants in part and denies in part Defendants' Motion to exclude the testimony; the Court permits Merritt to testify consistent with this Opinion but bars certain testimony.

## LEGAL STANDARD

"[Federal Rule of Evidence] 702 and *Daubert* govern the admissibility of expert testimony." *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021). Under the standard laid out in the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, trial judges act as gatekeepers to screen expert evidence. 509 U.S. 579, 589 (1993). Expert evidence is to be admitted only after the trial court evaluates "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Hillman v. Toro Co.*, 164 F.4th 971, 979 (7th Cir. 2026) (emphasis in original). Under Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

2

>    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

The Advisory Committee instituted the operative version of the rule in December 2023 to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." FED. R. EVID. 702 Advisory Committee Notes to 2023 Amendments. The Committee stated the amendment was necessary in part because "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," which is an "incorrect application" of the Rule. *Id*. Still, the Committee clarified "[n]othing in the amendment imposes any new, specific procedures." *Id*.

In evaluating the expert's proposed testimony, the Court should "scrutinize proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (internal quotation marks omitted). The Court utilizes a three-part analysis when applying the Daubert framework to proposed Rule 702 evidence. The Court determines (1) "whether the witness is qualified;" (2) "whether the expert's methodology is scientifically reliable;" and (3) "whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (citation modified); *see also Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). In other words, "the key to the gate is not the ultimate correctness of the expert's conclusions but rather the soundness and care with which the expert arrived at her opinion." *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 826

3

(7th Cir. 2021) (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)) (citation omitted).

The Supreme Court has not yet decided whether a district court must undertake a *Daubert* analysis at the class-certification stage when an expert's report is critical to the class certification analysis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 39–40 (2013) (Ginsburg, J., dissenting) (describing how the Court granted certiorari to resolve the *Daubert* question but did not ultimately reach its merits). While the courts of appeals have taken different approaches to this issue, the Seventh Circuit requires a district court to rule on challenges to an expert's qualifications prior to ruling on class certification if the expert's report is "critical to class certification." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815−16 (7th Cir. 2010). "Expert evidence can be admissible under Rule 702 and *Daubert* but still fall short of proving the Rule 23 requirements for class certification." *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 894 (7th Cir. 2025).

## **DISCUSSION**

Plaintiffs retained Merritt to testify about "what an appraisal is," "how to use the comparable methodology to appraise a vehicle's [ACV]," and whether State Farm's (via the company Audatex) application of a TNA in the calculation of the ACV of Plaintiffs' vehicles is "appropriate when appraising a vehicle using a comparable ["comp"] methodology." (Dkt. 364-3 at 2, "Merritt Report"). To prepare for that testimony, Merritt "reviewed the Market-Driven Valuation Reports Audatex prepared for State Farm for each named Plaintiff, a 'white paper' prepared and produced by Audatex that explains how it implements the comp methodology, and graphs prepared by EconOne showing the data that Audatex included and excluded when calculating [TNAs]." (*Id.* at 4). Merritt's expertise in this task derives from his experience appraising over 1,000 vehicles for ACV, in part through his own entities—East Coast Auto

4

Appraisers, LLC, and Merritt's Automotive, LLC—and in part on behalf of the Timbrook Automotive Organization. (*Id.* at 1–2; *see also* Merritt Report Exhibit 1, Jason Merritt *Curriculum Vitae*). In line with this experience, Merritt has received certification from the Bureau of Certified Auto Appraisers. (Dkt. 364-3 at 2).

Merritt's planned testimony in this case mirrors that which he offered in numerous other challenges to State Farm's TNA usage around the country. *See, e.g.*, *Gulick v. State Farm Mut. Auto. Ins. Co.*, 780 F. Supp. 3d 1169, 1183 (D. Kan. 2025). Merritt's first opinion is that the TNA Audatex utilizes in its Autosource valuation methodology conflicts with typical appraisal standards as utilized in comp methodology. (Dkt. 364-3 at 3–8). Second, he opines that once the line-item TNAs are removed, the Audatex Reports document a sound individualized appraisal of each loss vehicle following the standard comp methodology. (*Id. at* 8–10). As to be expected, State Farm's objections to that testimony also mirror the objections raised (and rejected) in earlier cases. *See Gulick*, 780 F. Supp. 3d at 1183. State Farm also raises a third objection specific to this case: that Merritt's characterization of the TNA as "deceptive" is "textbook *ipse dixit* that courts regularly exclude." (Dkt. 304 at 2). The Court grants State Farm's Motion insofar as it relates to this third objection; otherwise, this Court agrees with the numerous other courts around the country that have permitted Merritt's testimony writ large. *See Gulick*, 780 F. Supp. 3d at 1183 (collecting cases permitting Merritt to offer expert testimony against State Farm's TNA usage).

