THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BERNADETTE WILLIAMS, et al., on behalf of )
themselves and all others similarly situated, )
)
                          *Plaintiffs*,      )        No. 22 C 1422
        v.                                   )
                                             )        Chief Judge Virginia M. Kendall
STATE FARM MUTUAL AUTOMOBILE                 )
INSURANCE COMPANY, an Illinois               )
corporation, and STATE FARM FIRE AND         )
CASUALTY COMPANY, an Illinois                )
corporation.                                 )
                                             )
                          *Defendant*.       )

**OPINION & ORDER**

This Court recently granted in part and denied in part Defendants' Motion to exclude the

testimony of Jason Merritt in an opinion that thoroughly expounded the law of expert disputes as

applied to this case. (Dkt. 384). This Opinion adopts in full the background information and

applicable legal standard outlined in that ruling. *Id.*

Now in front of the Court is Defendants' Motion to exclude the proposed testimony of Kirk

Felix, Plaintiffs' expert on used car pricing trends. (Dkt. 301). For the following reasons, the Court

grants that Motion.

**DISCUSSION**

Plaintiffs retained Felix to testify about whether used vehicles typically sell for an amount

lower than their online advertised price, and whether that conclusion depends on whether the

consumer is paying cash versus financing the vehicle through the dealership. (Dkt. 364-2 at 2,

"Felix Report"). To prepare for that testimony, Felix reviewed the Market-Driven Valuation

1

Reports Audatex prepared for State Farm for each named Plaintiff, the Second Amended Class Action Complaint, and the data analysis provided by Plaintiffs' Expert Phillip Johnson.[1] (*Id.* at 3).

Felix spent the first 13 years of his career managing the service and parts departments of Honda, Acura, and Toyota dealerships; from 1999 until his 2022 retirement, Felix served as a moderator and consultant at NCM Associates, Inc., where he facilitated meetings—called 20 Groups—for cohorts of non-competing dealerships to "discuss industry trends and best practices for operating efficient, profitable dealerships." (Dkt. 340 at 4–5; *see also* Felix Report Exhibit 1, Kirk Felix *Curriculum Vitae*). Over the course of those two decades, those discussions included over 300 dealerships across 45 states, including Chevrolet, Chrysler, Ford, Nissan, and Honda dealers, two fixed operations director groups, and an Independent Auto Auction group. (Dkt. 364-2 at 2). Those 20 Groups conversations frequently covered "adapting to changes in the industry brought about by the internet." (*Id.*) A 20 Groups conversation would feature dealers from the same franchise, i.e. Ford dealers talking to other Ford dealers. (Dkt. 303-1, Exhibit 1, *Chadwick Felix Dep.* 23:1–23:12). Felix estimated that he has probably touched every franchise in some capacity (including NCM's fixed operations work), but as far as dealer groups, there are a number of brands he has not worked with directly, including Toyota, Mercedes, BMW, and Lexus. (*Id.* 25:16–30:14). Felix estimates that he facilitated three-day meetings three times a year for NCM. (*Id.* 36:10–36:13).

Felix's planned testimony in this case mirrors that which he offered in numerous other challenges to State Farm's TNA usage around the country. *See, e.g.*, *Gulick v. State Farm Mut. Auto. Ins. Co.*, 780 F. Supp. 3d 1169, 1183 (D. Kan. 2025). Felix's main opinion centers on the impact of the internet, and specifically online price comparison tools. (Dkt. 364 at 3). His

---

[1] Defendants' motion to exclude aspects of Johnson's report and testimony is pending in front of the Court. (Dkt. 307).

testimony is that "because of Internet advertising and shopping, 'comparison tools' available to consumers when shopping for used autos, and state-of-the-art, sophisticated pricing tools or software, vehicles are priced to market and used car dealers do not deviate down from the advertised cash price with limited exceptions that are not related to the market value of the car but rather related to add-on products or how the transaction is structured or financed." (*Id.*) This contrasts with the pre-digital era, where, Felix testifies, "it was fairly common in the used auto market for dealers to advertise vehicles at an above-market price and negotiate down from that price." (*Id.*)

State Farm takes issue with both Felix's qualifications and reliability as an expert. (*See* Dkt. 301). Felix, the defense argues, "has no direct or specialized experience qualifying him for the task at hand. For example, he's never run a used car dealership or even sold a used car, and he has no experience pricing used vehicles for sale." (*Id.* at 1). Further, State Farm contends that Felix's opinions derive from "anecdotes from his time as a consultant" that do not involve any actual data analysis, be it Audatex's actual sales data or otherwise, and amount to "total guesses." (*Id.* at 1–2).

