THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERNADETTE WILLIAMS, et al., on behalf of themselves and all others similarly situated, | ) ) ) | |
| *Plaintiffs*, | ) ) | No. 22 C 1422 |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, and STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation. | ) ) ) ) ) ) ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION & ORDER**

This Court recently granted in part and denied in part Defendants' Motion to exclude the testimony of Jason Merritt in an opinion that thoroughly expounded the law of expert disputes as applied to this case. (Dkt. 384). This Opinion adopts in full the background information and applicable legal standard outlined in that ruling. *Id.*

Now in front of the Court is Defendants' Motion to exclude the testimony of Phillip Johnson, Plaintiffs' data and damages expert. (Dkt. 307). State Farm has also filed a Motion to strike Johnson's Rebuttal Report (Dkt. 350; *see* Dkt. 332-1, "Johnson Rebuttal Report" (sealed)). For the following reasons, the Court denies Defendants' Motion to exclude the testimony as well

1

as the Motion to strike the Rebuttal Report; the Court permits Johnson to testify consistent with this Opinion.

## DISCUSSION

Plaintiffs retained Johnson to "examine the reliability and accuracy of State Farm's TNA methodology and evaluate the adjustments to market price it makes, purportedly to account for negotiations in the market between buyers and sellers; assess whether data produced in this matter and the TNA methodology support State Farm's use of the TNA deductions; determine whether State Farm's use of the TNA methodology impacted Class Members, and determine whether there is a feasible methodology, common to the Class, with which Class damages can be reliably estimated." (Dkt. 279-5 at 3, "Johnson Report") (cleaned up). To prepare for that testimony, Johnson relied on the Second Amended Complaint, related correspondence and various depositions, Kirk Felix's expert report (since stricken, *see* Dkt. 385), State Farm's Appraisal Reports for Plaintiffs, Audatex's claims and vehicle sales data, and additional documents both specific to this docket and widely available. (Johnson Report, Exhibit 2, "List of Materials Relied Upon").

Johnson's conclusions, at a high level, can be summarized as follows: that 1) the data that Audatex—State Farm's appraisal vendor—produced, as well as the methodology used for Class Members' appraisal reports, "does not support the use of TNA deductions," 2) "State Farm's use of the TNA deductions impacted all Class Members' claims for their total vehicle losses," and 3) there is a "feasible methodology, common to the Class, by which Class damages can be reliably calculated." (Johnson Report at 3).

State Farm purports to move to exclude only Johnson's expert testimony as to the second and third opinions that address class-wide harm and damages.[1] (Dkt. 308 at 3). Nonetheless, State Farm buries in its brief an additional request to strike Johnson's deposition testimony about how the TNA might influence consumer purchasing decisions and thus impact the insurance premium market. (*Id.* at 10–13). In this portion of the memorandum, Defendants attempt to make arguments through Rule 26(a)(2), though reference to Rule 26 does not appear in the Motion itself. (*Id.*) Plaintiffs likewise appear confused by the lack of reference to Rule 26 on the face of the Motion and requested a properly filed brief on the issue, (Dkt. 341 at 8 n. 5), which State Farm declined to provide. (Dkt. 347 at 2). The Parties appear to suffer further procedural miscommunications with regard to the Johnson Rebuttal Report and the interplay of Rule 37 and Rule 26. (Dkts. 350, 360).

For clarity, the Court will first address only State Farm's arguments as they apply to Johnson's second and third opinions in the original report. In so doing, the Court finds no reason to grant Defendants' Motion. From there, the analysis turns to the more convoluted disputes. Here, too, the Court finds that Plaintiffs have properly operated within the parameters of Rule 702 and discovery obligations under Rule 26.

### A. Johnson's Class-Wide Harm and Damages Opinions

State Farm does not challenge Johnson's qualifications to give his second and third opinions, instead focusing arguments on the reliability prong of the *Daubert* analysis.

