**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BERNADETTE WILLIAMS, et al., on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | No. 22 C 1422 |
| *Plaintiffs*, | ) | |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, and STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation. | ) ) ) ) ) | |
| *Defendant*. | | |

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiffs are insureds who filed "total loss" claims for the actual cash value ("ACV") of their totaled vehicles under their automobile insurance policies sold by State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company (collectively, "State Farm"). Plaintiffs challenge State Farm's application of a "typical-negotiation adjustment" ("TNA") in the calculation of the ACV of Plaintiffs' vehicles, which reduced Plaintiffs' total loss payments based on the average difference between the list price and a lower price that a dealer would theoretically accept. They brought this litigation on behalf of a putative class, alleging that Defendants failed to properly value their claims. Now in front of the Court is the Motion for Class Certification.

Plaintiffs' proposed classes include 14[1] state-level classes for breach of contract claims, 2 state-level classes for good faith and fair dealing claims (in Hawai'i and Oregon), and two national

---

[1] On the record at oral argument, Plaintiffs referenced 15 state-level classes for the contract claims. (*See* Draft Oral Argument Transcript at 40). The final transcript for the oral argument is forthcoming at time of writing. Nonetheless, the record they provide indicates 14 states: Illinois, Hawai'i, Kansas, Maryland, Michigan, Mississippi, Missouri, Nebraska, Nevada, Oregon, Pennsylvania, Texas, Utah, and West Virginia.

classes under Illinois law for fraudulent concealment and the Illinois Consumer Fairness Act ("ICFA"). (Dkt. 331-1, Amended Class Definitions). Alternatively, in lieu of two national classes, Plaintiffs suggest 14 state-level classes for their common law fraud claims and 6 state-level classes for consumer protection statutory claims. (*Id.*) Upon review of the record, the Motion for Class Certification is denied in full. (Dkts. 275, 276). The Court has also reviewed the supplemental briefing on the reserved issue from its September 2025 ruling on State Farm's Partial Motion for Summary Judgment (Dkt. 250) and grants that Motion as to all of Plaintiff Bernadette Williams' claims, extending the analysis from its September 2025 Opinion (Dkt 326) to this final reserved issue from that ruling. Finally, the Court denies as moot Defendant State Farm's Motion for Summary Judgment, filed in anticipation of a classwide defense. (Doc. 310). The parties may amend and refile their merit briefs at their discretion subsequent to their decision of how to proceed pursuant to the denial of certification.

## **BACKGROUND**

The Court assumes familiarity with the scope of this case from its prior rulings, including its September 2025 ruling on State Farm's Partial Motion for Summary Judgment. *See Williams v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 2755318, at *1 (N.D. Ill. Sept. 29, 2025); *Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980 (N.D. Ill. 2023); *Williams v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 3888832 (N.D. Ill. Aug. 21, 2024). Broadly speaking, the events that led to this litigation are not in dispute. That includes the following: one of the State Farm entities— State Farm Mutual or State Farm Fire—issued insurance policies to Plaintiffs, Plaintiffs made a claim for physical damage coverage, and each of these Plaintiffs' vehicles was deemed a total loss. (Dkt. 259 ¶¶ 3–6). State Farm's standard-form auto insurance policy offers two routes for settling for a covered vehicle: payment of the costs of repairs minus any applicable deductible, or, as at

issue here, payment of the "[ACV] of the covered vehicle minus any applicable deductible." (Dkt. 277-3 at 30, Exemplar Policy). The policy provides that ACV "is determined by the market value, age, and condition at the time the property damage occurred. Any deductible amount that applies is then subtracted." (Dkt. 277-3 at 18).