### A. Merritt's Qualifications

State Farm does not challenge Merritt's experience with appraisals. (Dkt. 305 at 7). Rather, State Farm suggests that Merritt is unqualified to opine on Audatex's methodology for lack of knowledge about the technical inputs on which the Autosource valuation actually runs. (*Id.* at 6–7). Numerous courts have already rejected this contention, and this Court will be no different. *See*

*Gulick*, 780 F. Supp. 3d at 1183 (collecting cases). It is well-settled that an expert witness need not have direct, first-hand knowledge of every fact underlying his or her opinion. *See United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) ("Expert opinion, by contrast, need not be based on first-hand knowledge of the facts of the case."). Merritt's significant experience in appraisals is the "specialized knowledge that the lay person cannot be expected to possess" that in turn "provides the jury with a more complete picture than would be provided by a recitation of each component fact." *Id.*

Merritt's extensive background in ACV appraisals makes him appropriately qualified to opine on how Audatex's methodology compares to other industry practice even without first-hand experience in the Defendants' technical systems. *See Trs. of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir. 2007) ("[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience."). State Farm's grievances with how Merritt applies his experience to the facts of this case are better suited for cross-examination.

The same cannot be said for State Farm's arguments about any opinions Merritt may attempt to offer regarding State Farm's alleged deceptiveness or deceitfulness in this case. (Dkt. 305 at 8). Experts generally cannot offer legal opinions or conclusions, and the exceptions to that rule are not applicable here. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence."). Merritt is free to testify to his view that there must be a specific evidence-based reason for making value

deductions in a proper comp appraisal, and that Audatex's TNA deviates from that standard. (Dkt. 364-3 at 3–5). The same goes for his emphasis on the TNA being "baked in" rather than "explicitly applied to the valuation of the insured vehicle" in a visible way, which may make it hard for a consumer to identify the use of the TNA on their vehicle's ACV determination. (*Id.* at 5). That, however, must be the end of the road for his testimony. "When an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is 'limited to describing sound professional standards and identifying departures from them.' " *Jimenez*, 732 F.3d at 721–22 (collecting cases); *see also United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007) (highlighting the "difference between stating a legal conclusion and providing concrete information against which to measure abstract legal concepts"). Merritt cannot veer into legal conclusions, including but not limited to observations about deception. Any opinions that do so should be excluded under Rule 702. The Court thus grants State Farm's motion to exclude Merritt's testimony to the extent that it speaks to legal conclusions such as deception.

### B. Reliability of Merritt's Testimony and Methodology

Defendants also seek to exclude Merritt's testimony and report arguing that his opinions are not based on any data or reliable methodology. Again, the Court disagrees.

#### i. Merritt's First Opinion

Defendants argue that Merritt's opinion that Audatex's typical negotiation adjustment conflicts with typical appraisal standards is unreliable for three reasons: that Merritt 1) compares Audatex's work to general principles and not specific appraisal standards, 2) has insufficient knowledge about how Audatex calculates its TNAs, and 3) operates from the false premise that a used vehicle's advertised cash price always equals its ACV. (Dkt. 305 at 9–11).

7

State Farm's second contention amounts to a recycled version of its arguments about Merritt's qualifications, addressed above, and can be disposed of accordingly. Further, State Farm does not suggest that Merritt's actual report—which thoroughly addresses all aspects of the Audatex methodology it intends to dispute—actually gets anything wrong about how Audatex operates, instead primarily taking issue with his lack of internal company knowledge about how the TNA "was developed or is calculated." (Dkt. 305 at 10).

State Farm's third contention also misses the mark: nowhere does Merritt's report indicate that he believes "a used vehicle's advertised price always equals its actual cash value," as State Farm puts it. (*Id.* at 11). Merritt espouses advertised internet prices as "an objective criterion for determining what the comparable vehicle would sell for on a particular day to a buyer purchasing a vehicle outright, without providing a trade in, financing the purchase through the dealership, or buying optional warranties or service plans." (Dkt. 364-3 at 6). His view is that "it is not necessarily invalid to use a reported sale price as a comparable vehicle" but that a reported sale price can warp the comparison due to those potential other factors unless the appraiser is able to confirm with that specific dealer that "the reported sale price is not the result of a special discount and does not reflect ancillary items relating to the purchase." (*Id.*) State Farm oversimplifies this framing.

That leaves State Farm's first argument: that Merritt should be excluded because he compares Audatex's work to general principles and not specific appraisal standards. (Dkt. 305 at 9). Merritt, however, clearly outlines the comp appraisal methodology against which he is comparing Audatex's methodology—moreover, he finds that Audatex is "consistent with" his general methodology aside from the application of the TNA. (Dkt. 364-3 at 5–7, 9). While it is true that the December 2023 amendment to Rule 702 emphasizes that the application of the expert's methodology is a question of admissibility and not of weight, here, the Court finds that

Merritt employed a reliable methodology with the "soundness and care" expected of experts. *United States v. Protho*, 41 F.4th 812, 822 (7th Cir. 2022). From the outset, it is clear that Merritt familiarized himself with—and relied upon—the relevant facts of this case. Among other things, he highlighted the way Audatex comes to its ACV calculations and compares that to the "take-price" adjustment that some appraisers utilize, ultimately finding that Audatex's approach is insufficiently specific compared to that approach. ((Dkt. 364-3 at 7). His explanation about a generally accepted vehicle valuation methodology will help a trier of fact decide a central issue in this case—whether it is appropriate to apply a TNA while appraising a used vehicle. State Farm can highlight any issues it has with the merits of that conclusion at trial through cross-examination and its own expert testimony. The Court therefore finds Merritt's report and testimony reliable on this issue.