## A. Felix's Qualifications

State Farm first argues that Felix is unqualified to "opine on the pricing and selling of used vehicles, including topics like dealerships' pricing strategies, consumers' negotiating behavior, and the Autosource methodology at issue in this case." (Dkt. 302 at 1). Upon a review of the full record, this Court agrees that Felix has not demonstrated the requisite qualifications.

Felix has never sold a used car, and he admits that he has never been involved in the used car business. (*Chadwick* Felix Dep. 40:23–41:6). Though Felix occasionally gave information about a car's reconditioning costs to those individuals at dealerships in charge of used car pricing

3

(during his work from 1986 to 1999), he has never been involved in pricing used vehicles for sale, nor has he managed those who do. (*Id.* 41:7–42:8, 103:13–103:23). While it is true that "nothing in Rule 702 or *Daubert* categorically bars a generalist . . . from opining on more specialized topics. . . . that doesn't mean a generalist is *necessarily* qualified to speak on specialized subjects." *United States v. Truitt*, 938 F.3d 885, 889–90 (7th Cir. 2019) (affirming a district court's exclusion of testimony where an expert's general experience as a psychologist in no way qualified him to answer the specific questions about religious themes at play in the case). Instead, the Court must ask "not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.' " *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (citation omitted).

Here, Felix's opinions come from "his experience in being around dealers for 30 plus years or 20 plus years." (Dkt. 340-5, Exhibit 6, *Clippinger* Felix Dep. 95:15–96:8). In short, his experience comes from the conversations he facilitated at NCM. (*Chadwick* Felix Dep. 103:9–103:12). Yet Felix's experience with NCM involved meetings only three times a year. (*Chadwick* Felix Dep. 36:10–36:13). Felix's involvement included putting together the agenda for the meeting after consulting with the group's executive committee, and then running the meetings alongside the chairman, but he did not take notes at the meetings. (*Id.* 36:14–39:4). NCM developed the programming itself, which Felix did not have access to "then" or "now," so he could not review any of those materials for his testimony—rather, he speaks from anecdotal memories of the conversations. (*Id.* 38:23–40:22). It is hard to square this experience with the scope of Plaintiffs' proposed testimony, which seeks to authoritatively describe the process for pricing and selling used automobiles. (Felix Report at 3).

It is well-settled that an expert witness need not have direct, first-hand knowledge of every fact underlying his or her opinion. *See United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002). Ultimately, though, qualification requires comparing "the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990). Felix admits to not knowing the number of car dealerships in any state, what percentage of used car dealerships in any state market themselves as no haggle dealerships, what percentage of dealerships in any state will negotiate on the price of a used car, or how many car dealerships have eliminated negotiation.[2] (*Chadwick* Felix Dep. 113:8–113:19, 167:8–168:8). Felix never conducted a survey of dealers regarding their pricing practices ahead of this litigation, though he says a survey probably happened during his time at NCM, even if he cannot recall when or what the results were. (*Id.* 103:23–104:25).

Under Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Plaintiffs have not met that burden. This Court finds that Felix's qualifications do not demonstrate "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," and grants State Farm's Motion to Exclude on this ground. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (internal quotation marks omitted).

---

[2] For this last point, Felix suggested that it "would be a high percentage." Asked if that meant more than 50 percent, he answered yes. Asked if that meant more than 60 percent, he said he did not know. (*Chadwick* Felix Dep. 167:8–168:8).