---

[1] State Farm's memorandum of law requests that the Court "enter an order excluding Phillip Johnson from offering damages opinions in this case," language that does not obviously cabin the request. (Dkt. 308 at 13). Nonetheless, Defendants' reply brief states that "State Farm never moved to exclude . . . Johnson's statistical analysis." (Dkt. 347 at 1). Yet State Farm's actual Motion to strike makes no such distinction, instead simply asking this court to "exclude Phillip Johnson from testifying as an expert witness." (Dkt. 307 at 2). For ease of reading, the Court will refer to State Farm's Motion to exclude Phillip Johnson as one seeking to exclude him as an expert witness entirely because that is the language of the actual Motion, but its analysis will focus on the actual arguments raised by the parties, which will inherently cabin the issue.

3

(Dkt. 308 at 4–10). For purposes of completing the *Daubert* analysis, though, the Court finds Johnson qualified to give these opinions. Johnson serves as Managing Director of Econ One Research, Inc. ("Econ One"), an economic research and consulting firm that he has worked at since 2000. (Johnson Report at 4). He received his PhD in Economics from the University of California Los Angeles in 1997 and spent three years as an Assistant Professor of Economics at the Instituto Tecnológico Autónomo de México prior to joining Econ One. (Johnson Report Exhibit 1, Phillip Johnson *Curriculum Vitae*). Johnson has provided expert testimony in numerous state and federal cases across a variety of industries, (*Id.*), and proves fit to do so again in this case.

### i. Johnson's Reliability and Relevance

State Farm suggests that Johnson's second opinion—"State Farm's use of the TNA deductions impacted all Class Members' claims for their total vehicle losses"—is inadmissible because it presumes that the relevant "breach" consisted in the calculation of ACV using a methodology that included the TNA. (Dkt. 307 at 2; Johnson Report at 3). It then argues that Johnson's third opinion—that there is a "feasible methodology, common to the Class, by which Class damages can be reliably calculated"—does not fit with Plaintiffs' theory of liability for their fraud claims. (Dkt. 307 at 2; Johnson Report at 3). Both of these contentions fall short. The Court finds Johnson's report and testimony sufficiently reliable and relevant to deny the Motion on these grounds.

While it is true that the December 2023 amendment to Rule 702 emphasizes that the application of the expert's methodology is a question of admissibility and not of weight, here, the Court finds that Johnson employed a reliable methodology with the "soundness and care" expected of experts. *United States v. Protho*, 41 F.4th 812, 822 (7th Cir. 2022); *see also, e.g.*, *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 873 (7th Cir. 2021) ("[T]he correct inquiry focuses not on the ultimate

4

correctness of the expert's conclusions, but rather on the soundness and care with which the expert arrived at [his] opinion.") (internal citation omitted). Indeed, State Farm does not attempt to object to Johnson's actual statistical analysis. To the extent that Defendants want to lodge the stated objections to Johnson's methodology, a *Daubert* motion is not the proper vehicle to do so. Instead, Defendants may challenge Johnson's conclusions through cross-examination. *Protho*, 41 F.4th at 822 ("Once a district judge properly finds an expert's testimony relevant and reliable, any challenge to it goes to its 'weight . . . not its admissibility.' "); *see also, e.g.*, *Wielgus v. Ryobi Techs., Inc.*, 2012 WL 3643682, at *2 (N.D. Ill. Aug. 23, 2012) ("[T]he trial court's role as gatekeeper is not intended to replace cross-examination and the presentation of conflicting evidence as traditional mechanisms for highlighting weaknesses in the expert's testimony.").

Further, State Farm's arguments about *Schroeder* miss the mark. (Dkt. 308 at 6–7 (discussing *Schroeder v. Progressive Paloverde Ins. Co.*, 146 F.4th 567, 570 (7th Cir. 2025))). It is false that *Schroeder* left the relevant conceptions of breach and damages "no longer viable" in this case. (Dkt. 307 at 2). *Schroeder* interpreted these contractual concepts under Indiana law, which is not at issue here. To the extent *Schroeder* does or does not govern the result of this litigation, it is a matter of the class certification question under Rule 23.

This Court finds that Johnson permissibly made reasonable inferences to reach his conclusions and ultimately "stayed within reliable . . . bounds" in so doing. *Protho*, 41 F.4th at 822; *contra C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) ("When a district court concludes that there is simply too great an analytical gap between the data and opinion proffered such that the opinion amounts to nothing more than the *ipse dixit* of the expert, it is not an abuse of discretion under *Daubert* to exclude that testimony.") (citation modified). This Court

finds that Johnson's application of his methodology to the circumstances of the case have met the threshold laid out in Rule 702.