To help estimate the ACV of Plaintiffs' vehicles, State Farm obtained Autosource reports from third-party entity Audatex. (Dkt. 365 ¶ 5). State Farm, through Audatex, adjusts list prices to account for typical negotiation between car buyers and sellers to estimate a car's ACV from the list prices of comparable cars. The policy provides that, in the face of disagreement over ACV, the policy owner or State Farm will each select an appraiser, and those two appraisers will select a third appraiser, to make a renewed determination. (Dkt. 277-3 at 30). The Parties similarly agree that State Farm sent valuation letters regarding these total loss claims, which all Plaintiffs received, and that State Farm subsequently made payments to Plaintiffs (and/or any lienholders). (Dkt. 259 ¶ 7). The core disagreement comes from the process by which State Farm makes its ACV determinations, and specifically, whether the TNA is a legitimate aspect of the valuation process.

In March 2022, Plaintiffs filed this lawsuit, asserting breach of contract claims, breach of the duty of good faith claims, common law fraud claims, and statutory consumer protection claims. (Dkt. 1, *as amended* Dkt. 242). As part of the class certification briefing, the plaintiffs offered— and the Court accepted—expert testimony from Phillip Johnson, an economist, and Jason Merritt, who has experience in automobile appraisals.[2] (Dkts. 384, 386). Johnson's findings identified a framework to compute class-wide damages. (Dkt. 386 at 2). On the qualitative side, Merritt opined that the use of the TNA is a deviation from standard appraisal practice when using a comparable

---

[2] The Court previously excluded the opinions of Plaintiffs' expert Kirk Felix. (Dkt. 385).

3

methodology, as State Farm purports to do. (*See generally* Dkt. 384). With those expert reports in hand, the Court turns to the applicable analysis.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) requires all class actions to meet four requirements:

> (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

*Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (quoting FED. R. CIV. P. 23(a)).

Once a class meets the mark, it must also fit into one of the three types of class actions enumerated in Rule 23(b). Because the plaintiffs seek damages, they move to have their class certified under Rule 23(b)(3), which further requires: "(1) the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). In the alternative, Plaintiffs seek certification under Rule 23(b)(2). Plaintiffs must demonstrate compliance with all Rule 23 requirements by a preponderance of the evidence. *Svoboda v. Amazon.com Inc.*, 2025 WL 4632107, at *3 (7th Cir. Mar. 6, 2026).

A class action claim is, nevertheless, "an exception to the general rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The district court must conduct a "rigorous analysis," *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982), to

determine if that exception has been met due to its tendency to "cause a considerable tilt in the playing fields of litigation." *Chi. Tchrs. Union*, 797 F.3d at 433.

### DISCUSSION

The Court begins with commonality and predominance, the central challenges for Plaintiffs in their pursuit of class-wide relief, and ultimately, challenges that bar certification of their claims. "Plaintiffs' claims 'must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Predominance 'builds on commonality' by requiring that common questions 'predominate' over individual ones." *Id*. at 574 (citing *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023)).

Courts do not engage in bean counting, painstakingly tallying the potential common issues and differences without assessing the relative importance. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Rather, "[t]he guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021) (quoting *Beaton*, 907 F.3d at 1029); *see also Messner*, 669 F.3d at 815 ("Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." (cleaned up)). In sum, "[p]redominance tests whether the class is 'sufficiently cohesive' to justify class adjudication." *Svoboda*, 2025 WL 4632107, at *3.

### I. Breach of Contract

This case is one of multiple around the country that have sought to certify a class for breach-of-contract claims regarding automobile insurance companies' approaches to paying their

insureds. *See, e.g.*, *Drummond v. Progressive Specialty Ins. Co.*, 142 F.4th 149, 158 (3d Cir. 2025). The most recent certification decision to come out in the affirmative for plaintiffs was recently vacated pursuant to a to-be-scheduled rehearing. *See Clippinger v. State Farm Auto. Ins. Co.*, 156 F.4th 724, 729 (6th Cir. 2025), *reh'g en banc granted, opinion vacated*, 165 F.4th 1028 (6th Cir. 2026).