### ii. Merritt's Second Opinion

Defendants also argue that Merritt's opinion that Audatex's methodology, absent the TNA, produces a sound estimate of a vehicle's ACV is unreliable for three reasons: Merritt 1) once again operates from the false premise that a used vehicle's advertised cash price always equals its ACV, 2) utilizes insufficient intellectual rigor because he is litigation-driven, and 3) incorrectly assumes he can remove the TNAs without impacting other variables in the Audatex Reports. (Dkt. 305 at 12–14).

The first of these contentions was addressed and disposed of in this Court's earlier analysis. The second argument incorrectly aims to merge two distinct practices of Merritt's: his work as an individual appraiser, and his testimony as to how insurance companies will often appraise cars. In his individual practice, Merritt has been called upon to perform vehicle-specific appraisal verification after an insurance company uses third-party software to determine ACV. (Dkt. 335-4,

9

Exhibit 3, *Wiggins* Merritt Dep. 58:13–61:6). State Farm makes much of the fact that Merritt admits to "call[ing] the dealerships to verify" prices and features during his individual appraisals, (*see* Dkt. 306-3, Exhibit 3, *Chadwick* Merritt Dep. 106:7–22), but this practice is completely in line with Merritt's own discussion of best practices. (*See* Dkt. 364-3 at 3 (stating that deviation from list price requires "objective, observed, and documented" reasons "grounded in evidence")). The lack of individualized inquiry in his Report does not derive from that methodology's likeliness to "sound a death knell to certification," (Dkt. 305 at 13), but rather the fact that insurance companies themselves *do not utilize it*, presumably believing it would be a death knell to their own bottom lines. It is not impermissibly "litigation-driven" for Merritt to compare and contrast his individualized inquiry approach with the standardized algorithmic approach common to insurance companies.

Finally, State Farm's argument that Merritt incorrectly assumes he can remove the TNAs without impacting other variables in the Audatex Reports is best suited for cross-examination. Merritt permissibly made reasonable inferences to reach his conclusions and ultimately "stayed within reliable . . . bounds" in so doing. *Protho*, 41 F.4th at 822; *contra C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) ("When a district court concludes that there is simply too great an analytical gap between the data and opinion proffered such that the opinion amounts to nothing more than the *ipse dixit* of the expert, it is not an abuse of discretion under *Daubert* to exclude that testimony.") (citation modified). Ultimately, Rule 702 asks whether the expert's hypothesis is "reliably supported and applied to the known facts, such that it rises above speculation and becomes a presentable probability." *Lapsley*, 689 F.3d at 814. This Court finds that Merritt's application of his methodology to the circumstances of the case have met that threshold, in accordance with the 2023 amendments. Further, the "soundness of the factual

10

underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) (citation modified).

To the extent that Defendants challenge Merritt's conclusions, a *Daubert* motion is not the proper vehicle to do so. "[T]he correct inquiry focuses not on the ultimate correctness of the expert's conclusions, but rather on the soundness and care with which the expert arrived at [his] opinion." *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 873 (7th Cir. 2021) (citing *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993–94 (7th Cir. 2019)) (internal citation omitted); *see also Textron*, 807 F.3d at 834 (same). Instead, Defendants may challenge Merritt's conclusions through cross-examination. *Protho*, 41 F.4th at 822 ("Once a district judge properly finds an expert's testimony relevant and reliable, any challenge to it goes to its 'weight . . . not its admissibility.' "); *Schultz*, 721 at 431 ("So long as the principles and methodology reflect reliable scientific practice, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' "); *see also, e.g.*, *Wielgus v. Ryobi Techs., Inc.*, 2012 WL 3643682, at *2 (N.D. Ill. Aug. 23, 2012) ("[T]he trial court's role as gatekeeper is not intended to replace cross-examination and the presentation of conflicting evidence as traditional mechanisms for highlighting weaknesses in the expert's testimony.").

### C. Relevance of Merritt's Opinions

Defendants do not challenge the relevance of Merritt's report and testimony, cabining their objections to those outlined above. For purposes of completing the *Daubert* analysis, the Court also finds that Merritt's report and testimony will assist a trier of fact in understanding how cars are typically appraised and are thus sufficiently relevant to the present proceeding.

**CONCLUSION**

The Court grants in part and denies in part Defendants' Motion to exclude the testimony of Jason Merritt; the Court permits him to testify consistent with this Opinion but bars certain testimony. [304]

_____
Virginia M. Kendall
United States District Judge

Date: March 9, 2026