### B. Reliability of Felix's Testimony

Even if the Court found Felix to be qualified, Defendants' Motion would also be granted on the ground that Felix's opinions are not based on reliable data and methodology. While it is true that numerous other courts around the country have permitted Felix's testimony, *see Gulick*, 780 F. Supp. 3d at 1183 (collecting cases), it is also true than a number of those decisions (though not all) preceded the 2023 amendments to Rule 702 that sought to course-correct where "many courts ha[d] held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," which is an "incorrect application" of the Rule. FED. R. EVID. 702 Advisory Committee Notes to 2023 Amendments. With an eye for sufficiency and application of methodology, then, this Court finds that Felix's testimony misses the mark.

In assessing an expert's reliability, "the key to the gate is not the ultimate correctness of the expert's conclusions but rather the soundness and care with which the expert arrived at her opinion." *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 826 (7th Cir. 2021) (citation omitted). Here, Felix has freely admitted that his methodology for opining on the used car pricing and sales market consists of reflecting upon memories of his experiences with NCM. (*Chadwick* Felix Dep. 103:9–103:12). Yet NCM's moderation topics were not even specific to used cars. Rather, the business model involved gathering approximately 20 dealers representing the same manufacturer (i.e. Toyota), compiling 5–7-page financial statements from each of them, and then consolidating the information into a 30-plus page financial comparison document to then discuss in a meeting. (Dkt. 339-4, Exhibit 4, *Wiggins* Felix Dep. 38:12–39:5). Even if used cars were discussed at every meeting as a "critical part" of the car business, as Felix testifies, (*Chadwick* Felix Dep. 53:23–54:3), general reference to thrice-annual meetings does not demonstrate the

"soundness and care" expected of experts on the facts of the case at hand. *See United States v. Protho*, 41 F.4th 812, 822 (7th Cir. 2022).

Felix's planned testimony is that "vehicles are priced to market and used car dealers do not deviate down from the advertised cash price with limited exceptions." (Felix Report at 3). In depositions, he has estimated that this is the case around 90 percent of the time. (*Chadwick* Felix Dep. 47:25–48:21). This, however, is not a view he can back up by data but rather, it is a product of the information he heard "over 23 years with NCM clients." (*Id.*) While it is true, as Plaintiffs contend, that Felix need not commission a study himself to testify to how often vehicles are sold for less than listed price, (Dkt. 340 at 14 n.10), Felix must explain *how* he reaches his conclusions—either by linking them to generally accepted standards in the field or by citing information within his own practical experience. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) ("The critical inquiry is whether there is a connection between the data employed and the opinion offered."); *see also, e.g.*, *Potts v. Manos*, 2017 WL 4365948, at *5 (N.D. Ill. Sept. 29, 2017) ("A witness who offers expert testimony based on his experience must *connect his experience to the facts of the case* in order to meet the standard for reliability under *Daubert* and the Federal Rules of Evidence.") (emphasis added).

The same goes for Felix's assertion that Autosource and used car dealers use the same methods to assess the value of used automobiles other than State Farm's use of the TNA. (Felix Report at 6–7). To be fair, Felix spells out that the similarities he identifies involve the variables used to calculate value, such as "factors of mileage, equipment, and vehicle condition," as well as using "software and databases to identify the listed price of comparable vehicles." (*Id.*) The fact that these inputs share labels, however, does not necessarily equate to the inputs themselves mirroring one another. Felix admits he does not know how Audatex determines typical/average

vehicle condition, and admits that the Autosource white papers did not "do anything" in terms of the opinions represented in his expert report. (*Clippinger* Felix Dep. 58:14–65:12).

Plaintiffs have not shown by a preponderance of the evidence that Felix's testimony is "based on sufficient facts or data" and "the product of reliable principles and methods." FED. R. EVID. 702; *see also Lapsley*, 689 F.3d at 814 (holding that the question is whether the expert's hypothesis is "reliably supported and applied to the known facts, such that it rises above speculation and becomes a presentable probability"); *see also Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995) ("This task requires that the district court consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation."). This Court finds that Felix's application of his methodology to the circumstances of the case have not met the Rule 702 threshold, in accordance with the 2023 amendments.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion to exclude the testimony of Kirk Felix. [301]

Virginia M. Kendall
United States District Judge

Date: March 10, 2026