### B. Johnson's Deposition Testimony

State Farm next takes issue with statements Johnson made during his July 10, 2025, deposition. (Dkt. 308 at 10). State Farm directly asked Johnson whether he would be offering any opinion on whether a proposed class member would not have purchased insurance had the TNA been disclosed; in response, Johnson stated that "if insureds or potential insureds were aware that their compensation could or would be reduced by a substantial amount relative to what they were actually aware of, that that would be expected as an economic matter to affect some [] people seeking insurance." (Dkt. 309-1, Exhibit 1, Johnson Dep. 46:12–24). Johnson made clear that he had not calculated or specifically opined on what the magnitude of that impact might be in this case, only that general economic principles would likely lead to some kind of impact. (*Id.* 49:9–56:21).

State Farm's attorney pressed on this point repeatedly. Later in the deposition, after being asked again about the impacts of the TNA on insurance premiums, Johnson stated that "the value of a product is dependent upon, you know, what the consumer gets for it." (*Id.* 135:17–18). He then expounded upon that principle further, stating that "as an economic matter, when the value of a product is reduced, that affects what consumers are willing to pay for it. . . . fundamentals of supply and demand say that's going to have an impact on the price that the provider can charge. . . . I would expect as an economic matter there would be some impact on the premium that State Farm could charge for its automotive insurance, and that effect would be generally expected to be that they would be able to charge a lower premium." (*Id.* 136:5–21).

6

State Farm argues first that this opinion should be stricken because Johnson did not disclose it in his expert report, arguing in the alternative that Johnson is not qualified to opine on consumer behavior, and as a third argument, that the opinion is unreliable. (*Id.*) All of these arguments are unpersuasive.

First, State Farm's framing of Johnson's deposition testimony borders on misrepresentation. Johnson clearly stated that he was speaking to a matter of basic economic principle and was not in any way attempting to estimate the technical scope of the TNA's actual impact on a potential financial decision. On that ground alone, Johnson's testimony hardly deviates from his written report. Further, Johnson's testimony was in response to defense counsel's questioning that was designed to elicit testimony from an economist about economic impact. "This kind of responsive testimony is not the kind of ambush with an undisclosed opinion that the disclosure rules were designed to prevent." *See In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 659–60 (N.D. Ill. 2006).

State Farm's secondary contentions also fall flat. Johnson is an economist, and his responses to defense counsel's questioning at the deposition were grounded in simple economics. He did not make himself out to be a specialist in consumer behavior psychology, as State Farm suggests. (Dkt. 308 at 11–12). Neither is this an "unreliable" opinion amounting "to nothing more than unverified statements unsupported by scientific methodology." *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002). Johnson has been an economist for nearly 30 years. His extensive background makes him appropriately qualified to speak to a basic principle of supply and demand impacts. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) ("The critical inquiry is whether there is a connection between the data employed and the opinion offered.").

### C. Johnson's Rebuttal Report

In October 2025, State Farm submitted an additional Motion "to strike or, in the alternative, exclude" Johnson's Rebuttal Report. (Dkt. 350). State Farm contends first that the Rebuttal Report is in fact a new affirmative expert opinion dressed up as "rebuttal," which should then be stricken accordingly. (*Id.* at 1). Alternatively, State Farm makes arguments under Rule 702 that Johnson is not qualified to make this Rebuttal Report, that the opinions included therein are irrelevant, that Johnson's opinions are unreliable, and that others of Johnson's opinions are inadmissible. (*Id.*) The Court finds no merit in any of these contentions.

### i. Johnson Rebuttal Report Section III

The bulk of Johnson's Rebuttal Report is dedicated to rebuking the opinions of State Farm's expert witness, M. Laurentius Marais. (Johnson Rebuttal Report at 1–7). This is a textbook example of the purpose of a supplemental report, and State Farm dedicates no airtime to deconstructing it. Rather, State Farm focuses its briefing on Section III and Section IV of Johnson's Rebuttal Report. (*See generally* Dkt. 350).