The in-circuit parallel to those cases presents the greatest challenge for Plaintiff, and indeed, governs the determination of their certification attempt. Last year, the Seventh Circuit reversed a certification order permitting a class action against Progressive Insurance Company for claims that Progressive had breached a contractual duty and a duty of good faith by applying Projected Sold Adjustments (PSAs) within its process for estimating the ACV of totaled cars. *Schroeder v. Progressive Paloverde Ins. Co.*, 146 F.4th 567, 572 (7th Cir. 2025). Much like State Farm's TNA, the PSA represents Progressive's price adjustment to account for typical negotiation between car buyers and sellers. *Id.* at 572. The *Schroeder* plaintiffs alleged that Progressive breached its undisputed contractual duty to pay the putative class members the ACV of their totaled cars, as well as a disputed duty to calculate ACV payments using a particular method or formula. *Id.* The district court found that while classwide proof was not viable for whether each individual class member received the ACV of their car, common evidence could "establish that Progressive employed an unacceptable method for calculating the ACV payments it offered insureds by applying [PSAs]." *Id.*

The Seventh Circuit determined that the lower court's commonality and predominance analyses rested on an "erroneous legal conclusion about the duties contained in Progressive's standard-form Indiana auto insurance policy." *Id.* at 573. The Court found that while Progressive

6

did have a duty[3] to compensate each insured for the fair market value— the price at which each car would change hands between a willing buyer and seller at the time of the loss (accounting for the car's age and condition, among other factors), and minus a deductible—commonality was nonetheless impeded by the fact that the "truth or falsity of whether cars sell for their list prices [would] not resolve whether Progressive breached this duty by applying [PSAs]." *Id.* at 576. Because it "would remain possible that the comparable cars in a given valuation report . . . were more valuable than the totaled car in ways that Progressive's other adjustments did not capture, offsetting any negative effect from applying [PSAs]," the jury would need to consider individualized evidence for each putative class member. *Id.*

The *Schroeder* Court likewise disposed of the alternative theory that Progressive, by applying PSAs, violated an independent duty to calculate ACV using a particular method or formula. Progressive's policy definition for ACV—"determined by the market value, age, and condition of the vehicle at the time the loss occurs"—plus the Court's own interpretation of Indiana law did not prescribe a specific formula and certainly did not preclude the application of PSAs so long as the ultimate result was the payment of ACV. *Id.* at 578. In other words, "Progressive's use of [PSAs] in calculating [ACV] payments 'does not by itself establish liability for breach' " *Id.* at 578–79 (citing *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 890 (7th Cir. 2011)).

Plaintiffs' Motion for Class Certification—filed prior to the *Schroeder* decision—referred to the cases against State Farm and Progressive as "virtually identical." (Dkt. 279 at 13). But on their heels in their Reply brief, Plaintiffs make three attempts to distinguish their breach of contract claims from those at issue in *Schroeder*. (Dkt. 332). None clears the bar.

---

[3] *Schroeder* interprets Indiana law, but Plaintiffs do not dispute the basic elements of a breach of contract claim to be a prerequisite to any of Plaintiffs' suggested 15 state-level classes. (Dkt. 276-2, Survey of State Law on Breach of Contract; *see also* Dkt. 293-29, Defendants' Appendix of Breach and Injury Elements).

7

Plaintiffs first suggest that Indiana law expressly deems "fair market value" to mean "the average trade-in value found in the National Automobile Dealers Association (NADA) Official Used Car Guide, vehicle valuations determined by CCC Information Services, Inc. (CCC), or valuations determined by such other authorities [such as Mitchell] as are approved by the bureau." (*Id.* at 4 (citing Ind. Code Ann. § 9- 22-3-2(1))). Yet, *Schroeder* did not rest on the Indiana Code of Insurance but rather the more general definition under Indiana law: "the price at which property would change hands between a willing buyer and seller, neither being under any compulsion to consummate the sale." *Schroeder*, 146 F.4th at 576 (citing *Ohio Cas. Ins. Co. v. Ramsey*, 439 N.E.2d 1162, 1165–69 (Ind. Ct. App. 1982)). Plaintiffs did not attempt to argue, beyond the above, that the state-law definitions for "fair market value" would be any different for any of their other proposed sub-classes, (*See* Dkt. 332 at 4), and there is nothing in the record to suggest that they would stray from the standard definition that Indiana utilizes.