In Section III, Johnson discusses what impact the alleged non-disclosure of the TNA could have had on the insurance premiums that State Farm insureds paid for their coverage. (Johnson Rebuttal Report at 8–11). While Johnson did not attempt to quantify the impact, he discussed why "[b]asic principles of supply and demand lead to the conclusion that lower demand would lead to lower premiums." (*Id.*) In other words, Section III mirrors Johnson's deposition testimony discussed above. This, too, is a textbook example of the purpose of a supplemental report. While "[s]upplementary reports cannot offer entirely new expert opinions . . . they should clarify or expand upon information in the expert's original report or *information given during the expert's deposition*." See *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 843–44 (N.D.

8

Ill. 2018) (citation modified) (emphasis added). New opinions can be offered in rebuttal "as long as they do not differ so substantially from the opening report that they introduce entirely new theories or angles." *See id.* at 844.

Given that Section III contains broadly similar substance to Johnson's deposition testimony, which—as discussed above—was perfectly within bounds, this is not a close question. And while it is true, as stated in *Noffsinger v. The Valspar* Corp, that "a party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief," *Noffsinger* is not the slam dunk that State Farm seems to think it is. 2011 WL 9795, at *6 (N.D. Ill. Jan. 3, 2011). That case involved a plaintiff who introduced an entirely new expert witness and characterized him as a rebuttal witness. (*Id.*) That is easily distinguishable from the present scenario, where Plaintiffs' existing expert witness expounded upon his existing testimony.

State Farm recycles many of its prior arguments about Johnson's deposition testimony to try and dislodge Section III of the Report under Rule 702. (Dkt. 350 at 4–12). The Court has reviewed these objections and finds the majority of them resolved under the same analysis already provided with regard to Johnson's deposition testimony as well as the discussion above regarding supplemental reports. Johnson is sufficiently qualified to reliably offer a basic description of supply-and-demand principles, despite State Farm's contention that the comments sit completely outside Johnson's specialty in economics. State Farm's arguments about "methodology" again fail here, (Dkt. 350 at 10–12), because Johnson's opinions sound in the fundamentals of his expertise.

State Farm makes two additional arguments. First, the defense suggest that Section III is inherently irrelevant and unhelpful because it sits contrary to the filed-rate doctrine, offering exclusively out-of-circuit case law for this argument.[2] (*Id.* at 7–9). "The doctrine protects public

---

[2] For their part, Plaintiffs do not provide any case law in response to this argument. (Dkt. 360 at 10).

9

utilities and other regulated entities from civil actions attacking their rates if the rates must be filed with the governing regulatory agency and the agency has the authority to set, approve, or disapprove them." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 607 (7th Cir. 2013). The filed-rate doctrine preempts "those suits that seek to alter the terms and conditions provided for in the tariff" in order to "serve its purpose." *Am. Tel. & Tel. Co. v. Cent. Off. Tel., Inc.*, 524 U.S. 214, 229 (1998) (Rehnquist, C.J., concurring). It "does not apply to pre-empt state law where the claim does 'not attack the rate itself' or does 'not require the court to 'second-guess' the rate-making agency.' " *See Maimonides Med. Ctr. v. Verizon New York Inc.*, 2010 WL 11627493, at *7 (E.D.N.Y. May 13, 2010). In Section III, Johnson is not "attack[ing] the rate itself." *See id.* Rather, he is speaking to the impact of an alleged non-disclosure on the insurance premium market. The filed-rate doctrine's potential bar of a claim for damages based on alleged overpayment for insurance premiums could possibly be relevant to the merits of the Plaintiffs' claims, but that is not the argument that was briefed, nor would this Motion be the appropriate place for it.

Finally, State Farm's last argument focuses on Section III's reference to a memorandum prepared by a purported insurance pricing expert named George Erickson (hereinafter "Erickson Memorandum"). (Dkt. 350 at 9–10). State Farm argues that reference to the Erickson Memorandum violates Rule 703 because Johnson is acting as the "mouthpiece" of an "undisclosed 'expert.' " (*Id.*) Plaintiffs contend that Johnson is not "seeking to regurgitate" the Erickson Memorandum but instead used Erickson's expertise to double check that there was no industry-specific reason why Johnson's economic analysis would not apply in insurance pricing. (Dkt. 260 at 11–12). The relevant portion of the Johnson Rebuttal Report reads as follows:

> If potential insureds were informed that the payouts would be lower by such amounts, market premiums would be lower because of the forces of supply and demand. George Erickson, an insurance pricing expert, confirms this, stating that "[a]n insurance company's claim adjustment practices are interconnected with the

> rate making process." He explains that "a 2-14% increase in costs would impact ratemaking," and since "the limit of liability is typically the most (or one of the most) important thing(s) about an insurance policy, [such an] impact on the limit of liability is material to what the insurance company would charge (and what consumers would pay)." In other words, if insured had been aware that payouts would be artificially lowered due to the application of TNAs, premiums would have been lower.