Plaintiffs then make two fact-specific arguments. First, they suggest that the State Farm and Progressive policies contain distinct enough promises to justify a divergence from *Schroeder*'s result. (Dkt. 332 at 2). Second, they suggest that the PSA contains a locality consideration that makes it a more tailored adjustment than the TNA. (*Id.* at 4). Neither of these serve to distinguish Plaintiffs' certification request sufficiently to overcome the aforementioned barriers.

Turning first to Plaintiffs' arguments about the actual language of the policies, the Court finds that the language sounds more in synonym than in distinction. "Progressive's policy specifies that ACV 'is determined by the market value, age, and condition of the vehicle at the time the loss occurs' " without further defining market value, leading to the Seventh Circuit's aforementioned exploration of Indiana law's definition thereof. *Schroeder*, 146 F.4th at 576. State Farm's website defines ACV as "generally determined by factors such as the age, condition, equipment and

8

mileage of your vehicle at the time the loss occurred." (Dkt. 279 at 9 (discussing website language)). Plaintiffs contend that this list of factors is "objective" compared to the squishier Progressive policy in part because it does not include "market value." (Dkt. 332 at 3). Yet the factors that State Farm references amount to the exact considerations that would inform fair market value, defined as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." VALUE, Black's Law Dictionary (12th ed. 2024). Further, State Farm's ACV definition does not strictly limit itself to the listed considerations, with terms like "generally determined" and "factors such as" indicating that multiple considerations inform fair market value and thus ACV.[4]

Plaintiffs' second argument is even more easily disposed of: setting aside that the TNA did contain regionalized adjustments until 2021, the crux of the matter is that *Schroeder* in no way rested on how the PSA was calculated.[5] In fact, *Schroeder* specifically addressed a hypothetical where the jury might find the PSA to be "statistically biased" and found that this, too, would not be a common question due to the individualized inputs. *Schroeder*, 146 F.4th at 577. The breach question is ultimately too plaintiff-specific. Thus, under the guidance of *Schroeder*, this Court finds that Plaintiffs have not met their burden for commonality and predominance on their proposed class for breach of contract.

## II.    Good Faith and Fair Dealing

*Schroeder*'s analysis applied equally to the breach of contract claim and the breach of the duty of good faith under Indiana law. *Id.* at 574. This is because Indiana case law on the duty of good faith requires proof of breach of a contractual duty or something akin to the unreasonable

---

[4] Plaintiffs' experts use the terms interchangeably. (*See* Dkt. 279-5 at 8, Johnson Report; Dkt. 277-7 at 2, Merritt Report).

[5] Draft Oral Argument Transcript at 75. The final transcript for the oral argument is forthcoming at time of writing.

denial of liability. *Id.* (collecting cases); *see also Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993) ("[I]n most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action."). Plaintiffs suggest a distinction from their proposed class because they assert Hawai'i and Oregon do not require breach of contract to move forward with a good faith and fair dealing claim. (Dkt. 332 at 5); *see, e.g.*, *Morrow v. Red Shield Ins. Co.*, 159 P.3d 384, 388–89 (Or. App. 2007) (discussing how the covenant of good faith and fair dealing does not vary the substantive terms of the contract but that an obligation can be encompassed within the covenant event if not technically in the contract); *Simmons v. Puu*, 94 P.3d 667, 674 (Haw. 2004) (discussing how the duty of good faith "go[es] deeper than the mere surface of the contract").