Johnson Rebuttal Report at 10–11 (citations modified).

To be sure, if Johnson "simply summarize[d] the out-of-court statements of [the Erickson Memorandum] as his testimony," that would be a hearsay violation unprotected by Rule 703. *See United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014). Nonetheless, Rule 703 permits experts to base their opinions on "all manner of underlying data that might otherwise not be admissible in evidence, including interviews, reports prepared by third parties, clinical and other studies, and technical publications." *See In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 654 (N.D. Ill. 2006). "[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of Rule 703 that there is no *general* requirement that the other expert testify as well." *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (emphasis in original) (contrasting a scenario where "the soundness of the underlying expert judgment is in issue").

*Dura Automobile Systems* provides a useful framework. There, the Seventh Circuit noted that an economist "would not be allowed to testify to the findings of an econometric study conducted by another economist if he lacked expertise in econometrics and the study raised questions that only an econometrician could answer." *Id.* at 614 (noting that even under those circumstances, the author would only have to testify if "it were apparent that the study was not cut and dried"). The phrasing of the Rebuttal Report, however, clearly references the Erickson Memorandum as a confirmation of Johnson's own conclusions, not as the source of them. Thus,

11

the Court will not strike Section III of the Report on this argument, nor any other of Defendants' grounds. State Farm, of course, has the prerogative and obligation to police any trial testimony for potential violations of Rule 703 related to Erickson or otherwise, but the present text of the Rebuttal Report is not one of them.

    ii.    **Johnson Rebuttal Report Section IV**

In the final section of his Rebuttal Report, Plaintiffs asked Johnson to compare his analysis to the expert report of Dr. Michelle Lacey, who testified in the aforementioned *Schroeder v. Progressive Paloverde Insurance Company* litigation. 146 F.4th 567. Johnson offers his opinion on what distinguishes his approach from Lacey's, which was based off of a different data set and involved a different insurance company. (Johnson Rebuttal Report at 11–13). While not explicit on the face of the Report itself, Plaintiffs assert that they do not intend for Johnson to provide any testimony "about Progressive's valuation methodology or data retention or statistical analysis, nor to any differences between those and State Farm's own conduct and analysis," noting instead that Section IV exists for this Court to assess the analysis—including what weight, if any, it deserves—in deciding the issue of class certification. (Dkt. 360 at 6 n.1). State Farm objects to Section IV as "inadmissible legal conclusion." (Dkt. 350 at 12–15). State Farm has submitted the Lacey Report under seal to this record. (Dkt. 351, Exhibit A).

Experts generally cannot offer legal opinions or conclusions. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence."). If Johnson were to offer "lawyer argument," as State Farm suggests he does, that would certainly be inadmissible testimony. (Dkt. 350 at 15); *see also,*

*e.g.*, *Zarinebaf v. Champion Petfoods USA Inc.*, 2022 WL 910638, at *9 (N.D. Ill. Mar. 29, 2022) (excluding portions of expert's testimony that "extend[ed] too far beyond his expertise").

As it stands, though, Section IV speaks in general terms about the purported methodological differences between Johnson's approach and Lacey's, which the Court now has in front of it. While Johnson cannot, at trial, testify to any legal argument, it is within reason for Plaintiffs' expert to attempt to distinguish his work from an expert involved in *Schroeder*, a case that State Farm has repeatedly characterized as a doomsday precedent for Plaintiffs, and that Plaintiffs had once offered as supportive of their position prior to the decision on appeal.

## CONCLUSION

In accordance with the above analysis, the Court denies Defendants' Motion to exclude the testimony of Phillip Johnson [307] and denies the Motion to strike the Johnson Rebuttal Report [349]; the Court permits him to testify consistent with this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: March 10, 2026