Setting aside that the Indiana Supreme Court has also articulated that there are breaches of the duty of good faith that are not coterminous with breaches of contract in line with the highest courts of Hawai'i and Oregon, Plaintiffs' contentions misidentify the thrust of *Schroeder*. Whether to evaluate the duty of good faith as a "faithfulness to an agreed common purpose," *Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc.*, 114 P.3d 929, 942 (Haw. Ct. App. 2005), *as amended* (June 14, 2005), or as the "objectively reasonable contractual expectations of the parties," *Pollock v. D.R. Horton, Inc.—Portland*, 77 P.3d 1120, 1127 (Or. App. 2003), the individualized inquiry remains as it was in *Schroeder*. Assessing breach of the duty would still require an assessment of whether any negative effect from the TNA was offset elsewhere in the ACV calculation process, the kind of individual evidence that "would thus overwhelm the litigation." *Schroeder*, 146 F.4th at 577. While the governing state law may not be the same, the problems with commonality and predominance remain consistent. At bottom, the "inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That standard has not been met here.

## III.     Common Law Fraud Claims and State Consumer Protection Statutes

Plaintiffs also seek certification on common law and statutory fraud claims. First and foremost, they request two national classes: one that applies Illinois fraudulent concealment law, and one that applies the Illinois Consumer Fraud Act ("ICFA"). (Dkt. 331-1, Amended Class Definitions). In the alternative, Plaintiffs pursue 14 state-level classes for their fraud claims and 6 state-level classes under statutory consumer protection laws. (*Id.*) Ultimately, the same issues of individuality impede the commonality and predominance analysis for all of Plaintiffs' proposed classes on these grounds as well.

*Schroeder*, by its terms, did not address the certification analysis with regard to comparable common law fraud claims or state consumer protection statutes. Plaintiffs suggest that *Schroeder* does not govern these claims because common evidence could demonstrate State Farm's concealment of the TNA—and thus statutory violations—through policy documents, valuation reports, training materials, and public materials. (Dkt. 332 at 6). Similarly, Plaintiffs argue for common proof of their fraudulent concealment claims through State Farm's conduct, State Farm's exclusive knowledge of the TNA, and the materiality of that concealment to the ACV payments as a whole. (*Id.*)

Plaintiffs do not challenge the idea that their common law contentions under Illinois law require the proof of injury standard to a garden-variety claim—indeed, they assert that the basic "elements are the same from state to state" in terms of their alternative class proposal. (Dkt. 279 at 20).[6] "In order for a plaintiff to prevail on a claim of fraudulent misrepresentation, he or she

---

[6] Plaintiffs do suggest that some states have some variance in matters pertaining to reliance and duty to disclose, but that there is "no meaningful variation." (Dkt. 279 at 20).

must establish the following elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 888 N.E.2d 24, 35–36 (Ill. 2008). The same goes for their statutory claim. "The elements of misrepresentation largely overlap with a deceptive practices claim under the ICFA." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018). Rather, Plaintiffs argue that certification is justified on both theories because their injury is universal: "State Farm undertook the same on-going effort to conceal its use of TNA to solicit customers and then reduce its payments to all proposed class members, thereby causing the same injury." (Dkt. 279 at 18).

As this Court emphasized in its September 2025 Opinion, a plaintiff bringing a claim under the ICFA must prove the deceptive act proximately caused the plaintiff's damages.[7] *See De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002). In other words, the plaintiff "must actually be deceived by a statement or omission." *De Bouse*, 922 N.E.2d at 314–316 (rejecting a plaintiff's claim against a pharmaceutical company where the plaintiff had taken a later-discontinued medication pursuant to her doctor's directive, and no communication from the defendant had indirectly or directly reached the plaintiff). In analyzing a claim under the Illinois statute, courts consider "the totality of the information made available to

---

[7] Plaintiffs' alternative class would reach six states: Connecticut, Delaware, Hawai'i, New Mexico, and New York, in addition to Illinois. (Dkt. 331-1). Plaintiffs argue that the requirements of these statutes all mirror the ICFA, noting that each "requires an objective showing that [Defendant] engaged in an unfair or deceptive act or practice," and that each "include[s] a similarly broad prohibition on unfair and deceptive practices, appl[ies] to acts of omission and concealment, and ha[s] no reliance requirement (or such reliance can be established by common evidence, such as materiality." (Dkt. 279 at 23–24).

12

the plaintiff." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)).

This Court has repeatedly rejected State Farm's contentions that Plaintiffs can only point to the contents of the policy document itself, instead emphasizing that Plaintiffs can pursue the theory that State Farm's wrongdoing derives not solely from the contents of the policy but from a spread of "misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding their purported payment of ACV" at point of purchase. (*See* Dkt. 326). Far from resting on the language in the policy documents itself, Plaintiffs offer deposition testimony and other evidence to back the overall theory that State Farm conceals its payment practices through a cohesive approach. (Dkt. 364 at 12). This is a viable theory on the merits under Illinois law. (*See also* Dkt. 224 at 13 (denying State Farm's Motion to Dismiss on the fraud claims)).

The issue, for Plaintiffs, is that the fundamental challenges of the *Schroeder* breach-of-contract analysis laid out above are also present in the individual injury analysis. For common questions to predominate, "the common, aggregation-enabling issues" in a case must be "more prevalent or important than the non-common, aggregation defeating, individual issues." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 607 (7th Cir. 2021) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). To make this case, they will need to establish that some common deceptive practice, as understood by consumers, occurred such that "a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 815 (7th Cir. 2012) (cleaned up). They cannot.

Plaintiffs are pushing two different theories of fraud—both that State Farm engaged in the ongoing concealment of the use of the TNA, and that insureds were defrauded at time of purchase.

13

(Dkt. 332 at 8). The Plaintiffs' proposed class certification involves Plaintiffs who admit to not reading State Farm's actual policy documents, whereas others did not, stretches to include State Farm customer service representatives across a variety of states, and most crucially, turns on vehicle-specific assessments for each individual customer to assess whether harm actually occurred. Neither party disputes that ACV estimates from various third-party entities, such as Merritt, NADA Retail, and BTI, can vary, with Autosource's ACV estimate not consistently the lowest estimate for the named Plaintiffs alone. (Dkt. 391-1, Defendants' Demonstrative Exhibits Presented at Class Certification Hearing, ACV Estimates).[8] That circles back to the *Schroeder* individuality problem in this context just as it was present in the contract claim context: "the jury would need to consider individualized evidence about each putative class member's car and each comparable car included in her car's valuation report." *Schroeder*, 146 F.4th at 577. While *Schroeder* dealt with this issue in the context of proving a breached duty, the same problem arises in the context of damages from alleged fraud. Further, the factual issues underlying the claims around whether ACV can rightfully consider TNA undermine Plaintiffs' contentions that proof of omission can be readily presumed. (Dkt. 332 at 10).

Individual issues of whether any putative class member suffered actual injury by receiving less than ACV will predominate and overwhelm any trial. While "a rule requiring 100% commonality would eviscerate consumer-fraud class actions," the Court must utilize "a 'rigorous analysis' into whether the plaintiffs' 'damages are susceptible of measurement across the entire class.' " *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759–60 (7th Cir. 2014). That standard has not been met here.

---

[8] The Court references these estimates not for the provided numbers themselves, but for the examples of possible range.

### IV.    Rule 23(b)(2)

Rule 23(b)(2) allows class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Practically, the rule permits injunctive relief for a plaintiff seeking compensatory damages when "monetary relief is incidental to the equitable remedy." *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999); *see also Lemon v. Int'l Union of Operating Engineers*, Loc. No. 139, AFL-CIO, 216 F.3d 577, 582 (7th Cir. 2000). The request for an injunction here is certainly not incidental to monetary relief. The plaintiffs make clear they seek compensatory damages for allegedly overpaying on car insurance. (Their brief for class certification is almost entirely dedicated to Rule 23(b)(3), which allows for monetary relief. (*See generally* Dkt. 279)). Therefore, class certification is inappropriate here as well.

### V.    Bernadette Williams' Individual Claims

Finally, the Court returns to the question reserved in its prior Opinion addressing State Farm's Partial Motion for Summary Judgment on the issue of Plaintiff Bernadette Williams. The Court noted that Williams could not challenge State Farm's payout as a matter of course given the nature of bankruptcy proceedings but permitted Plaintiffs to brief the view that Williams' challenge to the sum of State Farm's payout in the bankruptcy proceeding constitutes a special exception to the general principles of bankruptcy.

Despite the extended opportunity, the Plaintiffs declined to do so, providing no supporting case law in their brief. (*See generally* Dkt. 364). Instead, Plaintiffs requested that this Court defer any ruling so Plaintiffs can contact the bankruptcy trustee "to see whether the trustee is willing to either waive the claim or step into Plaintiff Williams's shoes to pursue the claim." (*Id.* at 19). Yet

the Court has already made its determination: Failure to raise an objection at the bankruptcy plan confirmation hearing, or to appeal from the order of confirmation, generally precludes attack on the plan or any provision therein as illegal in a subsequent proceeding. *See Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000); *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) ("Once the bankruptcy proceeding came to a conclusion, the accuracy of the creditor's claim was established."). Plaintiffs did not attempt to defend this conclusion, so the conclusion remains.

Thus, the Court grants State Farm's Partial Motion for Summary Judgment (Dkt. 250) on the issue of all of Plaintiff Bernadette Williams' claims, extending the analysis from its September 2025 Opinion (Dkt 326) to this final reserved issue from that set of briefing.

## VI.     Impact on Defendants' Fully Briefed Motion for Summary Judgment

While it is not improper for a defendant to move for summary judgment before a certification decision is made, arguments tailored to classwide issues may no longer be relevant. *See Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995). Denial of the class certification question fundamentally resets the merits of a case where, as here, briefing anticipates a classwide defense. *See, e.g.*, *Trull v. Lason Sys., Inc.*, 982 F. Supp. 600, 603 (N.D. Ill. 1997). In its discretion, the Court denies Defendant's motion for summary judgment as moot given the far-reaching scope of the arguments contained therein. *See, e.g.*, *Exhaust Unlimited, Inc. v. Cintas Corp.*, 223 F.R.D. 506, 514 (S.D. Ill. 2004) (doing largely the same); *cf. Trull v. Lason Sys., Inc.*, 982 F. Supp. 600, 604 (N.D. Ill. 1997) (deciding summary judgment ahead of class certification because the claims were without actual merit).

**<u>CONCLUSION</u>**

The plaintiffs have not established their claims should be adjudicated through the "exception" to the general rule of litigation. *Comcast*, 569 U.S. at 33. For these reasons, their

16

motion to certify a class is denied. [275, 276] Since the class certification motion is denied, the Court denies as moot Defendant State Farm's Motion for Summary Judgment, filed in anticipation of a classwide defense. [310] The parties are directed to meet-and-confer to determine next steps, including re-filing amended summary judgment briefing, and report to the Court at the next status hearing whether they intend to pursue merits determinations on these individual claims. The Court has also reviewed the supplemental briefing on the reserved issue from its September 2025 ruling on State Farm's Partial Motion for Summary Judgment (Dkt. 250) and grants that Motion as to all of Plaintiff Bernadette Williams' claims, extending the analysis from its September 2025 Opinion (Dkt 326) to this final reserved issue from that ruling.

_____
Virginia M. Kendall
United States District Judge

Date: March 30, 2026